UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LEADINGAGE MINNESOTA, CARE PROVIDERS OF MINNESOTA, and YONA NORTHSTAR LLC, | Court File No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT FOR INJUNCTIVE RELIEF** |
| NICOLE BLISSENBACH, *in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry and as a member of the Minnesota Nursing Home Workforce Standards Board*, and JAMIE GULLEY, *in his official capacity as a member and chairperson of the Minnesota Nursing Home Workforce Standards Board*, | **EXPEDITED RELIEF REQUESTED** |
| Defendants. | |

Plaintiffs LeadingAge Minnesota ("LeadingAge"), Care Providers of

Minnesota ("Care Providers"), and Yona Northstar LLC ("Yona") through their

attorneys, assert these claims against Defendants Commissioner Nicole

Blissenbach ("Blissenbach") in her *official capacity* as the commissioner of the

Minnesota Department of Labor and Industry ("DOLI") and as a member of

the Minnesota Nursing Home Workforce Standards Board (the "Board"), and

against Jamie Gulley, in his *official capacity* as a Board member and its current chairperson:

## INTRODUCTION

1.      LeadingAge invokes the federal constitution and statutory rights of its association members and seeks a judgment: (1) declaring that the Minnesota Nursing Home Workforce Standards (the "Act"), codified as Minn. Stat. §§ 181.211 *et seq.*, and the Board's structure and actions are unconstitutional, violate the Sherman Antitrust Act, as well as being preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq.*; and (2) imposing a statewide injunction that enjoins enforcement of the Act, the Board's standards, and that bars Blissenbach and Gulley from adopting additional standards.

2.      Care Providers invokes the federal constitution and statutory rights of its association members and seeks a judgment: (1) declaring that the Act and the Board's structure and actions are unconstitutional, violate the Sherman Antitrust Act, as well being as preempted by the NLRA; and (2) imposing a statewide injunction that enjoins enforcement of the Act, the Board's standards, and that bars Blissenbach and Gulley from adopting additional standards.

3.      The association members of LeadingAge and Care Providers are collectively, the "Members."

2

4.      Yona invokes the federal constitution and statutory rights in its individual capacity and seeks a judgment: (1) declaring that the Act and the Board's structure and actions are unconstitutional, violate the Sherman Antitrust Act, as well being as preempted by the NLRA; and (2) imposing a statewide injunction that enjoins enforcement of the Act, the Board's standards, and that bars Blissenbach and Gulley from adopting additional standards.

5.      The Act created the Board and provided the Board with powers and duties. Minn. Stat. § 181.212, subd. 1(a) (2025). The Board has the authority to "adopt rules establishing minimum nursing home employment standards that are reasonably necessary and appropriate to protect the health and welfare of nursing home workers, to ensure that nursing home workers are properly trained about and fully informed of their rights under sections 181.211 to 181.217, and to otherwise satisfy the purposes of sections 181.211 to 181.217." Minn. Stat. § 181.213, subd. 1(a).

6.      Because the Act is unconstitutional, its creation of the Board violates the law. Accordingly, the resulting structure and actions taken by the Board, including the adoption of the Proposed Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards; Notice of Intent to Adopt Expedited Permanent Rules Without A Public Hearing ("Wage

3

Standards") are tainted due to the Board's unconstitutional origin. *See* 48 SR 1148–50.

7.     The Board's very existence is unconstitutional. The Board enacts an unprecedent experiment in workplace regulation. It collects representatives from labor, management, and the government to bargain over sector-wide standards in the nursing home industry. It then applies these standards to all covered workplaces as a matter of law. It is meant to replace existing approaches to workplace regulation, such as private collective bargaining. In effect, it removes bargaining from the workplace and transfers it to a tripartite board.

8.     This model is both novel and unlawful. The Act's creation of the Board, and the Board's resulting structure and actions, violate the U.S. Constitution in at least four ways.

9.     **First Amendment.** First, the Act violates the First Amendment by imposing representatives on the Members and Yona for expressive purposes. The First Amendment gives every person the right to refuse to engage in "expressive" association. When a person is represented by another person in workplace bargaining, the representation is a form of association. And when association implicates public policy, the association is expressive. The Board's structure requires just that kind of association. It forces nursing home workers and employers into a representative relationship with the

4

Board's representatives, and those representatives bargain over public policy. The Board's structure therefore forces the Members, Yona, and their workers to associate with representatives and policies with which they may disagree, thus violating the First Amendment.

10.    **Due Process.** Second, the Act violates the Due Process Clause of the Fourteenth Amendment by delegating regulatory power over competitors to self-interested people—*i.e.*, the Board's private members, and in particular, a block of "worker" representatives affiliated with major labor unions. The Due Process Clause forbids a state from giving unsupervised regulatory power to a person with a financial interest in the subject of regulation. A majority of the Board's representatives come from labor or private industry. All these representatives have a financial stake in the Board's regulations. And together, they can enact new standards without the substantive review and approval of a disinterested public official. The Board's structure therefore gives regulatory power to self-interested parties and violates due process. *See State of Wash. ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 121–22 (1928); *Eubank v. City of Richmond*, 226 U.S. 137, 143 (1912).

11.    **Supremacy Clause (Sherman Antitrust Act).** Third, the Act requires private market participants to collude over wages, hours, and other working conditions. It therefore violates the Sherman Antitrust Act ("Sherman Act"), and thus the Act is preempted under the Supremacy Clause. The

5

Sherman Act forbids competitors from, among other things, colluding over wages, hours, and other working conditions. While the Sherman Act does exempt some anticompetitive activity taken at a state's direction, that exemption applies only when the state actively supervises the anticompetitive activity. And here, the state does not in fact actively supervise the anticompetitive activity; its review is only nominal and potential, not substantive and actual. The state-action exception therefore does not apply, and the Act violates the Sherman Act and is preempted under the Supremacy Clause.

12.     **Supremacy Clause (NLRA).** Fourth, the Act is preempted under the Supremacy Clause and the NLRA. The NLRA creates a comprehensive, uniform system for regulating labor relations, including worker representation and collective bargaining. Because the NLRA is comprehensive, it prevents states from establishing alternative or parallel regulatory schemes for regulating worker representation and collective bargaining. Here, the Board creates a parallel scheme under which workers and employers are represented on an industry board and bargain over subjects already regulated by the NLRA. The Board therefore intrudes on territory occupied exclusively by federal law and is preempted.

13.     These violations are overlapping but independently sufficient. They each establish that the Act is unlawful.

14.     The Board has already adopted standards that are harming the Members and Yona, with future harm on the immediate horizon. The Act also continues to harm the Members' and Yona's constitutional rights to be free of forced association and invalid regulatory burdens.

15.     The only adequate remedy to prevent these harms from continuing is an injunction. Plaintiffs therefore ask this Court to enjoin Blissenbach from enforcing the Act and any of the Board's standards; and enjoin Blissenbach and Gulley from operating the Board's processes in a way that contravene federal law.

## THE PARTIES

16.     LeadingAge is a non-profit corporation organized under Minnesota law and headquartered in Minnesota. LeadingAge is a trade association that represents numerous member organizations across Minnesota, including organizations providing services along the full spectrum of post-acute care and long-term services and support, including what are commonly referred to as "nursing homes." *See* Minn. Stat. § 181.211, subd. 7. A full list of benefits that LeadingAge provides its association members may be found on its website and incorporated herein.[1] LeadingAge's policy objectives include educating its association members on industry and legal developments, providing tools and

---

[1] *About*, LEADINGAGE MINNESOTA, https://www.leadingagemn.org/about-us (last visited Mar. 8, 2026).

resources to association members so that they may provide compassionate care to older adults, and taking reasonable steps to ensure that their association members are not subject to laws that violate the U.S. Constitution. Where LeadingAge must sue to enjoin enforcement of an unlawful law that harms its association members, it will do so, as demonstrated by this action.

17.    Care Providers is a non-profit corporation organized under Minnesota law and headquartered in Minnesota. Care Providers is a trade association that represents numerous member organizations across Minnesota, including organizations providing services along the full spectrum of post-acute care and long-term services and support, including what are referred to as "nursing homes." *See* Minn. Stat. § 181.211, subd. 7. A full list of benefits that Care Providers provides its association members may be found on its website and incorporated herein.[2] Care Providers' policy objectives include educating its association members on industry and legal developments, providing tools and resources to association members so that they may provide compassionate care to older adults, and taking reasonable steps to ensure that their association members are not subject to laws that violate the U.S. Constitution. Where Care Providers must sue to enjoin enforcement of an

———————————————————#

[2] *Leading members to excellence*, CARE PROVIDERS OF MINNESOTA, https://careproviders.org/CPM/CPM/About-Us/Over.aspx?hkey=15f320d6-479f-491f-baef-d3d01d473520 (last visited Mar. 8, 2026).

unlawful law that harms its association members, it will do so, as demonstrated by this action.

18. Yona is a Minnesota limited liability company that frequently transacts business with healthcare, senior living, and assisted living communities in Minnesota. Yona is a business partner of the Members. Yona contracts with providers who provide nursing home services to Minnesota's older adult population. To help serve the state's older adult population, Yona employs a total of 433 employees at 51 client sites across Minnesota. These employees qualify as "nursing home workers" because they are non-direct care staff, including housekeepers, laundry aides, floor care technicians, cooks and dietary aides who work at Minnesota's nursing home facilities. Minn. Stat. § 181.211, subd. 9. And by extension, Yona is a "nursing home employer." Minn. Stat. § 181.211, subd. 8.

19. Yona is not, and has never been, an association member of either LeadingAge or Care Providers.

20. Blissenbach is the commissioner of DOLI. Blissenbach is also the DOLI-commissioner member on the Board.

21. The Board is an entity established by statute to regulate nursing home workers and employers. *See* Minn. Stat. § 181.211, subd. 2, § 181.212. The Board is the first of its kind in the country. There is no other centralized nursing home workforce board with rulemaking authority.

9

22.     Jamie Gulley is the current chairperson of the Board and is one of the members representing nursing home workers or worker organizations appointed by Governor Walz.

## JURISDICTION AND VENUE

23.     This case arises out of federal statutory and constitutional law. This Court has federal question jurisdiction under 29 U.S.C. § 1331 and 42 U.S.C. § 1983. This Court also has jurisdiction under 28 U.S.C. § 1337 because the case arises under an act of Congress regulating commerce. This Court has authority to issue declaratory relief under 28 U.S.C. § 2201.

24.     The Members are directly and adversely impacted by the Act and the Board's standards. The Members qualify as "nursing homes" and "nursing home employers" under the Act. Minn. Stat. § 181.211, subd. 7 and 8. The Members likewise employ "nursing home workers." *Id*. subd. 9. Yona qualifies as a "nursing home employer" and employs "nursing home workers." *Id*. subd. 8 and 9. As the representative Declarations make clear, the Members have individual standing to sue. Those Declarations are attached to and incorporated into this Complaint. FED. R. CIV. P. 10(c).

25.     The Act and Board are at odds with each LeadingAge's and Care Providers' policy objectives, and this legal challenge is germane to those objectives. None of the claims asserted nor the relief requested requires individual association members to participate in the suit.

10

26.   The Act and the Board inflict direct harm on Yona and it has individual standing to sue. Yona's Declaration is attached and incorporated into this Complaint. FED. R. CIV. P. 10(c).[3]

27.   Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this action occurred in this judicial district and because the Defendants reside or are found in this judicial district.

## BACKGROUND

### I.   THE MINNESOTA NURSING HOME WORKFORCE STANDARDS BOARD.

28.   The Board was established in 2023. It is structured as a "tripartite" entity. The Board has nine representatives: three representing the Minnesota government, three representing nursing home employers, and three representing nursing home workers or worker organizations.

29.   As of March 2026, the Board representatives were as follows:

a.   *Government Representatives*

   i.    Blissenbach, Commissioner-member from DOLI;
   ii.   Kim Brenne, Director of Nursing Facility Rates and Audits, Department of Human Services; and
   iii.  Maria King, Director, Health Regulation Division, Department of Health.

---

[3] Plaintiffs also attach and incorporate the Declaration of Thomas Revnew into this Complaint. FED. R. CIV. P. 10(c).

b.    *Employer Representatives*

    i.       Paula Rocheleau, CEO, Partners Senior Living;

    ii.      Mary Swanson, Administrator, Good Samaritan Society; and

    iii.     Katie Lundmark, VP of Operations, Senior Living, Lifespark.

c.    *Worker Representatives*

    i.       Gulley, President, SEIU Healthcare Minnesota and Iowa ("SEIU");

    ii.      Michele Fredrickson, Staffer, United Steelworkers, AFL-CIO; and

    iii.     Michelle Armstrong, a Licensed Practical Nurse at The Estates in Lynnhurst and member of Local 1189, United Food and Commercial Workers Union (affiliated with the AFL-CIO).

30.    No evidence exists showing that any Board representative went through the advice and consent process before the Minnesota Senate. Governor Walz appointed the employer and worker members; the government members are set by the Act. Minn. Stat. § 181.212, subd. 1.

31.    The Board meets monthly to discuss any matters relating to the Act and the Board's administrative regulations, and to vote on the Board's desired actions. Gulley, who is the President of SEIU, has historically advocated for the exact standards the Board now has implemented. Gulley earlier told MINNPOST that SEIU was "the driving advocacy group for the

12

standards board to exist."[4] Gulley was reelected as Chairperson on September 11, 2025 for a two-year term.

32. According to the Board's Bylaws, Gulley as the chairperson, has additional powers, including calling a special or emergency meeting of the Board, approving agenda items, being delegated by the Board to appoint committees, and conducting the first pass review of any amendment to the Bylaws.[5]

33. Under the Act, the Board must adopt statewide employment standards for nursing home workers. These standards include any standard that is "reasonably necessary and appropriate to protect the health and welfare of nursing home workers." Minn. Stat. § 181.213, subd. 1(a).

34. The Board also must adopt statewide standards covering mandatory "rights" training. The Board must establish a training curriculum and certify "worker organizations" to deliver the training. Minn. Stat. § 181.214, subd. 1.

---#

[4] Matthew Blake, *A New Deal Revival: Why Labor Unions Love the Minnesota Nursing Home Workforce Standards Board*, MINNPOST, https://www.minnpost.com/state-government/2025/10/a-new-deal-revival-why-labor-unions-love-the-minnesota-nursing-home-workforce-standards-board/ (Oct. 16, 2025).

[5] Minnesota Nursing Home Workforce Standards Board Bylaws, MINN. DEP'T OF LAB. AND INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_bylaws.pdf (Aug. 8, 2024).

35. The Act provides no review of these certification decisions. The Act likewise provides no review of the Board's employment standards, unless the Board's actions impact the Medicaid reimbursement rate paid to nursing homes.

36. Once adopted, the Board's standards are treated as regulations. They are published in the state's official regulatory compilation, the Minnesota Administrative Rules. They apply to all covered nursing home employers and workers as a matter of law. *See* Minn. Stat. § 181.213, subd. 1; Minn. Admin. R. 5200.2000–5200.2090.

37. The Board may take any action with a majority vote of its representatives—*i.e.*, five of nine—including actions necessary to establish minimum nursing home employment standards under section 181.213. Minn. Stat. § 181.212, subd. 7. At least two of the five affirmative votes must be cast by two board members representing the Minnesota government. *Id*.

38. During the 2025–2026 legislative session, lawmakers introduced H.F. 500, which would have repealed the Act, in its entirety, thus eliminating the Board.[6] During the same session, the state legislature later considered an amendment that saved the Act.[7] Under the amendment, the Board's standards

---

[6] HF 500, *Introduction*, OFFICE OF THE REVISOR OF STATUTES, https://www.revisor.mn.gov/bills/94/2025/0/HF/500/versions/0/ (Feb. 11, 2025).

[7] HF 500, *Second Engrossment*, OFFICE OF THE REVISOR OF STATUTES,

that would require additional appropriations from the state would not take effect until the state approved such appropriations. Yet H.F. 500 never became law.

39.     The Act, as currently written, has a minimal check on the Board's authority. The limited check: the appropriations process through the Minnesota legislature. Minnesota allocates Medicaid funding to nursing facilities through a statutory rate structure established by the Minnesota Department of Human Services that uses allowable costs from a cost report with a year ending 15-months prior to the January 1 rate year to calculate a total reimbursement rate. Minn. Stat. § 256R.01, subd. 1–2, § 256R.02, subd. 41 and 44, §256R.21–.26. The legislature determines the total cost to Medicaid and deducts the amount to be matched by the Federal government. The Federal Medical Assistance Percentage (FMAP) for Minnesota during federal fiscal year 2027 is 51.36%. While the federal government funds about half of any increase to the Medicaid reimbursement rate, Minnesota pays the non-federal share. Minn. Stat. §§ 256B *et seq.*; 42 U.S.C. § 1396(a)(2). The Minnesota legislature must approve funding to cover the non-federal share. The legislature's check on the Board's power thus only triggers if the Board's standards require a corresponding increase in state appropriations sufficient

---------------------------------#
https://www.revisor.mn.gov/bills/94/2025/0/HF/500/versions/2/ (Mar. 10, 2025).

to cover any increase in the Medicaid reimbursement rate. Minn. Stat. § 181.213, subd. 2a(b)(2), subd. 2b(b).

40.     The Board's government representatives do not provide an additional check. On paper, two government representatives must approve a proposed standard before the standard can be adopted by the Board. But in practice, the government representatives virtually always approve standards and other actions proposed by the "worker" representatives affiliated with unions. These union representatives have largely originated the Board's material policies and dictated the Board's agenda. One of them, Gulley, is the Board's chair. The union representatives have been in the winning majority in every vote taken in the Board's history. The government representatives do not appear to have ever voted against the union representatives' proposals, modified or vetoed the union representatives' proposals, or even raised significant questions about the union representatives' agenda. The government representatives provided no additional check.

41.     To date, the Board has adopted standards on minimum wages, training, and holiday pay. The wage standards set minimum wages higher than the state minimums for certain classes of nursing home workers. The holiday-pay rules require time-and-a-half pay for nursing home workers on eleven state holidays. The training standards specify criteria for certifying

16

worker organizations to provide rights training. *See* Minn. Admin. R. 52000.2000 to 5200.2090.

42. On May 9, 2024, Armstrong—one of the worker representatives on the Board—moved to approve the draft "Minimum Nursing Home Wage Standards," which was the *original* iteration of what later became the Wage Standards. This proposal originated with the representatives representing "employees," all of whom are associated with labor unions. Blissenbach, Gulley, Fredrickson, and Armstrong voted with the majority. The minimum wages for general "nursing home workers,"[8] certified nursing assistants, trained medication aides, and licensed practical nurses in the original iteration were identical to what the Board later adopted.

43. Then, on June 13, 2024, the Board voted to approve a revised minimum-wage standard. Blissenbach, Gulley, Fredrickson, and Armstrong voted to approve the revised minimum-wage standard.

44. The revised minimum wage standard then formally became the Wage Standards, when the Board issued notice of its intent to adopt the rules

---

[8] The Act defines "nursing home worker" as any worker who provides services in a nursing home in Minnesota, including direct care staff, non-direct care staff, and contractors, but excluding administrative staff, medical directors, nursing directors, physicians, and individuals employed by a supplemental nursing services agency." Minn. Stat. § 181.211, subd. 9.

on June 24, 2024.[9] Then, on or around October 28, 2024, and following a public comment period, the State Register published the Board's notice that it had adopted the Wage Standards as originally written.[10] Minn. Admin. R. 5200.2060–2090. The Wage Standards are applicable statewide. Minn. R. Admin. 5200.2070, subp. 1. The Wage Standards set the minimum wages for general nursing home workers, licensed practical nurses, certified nursing assistants, and trained medication aides higher than what nursing homes would pay, if given the choice.

45.    Thirty days after the Centers for Medicare & Medicaid (CMS) approves the reimbursement rate increase paid to nursing homes to implement the minimum wage, the Wage Standards will set the 2026 minimum wage for all covered nursing home workers at $19.00 per hour. As of the filing of this lawsuit, CMS still has not approved the increased reimbursement rate.

46.    Beginning on January 1, 2027, nursing homes must pay all of their covered nursing home workers a minimum wage of $20.50 per hour. Minn. R. Admin. 5200.2080.

---

[9] 48 SR 1148–50, MINN. STATE REGISTER, https://mn.gov/admin/assets/SR48_52_tcm36-628525.pdf (June 24, 2024).
[10] 49 SR 443, MINN. STATE REGISTER, https://mn.gov/admin/assets/SR49_18_tcm36-650570.pdf (Oct. 28, 2024).

47.     The Wage Standards separately require that nursing homes pay individuals in certain occupations a starting minimum wage in 2026, and January 1, 2027 as follows:

| Role | 2026 - These standards will go into effect 30 days after CMS's approval | January 1, 2027 |
|---|---|---|
| Certified Nursing Assistants | $22.50 per hour | $24.00 per hour |
| Trained Medication Aides | $23.50 per hour | $25.00 per hour |
| Licensed Practical Nurses | $27.00 per hour | $28.50 per hour |

Minn. R. Admin. 5200.2090.

48.     The Minnesota Medicaid program receives significant funding from the federal government, and so, CMS must approve any increases to the reimbursement rate the State intends to pay. *See* Minn. Stat. §256B.04, subd. 4 and 24; § 256R.03, subd. 1; Minn. R. Admin. 5200.2070. subp. 2(B), subp. 3. Minnesota allocates Medicaid funding to nursing facilities through a statutory rate structure established by the Minnesota Department of Human Services (Minnesota's designated CMS agency) that uses allowable costs from a cost report with a year ending 15 months prior to the January 1 rate year to calculate a total reimbursement rate. Minn. Stat. §§ 256R.01, subd. 1–2, 256R.02, subd. 41 and 44, 256R.21–.26. Several categories feed into the total reimbursement rate, including "direct care costs," "other care-related costs,"

and "other operating costs." Minn. Stat. §§ 256R.02, subd. 17 and 34-36, 256R.21, subd. 2(1)–(2). Direct care costs include, "costs for the wages of . . . *licensed practical nurses*, *certified nursing assistants*, *trained medication aides*[.]" Minn. Stat. § 256R.02, subd. 17 (emphasis added). The increased wages of licensed practical nurses, certified nursing assistants, and trained medication aides constitute direct care costs that factor into the total reimbursement rate calculation. Minn. Stat. § 256R.21, subd. 2(1). Other care costs include "the costs for the salaries and wages and associated fringe benefits and payroll taxes of mental health workers, religious personnel, and other direct care employees not specified in the definition of direct care costs." Minn. Stat. § 256R.02, subd. 35. "Other direct care costs" is part of "other care-related costs." *Id*. subd. 34. "Other operating costs" includes wages and benefits for "administrative costs, dietary costs, housekeeping costs, laundry costs, and maintenance and plant operation costs." The wages classified under direct care, other care-related, and other operating are included a nursing facility's operating rate. The total payment rate is comprised of the operating rate, the external fixed rate, and property rate.  Minn. Stat. § 256R.21.

49.     The Wage Standards increasing the 2026 labor costs for nursing homes requires CMS to approve the change and increase to the reimbursement rate under Medicaid.

20

50.    Likewise, Minnesota must authorize appropriations to cover the state-funded share of the increased reimbursement rate. That is why in June 2025, the Minnesota legislature passed a funding bill (later signed by Governor Walz) that specifically apportioned state funds to cover the increased reimbursement rate caused by the Wage Standards. Minn. Stat. § 256R.495.[11] In other words, the Board adopting the Wage Standards triggered legislative oversight because it required additional appropriations. But the Board's actions as to any training requirements would not trigger legislative oversight, because the Board does not need money to impose training requirements.

51.    The Act also empowers the Board to "certify worker organizations that it finds are qualified to provide training to nursing home workers[.]" Minn. Stat. § 181.214, subd. 1. The Board selected these three certified nursing worker organizations in July 2025[12]: (1) AFL-CIO; (2) SEIU; and (3) AFSCME Council 65—all labor unions.[13] SEIU and the AFL-CIO are also represented on the Board.

---

[11] HF 3, *Status in the House - 94th Legislature, 2025 1st Special Session*, OFFICE OF REVISOR OF STATUTES,
https://www.revisor.mn.gov/bills/94/2025/1/HF/3/ (June 9, 2025).

[12] Meeting Minutes: *Nursing Home Workforce Standards Board*, MINN. DEP'T OF LAB. AND INDUS.,
https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_minutes_071025.pdf (July 10, 2025).

[13] *Current list of certified worker organizations*, MINN. DEP'T OF LAB. AND INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_current_list_of_c ertified_worker_organizations_1225.pdf (Dec. 2025).

52.     The Board likewise establishes a training curriculum. Minn. Stat. § 181.214, subd. 2(a). The curriculum consists of eight parts. *Id*. subd. 2(a)(1)–(8). Amongst other topics, the curriculum includes informing nursing home workers about: (1) the applicable compensation and working conditions in the standards established by the Board; (2) anti-retaliation protections; and (3) how to report violations of the Act. *Id*. subd. 2(a)(1)–(3). By 2027, nursing homes must submit written documentation to the Board that their covered workers, who have been employed for at least two years, have completed at least one hour's worth of Act-compliant training. *Id*. subd. 6.[14] Nursing homes must further compensate their covered workers at their regular hourly rate of wages and benefits for each hour of training completed, as required by the Act. Minn. Stat. § 181.214, subd. 7. If the training is not hosted on the nursing homes' premises, nursing homes must also reimburse their covered workers for reasonable travel expenses. *Id*.

53.     Certification offers these labor organizations many benefits. For example, once certified, an organization can regularly contact nursing home workers through state-mandated training. The organization can also demand a worker's personal contact information, which the worker's employer must

_____#

[14] *Certificate of Worker Organizations and Worker Training Guide*, MINN. DEP'T OF LAB. AND INDUSTRY, https://www.dli.mn.gov/sites/default/files/pdf/n hwsb_draft_certification_training_guide_010925.pdf (Jan. 9, 2025).

provide unless the worker opts out in writing. These rights give the labor organization an opportunity to build a rapport with the worker, speak with the worker about unionization, and potentially recruit the worker as a union member. *See* Minn. Stat. § 181.214 subds. 5 and 6.

54. These advantages are intentional. The Board was created in part to increase unionization in the nursing home industry. When asked whether the Board was meant to improve labor standards or increase unionization, the sponsor of the Board's enabling legislation, Rep. Esther Agbaje, DFL-Minneapolis, said, "A little of both."[15]

## II.    HARM TO THE MEMBERS AND YONA.

55. The Members operate nursing home facilities in Minnesota. Yona contracts with providers who provide nursing home services and has employees working at nursing home facilities. In those facilities, the Members and Yona employ workers who qualify as nursing home workers under the Board's authority. As to those workers, the Members and Yona are subject to the Act and the Board's standards and must comply with the Board's requirements. Failure to comply with the Act and the Board's standards leads

---

[15] Matthew Blake, *A New Deal Revival: Why Labor Unions Love the Minnesota Nursing Home Workforce Standards Board*, MINNPOST, https://www.minnpost.com/state-government/2025/10/a-new-deal-revival-why-labor-unions-love-the-minnesota-nursing-home-workforce-standards-board/ (Oct. 16, 2025).

to enforcement action by Blissenbach, or a civil suit by an allegedly aggrieved nursing home worker. Minn. Stat. §§ 181.216(c), 181.217, subds. 2–3; Minn. Stat. § 177.27, subd. 4.

56.     The Board's standards directly harm the Members. As a result of the Wage Standards and within the six months before the filing of this lawsuit, the Members have:

a.     Reduced planned future wage increases.

b.     Implemented wage compression, which leads to long-term workers receiving lower wage increases over time.

c.     Paid out increased wages to nursing home workers, despite not being able to recover the increased amount through federal and state-funded reimbursement programs, including Medicaid.

d.     Expended resources to apply for the temporary rate supplement authorized by the Minnesota Legislature which attempts to offset the higher labor costs associated with the Wage Standards.

e.     Issued an increased tax levy for 2026 to cover the increased costs of compliance.

f.     Hired administrative staff to assist with the process of complying with the Wage Standards.

g.     Delayed capital improvements relating to facilities for housing residents and delaying investments in quality-of-life improvements, such as new furniture, equipment, or services, for residents.

h.     Modified retirement benefits structure as a cost-containment measure in response to the Wage Standards; going *from* an automatic five percent employer contribution to the workers' retirement accounts regardless of their contributions *to* a discretionary employer match of up to five percent, available only if a worker contributes to the plan.

24

i. Reduced new admissions.

j. Gave employees not covered by the Wage Standards a lower wage increase compared to what workers covered by the Wage Standards would receive.

k. Developed plans to reduce staff-to-resident ratios, which reduces on average the hours spent by staff on resident care.

57. To ensure their continued existence, the Members must implement

or at least consider:

a. Decreasing staff-to-resident ratios, meaning one staff member is responsible for a higher number of residents.

b. Further delaying or cancelling capital improvements for housing residents or other investments that improve residents' quality-of-life.

c. Cancelling plans to hire new, non-nursing-home-worker support staff.

d. Planning on raising the private pay rates higher than expected for residents living in assisted living facilities.

e. Reducing other forms of incentive pay currently offered to workers, such as bonuses for working additional shifts or shift differential pay offered for working certain hours.

f. Reducing the employer-paid portion of benefit programs offered to workers.

g. Limiting new admissions into the nursing home.

h. Shutting down operations.

58. The Board's standards harm Yona by requiring that it:

a. Conform its behavior to the Board's standards.

b. Pay its employees a higher minimum wage than what is set by default federal, state, or local law, or market factors.

25

c.  Adjust how it prices its contracts with nursing home providers in Minnesota.

d.  Suffer a shortfall in revenue. Yona had various contracts with nursing home providers in Minnesota with fixed prices and durations, which pre-date the Wage Standards. Yona could not have accounted for the Wage Standards—indisputably increasing wages for covered nursing home workers compared to the prevailing market—when it negotiated those contracts.

e.  Impose wage compression on its workforce and pay its more senior employees less than it might otherwise if the Wage Standards did not exist.

f.  At least consider limiting or shutting down operations.

59.  The Members and Yona must also navigate new burdens. These burdens are ongoing, and include recordkeeping, scheduling, and reporting requirements relating to covered nursing home workers:

a.  Scheduling workers for mandatory rights training once every two years and compensate them as required by law.

b.  Either hosting the mandatory training onsite or cover the workers' reasonable travel expenses for attending offsite training.

c.  Ensuring that they have coverage in their facilities while the workers are being trained.

d.  Keeping records showing that the workers attended the training. They must provide those records to the Board.

e.  Providing employee contact information to the worker organization that conducts the training on request.

f.  Refusing to provide a worker's contact information only if the worker opts out in writing.

g.  Tracking any opt-outs to demonstrate compliance.

60.  The Members and Yona also suffer competitive injuries:

26

a. The Board's structure allows private market participants to fix wage rates. The Members and Yona are direct purchasers of nursing home workforce labor and therefore suffer directly from this wage-fixing system through higher costs.

b. The Board's structure allows a small group of labor organizations to certify themselves as worker organizations, limiting the Members' and Yona's choice of organizations to deliver training. The Members and Yona are direct users of training services and so suffer from the reduction in choice.

c. The Board's structure allows private market participants to impose new administrative and scheduling requirements on the Members and Yona to their detriment. Again, the Members and Yona are direct purchasers of nursing home worker labor and so suffer from the reduction in flexibility and higher costs imposed by these requirements.

d. The Board's requirements are complex and novel. They require administrative resources to implement. They are more difficult for smaller facilities to manage, leaving them at a disadvantage in comparison with large facilities, which have more sophisticated compliance apparatuses and can more easily spread out their costs. They also raise the Members' and Yona's overall costs and hurt their ability to deliver quality service to Minnesota's older adult population.

61. The Members and Yona also suffer associational injuries. The Board's structure forces the Members and Yona to be represented in negotiations over standards with appointed representatives. These representatives were not chosen by the Members or Yona, and do not represent the Members or Yona's views. The Members and Yona believe that the Board's standards have been harmful to the industry. They also believe that the standard-setting process is continuing to harm them, their workers, and/or their residents, all of whom would be better served by market-based

negotiations. The Members and Yona object to their representation on the Board and wish to disassociate from the Board's processes. By forcing them to associate, the Board's structure injures their First Amendment freedom of association.

62. At bottom:

a. The Members and Yona seeking to pay covered nursing home workers wages that are less than what the Wage Standards require would violate the Wage Standards and subject themselves to the penalties prescribed by the Act.

   i. Through the union representatives' influence on the Board, non-unionized Members now must pay wages to their workers comparable to unionized workplaces.

b. Non-unionized Members would not engage any "certified worker organizations" or any labor union, to provide training to their covered nursing home workers. Because of the Act and the Board's standards, however, these non-union Members must engage various labor unions to provide the Act-mandated training or face the Act's consequences.

   i. Moreover, one of the certified worker organizations (a labor union) stated to a Member that it will not conduct the mandated training for this Member's workers, because the labor union does not currently represent this Member's workers.

c. If neither the Act nor the Board existed, the Members and Yona would not provide any of the required training. But under the current law, the Members and Yona must comply with all training requirements and related reporting requirements or face the Act's consequences.

d. Finally, the Members and Yona are forced to accept representation on the Board for the purpose of negotiating over and adopting collective standards for nursing-home workplaces. The Members and Yona do not want that representation and do not want to

associate with the Board's process, which they believe harms their businesses, their workers, their residents, and their communities. They object to this association and wish to disassociate themselves from the process.

## CAUSES OF ACTION

### Count I: Violation of the First Amendment

63.     Plaintiffs incorporate the preceding paragraphs by reference.

64.     The First Amendment protects the freedom of association. That freedom embraces both the right to associate and the right not to associate. *See* U.S. Const. amend. I; *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 636–38 (1984) (O'Connor, J., concurring).

65.     The Supreme Court has recognized that representation is a form of association. When the government forces a person to accept another's representation in bargaining over wages, hours, or working conditions, it burdens the person's associational rights. That burden is especially acute when the subjects of bargaining implicate public policy. *See Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council* 31, 585 U.S. 878, 916 (2018).

66.     The Supreme Court has also recognized that a state may designate a person or group to present views on behalf of a broader group. That exception is premised on the idea that in this context, the state is merely soliciting views for its own benefit. So it may choose the voices it will listen to. *See Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 280–81 (1984).

29

67.     But that exception applies only when the state is soliciting views to set its own public policy or when it is choosing its own bargaining partner. The exception does not apply when the state injects a bargaining agent into an otherwise private negotiation. In the latter case, the state is forcing the parties to associate with that agent, not merely soliciting views for itself. *See id.* at 285 (basing conclusion on premise "the state must be free to consult or not to consult whomever it pleases").

68.     The Act forcing the Board's representation on nursing homes, nursing homes' business partners, and workers does not fall under any exception. The Act forces the Members and Yona to associate with representatives and policies against their will. The Board requires the Members and Yona to accept representatives designated by the state. The Board likewise requires the same from the nursing home workers. These representatives do not simply inform the state so the state can make its own policy decisions. Rather, the representatives negotiate standards on behalf of private parties, including the Members, Yona, and their respective workers. *See* Minn. Stat. §§ 181.212, 181.213, subd. 1(a).

69.     The Members and Yona object to the standards adopted by the Board, which they believe harm their residents and/or their workers. They also object to the standard-setting process as a pernicious influence in the nursing home industry. The Members and Yona wish to disassociate from the Board's

process and their assigned representatives. But they cannot do so because the Board's structure gives them no option to opt out. *See* Minn. Stat. §§ 181.212, 181.213, subd. 1(a).

70.    This forced representation is expressive because it implicates public policy. The Board's standards are by definition public policy because they are adopted as regulations. They apply to all nursing home workers and employers as a matter of law. They even override the regulations adopted by other public agencies. *See id*. § 181.213, subd. 5.

71.    The Board's structure forces the Members, Yona, and their workers to associate with representatives and public policies with which they may disagree. The structure therefore burdens their associational rights. *See Janus*, 585 U.S. at 916 (describing exclusive representation in collective bargaining as "a significant impingement on associational freedoms that would not be tolerated in other contexts").

72.    Defendants cannot justify that burden. To justify a burden on associational rights, they must show that the Board's forced representation scheme survives "exacting scrutiny." That is, they must show that the scheme serves a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms. *See id*. at 894; *see also Knox v. SEIU, Loc. 1000*, 567 U.S. 298, 310 (2012) (applying "exacting" scrutiny to "mandated association" scheme).

73.     The Board fails both requirements.

74.     First, the Board serves no compelling interest. As its legislative chief author admits, it was created at least in part to boost unionization. Boosting membership for a private organization is not a compelling state interest. If it were, all compelled association would pass exacting scrutiny. And that is not the law. *See Janus*, 585 U.S. at 897 ("free rider" concerns insufficient to justify compelled association through mandatory dues-scheme in public employment); *Knox*, 567 U.S. at 311 ("free rider" concerns insufficient to justify compelled association in private-sector).

75.     Second, the Board's goals could have been achieved through means less burdensome of associational freedoms. Any standard adopted by the Board could have been adopted by normal legislation. That is, same goals could have been achieved with no forced representation at all. *See Janus*, 585 U.S. at 901 (compelled association through mandatory "fair share" payments failed exacting scrutiny when less restrictive means were available to accomplish state's goals).

76.     The Court should thus strike down the Act and the Board because they cannot survive exacting scrutiny.

## Count II: Violation of the Due Process Clause

77.     Plaintiffs incorporate the preceding paragraphs by reference.

78.    Under the Due Process Clause of the Fourteenth Amendment, no person can be deprived of life, liberty, or property without due process of law. Due process of law requires, among other things, a neutral decision maker. Any person who uses government power to deprive a person of life, liberty, or property must be neutral. If a person has an interest in the matter at hand— especially a financial interest—the person cannot decide the matter consistent with due process. *See* U.S. Const. amend. XIV; *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016); *Ward v. Vill. of Monroeville,* 409 U.S. 57, 61–62 (1972); *Tumey v. Ohio*, 273 U.S. 510, 531, 534 (1927); *Calder v. Bull*, 3 U.S. 386, 388 (1798).

79.    That principle applies to legislation and regulatory power. The Supreme Court has held that under the Fourteenth Amendment, self-interested people cannot exercise regulatory power over their peers or competitors. *State of Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 121–22 (1928) (striking down zoning ordinance that allowed construction of certain facilities only with consent or neighboring property owners); *Eubank v. City of Richmond*, 226 U.S. 137, 143 (1912) striking down city ordinance that allowed property owners to regulate set-off requirements for their neighbors' lots); *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936) (striking down statute allowing large coal operators and unions to collectively regulate wages and working conditions in their industry, including for their competitors).

33

80. The Supreme Court has allowed the government to delegate some regulatory decision-making to private parties. But such delegations satisfy due process only when the private party is subordinate to a disinterested public official. The public official must be able not only to review the private party's decision, but also to reject the decision or amend its substance. *Compare Carter Coal*, 298 U.S. at 311, *with Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 388 (1940), *and Walmsley v. Fed. Trade Comm'n*, 117 F.4th 1032, 1038 (8th Cir. 2024).

81. The Act's creation of the Board's structure violates these principles. The Act delegates regulatory power to self-interested private people. Those people exercise regulatory power over their peers and competitors. They are not subordinate to any public official.

82. A majority of the Board's representatives, six of nine, are private people. These people are nursing home workers, officials from various unions, or officials from nursing home employers.

83. Together, the representatives may adopt a broad range of standards regulating not only their own workplaces, but workplaces where competing workers, unions, and employers operate. *See* Minn. Stat. § 181.213, subd. 1(a).

84. The Board's representatives have already used their power to adopt standards for minimum pay, holiday pay, and training. These standards

34

regulate nursing home workers and employers who did not participate in the standard-making process, including the Members. *See* Minn. Admin. R. f5200.2000–5200.2090.

85.    The standards benefit incumbents on the Board and disadvantage their competitors. For example, the Board has used its authority to certify three labor organizations as "worker organizations" authorized to conduct rights training. SEIU and AFSCME Council 65 lobbied for the Board's creation. SEIU and AFSCME Council 65 are two of the three certified worker organizations. SEIU is represented on the Board. SEIU's affiliate partner, AFL-CIO, likewise is represented on the Board.[16]

86.    The representatives are not subordinate to any disinterested public official. The Board may adopt a standard by majority vote, and a majority of the board members are private, self-interested people. Though the votes of two government representatives are needed to adopt a standard, the three government representatives do not in practice review, revise or reject a standard that is supported by the union-affiliated private representatives. They instead rubber stamp the policies and proposals advanced by private representatives—namely, the union-affiliated block led by Gulley.

———————————————————#

[16] Mia Jacobs, *SEIU Joins AFL-CIO to Build Unprecedented Worker Power, Win Unions for All Workers*, AFL-CIO, https://aflcio.org/press/releases/seiu-joins-afl-cio-build-unprecedented-worker-power-win-unions-all-workers (Jan. 8, 2025).

87.    If a standard has a fiscal effect on the state's budget, the standard takes effect only after the state legislature appropriates the necessary funds. But if a standard has no fiscal effect—for example, the Board's training standards—the Board may adopt the standard unilaterally. *See* Minn. Stat. § 181.213, subds. 1(a), 2(c)–(d) and 2(a).

88.    Because the Board's structure allows self-interested people to regulate their peers and competitors without adequate control by any disinterested public official, the Board's structure violates due process. *See Carter Coal*, 298 U.S. at 311; *Roberge*, 278 U.S. at 121–22; *Eubank*, 226 U.S. at 143. #

### Count III: Preemption under the Sherman Act

89.    Plaintiffs incorporate the preceding paragraphs by reference.

90.    The Sherman Act forbids all contracts, combinations, or conspiracies in restraint of trade. It forbids nearly all agreements to limit competition, divide markets, or fix prices. It applies equally in both product and labor markets. In both kinds of markets, an agreement to limit competition is illegal. *See* 15 U.S.C. § 1; *NCAA v. Alston*, 594 U.S. 69, 88–92 (2021) (applying antitrust laws to apply to restraints on benefits in market for college athletes—a labor market).

91.    The Sherman Act makes an exception for state action. But that exception is narrow. It applies only when the state (a) adopts an explicit state

policy to displace competition with regulation, and (b) actively supervises the resulting anticompetitive activity. *N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101, 1110 (2015); *Goldfarb v. Va. State Bar*, 421 U.S. 773, 791–92 (1975).

92.    The Act empowers the Board to adopt standards that restrict competition. The Board forces private market participants—unions, employers, and workers—to collectively dictate wages, hours, and working conditions in their industry. It also requires them to collectively restrict the market for training services by deciding which worker organizations can conduct the training. *See* Minn. Stat. §§ 181.213. subd. 1(a); § 181.214.

93.    These terms would otherwise be subject to open competition in the market. By setting uniform standards, the Board necessarily restricts competition.

94.    These restrictions are naked restraints on trade. They fix wages and the terms of work in a labor market. They therefore violate the Sherman Act on their face.[17] *Chamber of Commerce of the U.S. v. City of Seattle*, 890 F.3d 769, 780 (9th Cir. 2018) (treating city law allowing rideshare workers to

---

[17] *Antitrust Guidelines for Business Activities Affecting Workers*, U.S. DEP'T OF JUSTICE AND THE FEDERAL TRADE COMM'N, https://www.ftc.gov/system/files/ftc_gov/pdf/p251201antitrustguidelinesbusin essactivitiesaffectingworkers2025.pdf (Jan. 2025).

collectively negotiate fares as a price-fixing arrangement condemned by Sherman Act).

95. The Board does not qualify for the state-action exemption because it is not actively supervised by the state. Again, the Board can adopt standards with a majority vote. A majority of the Board's voting representatives are active market participants. These market participants adopt anticompetitive standards without actual and substantive review from any state official. The Board's union representatives drive the Board's policy agenda, and the government representatives never modify, veto, or even question that agenda. Their supervision is merely potential, not actual.

96. Standards that affect the state's budget do not take effect until the legislature appropriates the necessary funds and the state receives CMS approval. But other standards, such as the training standards, may be adopted unilaterally. These standards are equally anticompetitive because they collectively dictate working conditions in the industry and block competition over those conditions. *See* Minn. Stat. § 181.213, subd. 1(a), 2(c)–(d) and (2a). It is irrelevant that they may not involve an explicit monetary component. *See Deslandes v. McDonald's USA, LCC,* 81 F.4th 699, 704–05 (7th Cir. 2023) (no-poach arrangement among franchises, which had no explicit monetary component, triggered review under Sherman Act); *Martinez v. NCAA,* No. 2:25-cv-2678049, 2025 WL 2678049, at *9–10 (D. Nev. Sept. 18, 2025) (treating

nonmonetary limitation on college-athlete eligibility as a labor-market restraint subject to antitrust scrutiny).

97. The Board is not exempt from antitrust scrutiny because of its quasi-public status. The antitrust analysis does not focus on whether an entity is an agency of the government. It focuses on whether the entity involves anticompetitive activity by private market participants, as the Board does. *See Goldfarb*, 421 U.S. at 791–92 ("The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of its members.").

98. Because the Act empowers the Board to engage in anticompetitive activity by private market participants and is not actively supervised by the state, it violates the Sherman Act and is preempted under the Supremacy Clause. *See N.C. State Bd. of Dental Exam'rs*, 135 S. Ct. at 1115 (state board created to regulate dental practice did not qualify for state-action exemption when it was not actively supervised by state officials).

**Count IV: Preemption under the National Labor Relations Act**

99. Plaintiffs incorporate the preceding paragraphs by reference.

100. The NLRA establishes a uniform and comprehensive regulatory system for union organizing, worker representation, and collective bargaining. It is the exclusive regulatory system for activities within its sphere, and it precludes any alternative or parallel state systems. States have no power to

establish their own systems of regulating private-sector labor relations within the Board's jurisdiction. *See* 29 U.S.C. § 151–169; *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 246 (1959); *Guss v. Utah Lab. Rels. Bd.*, 353 U.S. 1, 9 (1935); *see also Amazon.com Servs. LLC v. N.Y. State Pub. Emp. Rels. Bd.*, No. 1:25-cv-05311, slip op. at 8–11 (E.D.N.Y. Nov. 11, 2025) (concluding that New York could not transfer authority over union-representation petitions and unfair labor practices to state agency).

101.   The Act's creation of the Board sets up such an alternative system. The Board replicates collective bargaining by gathering representatives of management, labor, and workers to bargain over the terms and conditions of work. These are the same terms and conditions that would ordinarily be subject to collective bargaining under the NLRA. The Board therefore establishes a parallel, alternative system of workplace negotiation. *Compare* Minn. Stat. §#181.213, subd. 1(a) (authorizing Board representatives to establish "employment standards," including wages), *with* 29 U.S.C. § 158(d) (requiring parties to bargain in good faith over "wages, hours, and other terms and conditions of employment").

102. The Board's alternative system deviates from the NLRA in material ways. For example, it establishes a different system for choosing bargaining representatives. Under the NLRA, bargaining representatives are chosen either by designation or certification. Designation occurs when workers

choose their representative through a non-election mechanism, such as card check. Certification occurs when workers choose a representative through a secret-ballot election overseen by the National Labor Relations Board ("NLRB"). *See* 29 U.S.C. § 159; 29 C.F.R. pt. 102, subp. C (establishing procedures for representation proceedings).

103. The Board, however, designates representatives by appointment. Representatives are appointed by the state governor. Workers have no way to choose their representatives for themselves. Nor do they have any way to influence the representative's positions in bargaining. *See* Minn. Stat. § 181.212, subds. 1–2.

104. Similarly, the NLRA guarantees an employer a right to choose its own representative in bargaining. *See* 29 U.S.C. § 158(b)(1)(B). But the Board denies the employer that right. Instead, like workers, the employer must accept the representative appointed to it. *See* Minn. Stat. § 181.212, subd. 1.

105. The Board also establishes an alternative enforcement scheme. Under the NLRA, labor violations are policed through an administrative system overseen by the NLRB. Only the NLRB's general counsel can pursue a complaint. And only the NLRB can adjudicate that complaint on the merits. *See* 29 U.S.C. § 160(a), (c).

106. By contrast, the Board enforces its standards through the Minnesota Department of Labor and Industry. The Department may

investigate and enforce the Board's standards through its own enforcement powers. Similarly, nursing home workers may enforce the Board's standards through a private right of action—an option not available under the NLRA. *See* Minn. Stat. §§ 181.217; 181.1721. *Cf.* 29 U.S.C. § 160(a), (c).

107.    The Act offers different remedies compared to the NLRA. Under the NLRA, the NLRB may award backpay or other "affirmative action." 29 U.S.C. § 160(c). These remedies are only equitable remedies designed to promote the public interest in labor peace. *See Hiran Mgmt., Inc. v. NLRB*, 157 F.4th 719, 728 (5th Cir. 2025); *NLRB v. Starbucks Corp.*, 125 F.4th 78, 95-6 (3d Cir. 2024). By contrast, the Act allows the Board's standards to be enforced through damages, including liquidated damages, as well as costs, disbursements, and attorneys' fees. *See* Minn. Stat. § 181.217, subd. 3(b). These remedies are unavailable under the NLRA. *See* 29 U.S.C. § 160(c); s*ee also Wis. Dep't of Indus., Lab. & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 291 (1986) (holding that the NLRA's remedies are exclusive and cannot be supplemented by state law).

108.    The Board's structure undermines and conflicts with the NLRA and federal labor policy. It undermines the system by drawing collective bargaining out of the workplace and into an industry-wide forum. It also undermines the system by shifting the balance of power between management and labor. It gives labor new avenues of access to workplaces and workers

42

through mandatory training. It also gives labor a mechanism for imposing union standards across the industry instead of organizing and bargaining for standards workplace by workplace. *See, e.g.*, *Cannon v. Edgar*, 33 F.3d 880, 885–86 (7th Cir. 1994) (finding law preempted because it "meddle[d] with" the bargaining process); *Thunderbird Mining Co. v. Ventura*, 138 F. Supp. 2d 1193, 1197-98 (D. Minn. 2001) ("[A]ny state attempt to interfere, directly or indirectly, with the bargaining parties' economic weapons is preempted by federal law."); *Bechtel Const., Inc. v. United Bhd. of Carpenters & Joiners of Am.*, 812 F.2d 1220, 1225 (9th Cir. 1987) (finding that minimum-wage law for apprentices distorted bargaining process and was therefore preempted).

109. Minnesota has no authority to create an alternative, overlapping system for regulating labor relations. It cannot replicate and distort the NLRA's system by moving bargaining into an alternative, state-created forum. *See Guss*, 353 U.S. at 9 (state could not maintain its own labor board with jurisdiction over matters within jurisdiction of NLRB); *Amazon.com Servs. LLC*, No. 1:25-cv-05311, slip op. at 8–11 (same).

110. The Act and the Board's structure conflict with the NLRA and are thus preempted.

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs request the following relief:

43

a. Declaring that the Act violates the First Amendment and Fourteenth Amendment of the U.S. Constitution, conflicts with the Sherman Act, and is preempted by the NLRA.

b. Declaring the following as to the Board's structure and actions:

   i. Deny the Members and Yona of life, liberty, or property without due process of law by subjecting them to regulatory power wielded by self-interested persons who are not subordinate to any disinterested government official;

   ii. Violate the First Amendment of the U.S. Constitution by compelling the Members, Yona, and their workers to associate with representatives and public policies with which they may disagree;

   iii. Violate the Sherman Antitrust Act by allowing private market participants to fix wages, hours, and other working conditions in the labor market for nursing home workers in Minnesota; and

   iv. Are preempted by the NLRA because the Board creates an alternative, parallel system for regulating labor relations, worker representation, and collective bargaining.

c. Injunctive Relief:

   i. Prevents Blissenbach and all her respective officers, agents, servants, employees, and attorneys, and any person in active concert or participation with them who receive actual notice of the Court's injunction from enforcing any part of the Act or the Board's standards against the Members and Yona.

   ii. Bars Blissenbach and Gulley and any of their agents, representatives, respective officers, agents, servants, employees, and attorneys, and any person in active concert or participation with them who receive actual notice of the Court's injunction from adopting any additional standards that regulate the Members and Yona.

44

   d.     The waiver of any security and/or bond requirement applicable to the Members and Yona.

   e.     Attorneys' fees and costs to the fullest extent provided by law, including 42 U.S.C. § 1983.

   f.     For such other and further relief as this Court deems just and proper.

Dated: March 11, 2026

*/s/ Thomas Revnew*
Thomas Revnew, MN Bar No. 0295620
Lehoan Pham, MN Bar No. 0397635
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South Eighth Street
Minneapolis, MN 55401
612.630.1000
trevnew@littler.com
hpham@littler.com

Alex MacDonald (pro hac vice movant)
LITTLER MENDELSON, P.C.
Workplace Policy Institute
815 Connecticut Avenue, NW
Suite 400
Washington, DC  20006-4046
202.772.2505
amacdonald@littler.com

***Attorneys for Plaintiffs***

4912-9033-1781 / 131787.1001

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

LEADINGAGE MINNESOTA and
CARE PROVIDERS OF
MINNESOTA, and YONA
NORTHSTAR, LLC,

Plaintiffs,

v.

NICOLE BLISSENBACH, *in her
official capacity as the
Commissioner of the Minnesota
Department of Labor and Industry
and as a member of the Minnesota
Nursing Home Workforce
Standards Board*, and JAMIE
GULLEY, *in his official capacity as
a member and chairperson of the
Minnesota Nursing Home
Workforce Standards Board*,

Defendants.

Court File No. _____

**DECLARATION OF THOMAS R.
REVNEW**

---

STATE OF <u>MINNESOTA</u>          )

COUNTY OF <u>HENNEPIN</u>          )

I, Thomas R. Revnew, state and declare as follows:

1.       I am an attorney with Littler Mendelson P.C. I am lead counsel

for the above-captioned Plaintiffs. I offer this Declaration in support of

Plaintiffs' Complaint and their Motion for a Preliminary Injunction.

1

2. Attached hereto are true and correct copies of the following documents:

a. **Exhibit A**: SF 3035, *Status in the Senate – 93rd Legislature (2023–2024)*, OFFICE OF THE REVISOR OF STATUTES, https://www.revisor.mn.gov/bills/93/2023/0/SF/3035/ (May 24, 2023).

b. **Exhibit B**: *NHWSB Members*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/about-department/boards-and-councils/nhwsb-members (last visited Mar. 8, 2026).

c. **Exhibit C**: *Our Leadership*, SEIU HEALTHCARE MN & IA, https://www.seiuhealthcaremn.org/union-officers/ (last visited Mar. 8, 2026).

d. **Exhibit D**: *Meeting Minutes: Nursing Home Workforce Standards Board*, MINN. DEP'T OF LABOR AND INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_minutes_091 125.pdf (Sept. 11, 2025).

e. **Exhibit E**: 48 SR 1139–64, MINN. STATE REGISTER, https://mn.gov/admin/assets/SR48_52_tcm36-628525.pdf (June 24, 2024).

f. **Exhibit F**: 49 SR 437–52, MINN. STATE REGISTER, https://mn.gov/admin/assets/SR49_18_tcm36-650570.pdf (Oct. 28, 2024).

g. **Exhibit G**: *2026 minimum-wage rules*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/about-department/boards-and-councils/nhwsb-minimum-wage-holiday-pay-rules (last visited Mar. 8, 2026).

h. **Exhibit H**: *Effective date of minimum-wage pay standards for nursing home workers*, MINN. DEP'T OF LAB. & INDUS., https://dli.mn.gov/about-department/boards-and-councils/nursing-home-workforce-standards-board (last visited Mar. 8, 2026).

2

i.  **Exhibit I**: *Current list of certified worker organizations*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_current_list_of_certified_worker_organizations_1225.pdf (Dec. 2025).

j.  **Exhibit J**: *Certificate of Worker Organizations and Worker Training Guide*, MINN. DEP'T OF LAB. & INDUSTRY, https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_draft_certification_training_guide_010925.pdf (Jan. 9, 2025).

k.  **Exhibit K**: HF 500, *Introduction*, OFFICE OF THE REVISOR OF STATUTES, https://www.revisor.mn.gov/bills/94/2025/0/HF/500/versions/0/ (Feb. 11, 2025).

l.  **Exhibit L**: HF 500, *Second Engrossment*, OFFICE OF THE REVISOR OF STATUTES, https://www.revisor.mn.gov/bills/94/2025/0/HF/500/versions/2/ (Mar. 10, 2025).

m.  **Exhibit M**: Matthew Blake, *A New Deal Revival: Why Labor Unions Love the Minnesota Nursing Home Workforce Standards Board*, MINNPOST, https://www.minnpost.com/state-government/2025/10/a-new-deal-revival-why-labor-unions-love-the-minnesota-nursing-home-workforce-standards-board/ (Oct. 16, 2025).

n.  **Exhibit N**: *Meeting Minutes: Nursing Home Workforce Standards Board*, MINN. DEP'T OF LAB. AND INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_minutes_050924.pdf (May 9, 2024).

o.  **Exhibit O**: *Meeting Minutes: Nursing Home Workforce Standards Board*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_minutes_061324.pdf (June 13, 2024).

3

p.  **Exhibit P**: *Draft rules initial wage standards*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_draft_rules_initial_wage_standards_050924.pdf (May 9, 2024).

q.  **Exhibit Q**: *Wage standards draft from Revisor*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_RD4869_wage_standards_draft_from_revisor.pdf (June 11, 2024).

r.  **Exhibit R**: *NHWSB Meeting Materials*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/about-department/boards-and-councils/nhwsb-meeting-materials (last visited Mar. 8, 2026).

s.  **Exhibit S**: *Federal Funds and the State Budget: March 2025 Update*, OFFICE OF MINN. MGMT. AND BUDGET, https://www.house.mn.gov/comm/docs/mzaniqSAEkyAHl4MBJpRhw.pdf (Mar. 21, 2025).

t.  **Exhibit T**: HF 3, *Status in the House - 94th Legislature, 2025 1st Special Session*, OFFICE OF REVISOR OF STATUTES, https://www.revisor.mn.gov/bills/94/2025/1/HF/3/ (June 14, 2025).

u.  **Exhibit U**: Mia Jacobs, *SEIU Joins AFL-CIO to Build Unprecedented Worker Power, Win Unions for All Workers*, AFL-CIO, https://aflcio.org/press/releases/seiu-joins-afl-cio-build-unprecedented-worker-power-win-unions-all-workers (Jan. 8, 2025).

v.  **Exhibit V**: *Minnesota Nursing Home Workforce Standards Board Bylaws*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_bylaws.pdf (Aug. 8, 2024).

w.  **Exhibit W**: *Meeting Minutes: Nursing Home Workforce Standards Board*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_minutes_071025.pdf (July 10, 2025).

x.    **Exhibit X**: *SEIU HCMNIA Run Statewide Ads Thanking Gov. Walz as Nursing Home Standards Board Votes to Implement Groundbreaking Policy Changes*, SEIU MN AND IA, https://www.seiuhealthcaremn.org/news/seiu-hcmnia-run-statewide-ads-thanking-gov.-walz-as-nursing-home-standards-board-votes-to-implement-groundbreaking-policy-changes/ (May 21, 2024).

y.    **Exhibit Y**: *Senate Confirmation of Executive Appointments 2023 – 2024, Ninety-third Legislature*, MINN. STATE SENATE, https://www.senate.mn/confirmations/confirmations.html?ls=93 (last visited Mar. 8, 2026).

z.    **Exhibit Z**: *Senate Confirmation of Executive Appointments, 2025 – 2026, Ninety-fourth Legislature*, MINN. STATE SENATE, https://www.senate.mn/confirmations/confirmations.html?ls=94 (last visited Mar. 8, 2026).

aa.    **Exhibit AA**: Leah Solo, *Memorandum: Analysis of Proposals Currently Discussed by the NHWSB*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_memo_current_proposals_042924.pdf (April 27, 2024).

bb.    **Exhibit BB**: Leah Solo, *Letter to the NHWSB*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_letter_100224.pdf (October 2, 2024).

cc.    **Exhibit CC**: *NHWSB Meeting Materials*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/about-department/boards-and-councils/nhwsb-meeting-materials (last visited Mar. 8, 2026).

dd.    **Exhibit DD**: *Meeting Minutes: Nursing Home Workforce Standards Board*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_minutes_080824.pdf (Aug. 8, 2024).

ee. **Exhibit EE**: *Meeting Minutes: Nursing Home Workforce Standards Board*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_minutes_101 024.pdf (Oct. 10, 2024).

ff. **Exhibit FF**: *Meeting Minutes: Nursing Home Workforce Standards Board*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_minutes_042 924.pdf (Apr. 29, 2024).

gg. **Ex. GG**: *Meeting Minutes: Nursing Home Workforce Standards Board*, MINN. DEP'T OF LAB. & INDUS., https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_minutes_031 824.pdf (Mar. 14, 2024).

hh. **Ex. HH**: *Amazon.com Servs. LLC v. N.Y. State Pub. Emp. Rels. Bd.*, No. 1:25-cv-05311, slip op. (E.D.N.Y. Nov. 26, 2025).

ii. **Ex. II**: *N.L.R.B. v. California*, No. 2:25-cv-02979, slip op. (E.D. Cal. Dec. 26, 2025).

I declare under penalty of perjury that the foregoing is true and correct.

28 U.S. Code § 1746.

Dated: March 11, 2026          */s/ Thomas R. Revnew*
                              Thomas R. Revnew

6

4938-8125-0185 / 131787.1001

# EXHIBIT A

Office of the Revisor of Statutes

## Office of the Revisor of Statutes

### SF 3035   Status in the **Senate** - 93rd Legislature (2023 - 2024)

| | | |
|---|---|---|
| Current bill text: 4th Engrossment | Companion: HF3028 | Revisor number: 23-02739 |
| Add SF3035 to MyBills | Companion Text | Session Law Chapter: 53 |
| Version List | House Search | |
| Long Description | Committee Hearings and Actions | Senate Counsel & Research Summary |
| | | Fiscal Notes |

## Description

Omnibus Jobs, Economic Development, Labor, and Industry appropriations

## Authors (2)

Champion; Mohamed

## House Authors (2)

Hassan; Xiong

## Actions

| Separated | Chronological |
|---|---|

### Senate

| Date | Action | Page |
|---|---|---|
| 03/22/2023 | Introduction and first reading | pg. 2200 Intro |
| 03/22/2023 | Referred to Jobs and Economic Development | |
| 04/03/2023 | Author added Mohamed | pg. 3006 |
| 04/11/2023 | Comm report: To pass as amended and re-refer to Finance | pg. 3727a 1 |
| 04/11/2023 | Rule 12.10: report of votes in committee | pg. 3810 |
| 04/13/2023 | Comm report: To pass as amended | pg. 4811a 2 |
| 04/13/2023 | Second reading | pg. 4954 |
| 04/14/2023 | Special Order: Amended | pg. 5106 3 |
| 04/14/2023 | Third reading Passed | pg. 5129 vote: 35-31 |
| 04/25/2023 | Returned from House with amendment | pg. 5878 |
| 04/25/2023 | Senate not concur, conference committee of 5 requested | |

Ex. A, p. 001

| | | |
|---|---|---|
| 04/26/2023 | Senate conferees Champion; McEwen; Mohamed; Hauschild; Gustafson | pg. 6084 |
| 04/27/2023 | House conferees Hassan; Xiong; Nelson, M.; Berg; Olson, L. | pg. 6541 |
| 05/15/2023 | Conference committee report, delete everything | pg. 7922c |
| 05/15/2023 | Motion to reject CC report, did not prevail | pg. 8149 vote: 33-34 |
| 05/15/2023 | Point of order pertaining to Jt rule 2.06, put to the body | |
| 05/15/2023 | Point of order well taken | pg. 8150 vote: 55-9 |
| 05/15/2023 | Returned to Conference Committee | vote: 56-8 |
| 05/16/2023 | Conference committee report, delete everything | pg. 8220c 4 |
| 05/16/2023 | Motion to reject CC report, did not prevail | pg. 8447 vote: 33-34 |
| 05/16/2023 | Senate adopted CC report and repassed bill | pg. 8448 vote: 34-32 |
| 05/16/2023 | Third reading | pg. 8448 vote: 34-33 |
| 05/17/2023 | House adopted SCC report and repassed bill | pg. 8921 |
| | Presentment date 05/23/23 | |
| | Governor's action Approval 05/24/23 | pg. 11493 |
| | Secretary of State Chapter 53 05/24/23 | pg. 11494 |
| | Effective date Various dates | |

## House

| | | |
|---|---|---|
| 04/17/2023 | Received from Senate | pg. 5323 Intro |
| 04/17/2023 | Senate file first reading, referred to Ways and Means | pg. 5324 |
| 04/20/2023 | Committee report, to adopt as amended | pg. 5749a |
| 04/20/2023 | Second reading | pg. 5877 |
| 04/20/2023 | House rule 1.21, placed on Calendar for the Day Monday, April 24, 2023 | pg. 5880 |
| 04/24/2023 | Amended | pg. 6784a |
| 04/24/2023 | Point of order raised, ruled well taken | pg. 6786 |
| 04/24/2023 | Amended | pg. 6787a |
| 04/24/2023 | Point of order raised, ruled well taken | pg. 6799 |
| 04/24/2023 | Third reading as amended | pg. 6799 |
| 04/24/2023 | Bill was passed as amended | pg. 6800 vote: 69-61 |
| 04/26/2023 | Senate refuses to concur, conference committee of 5 requested | pg. 7099 |

| | | |
|---|---|---|
| 04/26/2023 | Senate conferees Champion; McEwen; Mohamed; Hauschild; Gustafson | pg. 7100 |
| 04/26/2023 | House accedes, conference committee of 5 to be appointed | pg. 7100 |
| 04/26/2023 | House conferees Hassan; Xiong; Nelson, M.; Berg; Olson, L. | pg. 7138 |
| 05/16/2023 | Senate adopted conference committee report, bill repassed | pg. 8277 vote: 34-33 |
| 05/16/2023 | Conference committee report, delete everything | pg. 8277c |
| 05/16/2023 | Motion to adopt conference committee report | pg. 8470 |
| 05/16/2023 | Motion to return bill to conference committee | pg. 8471 |
| 05/16/2023 | Motion did not prevail | pg. 8471 vote: 61-68 |
| 05/16/2023 | Motion to adopt conference committee report question recurred | pg. 8471 |
| 05/16/2023 | Motion prevailed | pg. 8471 vote: 68-61 |
| 05/16/2023 | Third reading as amended by Conference | pg. 8473 |
| 05/16/2023 | Bill was repassed as amended by Conference | pg. 8473 vote: 70-61 |
| | Presented to Governor 05/23/2023 | |
| | Governor approval 05/24/2023 | |
| | Secretary of State, Filed 05/24/2023 | pg. 11115 |
| | Chapter number 53 | |

Ex. A, p. 003

# EXHIBIT B

About the department > Boards and councils > NHWSB members

ABOUT DLI

BOARDS AND COUNCILS

Access Review Board

Apprenticeship Advisory Board

Board of Electricity

Board of High-Pressure Piping Systems

Building Efficiency Workgroup

Combative Sports Advisory Council

Construction Codes Advisory Council

Governor's Committee on the Compensation, Wellbeing, and Fair Treatment of Transportation Network Company Drivers

Medical Services Review Board

Nursing Home Workforce Standards Board

Occupational Safety and Health Advisory Council

Occupational Safety and Health Review Board

Plumbing Board

Rehabilitation Review Panel

State Appeals Board

Workers' Compensation Advisory Council

Workers' Compensation Insurers' Task Force

CAREERS AT DLI

NEWS, DATA REQUESTS

OUR AREAS OF SERVICE

RULEMAKING

WORKPLACE NOTICES AND POSTERS

# NHWSB MEMBERS

- Commissioner or commissioner designee members
- Members representing nursing home employers or employer organizations
- Members representing nursing home workers or worker organizations

This list was last updated Sept. 15, 2023. Access a printable version (PDF file).

## Commissioner or commissioner designee members

| | |
|---|---|
| Nicole Blissenbach<br>Commissioner<br>Department of Labor and Industry | Kim Brenne<br>Director of Nursing Facility Rates and Audits<br>Department of Human Services |
| Maria King<br>Director of Health Regulation Division<br>Department of Health | |

## Members representing nursing home employers or employer organizations

| | |
|---|---|
| Paula Rocheleau<br>Term:  Aug. 2, 2023, through Jan. 1, 2027 | Mary Swanson<br>Term:  Aug. 2, 2023, through Jan. 6, 2025 |
| Katie Lundmark<br>Term:  Aug. 16, 2023, through Jan. 5, 2026 | |

## Members representing nursing home workers or worker organizations

| | |
|---|---|
| Jamie Gulley<br>Term:  Aug. 2, 2023, through Jan. 5, 2026 | Michele Fredrickson<br>Term:  Aug. 2, 2023, through Jan. 6, 2025 |
| Michelle Armstrong<br>Term:  Aug. 16, 2023, through Jan. 4, 2027 | |

**Executive director:**  Leah Solo

TO BOARDS AND COUNCILS ▶       TO NHWSB MAIN PAGE ▶

🌐 Español | Soomaali | Hmoob | Karen/ကညီ | Chinese/简体中文

Register to Vote ✔

Ex. B, p. 001

# EXHIBIT C



# Our Leadership

Learn more about our elected union leadership.

## Officers

### Jamie Gulley
**President**

Jamie Gulley joined SEIU as an organizer in 2002 and was elected President in 2012. Jamie has led some of the most important victories at SEIU Healthcare MN including organizing campaigns that brought in more than 30,000 new hospital, nursing home, and homecare workers–tripling the size of the union–and leading negotiations for a $15 minimum wage in all Twin Cities hospitals and clinics. In addition to serving as President of SEIU Healthcare Minnesota, Jamie represents our members on the SEIU International Executive Board, SEIU Minnesota State Council, Minnesota AFL-CIO Executive Committee, the Minnesota Community Measurement Board for Healthcare Disparities, and the Greater Twin Cities United Way. Jamie also chairs the Twin Cities Hospital Pension Fund that supports 12,000 current and retired members. Jamie graduated from the National Labor College and is currently pursuing a Master's in Labor Studies at University of Massachusetts Amherst. He lives in West St. Paul with his wife and four daughters. Jamie hosts virtual office hours the third Wednesday of the month (unless otherwise noted) from 2pm – 6pm. Office hours are open to any member who wants to join. Join here: https://seiuhcmn.zoom.us/j/89868719375? pwd=cmtKSzJ1WVJRaFlheWtuYnJudks4dz09



Ex. C, p. 001



### Jigme Ugen
**Executive Vice President**

Jigme Ugen is the first Tibetan refugee in the world to be elected as a US labor union leader. He worked in several non-profit organizations across the world before immigrating to the US in 2001 and joined the Late Sen Paul Wellstone's campaign. After Paul's death, he joined SEIU HCMN in 2002 as an organizer and in 2007, he was elected Executive Vice President. He handles the Union's finance and leads the digital communications. He was elected to the Board of Auditors for SEIU International and also represents the Local as a Trustee on the Minneapolis Regional Labor Federation; SEIU MN State Council and the Twin City Hospital Workers' Pension Fund. He serves as the 1st Vice President the Asian Pacific Islanders Caucus of SEIU. He is also a board-member on the Minnesota AFL-CIO, the Working Partnerships, the Blue Green Alliance and 100% Climate. Jigme remains committed to fighting for and centering the voices and experiences of refugees, immigrants, and people of color around worker's rights, environmental and racial justice across the world. His life story has been recorded and preserved by the Minnesota Historic Society. He was born in Kalimpong, India, and graduated from Delhi University. He is deeply engaged with the Tibetan community and Tibet's independence movement. He has a daughter named Zenden.





### Phillip Cryan
**Executive Vice President**

Phillip Cryan (he/him) was first elected Executive Vice President of our union in 2015. He first joined the staff in 2009 as Assistant Organizing Director, then served as Organizing Director. He led the 2012-2013 campaign to win organizing rights for consumer-directed home care workers in Minnesota and the home care union election campaign in 2014. Currently he directs the Clinics and Home Care sectors of our union, as well as our legislative program. He also serves as a Trustee of the Twin City Hospital Workers Pension Fund. Phillip holds a Masters degree from the Goldman School of Public Policy at the University of California, Berkeley, and received his Bachelors from the same university. Before joining our union, he did organizing and advocacy work for a number of different community, faith-based, and political organizations in Iowa, California, and Colombia, and did public policy research and writing on a variety of issues. He lives in Minneapolis with his wife and two children.





### Brenda Hilbrich
**Executive Vice President**

Ex. C, p. 002

Brenda Hilbrich began her work as an organizer with SEIU Healthcare Minnesota in 1998. She continued her work in SEIU with the international union and locals in Wisconsin and New York before returning home to HCMN in 2005. During her years with SEIU she has organized new members, led negotiations for pattern setting contracts and first contracts, designed and built the Member Action Center to effectively and efficiently address member grievances so that the union could also focus on organizing in worksites, and developed new and expanded leader programs to provide opportunities for any member to engage as a leader of our Union. She has served SEIU HCMN as an Organizer, Assistant Organizing Director, Director of the MAC and Education and Chief of Staff. She was elected Executive Vice President in 2020 and leads the Hospital Sector of our union. She will also represent SEIU HCMN as a Trustee of the Twin City Hospital Workers' Pension Fund and as a member of the Saint Paul Regional Labor Federation board. She earned a B.A. from the University of Wisconsin-Madison, and an M.Ed from the University of Minnesota.





## Dr. Rasha Ahmad Sharif

**Executive Vice President**

Rasha is a Lebanese/Syrian who immigrated to the US in 2007 to explore another chance in life. Her background in sports while working for Special Olympics in the Middle East and North Africa led her to pursue her BA in Sports Management from Lindenwood University. She traveled to Puebla Mexico where she dedicated her time to connecting with 1st and 2nd generation Lebanese Mexicans and teaching them the Arabic language and the Lebanese culture in Spanish. She also opened the first Arabic Language class in the Benemérita Universidad Autónoma de Puebla. After returning to the US her path led her to start organizing with SEIU in 2013 in Chicago. In 2014, she joined SEIU Healthcare Minnesota as an Internal Organizing in the Member Action Center. Then, in 2016 she became the MAC director. Rasha leads work on organizational equity and inclusion, leads the grievance leaders committee, and is a member on the senior leadership team. In 2025, she earned her PhD from the University of Minnesota in Organizational Leadership and Policy Development focusing on Human Resource Development.





# Sector Vice Presidents

**Kia Pille - Allina**
**Kate Lynch - Clinics**
**Crystal McDonald - Iowa**
**Yoshi Her - Southeast**
**James Holt Jr. - Twin City Hospitals**
**LaTanya Hughes - Home Care**
**Corey Van Denburgh - Home Care**

# Guard

Ex. C, p. 003

Kent Wilcox

# Assistant Guard

Deb Howze

# Trustees

Carmen Campbell
Chris Grimes
Rita Matthews
Meredith Ross
Marty Zahn

# Retiree Delegate at Large

Lynn Carlson
Kevin Morse

# Delegate at Large

Gini Adam
Nicole Anschutz
Bill Bader
Connie Berger
Chasity Blokzyl
Travis Burth
See Chang
Tom Falkum
Andrea Hanek
Crissy Hawks
Tawanda Jackson
Alyssa Jo
Gary New
Amy Oliver
Amber Pepek
Jean Pfarr
Kamala Ramnauth
Melissa Roberts
Jeff Sarro
Becky Shereck
Mike Szynal-Whitaker

© 2026 SEIU Healthcare Minnesota & Iowa. 345 Randolph Ave., Suite 100 | St. Paul, MN 55102 Privacy Policy.

Ex. C, p. 004

# EXHIBIT D


**DEPARTMENT OF LABOR AND INDUSTRY**

# Minutes:  Nursing Home Workforce Standards Board

Date:  Thursday, Sept. 11, 2025
Minutes prepared by:  Linnea Pignatello
Location:  Hybrid – Minnesota Room at the Department of Labor and Industry and via Webex

## Attendance

| Members present | Visitors present | DLI staff members present |
| --- | --- | --- |
| Michelle Armstrong | Todd Bergstrom | Krystle Conley |
| Commissioner Nicole Blissenbach | Maisie Blaine (remotely) | Paul Enger |
| Kim Brenne (joined remotely at 11:34 a.m.) | Jeff Bostic (remotely) | Ken McGurran |
| | Casey Murphy (remotely) | Josiah Moore |
| Jamie Gulley | Kayla Revier (remotely) | Linnea Pignatello |
| Michele Fredrickson (remotely) | | Leah Solo |
| Maria King (remotely) | | |
| Katie Lundmark (remotely) | | |
| Paula Rocheleau | | |
| Mary Swanson (remotely) | | |

## Agenda items

1. **Call to order** – The meeting was called to order by Jamie Gulley at 11:05 a.m. Roll call was taken. A quorum was declared.
2. **Approval of agenda** – A motion to approve the agenda as presented was made by Michelle Armstrong and seconded by Mary Swanson. A roll call vote was taken and the motion passed unanimously.
3. **Approval of drafted meeting minutes** – A motion to approve the July 10, 2025, drafted meeting minutes as presented was made by Armstrong and seconded by Swanson. A roll call vote was taken and the motion passed unanimously.
4. **Board updates** –
   a. Gulley started the meeting with an acknowledgement of violence in our communities and the heaviness of this season. Leah Solo recognized the acts of violence around the country, as well as the anniversary of Sept. 11, 2001. Solo also acknowledged it has been two years of the board's formation.
   b. Solo provided an overview of the rest of the year, highlighting that the Waivers and Variances Workgroup is finishing up a revised process and there are five coming public forums. Solo noted the rate add-on deadline is coming up and the PDPM switch is also occurring, while noting the minimum-wage standards are most likely becoming effective Jan. 1, 2026. Solo suggested calling all nursing home administrators around the state to give them information and she solicited feedback from the board. Swanson asked when Solo would start calling; Solo said her plan is after the October board meeting.

c. Solo summarized the Certification/Training Workgroup's previous meeting. The workgroup came up with two recommendations:  the deadline for certification of all workers trained is Sept. 30, 2027, and; the date for annual review of curriculum should be within 60 days of the new year. There was discussion about the deadline of Sept. 30, 2027. It was clarified the timeline for training starts at the date of hire. A motion was made by Commissioner Nicole Blissenbach to approve a recommendation that the time period for certification of workers being trained be Oct. 1, 2025, through Sept. 30, 2027. The motion was seconded by Paula Rocheleau. There was a call for discussion and no discussion occurred. A roll call vote was taken and the motion passed unanimously. Solo discussed this review could be added to a regularly scheduled board meeting. Rocheleau asked if this is a review of the requirements or the actual curriculum; Blissenbach and Ken McGurran responded that it is a review of the curriculum requirements. Paul Enger clarified that within 30 days of the change, certified worker organizations must resubmit the curriculum they intend to teach. A motion was made by Commissioner Blissenbach to approve the workgroup's recommendation to review the curriculum within 60 days of the new year, seconded by Michele Fredrickson. A roll call vote was taken and the motion passed unanimously.

d. Solo updated the board about the Public Hearing Workgroup by walking through the memo for the board about public forums. Solo noted the biggest change in the forums from the previous round is that there are some sample questions attached to the registration form to spark discussion and share responses with the board.

e. Solo updated the group about the Waivers and Variances Workgroup and its work toward a revised application. Rocheleau asked when it would be ready; Solo said it will go to the workgroup at the beginning of October and, if it passes, it will come to the full board at the October board meeting. Blissenbach reminded the board that all the applicant's information is public upon the approval of the waiver or variance.

f. Solo updated the board about the Data Workgroup. The first items shown were the maps created by the Department of Labor and Industry's Research and Data Analytics unit. The group discussed the different maps and data sets that were used to build the visuals. Rocheleau suggested adding a question for the public forums:  What data do you think would be good for the board to measure?

5. **New business** –
   a. Chair elections take place every two years within the Nursing Home Workforce Standards Board. A chair must be elected today. The process is to entertain nominations, second, discuss, vote to close nominations, second and vote on the nominees.
      - Lundmark made a motion to nominate Rocheleau as chair, seconded by Swanson. Fredrickson made a motion to nominate Gulley to remain as chair, seconded by Armstrong. Blissenbach made a motion to close the nominations, seconded by Armstrong. A roll call vote was taken and the motion passed unanimously. Commissioner Blissenbach requested each nominee speak about why they want to be chair of the board, beginning with Rocheleau and followed by Gulley. Each board member spoke the name of the person they decided to vote for during a roll call vote. Gulley was elected chair for a second term with five votes for him, including two commissioner and/or commissioner designees, and three votes for Rocheleau. Gulley accepted the role of chair; his term will run for another two years.

6. **Next meeting** – The next meeting is Thursday, Oct. 9, 2025, at 11 a.m. in the Minnesota room.

## Adjournment

A motion was made by Armstrong to adjourn the meeting at 12:04 p.m. and seconded by Rocheleau. A roll call vote was taken and the motion passed unanimously.

# EXHIBIT E

# MINNESOTA STATE REGISTER

## MONDAY, JUNE 24, 2024

## VOLUME 48, NUMBER 52

### PAGES 1139 - 1164



# *Minnesota State Register*

## Judicial Notice Shall Be Taken of Material Published in the Minnesota State Register

The Minnesota State Register is the official publication of the State of Minnesota's Executive Branch of government, published weekly to fulfill the legislative mandate set forth in Minnesota Statutes, Chapter 14, and Minnesota Rules, Chapter 1400.  It contains:

- **Proposed Rules**
- **Adopted Rules**
- **Exempt Rules**
- **Expedited Rules**
- **Withdrawn Rules**

- **Executive Orders of the Governor**
- **Appointments**
- **Proclamations**
- **Vetoed Rules**

- **Commissioners' Orders**
- **Revenue Notices**
- **Official Notices**
- **State Grants and Loans**

- **Contracts for Professional, Technical and Consulting Services**
- **Non-State Public Bids, Contracts and Grants**

## Printing Schedule and Submission Deadlines

| Vol. 49 Issue Number | Publish Date | Deadline for: all Short Rules, Executive and Commissioner's Orders, Revenue and Official Notices, State Grants, Professional-Technical- Consulting Contracts, Non-State Bids and Public Contracts | Deadline for LONG, Complicated Rules (contact the editor to negotiate a deadline) |
|---|---|---|---|
| #1 | Monday 1 July | Noon Tuesday 25 June | Noon Thursday 20 June |
| #2 | Monday 8 July | Noon Tuesday 2 July | Noon Thursday 27 June |
| #3 | Monday 15 July | Noon Tuesday 9 July | Noon Thursday 4 July |
| #4 | Monday 22 July | Noon Tuesday 16 July | Noon Thursday 11 July |

PUBLISHING NOTICES: We need to receive your submission ELECTRONICALLY in Microsoft WORD format.  Submit ONE COPY of your notice via e-mail to: sean.plemmons@state.mn.us. State agency submissions must include a "State Register Printing Order" form, and, with contracts, a "Contract Certification" form. Non-State Agencies should submit ELECTRONICALLY in Microsoft WORD, with a letter on your letterhead stationery requesting publication and date to be published. Costs are $13.50 per tenth of a page (columns are seven inches wide). One typewritten, double-spaced page = 6/10s of a page in the State Register, or $81.  About 1.5 pages typed, double-spaced, on 8-1/2"x11" paper = one typeset page in the State Register. Contact editor with questions (651) 201-3204, or  e-mail: sean.plemmons@state.mn.us.

SUBSCRIPTION SERVICES: E-mail subscriptions are available by contacting the editor at sean.plemmons@state.mn.us. Send address changes to the editor or at the Minnesota State Register, 50 Sherburne Avenue, Suite 309, Saint Paul, MN 55155.

SEE THE Minnesota State Register free at website: https://mn.gov/admin/bookstore/register.jsp
- Minnesota State Register:  Online subscription – $180, includes links, index, special section "CONTRACTS & GRANTS," with Sidebar Table of Contents, Early View after 4:00 pm Friday (instead of waiting for early Monday), and it's sent to you via E-mail.
- Single issues are available electronically via PDF for free.
- "Affidavit of Publication" includes a notarized "Affidavit" and a copy of the issue: $15.00.

**Governor: Tim Walz**
**(651) 201-3400**

**Lieutenant Governor:**
**Peggy Flanagan**
**(651) 201-3400**

**Attorney General:**
**Keith Ellison (651) 296-3353**

**Auditor: Julie Blaha**
**(651) 296-2551**

**Secretary of State: Steve Simon**
**(651) 296-2803**

**Department of Administration**
**Commissioner:**
**Tamar Gronvall**
**(651) 201-2560**

**Communications and Planning**
**Division: Curtis Yoakum**
**(651) 201-2771**

**Minnesota State Register**
**Editor: Sean Plemmons**
**(651) 201-3204**
**sean.plemmons@state.mn.us**

**Copyright © 2024  Communications Division, Department of Administration, State of Minnesota.**
**USPS Publication Number: 326-630 (ISSN:  0146-7751)**

**THE MINNESOTA STATE REGISTER IS PUBLISHED by the Communications Division, Department of Administration, State of Minnesota, pursuant to Minnesota Statutes § 14.46 and is available on-line at: https://mn.gov/admin/bookstore/register.jsp**

## Minnesota Legislative Information

**Senate Public Information Office**
(651) 296-0504
State Capitol, Room 231, St. Paul, MN 55155
https://www.senate.mn/

**Minnesota State Court System**
Court Information Office (651) 296-6043
MN Judicial Center, Rm. 135,
 25 Rev. Dr. Martin Luther King Jr Blvd., St. Paul, MN 55155
http://www.mncourts.gov

**House Public Information Services**
(651) 296-2146
State Office Building, Room 175
100 Rev. Dr. Martin Luther King Jr Blvd., St. Paul, MN 55155
https://www.house.leg.state.mn.us/hinfo/hinfo.asp

**Federal Register**
Office of the Federal Register (202) 512-1530; or (888) 293-6498
U.S. Government Printing Office – Fax: (202) 512-1262
https://www.federalregister.gov/

# Contents

**Minnesota Rules: Amendments and Additions**....1142

## Exempt Rules

**Department of Natural Resources**
Adopted Exempt Permanent Game and Fish Rule: Taking Turtles ............................... 1143

**Professional Educator Licensing and Standards Board**
Adopted Exempt Permanent Rules Relating to Tiered Licensure and Licensure
Exams.......................................................................................................................... 1144

## Expedited Rules

**Nursing Home Workforce Standards Board**
Proposed Expedited Permanent Rules Establishing Minimum Nursing Home Wage
Standards; Notice of Intent to Adopt Expedited Permanent Rules Without A Public
Hearing........................................................................................................................ 1148

## Official Notices

**Minnesota Department of Agriculture (MDA)**
Notice of the Proposed Emerald Ash Borer Quarantine Pope County ........................... 1150

**Department of Human Services**
**Health Care Administration**
Public Notice Regarding Changes to Payment Rates and Methodologies, and Services
under the Medical Assistance Program........................................................................... 1151

**State Law Library**
Notice of County Law Library Fees 7/1/2024 ............................................................... 1151

**Metropolitan Airports Commission (MAC)**
Notice of Public Hearing on Draft Reliever Airports Rates and Charges Ordinance ..... 1154

**Minnesota Pollution Control Agency (MPCA)**
Notice of Intent to Issue National Pollutant Discharge Elimination System (NPDES)
General Permit MNG440000 Animal Feedlot Permit  ................................................... 1154
Notice of Intent to Issue State Disposal System (SDS) General Permit MNG450000
Animal Feedlot Permit  ................................................................................................. 1156

## State Grants & Loans

**Department of Commerce**
**Division of Energy Resources**
Request for Proposals for Strengthening the Reliability and Resiliency of Minnesota's
Electrical Grid.............................................................................................................. 1157

**Department of Employment and Economic Development (DEED)**
Notice of Grant Opportunity ......................................................................................... 1158

**Department of Human Services**
**Contracts and Legal Compliance Division**
Notice of Changes to Grant Request for Proposal noticing in the State Register for the
Department of Human Services ...................................................................................... 1158

## State Contracts

**Minnesota State Colleges and Universities (Minnesota State)**
Notice of Bid and Contracting Opportunities ................................................................ 1158

**Minnesota Housing Finance Agency**
Request for Proposals for Engagement and Support of Consultants with Lived Experience
and Hosting Community Conversations for the Olmstead Implementation Office ........ 1159

**Department of Military Affairs**
**Facilities Management Office, Camp Ripley, Little Falls, MN**
Request for Proposals for Consultant Services for Geothermal System Sustainment &
Repair for Building 6-75, Camp Ripley, Little Falls, Minnesota (Project No. 24119)... 1159

**Minnesota Department of Transportation (MnDOT)**
**Engineering Services Division**
Notices Regarding Professional/Technical (P/T) Contracting ........................................ 1160

**Minnesota Zoo**
Request for Proposals for Seasonal Illuminated Event Contractor................................. 1160

## Non-State Public Bids, Contracts & Grants

**Metropolitan Airports Commission (MAC)**
Request for Qualifications for DELTA - MSP T1 Modernization Project (AMP) -
Phase 3........................................................................................................................ 1161

## Executive Orders

**Office of the Governor**
Emergency Executive Order 24-05: Declaring a Peacetime Emergency and Providing
National Guard Assistance to Local Emergency Flood Operations in Minnesota.......... 1162

**Front Cover Artwork:** *From Oberg Mountain, overlooking Minnesota's North Shore and Lake Superior, a solitary cabin peeks out of the woods.*
*Photo by Sean Plemmons*



Ex. E, p. 003

# Minnesota Rules: Amendments and Additions

NOTICE: How to Follow State Agency Rulemaking in the State Register

The State Register is the official source, and only complete listing, for all state agency rulemaking in its various stages. State agencies are required to publish notice of their rulemaking action in the State Register. Published every Monday, the State Register makes it easy to follow and participate in the important rulemaking process. Approximately 80 state agencies have the authority to issue rules. Each agency is assigned specific Minnesota Rule chapter numbers. Every odd-numbered year the Minnesota Rules are published.  Supplements are published to update this set of rules. Generally speaking, proposed and adopted exempt rules do not appear in this set because of their short-term nature, but are published in the State Register.

An agency must first solicit Comments on Planned Rules or Comments on Planned Rule Amendments from the public on the subject matter of a possible rulemaking proposal under active consideration within the agency (Minnesota Statutes §§ 14.101).  It does this by publishing a notice in the State Register at least 60 days before publication of a notice to adopt or a notice of hearing, or within 60 days of the effective date of any new statutory grant of required rulemaking.

When rules are first drafted, state agencies publish them as Proposed Rules, along with a notice of hearing, or a notice of intent to adopt rules without a hearing in the case of noncontroversial rules. This notice asks for comment on the rules as proposed.  Proposed emergency rules, and withdrawn proposed rules, are also published in the State Register. After proposed rules have gone through the comment period, and have been rewritten into their final form, they again appear in the State Register as Adopted Rules. These final adopted rules are not printed in their entirety, but only the changes made since their publication as Proposed Rules. To see the full rule, as adopted and in effect, a person simply needs two issues of the State Register, the issue the rule appeared in as proposed, and later as adopted.

The State Register features partial and cumulative listings of rules in this section on the following schedule: issues #1-26 inclusive (issue #26 cumulative for issues #1-26); issues #27-52 inclusive (issue #52, cumulative for issues #27-52 or #53 in some years). A subject matter index is updated weekly and is available upon request from the editor. For copies or subscriptions to the State Register, contact the editor at 651-201-3204 or email at sean.plemmons@state.mn.us

## Volume 48 - Minnesota Rules
**(Rules Appearing in Vol. 48 Issues #1-26 are in Vol. 48, #26 - Tuesday 26 December 2023)**
### Volume 48, #52

### Tuesday 2 January - Monday 24 June

**Board of Accountancy**
1105.2000, .2560, .3000 (proposed rules).........................................975

**Department of Commerce**
2876.3021 (adopted exempt) .............................................797
2770 (adopted expedited).........................................487, 841
2860.1200, .2200, .2500, 2876.4050, .4601, .4117 (adopted exempt) ........................................................................1127

**Board of Dentistry**
3100 (adopted) ......................................................773, 1089

**Department of Education**
3501.1350 (adopted) ........................................................839

**Department of Health**
4605 (proposed) ..............................................................1029

**Department of Labor and Industry**
1305.3114 (proposed expedited).......................................729
1341.0011, .0603, .0613, .0902 (proposed expedited)......................1033

**Department of Natural Resources**
6240.0600 (expedited emergency)....................................671
6100.5000, .5700; 6133.0030; 6230.0250 (adopted exempt) .............697
6212; 6264; 6270 (proposed expedited) ............................699
6216.0250 (adopted expedited)........................................796
6264.0300, .0400 (adopted exempt) ..................................819
6230; 6236; 6240 (expedited emergency)..........................878
6264.0400 (expedited emergency)..................................1013
6264.0400 (expedited emergency)..................................1016
6232.2600, .2800, .3000, .3100, .3200, .3300

(expedited emergency).............................................................1089
6232.4300, .4400, .4500, .4600 (expedited emergency)...................1095
6256.0500, .0600, .0900 (adopted exempt) ....................................1143

**Nursing Home Workforce Standards Board**
5200.2060, .2070, .2080, .2090...........................................................1148

**Board of Peace Officer Standards and Training**
6700.1600 (proposed) .........................................................................875

**Professional Educator Licensing and Standards Board**
8705; 8710 (adopted exempt) ...........................................................1144

**Public Utilities Commission**
7852.0100 (adopted exempt) ............................................................886

**Department of Revenue**
8130.4300 (adopted exempt) ............................................................840
1950 (adopted) ......................................................................481, 1055

**Department of Transportation**
8810.8000, .8200, .8300, .8400 (proposed) ......................................955

Ex. E, p. 004

# Exempt Rules

Exempt rules are excluded from the normal rulemaking procedures (*Minnesota Statutes* §§ 14.386 and 14.388). They are most often of two kinds. One kind is specifically exempted by the Legislature from rulemaking procedures, but approved for form by the Revisor of Statutes, reviewed for legality by the Office of Administrative Hearings, and then published in the State Register. These exempt rules are effective for two years only.

The second kind of exempt rule is one adopted where an agency for good cause finds that the rulemaking provisions of *Minnesota Statutes*, Chapter 14 are unnecessary, impracticable, or contrary to the public interest. This exemption can be used only where the rules:

(1) address a serious and immediate threat to the public health, safety, or welfare, or

(2) comply with a court order or a requirement in federal law in a manner that does not allow for compliance with *Minnesota Statutes* Sections 14.14-14.28, or

(3) incorporate specific changes set forth in applicable statutes when no interpretation of law is required, or

(4) make changes that do not alter the sense, meaning, or effect of the rules.

These exempt rules are also reviewed for form by the Revisor of Statutes, for legality by the Office of Administrative Hearings and then published in the *State Register*. In addition, the Office of Administrative Hearings must determine whether the agency has provided adequate justification for the use of this exemption. Rules adopted under clauses (1) or (2) above are effective for two years only. The Legislature may also exempt an agency from the normal rulemaking procedures and establish other procedural and substantive requirements unique to that exemption.

**KEY: Proposed Rules** - <u>Underlining</u> indicates additions to existing rule language. ~~Strikeouts~~ indicate deletions from existing rule language. If a proposed rule is totally new, it is designated "all new material."
**Adopted Rules** - <u>Underlining</u> indicates additions to proposed rule language. ~~Strikeout~~ indicates deletions from proposed rule language.

# Department of Natural Resources
## Adopted Exempt Permanent Game and Fish Rule: Taking Turtles

**6256.0500 TAKING TURTLES.**

Subpart 1. **Scope.** This part applies to individuals possessing a ~~turtle seller's, turtle seller's apprentice, or~~ recreational turtle license ~~or~~ <u>and</u> an angling license <u>or acting under Minnesota Statutes, section 97C.605, subdivision 2c, paragraph (a), item (4)</u>. The following turtle species may be taken: western painted turtle (Chrysemys picta ~~bellii~~)<u>; and</u> snapping turtle (Chelydra serpentina)~~, and spiny softshell (Apalone spinifera)~~. A person possessing ~~or selling~~ turtles or turtle eggs under this part must also comply with other state and federal laws that regulate these activities.
*[For text of subparts 2 to 8, see Minnesota Rules]*

Subp. 9. **Size limits.** ~~A turtle seller, turtle seller's apprentice, or recreational turtle licensee or a person harvesting turtles under an angling license is~~ <u>Individuals are</u> restricted to taking and possessing sizes of turtles as specified in items A ~~to C~~ <u>and B</u>. The turtle size is determined by measuring the top shell length (carapace, not including the curvature) from above the neck to above the tail.

A. ~~Spiny softshells (A. spinifera) must be greater than 12 inches in shell length.~~

~~B.~~ <u>A.</u> Snapping turtles (Chelydra serpentina) must be greater than 12 inches in shell length.

~~C.~~ <u>B.</u> Western painted turtles (Chrysemys picta) must be<u> between four and</u> 5-1/2 inches ~~or smaller~~<u>, inclusive,</u> in shell length~~, except persons acting under Minnesota Statutes, section 97C.605, subdivision 2c, clause (4), may take and possess western painted turtles of any length greater than four inches~~.

Subp. 10. **Turtle nests and eggs.**

Ex. E, p. 005

# Exempt Rules ═══════════════

A.  A person may not collect turtle eggs from natural nests, except under a permit issued by the commissioner.

B.  ~~A person with a turtle seller's license may not possess or sell turtle eggs, except as provided in item C.~~ A person must have an aquatic farm license with a turtle endorsement or a private fish hatchery license with a turtle endorsement to possess or sell turtle eggs, as allowed by federal law, or to keep turtles for propagation.

C.  ~~A person with a turtle seller's license may take the eggs from legally harvested gravid turtles and must place the eggs back into man-made nests in the wild within 48 hours of taking the eggs.~~

**6256.0600  CLOSED TURTLE SEASONS.**

Subpart 1. **Snapping turtles.** A person may not take snapping turtles during the months of May and June~~, including persons harvesting turtles for personal use under an angling or recreational turtle license and persons harvesting turtles under a commercial netting, turtle seller's, turtle seller's apprentice, aquatic farm, or private fish hatchery license~~.

Subp. 2.  [See repealer.]

**6256.0900  TURTLE PROPAGATION.**
*[For text of subparts 1 to 4, see Minnesota Rules]*

Subp. 5. **Acquisition of brood stock.** A licensee shall apply for a permit to harvest adult turtles from the wild for brood stock. The commissioner shall issue a permit to the licensee to take from the wild~~, by use of commercial gear,~~ up to 40 turtles of each species requested if:

A.  the turtles or gravid turtles are not available for purchase;

B.  ~~the licensee does not have a turtle seller's license;~~

~~C.~~ B.  the commissioner determines that wild populations of the requested species can sustain the harvest; and

~~D.~~ C.  a permit to harvest turtle brood stock from the wild has not been issued to the licensee for the species requested in the last three years.

Game and fish laws and rules relating to daily limits, seasons, and methods apply to the taking of turtles pursuant to a permit issued under this subpart.

*[For text of subparts 6 to 9, see Minnesota Rules]*

**REPEALER.** Minnesota Rules, part 6256.0600, subpart 2, is repealed.

# Professional Educator Licensing and Standards Board
### Adopted Exempt Permanent Rules Relating to Tiered Licensure and Licensure Exams

**8705.1010  UNIT STANDARDS.**

Subpart 1. **Standards for program design and improvement.**
*[For text of item A, see Minnesota Rules]*

B.  Standard 2. The unit must ensure each program provides effective instruction on:
*[For text of subitems (1) to (5), see Minnesota Rules]*

(6)  ~~research-based~~ evidence-based best practices in reading ~~that~~, including instruction on phonemic awareness, phonics, vocabulary development, reading fluency, and reading comprehension. Instruction on reading must enable the candidate to teach reading in the candidate's licensure field;

Ex. E, p. 006

═══════════════════════════════════ **Exempt Rules**

*[For text of subitems (7) and (8), see Minnesota Rules]*

C.   Standard 3. The unit must implement an assessment system with a process for annually collecting and reviewing data from:

*[For text of subitems (1) to (3), see Minnesota Rules]*

(4)   candidate scores on ~~state-required examinations and~~ board-adopted performance assessments.

*[For text of items D and E, see Minnesota Rules]*
*[For text of subparts 2 to 7, see Minnesota Rules]*

**8705.2100  REQUEST FOR INITIAL PROGRAM APPROVAL (RIPA).**

*[For text of subpart 1, see Minnesota Rules]*

Subp. 2. **Request for initial program approval (RIPA).** The request for initial program approval (RIPA) must be submitted according to the procedures in this subpart.

*[For text of items A to C, see Minnesota Rules]*

D.   Program applications must include all requirements in subitems (1) to (6).

*[For text of subitems (1) to (5), see Minnesota Rules]*

(6)   The application must identify a process for continuous improvement that includes:

*[For text of unit (a), see Minnesota Rules]*

~~(b)   attestation that all candidates must attempt board-approved content and pedagogy exams prior to recommendation, and such data will be remitted to the board to demonstrate program efficacy;~~

~~(c)~~ (b)   attestation that all candidates must submit a complete board-adopted performance assessment prior to recommendation, and such data will be remitted to the board to demonstrate program efficacy; and

~~(d)~~ (c)   attestation that the implementation of the battery of board-adopted surveys must be provided for candidates, program completers at completion and one year after completion, and the program completers' current supervisors one year after completion.

*[For text of subpart 3, see Minnesota Rules]*

Subp. 4. **Board determinations.** The board must take one of the following actions based upon the PRP's recommendation.

A.   The board may grant initial approval for up to three years to launch the program and to begin to collect candidate and program efficacy data needed for continuing approval. A program with initial approval must seek continuing approval by submitting a program effectiveness report for continuing approval (PERCA) on the same reporting cycle as the unit.

(1)   Continuing approval is granted when:

(a)   data from a minimum of ten program completers shows that candidates meet board-adopted thresholds on ~~state-required examinations and~~ performance assessments; and

*[For text of unit (b), see Minnesota Rules]*
*[For text of subitem (2), see Minnesota Rules]*

(3)   If data from at least ten program completers shows that candidates do not meet board-adopted thresholds on ~~state-required examinations and~~ performance assessments, the program must be forwarded to the PRP.

*[For text of item B, see Minnesota Rules]*

Ex. E, p. 007

# Exempt Rules ━━━━━━━━━━━━━━━━━━━━━━━━

**8705.2200  PROGRAM EFFECTIVENESS REPORT FOR CONTINUING APPROVAL (PERCA).**
*[For text of subpart 1, see Minnesota Rules]*

Subp. 2. **Program effectiveness report for continuing approval (PERCA).**

A.   A unit must seek continuing approval of a program every three years by submitting a program effectiveness report for continuing approval (PERCA) that includes the following:

(1)   the number of candidates enrolled and the number of program completers in each of the last three years; and

(2)   ~~aggregate candidate scores and pass rates in state-required examinations in the last three years; and~~

~~(3)~~ (2)   aggregate candidate scores and pass rates in board-adopted performance assessments in the last three years.
*[For text of items B and C, see Minnesota Rules]*
*[For text of subparts 3 to 4, see Minnesota Rules]*

**8710.0311  TIER 1 LICENSE.**

Subpart 1. **Purpose.** If a district is unable to fill an open position with a teacher holding a Tier 2, 3, or 4 license, a Tier 1 license must be issued, consistent with this part, to an applicant who does not hold a Tier 2, 3, or 4 license ~~on behalf of a district request except as provided in part 8710.0310, subpart 4~~. A Tier 1 license authorizes the license holder to teach within the requesting district and the specific licensure field in the application.

Subp. 2.  **Requirements.** The board must issue a Tier 1 license to an applicant upon request by the designated administrator of the hiring district and the applicant. The applicant must initiate the application process and meet the requirements of this subpart.
*[For text of items A to C, see Minnesota Rules]*
*[For text of subparts 3 to 7, see Minnesota Rules]*

**8710.0312  TIER 2 LICENSE.**

Subpart 1. **Purpose.** ~~A Tier 2 license must be issued, consistent with this part, to an applicant on behalf of a district request.~~ A Tier 2 license authorizes the license holder to teach within the requesting district and the specific licensure field in the application.

Subp. 2.  **Requirements.** The board must issue a Tier 2 license to an applicant upon request by the designated administrator of the hiring district and the applicant. The applicant must initiate the application process and must meet the requirements of this subpart.
*[For text of item A, see Minnesota Rules]*

B.   The applicant must:
*[For text of subitem (1), see Minnesota Rules]*

(2)   have completed a state-approved teacher preparation program aligned to the licensure field; or

~~(2)~~ (3)   hold a master's degree, or equivalent, aligned to the assignment from a college or university located in the United States that is regionally accredited by the Higher Learning Commission or by the regional association for accreditation of colleges and secondary schools, as verified by a college transcript~~; or~~.

~~(3)   show completion of two of the following:~~

~~(a)   at least eight upper division or graduate-level credits aligned to the assignment;~~

Ex. E, p. 008

# Exempt Rules

(b)   field-specific methods in a state-approved teacher preparation program aligned to the assignment;

(c)   at least two years of experience teaching as the teacher of record aligned to the assignment;

(d)   board-adopted pedagogy and content examinations with passing scores aligned to the licensure area. Any licensure area that does not have a board-approved content examination is exempt from the content examination requirement; or

(e)   a state-approved teacher preparation program aligned to the licensure area.
*[For text of item C, see Minnesota Rules]*
*[For text of subparts 3 to 7, see Minnesota Rules]*

**8710.0314  TIER 4 LICENSE.**
*[For text of subpart 1, see Minnesota Rules]*

Subp. 2.  **Requirements.** The board must issue a Tier 4 license if the applicant meets all of the requirements of this subpart.
*[For text of items A and B, see Minnesota Rules]*

C.   The applicant must obtain passing scores on the board-approved ~~skills,~~ pedagogy~~,~~ and content examinations aligned to the licensure area sought. Any licensure area that does not have a board-approved content examination is exempt from the content examination requirement.

D.   The applicant must have at least three years of <u>field-specific</u> experience teaching ~~in Minnesota~~ as the teacher of record.

~~E.   The applicant's most recent summative evaluation must not have resulted in placing or otherwise keeping the teacher in an improvement process aligned to the district's teacher development and evaluation plan.~~

~~F.~~ E.   The applicant must have participated in mentorship and evaluation aligned to the district's teacher development and evaluation model under Minnesota Statutes, section 122A.40, subdivision 8, or 122A.41, subdivision 5, or if the statutory models are not practicable, to another identified district-aligned evaluation.
*[For text of subparts 3 to 6, see Minnesota Rules]*

Subp. 7. **Moving from Tier 3 to Tier 4 license.** An applicant who holds a Tier 3 license and is seeking a Tier 4 license after three years of teaching experience ~~in Minnesota, and who has passed the board-approved skills exam,~~ must meet the renewal clock hour requirements in part 8710.7200, subpart 2, and the professional development requirements in part 8710.7200, subpart 2a.

**8710.0500  EXAMINATIONS FOR TEACHER LICENSES.**
*[For text of subparts 1 to 12, see Minnesota Rules]*

<u>Subp. 13. **Exemptions.**</u> The following applicants for a Tier 3 or Tier 4 license are exempt from the requirement to pass content and pedagogy exams:

A.   an applicant who completed a board-approved teacher preparation program aligned to the license sought;

B.   an applicant who completed a state-approved teacher preparation program in another state, aligned to the license sought, and passed licensure exams in that state. If no licensure exams existed in the other state, the applicant is exempt from the applicable board-approved examinations; and

C.   an applicant who was recommended for a Tier 3 license through the licensure via portfolio process aligned to the license sought.

**EFFECTIVE DATE.** The amendments to part 8710.0312, subpart 2, are effective July 1, 2024.

Ex. E, p. 009

# Expedited Rules

   Provisions exist for the Commissioners of some state agencies to adopt expedited rules when conditions exist that do not allow the Commissioner to comply with the requirements for normal rules.  The Commissioner must submit the rule to the attorney general for review and must publish a notice of adoption that includes a copy of the rule and the conditions. Expedited rules are effective upon publication in the State Register, and may be effective up to seven days before
publication under certain conditions.
   Expedited  rules are effective for the period stated or up to 18 months.  Specific *Minnesota Statute* citations accompanying these expedited rules detail the agency's rulemaking authority.
   **KEY:  Proposed Rules**  - <u>Underlining</u> indicates additions to existing rule language.  ~~Strikeouts~~ indicate deletions from existing rule language.  If a proposed rule is totally new, it is designated "all new material."
   **Adopted Rules**  - <u>Underlining</u> indicates additions to proposed rule language.  ~~Strikeout~~ indicates deletions from proposed rule language.

## Nursing Home Workforce Standards Board
**Proposed Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards; Notice of Intent to Adopt Expedited Permanent Rules Without A Public Hearing**

   **Proposed Rules Governing Initial Wage Standards for Nursing Home Workers; Minnesota Rules, Part 5200.2060, Revisor's ID Number R-04869.**

   **Introduction.** The Minnesota Nursing Home Workforce Standards Board ("Board") intends to adopt rules under the expedited rulemaking process following the rules of the Office of Administrative Hearings, *Minnesota Rules*, part 1400.2410, and the Administrative Procedure Act, *Minnesota Statutes*, section 14.389. You may submit written comments on the proposed expedited rules until July 24, 2024.

   **Contact Person.** Submit comments or questions on the rules to: Leah Solo, Executive Director, Nursing Home Workforce Standards Board, 443 Lafayette Rd. N., St. Paul, MN 55155, phone (651) 284-5076, and email to *dli.rules@state.mn.us*. You may also review the proposed rule and submit written comments via the Office of Administrative Hearings Rulemaking eComments website at *https://minnesotaoah.granicusideas.com/discussions*.

   **Subject of the Expedited Rules and Statutory Authority.**  The proposed expedited rules establish initial wage standards for nursing home workers. Specifically, the proposed rules establish minimum nursing home employment standards that are reasonably necessary and appropriate to protect the health and welfare of nursing home workers.

   The statutory authority to adopt the proposed rules and adopt the rules under the expedited rulemaking process is Minnesota Statutes, section 181.213, subdivision 1(a)-(b) (granting authority to adopt initial wage standards for nursing home workers). A copy of the proposed rules is published in the State Register and attached to this notice as mailed. The proposed expedited rules may be viewed at:

   *https://dli.mn.gov/about-department/rulemaking/nhwsb-rulemaking-expedited-rules-wages*.

   **Comments.** You have until 4:30 p.m. on July 24, 2024, to submit written comment in support of or in opposition to the proposed expedited rules and any part or subpart of the rules. Your comment must be in writing and received by the Board contact person  or submitted on the Office of Administrative Hearings Rulemaking eComments website by the due date. The Board encourages comment. Your comment should identify the portion of the proposed expedited rules addressed and the reason for the comment. In addition, you are encouraged to propose any change proposed. You should also make any comments that you have on the legality of the proposed rules during this comment period. <u>Important</u>: Comments will be made available to the public. Please only submit information that you wish to make available publicly.

Ex. E, p. 010

# Expedited Rules

**Modifications.** The Board may modify the proposed expedited rules using either of two avenues: The Board may modify the rules directly so long as the modifications do not make them "substantially different" as defined in Minnesota Statutes, section 14.05, subdivision 2, paragraphs (b) and (c): or the Board may adopt substantially different rules if it follows the procedure under Minnesota Rules, part 1400.2110. If the final rules are identical to the rules originally published in the State Register, the Board will publish a notice of adoption in the State Register. If the final rules are different from the rules originally published in the State Register, the Board must publish a copy of the changes in the State Register. If the proposed expedited rules affect you in any way, the Board encourages you to participate in the rulemaking process.

**Alternative Format.** Upon request, this information can be made available in an alternative format, such as large print, braille, or audio. To make such a request, please contact the Board contact person at the address or telephone number listed above.

**Lobbyist Registration.** *Minnesota Statutes*, chapter 10A, requires each lobbyist to register with the State Campaign Finance and Public Disclosure Board. You may direct questions regarding this requirement to the Campaign Finance and Public Disclosure Board at: Suite #190, Centennial Building, 658 Cedar Street, St. Paul, Minnesota 55155, telephone (651) 539-1180 or 1-800-657-3889.

**Adoption and Review of Expedited Rules.** The Board may adopt the rules at the end of the comment period. The Board will then submit rules and supporting documents to the Office of Administrative Hearings for review for legality. You may ask to be notified of the date that the Board submits the rules. If you want to be so notified, or want to receive a copy of the adopted rules, or want to register with the Board to receive notice of future rule proceedings, submit your request to the Board contact person listed above.

Date: 6/17/2024                          Jamie Gulley, Chair
                                         Minnesota Nursing Home Workforce Standards Board

## 5200.2060  DEFINITIONS.

Subpart 1. **Scope.** Unless otherwise defined in this part, the terms used in parts 5200.2060 to 5200.2090 have the meanings given in Minnesota Statutes, section 181.211.

Subp. 2. **Certified nursing assistant.** "Certified nursing assistant" means a person who has received training and provides or assists in the provision of nursing or nursing-related services in a nursing home consistent with the requirements under Minnesota Statutes, section 144A.61.

Subp. 3. **Licensed practical nurse.** "Licensed practical nurse" means a person who engages in the practice of practical nursing, as defined in Minnesota Statutes, section 148.171, subdivision 14, in a nursing home.

Subp. 4. **Trained medication aide.** "Trained medication aide" means a person who has received training and administers medications in a nursing home consistent with the requirements under part 4658.1360.

## 5200.2070  APPLICABILITY.

Subpart 1. **Statewide minimum wage standards.** The wage standards for nursing home workers under parts 5200.2080 and 5200.2090 apply statewide.

Subp. 2. **Appropriation required.** The wage standards under parts 5200.2080 and 5200.2090 are not effective until:

A. the legislature provides an appropriation, as determined by Minnesota Statutes, sections 256R.21 and 256R.25, sufficient to cover the necessary rate increase; and

B. federal approval of the rate increase is obtained.

Ex. E, p. 011

# Expedited Rules ══════════════════

Subp. 3. **Modified implementation date.** Unless federal approval of the rate increase under subpart 2 is obtained by December 1, 2025, the wage standards under parts 5200.2080 and 5200.2090 shall become effective 30 days after federal approval of the rate increase is obtained.

**5200.2080  GENERAL WAGE STANDARDS.**

Beginning January 1, 2026, the minimum wage for all nursing home workers is $19 per hour. Beginning January 1, 2027, the minimum wage for all nursing home workers is $20.50 per hour.

**5200.2090  WAGE STANDARDS FOR CERTAIN OCCUPATIONS.**

Notwithstanding the statewide minimum wage established in part 5200.2080, the minimum wage for certified nursing assistants, trained medication aides, and licensed practical nurses is:

A.  Beginning January 1, 2026, the minimum wage for certified nursing assistants is $22.50 per hour. Beginning January 1, 2027, the minimum wage for certified nursing assistants is $24 per hour.

B.  Beginning January 1, 2026, the minimum wage for trained medication aides is $23.50 per hour. Beginning January 1, 2027, the minimum wage for trained medication aides is $25 per hour.

C.  Beginning January 1, 2026, the minimum wage for licensed practical nurses is $27 per hour. Beginning January 1, 2027, the minimum wage for licensed practical nurses is $28.50 per hour.

---

# Official Notices

Pursuant to *Minnesota Statutes* §§ 14.101, an agency must first solicit comments from the public on the subject matter of a  possible rulemaking proposal under active consideration within the agency by publishing a notice in the *State Register* at least 60 days before publication of a notice to adopt or a notice of hearing, and within 60 days of the effective date of any new statutory grant of required rulemaking.

The *State Register* also publishes other official notices of state agencies and non-state agencies, including notices of meetings and matters of public interest.

---

## Minnesota Department of Agriculture (MDA)
### Notice of the Proposed Emerald Ash Borer Quarantine Pope County

The Minnesota Department of Agriculture (MDA) is accepting comments on the current state emergency quarantine for emerald ash borer, *Agrilus planipennis* (Fairemaire), for Pope County and the proposed formal quarantine to be implemented July 29, 2024.

Oral and written comments regarding the proposed regulations will be accepted via email or phone through July 26, 2024.  Submit comments to Kimberly Thielen Cremers, Minnesota Department of Agriculture, 625 Robert Street North, St Paul, MN 55155, **email:** *kimberly.tcremers@state.mn.us*, **phone:** (651)201-6329.

For more information on emerald ash borer, including a copy of the emergency quarantine, visit the Minnesota Department of Agriculture website at *www.mda.state.mn.us/eab*.

Ex. E, p. 012

# Official Notices

## Department of Human Services
### Health Care Administration
**Public Notice Regarding Changes to Payment Rates and Methodologies, and Services under the Medical Assistance Program**

The Disproportionate Share Hospital (DSH) payments to a hospital that discharged a patient following a stay that exceeded twenty years will be recharacterized as regular rate payments for the year in which Calendar Year 2021 payments are subject to the DSH payment audits. This change is authorized by Laws of Minnesota 2024, Chapter 127, Article 55, Section 4. The effective date is July 1, 2024. It is not expected to have a state fiscal impact and the federal fiscal impact is unknown.

Effective July 1, 2024, state Plan Amendment (SPA) 24-23 implements American Society of Addiction Medicine (ASAM) level 3.1, 3.3, and 3.5 for residential services. This amendment also allows for a reduction in treatment hours in observance of federal recognized holidays, effective August 1, 2024. These changes were authorized by Laws of Minnesota 2024, Chapter 108, article 4, section 23 and Chapter 127, Article 48, Section 10.   These changes are not expected to have a fiscal impact.

State Plan Amendment (SPA) 24-24 implements a 3 percent increase for partial hospitalization services, effective July 1, 2024. This change was authorized by Chapter 108, Article 4, Section 23 and Chapter 127, Article 48, Section 10. These changes are not expected to have a fiscal impact.

School based social work services that are billable through Medicaid as mental health services are updated to allow for medical necessity to be determined through the Individual Education Plan (IEP) process.  In addition, the list of covered services was updated and the Psychoeducation service was expanded to include individual and family skills development by mental health practitioners. These provisions were authorized by Laws of Minnesota 2024, Chapter 115, Article 7, Subdivision 26 and are effective July 1, 2024. They are not expected to have a fiscal impact.

The current rate methodology for enteral products is maintained and the transition to an already approved rate from July 2024 to July 2025 is delayed. This change is authorized by Laws of Minnestoa 2024, Chapter 127, Article 46, Section 25 and is effective July 1, 2024. It is not expected to have a fiscal impact.

For more information on any of the changes above, please contact Alley Zoellner at ***dhs.spa.comments@state.mn.us***.

## State Law Library
### Notice of County Law Library Fees 7/1/2024

Pursuant to *Minnesota Statutes* 134A.09 and 134A.10, the following law library fees are to be in effect as of 7/1/2024.

| County | Civil | Probate | Conc Crt | Fel G Misd | Misd | P Misd | Parking |
|---|---|---|---|---|---|---|---|
| Aitkin | $12.00 | $12.00 | $12.00 | $12.00 | $12.00 | $12.00 | $5.00 |
| Anoka | $13.00 | $13.00 | $13.00 | $13.00 | $13.00 | $13.00 | $0.00 |
| Becker | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Beltrami | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Benton | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $0.00 |
| Big Stone | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Blue Earth | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |

Ex. E, p. 013

# Official Notices ━━━━━━━━━━━━━━━

| County | Civil | Probate | Conc Crt | Fel G Misd | Misd | P Misd | Parking |
|---|---|---|---|---|---|---|---|
| Brown | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Carlton | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Carver | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $0.00 |
| Cass | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Chippewa | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Chisago | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $5.00 |
| Clay | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Clearwater | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $8.00 |
| Cook | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Cottonwood | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $0.00 |
| Crow Wing | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Dakota | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $.00 |
| Dodge | $10.00 | $10.00 | $10.00 | $5.00 | $5.00 | $5.00 | $0.00 |
| Douglas | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Faribault | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Fillmore | $10.00 | $10.00 | $10.00 | $15.00 | $15.00 | $15.00 | $0.00 |
| Freeborn | $6.00 | $6.00 | $6.00 | $5.00 | $5.00 | $5.00 | $0.00 |
| Goodhue | $13.00 | $13.00 | $13.00 | $13.00 | $13.00 | $13.00 | $0.00 |
| Grant | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hennepin | $12.00 | $12.00 | $5.00 | $3.00 | $3.00 | $3.00 | $0.00 |
| Houston | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hubbard | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $5.00 | $0.00 |
| Isanti | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Itasca | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Jackson | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $0.00 |
| Kanabec | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Kandiyohi | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 |
| Kittson | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 |
| Koochiching | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 |
| Lac Qui Parle | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Lake | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Lake of the Woods | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $0.00 |
| Le Sueur | $15.00 | $15.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Lincoln | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Lyon | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Mahnomen | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Marshall | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Martin | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| McLeod | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $0.00 |
| Meeker | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 |
| Mille Lacs | $12.00 | $12.00 | $12.00 | $12.00 | $12.00 | $12.00 | $12.00 |

Ex. E, p. 014

# Official Notices

| County | Civil | Probate | Conc Crt | Fel G Misd | Misd | P Misd | Parking |
|---|---|---|---|---|---|---|---|
| Morrison | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Mower | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Murray | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Nicollet | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $0.00 |
| Nobles | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $5.00 |
| Norman | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Olmsted | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 |
| Otter Tail | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Pennington | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Pine | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Pipestone | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Polk | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Pope | $12.00 | $12.00 | $12.00 | $12.00 | $12.00 | $12.00 | $0.00 |
| Ramsey | $15.00 | $15.00 | $15.00 | $10.00 | $10.00 | $10.00 | $3.00 |
| Red Lake | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Redwood | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Renville | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 |
| Rice | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $0.00 |
| Rock | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Roseau | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Scott | $13.00 | $13.00 | $13.00 | $13.00 | $13.00 | $13.00 | $13.00 |
| Sherburne | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Sibley | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| St. Louis | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $0.00 |
| Stearns | $14.00 | $14.00 | $14.00 | $14.00 | $14.00 | $14.00 | $0.00 |
| Steele | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Stevens | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Swift | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 |
| Todd | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Traverse | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 |
| Wabasha | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Wadena | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 |
| Waseca | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Washington | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $15.00 | $2.00 |
| Watonwan | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $5.00 | $0.00 |
| Wilkin | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Winona | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $0.00 |
| Wright | $10.00 | $10.00 | $5.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Yellow Medicine | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Ex. E, p. 015

# Official Notices ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

## Metropolitan Airports Commission (MAC)
### Notice of Public Hearing on Draft Reliever Airports Rates and Charges Ordinance

Notice is hereby given that on the 15th day of July 2024, the Metropolitan Airports Commission (MAC) will hold a public hearing to receive verbal and written testimony relative to repealing and replacing MAC Ordinance 119 and amending MAC Ordinance 115, otherwise known as the Reliever Airports Rates & Charges Ordinance and Airfield Use & Terminal 2-Humphrey Ordinance. The hearing will commence at 6:00 p.m. in the Legends Conference Room of MAC's General Office Building located at 6040 28th Avenue South, Minneapolis, MN 55450.

#### RELIEVER AIRPORTS RATES AND CHARGES ORDINANCE

An ordinance which will repeal and replace Metropolitan Airports Commission (MAC) Ordinance No. 119, Rates and Charges for Reliever Airports, as well as amend the fuel flowage fee sections of MAC Ordinance No. 115, Airfield Use and Terminal 2-Humphrey.

The proposed Ordinance will modify the current rental rates and charges for users of the Reliever Airports and the fuel flowage fee for general aviation activity at the Minneapolis-St. Paul International Airport (MSP).

Copies of the draft ordinance and supporting documentation may be obtained on or after July 10, 2024 at *Metropolitan Airports Commission | Review Reliever Rates and Charges* or by contacting MAC's Reliever Lease Coordinator at 612-467-0522.

Written comments will be accepted at the public hearing or until 4:00 p.m. on July 26, 2024, at the following address:

Attn: Reliever Airports Department
Metropolitan Airports Commission
General Office
6040 28th Avenue South
Minneapolis, MN 55450-2799

Dated this 18th day of June 2024.

Mr. Brian Ryks
CEO/Executive Director
Metropolitan Airports Commission
6040 - 28th Avenue South
Minneapolis, MN  55450

## Minnesota Pollution Control Agency (MPCA)
### Notice of Intent to Issue National Pollutant Discharge Elimination System (NPDES) General Permit MNG440000 Animal Feedlot Permit

**NOTICE IS HEREBY GIVEN** that the Minnesota Pollution Control Agency (MPCA) proposes to issue an NPDES General Permit for the construction, expansion, modification, or operation of animal feedlots in Minnesota. This permit will replace the current general animal feedlot permit which expires at midnight on January 31, 2026. The permit has a duration of approximately five years.

An NPDES permit is required for any animal feedlot facility that currently has capacity, or is proposing to have capacity, that meets or exceeds any one of the federal large, confined animal feeding operation thresholds and discharges to waters of the United States. Additionally, animal feedlots that are required to obtain a State Disposal System (SDS) permit may choose to obtain an NPDES permit in lieu of the SDS permit.

Coverage under this general permit will not be granted to those facilities that require an individual NPDES permit

# Official Notices

under federal law or when any of the following apply:

a. a schedule of compliance is required to address a pollution hazard;

b. special conditions are required as the result of environmental review;

c. a new technology for construction or operation which is not addressed by the Permit is proposed;

d. removal of bedrock is proposed to comply with site restrictions under Minn. R. 7020.2100;

e. feed for animals will be brokered or sold at the facility;

f. the facility, including the feed storage area, does not meet the design standards of Minn. R. ch. 7020 and the Permit;

g. the MPCA determines that the facility operations would be more appropriately controlled by an individual permit;

h. the owner is proposing to land apply manure in a manner that is not consistent with the requirements of the Permit;

i. the owner is proposing to use a vegetative infiltration basin to control runoff from an open lot or manure storage area;

j. the MPCA determines that discharges from a facility or the land application areas under the Permittee's control have the potential to cause or contribute to non-attainment of applicable water quality standards;

k. an anaerobic digester at the facility processes a mixture of organic materials (including manure) that is less than 90% (by volume) manure, process wastewater, or manure contaminated runoff regulated by Minn. R. ch. 7020; or,

l. the facility is located within Indian Country, as defined by federal law.

The permit establishes conditions that will govern construction or expansion of the covered facility, and also conditions governing operation and maintenance of the covered facility, including management of manure. The General NPDES Permit authorizes discharges to waters of the state only if the covered facility is in compliance with Minn. R. ch. 7020, 40 C.F.R. § 412 and all applicable portions of the permit. A more complete description of the permit can be found in the factsheet associated with this notice.

The Commissioner's determination that the general permit should be issued is tentative. Interested persons are invited to submit written comments upon the proposed permit action. The public comment period commences June 24, 2024, and terminates at 4:30 p.m. on August 9, 2024.

Comments should be submitted online at *http://www.pca.state.mn.us/publiccomments*. Comments may also be submitted in writing to George Schwint at Minnesota Pollution Control Agency, 12 Civic Center Plaza, Suite 2165, Mankato, Minnesota 56001. Any comments received no later than 4:30 p.m. on the last day of the comment period will be considered in the formulation of the final determination.

A copy of the draft general permit, fact sheet, and public notice are available on the MPCA's website at: *http://www.pca.state.mn.us/publicnotices*. If you have questions on this draft permit, the public notice or the Commissioner's preliminary determination, please contact George Schwint via telephone at 320-894-5866 or via e-mail at *george.schwint@state.mn.us*.

Ex. E, p. 017

# Official Notices ━━━━━━━━━━━━━━━

## Minnesota Pollution Control Agency (MPCA)
### Notice of Intent to Issue State Disposal System (SDS) General Permit MNG450000 Animal Feedlot Permit

**NOTICE IS HEREBY GIVEN** that the Minnesota Pollution Control Agency (MPCA) proposes to issue an SDS General Permit for the construction, expansion, modification, or operation of animal feedlots in Minnesota. This permit will replace the current general animal feedlot permit which expires at midnight on May 31, 2025. The permit has a duration of approximately ten years.

An SDS permit is required for any animal feedlots capable of holding 1,000 animal units (AU) or more, or the manure produced by 1,000 AU or more to obtain SDS permit coverage to obtain coverage under an SDS permit. Coverage under this Permit does not fulfill the requirements of 40 C.F.R. § 123.23(d) and Minn. R. 7020.0405, subp. 1(A) for CAFOs to obtain coverage under a National Pollutant Discharge Elimination System (NPDES) permit. Animal feedlots that are required to obtain an SDS permit may choose to obtain an NPDES permit in lieu of the SDS permit.

Coverage under this general permit will not be granted to those facilities that require an individual SDS permit under state law or when any of the following apply:

a.  a schedule of compliance is required to address a pollution hazard;

b.  special conditions are required as the result of environmental review;

c.  a new technology for construction or operation which is not addressed by the Permit is proposed;

d.  removal of bedrock is proposed to comply with site restrictions under Minn. R. 7020.2100;

e.  feed for animals will be brokered or sold at the facility;

f.  the facility, including the feed storage area, does not meet the design standards of Minn. R. ch. 7020 and the Permit;

g.  the MPCA determines that the facility operations would be more appropriately controlled by an individual permit;

h.  the owner is proposing to land apply manure in a manner that is not consistent with the requirements of the Permit;

i.  the owner is proposing to use a vegetative infiltration basin to control runoff from an open lot or manure storage area;

j.  the MPCA determines that discharges from a facility or the land application areas under the Permittee's control have the potential to cause or contribute to non-attainment of applicable water quality standards; or,

k.  an anaerobic digester at the facility processes a mixture of organic materials (including manure) that is less than 90% (by volume) manure, process wastewater, or manure contaminated runoff regulated by Minn. R. ch. 7020.

The permit establishes conditions that will govern construction or expansion of the covered facility, and also conditions governing operation and maintenance of the covered facility, including management of manure. The General SDS Permit does not authorize discharge to waters of the United States. The General SDS Permit does authorize discharges to waters of the state only if the facility is in compliance with Minn. R. ch. 7020 and all applicable portions of the permit. A more complete description of the permit can be found in the factsheet associated with this notice.

The Commissioner's determination that the general permit should be issued is tentative. Interested persons are invited to submit written comments upon the proposed permit action. The public comment period commences June 24, 2024, and terminates at 4:30 p.m. on August 9, 2024.

Comments should be submitted online at ***http://www.pca.state.mn.us/publiccomments***. Comments may also be submitted in writing to George Schwint at Minnesota Pollution Control Agency, 12 Civic Center Plaza, Suite 2165,

Ex. E, p. 018

# Official Notices

Mankato, Minnesota 56001. Any comments received no later than 4:30 p.m. on the last day of the comment period will be considered in the formulation of the final determination.

A copy of the draft general permit, fact sheet, and public notice are available on the MPCA's website at: *http://www.pca.state.mn.us/publicnotices*. If you have questions on this draft permit, the public notice or the Commissioner's preliminary determination, please contact George Schwint via telephone at 320-894-5866 or via e-mail at *george.schwint@state.mn.us*.

---

# State Grants & Loans

In addition to requests by state agencies for technical/professional services (published in the State Contracts Section), the *State Register* also publishes notices about grants and loans available through any agency or branch of state government.  Although some grant and loan programs specifically require printing in a statewide publication such as the State Register, there is no requirement for publication in the *State Register* itself. Agencies are encouraged to publish grant and loan notices, and to provide financial estimates as well as sufficient time for interested parties to respond.

SEE ALSO: Office of Grants Management (OGM) at: *https://mn.gov/admin/citizen/grants/*

---

## Department of Commerce
### Division of Energy Resources
**Request for Proposals for Strengthening the Reliability and Resiliency of Minnesota's Electrical Grid**

The Minnesota Department of Commerce ("Commerce") seeks proposals from eligible utilities ("Applicants") throughout Minnesota for the BIL-40101(d) Strengthening the Reliability and Resiliency of Minnesota's Electrical Grid Grant Program ("40101(d) Program"). This competitive grant program seeks proposals for projects which will: increase the resilience of Minnesota's electric grid against disruptive events, advance grid modernization and the deployment of clean energy resources and reduce the impacts of climate-driven extreme weather and natural disasters. This program also aims to generate the greatest community benefit and expand or create clean energy workforce opportunities for Minnesotans.

A Request for Proposals (RFP) is available for download on the Department's RFP website at *Request for Proposals (RFP) / Minnesota Department of Commerce - Business (mn.gov)*.

All responses to this RFP need to be submitted through a single responder user account via the grant portal. Applications must be submitted by **5:00 p.m. CDT on Monday, August 26, 2024. Late proposals will not be considered.** Instructions and links for submitting proposals are detailed in the RFP and attachments.

This request does not obligate the State to complete the work contemplated in this notice. The State reserves the right to cancel this solicitation. All expenses incurred in responding to this notice are solely the responsibility of the responder.

Ex. E, p. 019

# State Grants & Loans ═══════════════

## Department of Employment and Economic Development (DEED)
### Notice of Grant Opportunity

NOTICE IS HEREBY GIVEN that the Minnesota Department of Employment and Economic Development (DEED) places notice of any available grant opportunities online at ***https://mn.gov/deed/about/contracts/open-rfp.jsp***

## Department of Human Services
### Contracts and Legal Compliance Division
### Notice of Changes to Grant Request for Proposal noticing in the State Register for the Department of Human Services

The Minnesota Department of Human Services (DHS) will no longer publish individual grant RFP notices to the State Register effective March 27, 2023.  The RFPs and RFIs can be viewed by visiting the Minnesota Department of Human Services Grant Requests for Proposals (RFP) and Requests for Information (RFI) web site:  ***https://mn.gov/dhs/partners-and-providers/grants-rfps/open-rfps/***.

The RFPs and RFIs do not obligate the State to complete the work contemplated in the respective notices. The State reserves the right to cancel solicitations. All expenses incurred in responding to the RFPs and RFIs are solely the responsibility of the responder.

---

# State Contracts

**Informal Solicitations:**  Informal solicitations for professional/technical (consultant) contracts valued at over $5,000 through $50,000, may either be published in the *State Register* or posted on the Department of Administration, Office of State Procurement (OSP) Website.  Interested vendors are encouraged to monitor the P/T Contract Section of the OSP Website at *https://mn.gov/admin/osp* for informal solicitation announcements.

**Formal Solicitations:**  Department of Administration procedures require that formal solicitations (announcements for contracts with an estimated value over $50,000) for professional/technical contracts must be published in the *State Register*.  Certain quasi-state agency and Minnesota State College and University institutions are exempt from these requirements.

**Requirements:**  There are no statutes or rules requiring contracts to be advertised for any specific length of time, but the Office of State Procurement strongly recommends meeting the following requirements: $0 - $5000 does not need to be advertised; $5,000 - $25,000 should be advertised in the *State Register* for a period of at least seven calendar days; $25,000 - $50,000 should be advertised in the *State Register* for a period of at least 14 calendar days; and anything above $50,000 should be advertised in the *State Register* for a minimum of at least 21 calendar  days.

Contact the Office of State Procurement at: (651) 296-2600

---

## Minnesota State Colleges and Universities (Minnesota State)
### Notice of Bid and Contracting Opportunities

Minnesota State is now placing additional public notices for contract opportunities for goods and services on its Vendor and Supplier Opportunities website (***https://www.minnstate.edu/vendors/index.html***). Minnesota State may add new public notices to the website daily and post for the time indicated within the public notice.

If you have any questions regarding this notice or are having problems viewing the information on the Vendor and Supplier Opportunities website, please email the Minnesota State Procurement Unit at ***Sourcing@MinnState.edu***.

Ex. E, p. 020

# State Contracts

## Minnesota Housing Finance Agency
**Request for Proposals for Engagement and Support of Consultants with Lived Experience and Hosting Community Conversations for the Olmstead Implementation Office**

**PROJECT NAME:** Engagement and Support of Consultants with Lived Experience and Hosting Community Conversations for the Olmstead Implementation Office

**DETAILS:** Minnesota Housing Finance Agency is requesting proposals for a qualified contractor to host a series of community conversations with the public and crystallize definitions and themes for consideration in the next Olmstead Plan. The contractor will also recruit, train and support a team of consultants with lived experience of having a disability or supporting a person with a disability to co-create the Olmstead Plan with the Olmstead Implementation Office and Olmstead Subcabinet.

Work is anticipated to start after October 1, 2024.

**COPY REQUEST:** To get a copy of the Request for Proposals, please send a written request, by email, to:

Diane Doolittle
Olmstead Implementation Office
*diane.doolittle@state.mn.us*

**PROPOSAL DEADLINE:** Proposals submitted in response to the Request for Proposals in this advertisement must be received via email no later than **3:00 p.m. CT on July 26, 2024. Late proposals will not be considered.** Faxed and mailed proposals will not be considered.

This request does not obligate Minnesota Housing Finance Agency to complete the work contemplated in this notice. Minnesota Housing Finance Agency reserves the right to cancel this solicitation. All expenses incurred in responding to this notice are solely the responsibility of the responder.

## Department of Military Affairs
### Facilities Management Office, Camp Ripley, Little Falls, MN
**Request for Proposals for Consultant Services for Geothermal System Sustainment & Repair for Building 6-75, Camp Ripley, Little Falls, Minnesota (Project No. 24119)**

The State of Minnesota, Department of Military Affairs, is soliciting proposals from interested, qualified providers for Consultant Services for Geothermal System Sustainment & Repair for Building 6-75, Camp Ripley, Little Falls, Minnesota (Project No. 24119). Work is anticipated to start July 2024.

**COPY REQUEST:** A full Request for Proposals is available on the Minnesota Department of Military Affair's website at *https://ngmnpublic.azurewebsites.us/requests-for-proposal/*.

Any questions should be directed to Ms. Amanda Munkeby, State Project Manager at *amanda.r.munkeby.nfg@army.mil*. Project questions will be taken by this individual only. Questions regarding this RFP must be received by July 9, 2024, no later than 11:00 AM Central Time.

RFP responses must be received by Email to the Department of Military Affairs, Attn: Ms. Sara Seelen, Email: *sara.l.seelen.nfg@army.mil*, no later than 2**:00 P.M. Central Time on July 15, 2024. Late responses will not be considered.**

The Department of Military Affairs is not obligated to complete the work contemplated in this notice and reserves the right to cancel the solicitation if it is considered to be in its best interest. All expenses incurred in responding to this notice are solely the responsibility of the responder.

Ex. E, p. 021

# State Contracts ━━━━━━━━━━━━━━━

## Minnesota Department of Transportation (MnDOT)
### Engineering Services Division
### Notices Regarding Professional/Technical (P/T) Contracting

**P/T Contracting Opportunities:** MnDOT is now placing additional public notices for P/T contract opportunities on the MnDOT's Consultant Services website. New public notices may be added to the website on a daily basis and be available for the time period as indicated within the public notice.

**Taxpayers' Transportation Accountability Act (TTAA) Notices:** MnDOT is posting notices as required by the TTAA on the MnDOT Consultant Services website.

**MnDOT's Prequalification Program:** MnDOT maintains a Pre-Qualification Program in order to streamline the process of contracting for highway related P/T services. Program information, application requirements, application forms and contact information can be found on MnDOT's Consultant Services website. Applications may be submitted at any time for this Program.

**MnDOT Consultant Services website:** *www.dot.state.mn.us/consult*

If you have any questions regarding this notice, or are having problems viewing the information on the Consultant Services website, please all the Consultant Services Help Line at 651-366-4611, Monday – Friday, 9:00am – 4:00pm.

## Minnesota Zoo
### Request for Proposals for Seasonal Illuminated Event Contractor

**PROJECT NAME:** Seasonal Illuminated Event

**DETAILS:** The Minnesota Zoological Garden (Minnesota Zoo, or Zoo) is seeking a Contractor to provide an illuminated seasonal event in spring, summer, or winter. We seek a partner that brings strong ideation and vision in line with the Zoo's mission, creativity, industry trends, best practices, and emerging opportunities that will maximize financial return to the Minnesota Zoo. The Zoo is following a Request for Proposal-Invitation to Negotiate process to secure the Contractor.

We seek a Contractor that will:

- Design, deliver, and execute a highly visual, experiential, multimedia, profitable revenue-generating, impactful, and inclusive illuminated seasonal event on the Zoo campus in Apple Valley, Minnesota.
- Provide project management and coordination of the entire event in collaboration with the Minnesota Zoo Special Events team.
- Ensure animal welfare and safety considerations are top-of-mind, and operations are sustainable to the extent possible.
- Develop a multi-year tiered event activation and investment approach.

The Minnesota Zoo is anticipating a revenue/cost share model for this project.

A mandatory in person pre-proposal meeting will be held on July 9, 2024.

Work is anticipated to start in August 2024.

COPY REQUEST: To receive a copy of the Request for Proposals – Invitation to Negotiate, please send a written request by email to:

Ex. E, p. 022

# State Contracts

Lisa Fay
Contracts Coordinator
*lisafay@state.mn.us*

**PROPOSAL DEADLINE:** Proposals in response to the Request for Proposals – Invitation to Negotiate in this advertisement must be received by email to *lisa.fay@state.mn.us* not later than **12:00 PM, Central Time, July 22, 2024. Late proposals will not be considered.** Printed/fax/mailed proposals will not be considered.

This request does not obligate the State of Minnesota to award a contract or complete the proposed program, and the State reserves the right to cancel this solicitation if it is considered in its best interest. All costs incurred in responding to this solicitation will be borne by the responder.

---

# Non-State Public Bids, Contracts & Grants

The State Register also serves as a central marketplace for contracts let out on bid by the public sector. The *State Register* meets state and federal guidelines for statewide circulation of public notices. Any tax-supported institution or government jurisdiction may advertise contracts and requests for proposals from the private sector. It is recommended that contracts and RFPs include the following: 1) name of contact person; 2) institution name, address, and telephone number; 3) brief description of commodity, project or tasks; 4) cost estimate; and 5) final submission date of completed contract proposal. Allow at least three weeks from publication date (four weeks from the date article is submitted for publication). Surveys show that subscribers are interested in hearing about contracts for estimates as low as $1,000. Contact editor for further details.

Besides the following listing, readers are advised to check: *https://mn.gov/admin/osp* as well as the Office of Grants Management (OGM) at: *https://mn.gov/admin/citizen/grants/*.

---

## Metropolitan Airports Commission (MAC)
### Request for Qualifications for DELTA - MSP T1 Modernization Project (AMP) - Phase 3

J.E. Dunn Construction Company, hereafter referred as the **Construction Manager**, is Requesting for Qualifications for the following project described below and requests for your interest on bidding on the project. The following list highlights information associated with the Project that may be helpful in your prequalification process.

The following list highlights information associated with the Project that may be helpful in your bidding process. Bidders should review the Bidding Documents in their entirety for a complete discussion of the items highlighted below.

| | |
|---|---|
| **PROJECT NAME** | DELTA - MSP T1 Modernization Project (AMP) - Phase 3 |
| **PROJECT DESCRIPTION** | We are currently prequalifying for Phases 3 on the project which includes Concourse A, B, and G Concourses. The forthcoming bid packages may include the following scopes but not limited to: |
| | Final Cleaning, Decorative and Misc. Metals, Equipment Support Systems, Glass and Glazing, Stainless Steel and Column Covers, Joint Sealants, Firestopping, Drywall, Tile and Stone W work, Acoustical and Metal Ceilings, Terrazzo, Flooring, Painting, Quartz Paneling, Signage, Furniture Install, Fire Protection, Mechanical, Electrical, and Lighting Controls. |

Ex. E, p. 023

# State Contracts ━━━━━━━━━━━━━

**PROJECT NAME**    DELTA - MSP T1 Modernization Project (AMP) - Phase 3

**REQUEST FOR QUALIFICATIONS**

1. To be qualified to perform the Work described in the Bidding Documents, the Bidder must submit and/or update the necessary information on Construction Manager's online Subcontractor Management System located at **https://sms.jedunn.com.**

2. When your subcontractor profile is completed and/or updated, please notify Jessica Venegas at JE Dunn Construction to allow for formal review from JE Dunn to determine prequalification status.

**QUESTIONS**    All questions regarding the prequalification process should be directed to the Construction Manager, please contact Jessica Venegas at 952-833-5911 or **jessica.venegas@jedunn.com**.

---

# Executive Orders

The governor has the authority to issue written statements or orders, called Executive Orders, as well as Emergency Executive Orders. The governor's authority is specified in the Constitution of the State of Minnesota, Article V, and in *Minnesota Statutes* § 4.035. Emergency Executive Orders, for protection from an imminent threat to health and safety, become effective immediately, are filed with the secretary of state, and published in the *State Register* as soon as possible after they are issued. Other Executive Orders become effective 15 days after publication in the *State Register* and filing with the secretary of state. Unless otherwise specified, an executive order expires 90 days after the date the governor who issued the order vacates office.

---

## Office of the Governor
### Emergency Executive Order 24-05: Declaring a Peacetime Emergency and Providing National Guard Assistance to Local Emergency Flood Operations in Minnesota

**I, Tim Walz, Governor of the State of Minnesota,** by the authority vested in me by the Constitution and applicable statutes, issue the following executive order:

Starting in May 2024, Minnesota has experienced unusually wet weather patterns, including heavy rain that significantly exceeds monthly averages, frequent thunderstorms, and prolonged downpours, leading to saturated soils and elevated river levels across the state.

The amount of precipitation has caused significant lake, riverine, and overland flooding; disrupted agricultural activities; and damaged roads and property throughout the state. More rain is forecast for the coming days, which will likely push many lake and river levels beyond their historic highs.

Local governments are fully utilizing their resources to protect life and safety in the affected areas, and to guard property and infrastructure from additional damage. Unfortunately, local government resources are not sufficient to address the threat to life and property posed by the flooding. Several counties have declared local emergencies and activated their emergency operations plans. The Sheriff of Le Sueur County has requested that the Minnesota National Guard provide logistics and operations support with the production and staging of flood protection materials. We anticipate that other counties will make similar requests.

The Department of Public Safety's Division of Homeland Security and Emergency Management ("HSEM") has partially activated the State Emergency Operations Center and implemented the Minnesota Emergency Operations Plan,

Ex. E, p. 024

# Executive Orders

making state agencies available to assist local governments.

For these reasons, I declare a peacetime emergency pursuant to Minnesota Statutes 2023, section 12.31, and order as follows:

1.  The Adjutant General is authorized to order to state active duty on June 23, 2024 the personnel, equipment, and resources needed to support emergency flood operations.

2.  The Adjutant General is authorized to procure the goods and services needed to accomplish the mission.

3.  HSEM will continue to coordinate the provision of on-site support and assistance to affected local governments and determine the need for supplementary emergency assistance.

4.  All relevant state agencies, in cooperation with appropriate federal agencies, will provide the assistance necessary to help local units of government respond to and recover from this emergency.

5.  The costs of this assistance shall be paid from the general fund as allowed by Minnesota Statutes 2023, section 192.52.

This Executive Order and declaration of peacetime emergency are effective immediately under Minnesota Statutes 2023, section 4.035, subdivision 2. The peacetime emergency declared in this Executive Order expires in accordance with Minnesota Statutes 2023, section 12.31, subdivision 2. The remainder of this Executive Order, including the activation of the Minnesota National Guard, remains in effect until the emergency conditions caused by the flooding subside or July 22, 2024, whichever occurs first.

A determination that any provision of this Executive Order is invalid will not affect the enforceability of any other provision of this Executive Order. Rather, the invalid provision will be modified to the extent necessary so that it is enforceable.

Signed on June 22, 2024.

**Tim Walz**, GOVERNOR

Filed According to Law:

**Steve Simon**, SECRETARY OF STATE

Ex. E, p. 025

CASE 0:26-cv-01816-NEB-DJF   Doc. 1   Filed 03/11/26   Page 93 of 503



GO WHERE YOU WANT.
HAVE THE STATE REGISTER
SENT TO YOU.
SUBSCRIBE!

**Page    1164      Minnesota State Register, Monday 24 June 2024          (Cite 48 SR 1164)**

Ex. E, p. 026

# EXHIBIT F

# MINNESOTA STATE REGISTER

## MONDAY, OCTOBER 28, 2024

## VOLUME 49, NUMBER 18

### PAGES 437 - 452



Ex. F, p. 001

# *Minnesota State Register* ━━━━

## Judicial Notice Shall Be Taken of Material Published in the Minnesota State Register

The Minnesota State Register is the official publication of the State of Minnesota's Executive Branch of government, published weekly to fulfill the legislative mandate set forth in Minnesota Statutes, Chapter 14, and Minnesota Rules, Chapter 1400.  It contains:

- • Proposed Rules
- • Adopted Rules
- • Exempt Rules
- • Expedited Rules
- • Withdrawn Rules

- • Executive Orders of the Governor
- • Appointments
- • Proclamations
- • Vetoed Rules

- • Commissioners' Orders
- • Revenue Notices
- • Official Notices
- • State Grants and Loans

- • Contracts for Professional, Technical and Consulting Services
- • Non-State Public Bids, Contracts and Grants

## Printing Schedule and Submission Deadlines

| Vol. 49 Issue Number | Publish Date | Deadline for: all Short Rules, Executive and Commissioner's Orders, Revenue and Official Notices, State Grants, Professional-Technical- Consulting Contracts, Non-State Bids and Public Contracts | Deadline for LONG, Complicated Rules (contact the editor to negotiate a deadline) |
|---|---|---|---|
| #19 | Monday 4 November | Noon Tuesday 29 October | Noon Thursday 24 October |
| #20 | Tuesday 12 November | Noon Tuesday 5 November | Noon Thursday 31 October |
| #21 | Monday 18 November | Noon Tuesday 12 November | Noon Thursday 7 November |
| #22 | Monday 25 November | Noon Tuesday 19 November | Noon Thursday 14 November |

PUBLISHING NOTICES: We need to receive your submission ELECTRONICALLY in Microsoft WORD format.  Submit ONE COPY of your notice via e-mail to: sean.plemmons@state.mn.us. State agency submissions must include a "State Register Printing Order" form, and, with contracts, a "Contract Certification" form. Non-State Agencies should submit ELECTRONICALLY in Microsoft WORD, with a letter on your letterhead stationery requesting publication and date to be published. Costs are $13.50 per tenth of a page (columns are seven inches wide). One typewritten, double-spaced page = 6/10s of a page in the State Register, or $81.  About 1.5 pages typed, double-spaced, on 8-1/2"x11" paper = one typeset page in the State Register. Contact editor with questions (651) 201-3204, or  e-mail: sean.plemmons@state.mn.us.

SUBSCRIPTION SERVICES: E-mail subscriptions are available by contacting the editor at sean.plemmons@state.mn.us. Send address changes to the editor or at the Minnesota State Register, 50 Sherburne Avenue, Suite 309, Saint Paul, MN 55155.

SEE THE Minnesota State Register free at website: ***https://mn.gov/admin/government/data-info/register.jsp***
- Minnesota State Register:  Online subscription – $180, includes links, index, special section "CONTRACTS & GRANTS," with Sidebar Table of Contents, Early View after 4:00 pm Friday (instead of waiting for early Monday), and it's sent to you via E-mail.
- Single issues are available electronically via PDF for free.
- "Affidavit of Publication" includes a notarized "Affidavit" and a copy of the issue: $15.00.

| | | | |
|---|---|---|---|
| **Governor: Tim Walz** **(651) 201-3400** | **Attorney General:** **Keith Ellison (651) 296-3353** | **Department of Administration Commissioner:** **Tamar Gronvall** **(651) 201-2560** | **Minnesota State Register** **Editor: Sean Plemmons** **(651) 201-3204** **sean.plemmons@state.mn.us** |
| **Lieutenant Governor:** **Peggy Flanagan** **(651) 201-3400** | **Auditor: Julie Blaha** **(651) 296-2551** | | |
| | **Secretary of State: Steve Simon** **(651) 296-2803** | **Communications and Planning Division: Curtis Yoakum** **(651) 201-2771** | |

**Copyright © 2024  Communications Division, Department of Administration, State of Minnesota.**
**USPS Publication Number: 326-630 (ISSN:  0146-7751)**

**THE MINNESOTA STATE REGISTER IS PUBLISHED by the Communications Division, Department of Administration, State of Minnesota, pursuant to Minnesota Statutes § 14.46 and is available on-line at: https://mn.gov/admin/government/data-info/register.jsp**

## Minnesota Legislative Information

**Senate Public Information Office**
(651) 296-0504
State Capitol, Room 231, St. Paul, MN 55155
https://www.senate.mn/

**Minnesota State Court System**
Court Information Office (651) 296-6043
MN Judicial Center, Rm. 135,
 25 Rev. Dr. Martin Luther King Jr Blvd., St. Paul, MN 55155
http://www.mncourts.gov

**House Public Information Services**
(651) 296-2146
State Office Building, Room 175
100 Rev. Dr. Martin Luther King Jr Blvd., St. Paul, MN 55155
https://www.house.leg.state.mn.us/hinfo/hinfo.asp

**Federal Register**
Office of the Federal Register (202) 512-1530; or (888) 293-6498
U.S. Government Printing Office – Fax: (202) 512-1262
https://www.federalregister.gov/

# Contents

**Minnesota Rules: Amendments and Additions**......440

## Proposed Rules
**Minnesota Board of Pharmacy**
Proposed Expedited Permanent Rules Relating to Prescription Label Information; Notice of Intent to Adopt Expedited Rules without A Public Hearing............................................441

## Expedited Rules
**Nursing Home Workforce Standards Board**
Adopted Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards........................................................................................................................443

## Official Notices
**Minnesota Department of Revenue**
Official Notice: Cigarette Sales Tax – Rate Change ..........................................................444

**Teachers Retirement Association**
**Audit Committee**
Notice of Meeting .............................................................................................................444
**Board of Trustees**
Notice of Meeting .............................................................................................................444

## State Grants & Loans
**Department of Commerce**
**Division of Energy Resources**
Request for Proposals for Electric School Buses: Application for Equipment.................445

**Department of Employment and Economic Development (DEED)**
Notice of Grant Opportunity............................................................................................446

**Department of Human Services**
**Contracts and Legal Compliance Division**
Notice of Changes to Grant Request for Proposal noticing in the State Register for the Department of Human Services........................................................................................446

## State Contracts
**Capitol Area Architectural and Planning Board (CAAPB)**
Request for Proposals for Update to the Minnesota Rules Governing Zoning and Design ..............................................................................................................................446

**Department of Commerce**
**Division of Energy Resources**
Request for Proposals for Grant Administration Support.................................................447
Request for Proposals for Investigation of Proposed Acquisition of ALLETE by Canada Pension Plan Investment Board and Global Infrastructure Management........................448

**Minnesota State Colleges and Universities (Minnesota State)**
Notice of Bid and Contracting Opportunities ..................................................................448

**Minnesota West Community & Technical College**
Notice of Request for Quadruped with Curriculum Support............................................449

**Minnesota Housing Finance Agency**
Request for Proposals for Family Homeless Prevention and Assistance Program (FHPAP) Technical Assistance (TA)...............................................................................................449

**Minnesota State Board of Investment**
Notice of Request for Proposals for Public Relations and Consulting Services...............450

**Minnesota Department of Transportation (MnDOT)**
**Engineering Services Division**
Notices Regarding Professional/Technical (P/T) Contracting..........................................450

## Non-State Public Bids, Contracts & Grants
**Metropolitan Airports Commission (MAC)**
Notice of Call for Bids for Concourse G – Conference Center Development..................451
Notice of Call for Bids for 2024 Anti-Climb Fencing ....................................................452

**Front Cover Artwork:** *Two people search for agates and sea glass on the shore of Lake Superior near Silver Bay, Minn.*
*Photo by Sean Plemmons*



Ex. F, p. 003

# Minnesota Rules: Amendments and Additions

NOTICE: How to Follow State Agency Rulemaking in the State Register

The State Register is the official source, and only complete listing, for all state agency rulemaking in its various stages. State agencies are required to publish notice of their rulemaking action in the State Register. Published every Monday, the State Register makes it easy to follow and participate in the important rulemaking process. Approximately 80 state agencies have the authority to issue rules. Each agency is assigned specific Minnesota Rule chapter numbers. Every odd-numbered year the Minnesota Rules are published.  Supplements are published to update this set of rules. Generally speaking, proposed and adopted exempt rules do not appear in this set because of their short-term nature, but are published in the State Register.

An agency must first solicit Comments on Planned Rules or Comments on Planned Rule Amendments from the public on the subject matter of a possible rulemaking proposal under active consideration within the agency (Minnesota Statutes §§ 14.101).  It does this by publishing a notice in the State Register at least 60 days before publication of a notice to adopt or a notice of hearing, or within 60 days of the effective date of any new statutory grant of required rulemaking.

When rules are first drafted, state agencies publish them as Proposed Rules, along with a notice of hearing, or a notice of intent to adopt rules without a hearing in the case of noncontroversial rules. This notice asks for comment on the rules as proposed.  Proposed emergency rules, and withdrawn proposed rules, are also published in the State Register. After proposed rules have gone through the comment period, and have been rewritten into their final form, they again appear in the State Register as Adopted Rules. These final adopted rules are not printed in their entirety, but only the changes made since their publication as Proposed Rules. To see the full rule, as adopted and in effect, a person simply needs two issues of the State Register, the issue the rule appeared in as proposed, and later as adopted.

The State Register features partial and cumulative listings of rules in this section on the following schedule: issues #1-26 inclusive (issue #26 cumulative for issues #1-26); issues #27-52 inclusive (issue #52, cumulative for issues #27-52 or #53 in some years). A subject matter index is updated weekly and is available upon request from the editor. For copies or subscriptions to the State Register, contact the editor at 651-201-3204 or email at sean.plemmons@state.mn.us

## Volume 49 - Minnesota Rules
### (Rules Appearing in Vol. 48 Issues #27-52 are in Vol. 48, #52 - Monday 24 June 2024)
### Volume 49, #18

### Monday 1 July - Monday 28 October

**Board of Accountancy**
1105.2000, .2560, .3000 (adopted) ......................................................93

**Campaign Finance and Public Disclosure Board**
4501; 4503; 4511; 4512; 4525 (proposed)..........................................377

**Board of Cosmetologist Examiners**
2105.0145, .0183 (adopted exempt) .....................................................77

**Department of Education**
3501 (proposed) ..................................................................................109

**Department of Health**
4605 (adopted) ....................................................................................329

**Department of Labor and Industry**
1305.3114 (proposed expedited).........................................................279
5220 (proposed) ..................................................................................313
5205.0010 (proposed exempt) .............................................................327
5221.4020 (adopted exempt) ...............................................................357

**Department of Natural Resources**
6262; 6266 (expedited emergency)..........................................................5
6232.4800 (expedited emergency)...........................................................8
6262.0800 (adopted expedited).............................................................10
6212; 6264; 6270 (adopted expedited) .................................................45
6262.0200 (proposed expedited)..........................................................125
6266.0500 (proposed expedited)..........................................................136
6230; 6240 (expedited emergency).......................................................141
6230; 6234; 6236 (expedited emergency)............................................150

6232 (expedited emergency)................................................................197
6234.0300; 6237.0400, .0550 (expedited emergency).........................284
6232.2550 (expedited emergency).......................................................285
6230.0200 (expedited emergency).......................................................392

**Nursing Home Workforce Standards Board**
5200 (expedited) .................................................................................191
5200.2060, .2070, .2080, .2090 (adopted expedited).........................443

**Board of Pharmacy**
6800.3400 (proposed) .........................................................................441

**Department of Public Safety**
7522 (proposed) ..................................................................................171

**Racing Commission**
7869; 7873; 7877; 7883; 7884; 7891; 7897 (proposed).......................61

**Department of Revenue**
8125.1301 (proposed) ...........................................................................72

**Department of Transportation**
8810.8000, .8200, .8300, .8400 (adopted) .........................................279

**Workers' Compensation Court of Appeals**
9800 (proposed) ..................................................................................316

Ex. F, p. 004

# Proposed Rules

**Comments on Planned Rules or Rule Amendments.** An agency must first solicit Comments on Planned Rules or Comments on Planned Rule Amendments from the public on the subject matter of a possible rulemaking proposal under active consideration within the agency (*Minnesota Statutes* §§ 14.101). It does this by publishing a notice in the *State Register* at least 60 days before publication of a notice to adopt or a notice of hearing, and within 60 days of the effective date of any new statutory grant of required rulemaking.

**Rules to be Adopted After a Hearing.** After receiving comments and deciding to hold a public hearing on the rule, an agency drafts its rule. It then publishes its rules with a notice of hearing. All persons wishing to make a statement must register at the hearing. Anyone who wishes to submit written comments may do so at the hearing, or within five working days of the close of the hearing. Administrative law judges may, during the hearing, extend the period for receiving comments up to 20 calendar days. For five business days after the submission period the agency and interested persons may respond to any new information submitted during the written submission period and the record then is closed. The administrative law judge prepares a report within 30 days, stating findings of fact, conclusions and recommendations. After receiving the report, the agency decides whether to adopt, withdraw or modify the proposed rule based on consideration of the comments made during the rule hearing procedure and the report of the administrative law judge. The agency must wait five days after receiving the report before taking any action.

**Rules to be Adopted Without a Hearing.** Pursuant to *Minnesota Statutes* § 14.22, an agency may propose to adopt, amend, suspend or repeal rules without first holding a public hearing. An agency must first solicit **Comments on Planned Rules** or **Comments on Planned Rule Amendments** from the public. The agency then publishes a notice of intent to adopt rules without a public hearing, together with the proposed rules, in the *State Register*. If, during the 30-day comment period, 25 or more persons submit to the agency a written request for a hearing of the proposed rules, the agency must proceed under the provisions of §§ 14.1414.20, which state that if an agency decides to hold a public hearing, it must publish a notice of intent in the *State Register*.

**KEY: Proposed Rules** - <u>Underlining</u> indicates additions to existing rule language. ~~Strikeouts~~ indicate deletions from existing rule language. If a proposed rule is totally new, it is designated "all new material." **Adopted Rules** - <u>Underlining</u> indicates additions to proposed rule language. ~~Strikeout~~ indicates deletions from proposed rule language.

## Minnesota Board of Pharmacy
### Proposed Expedited Permanent Rules Relating to Prescription Label Information; Notice of Intent to Adopt Expedited Rules without A Public Hearing

**Proposed Amendment to Rules Governing Prescription Bottle Labeling, Minnesota Rules, 6800.3400; Revisor's ID Number R-04894.**

**Introduction.** The Board of Pharmacy intends to adopt rules under the expedited rulemaking process following the rules of the Office of Administrative Hearings, *Minnesota Rules*, part 1400.2410, and the Administrative Procedure Act, *Minnesota Statutes*, section 14.389. You may submit written comments on the proposed expedited rules until December 2, 2024.

**Agency Contact Person.** Submit comments or questions on the rules to:

Jill Phillips
Jill Phillips, MPH, RPH Executive Director
Minnesota Board of Pharmacy 335 Randolph Ave., Suite 230 St. Paul, MN 55102
O: 651-201-2825
F: 651-215-0951
*Jill.Phillips@state.mn.us*

Ex. F, p. 005

# Proposed Rules ═══════════════════

**Subject of the Expedited Rules.** The proposed expedited rules are about accessible prescription drug labels and would allow pharmacists to include the following on the prescription label:

1.    The complete and unabbreviated generic name of the drug, and;
2.    Instructions written in plain language explaining the patient-specific indications for the drug if the patient-specific indications are indicated on the prescription.

**Statutory Authority:** The statutory authority to adopt the rules under the expedited rulemaking process is Laws 2023, Regular Session, Article 6, section 25, and Minnesota Statutes A copy of the proposed rules is published in the State Register.

**Comments.** You have until 4:30 p.m. on Monday, December 2, 2024, to submit written comment in support of or in opposition to the proposed expedited rules and any part or subpart of the rules. Your comment must be in writing and received by the agency contact person by the due date. The Department encourages comment. Your comment should identify the portion of the proposed expedited rules addressed and the reason for the comment. In addition, you are encouraged to propose any change desired. You must also make any comments that you have on the legality of the proposed rules during this comment period.

**Modifications.** The agency may modify the proposed expedited rules using either of two avenues: The agency may modify the rules directly so long as the modifications do not make them substantially different as defined in Minnesota Statutes, section 14.05, subdivision 2, paragraphs (b) and (c). Or the agency may adopt substantially different rules if it follows the procedure under *Minnesota Rules*, part 1400.2110. If the final rules are identical to the rules originally published in the State Register, the agency will publish a notice of adoption in the State Register. If the final rules are different from the rules originally published in the State Register, the agency must publish a copy of the changes in the State Register. If the proposed expedited rules affect you in any way, the agency encourages you to participate in the rulemaking process.

**Alternative Format.** Upon request, this information can be made available in an alternative format, such as large print, braille, or audio.  To make such a request, please contact the agency contact person at the address or telephone number listed above.

**Lobbyist Registration.** *Minnesota Statutes*, chapter 10A, requires each lobbyist to register with the State Campaign Finance and Public Disclosure Board. You may direct questions regarding this requirement to the Campaign Finance and Public Disclosure Board at: Suite #190, Centennial Building, 658 Cedar Street, St. Paul, Minnesota 55155, telephone (651) 539-1180 or 1-800-657-3889.

**Adoption and Review of Expedited Rules.** The agency may adopt the rules at the end of the comment period. The agency will then submit rules and supporting documents to the Office of Administrative Hearings for review for legality. You may ask to be notified of the date that the agency submits the rules. If you want to be so notified, or want to receive a copy of the adopted rules, or want to register with the agency to receive notice of future rule proceedings, submit your request to the agency contact person listed above.

Date: October 15, 2024                                    Jill Phillips
                                                          Executive Director, Board of Pharmacy


**6800.3400  PRESCRIPTION LABELING.**

Subpart 1. **Requirements applicable to all drugs.** Except for radiopharmaceuticals, all drugs dispensed to or for a patient, other than an inpatient of a hospital must be labeled with the following information:
*[For text of items A to J, see Minnesota Rules]*

K.    ~~after July 1, 2008,~~ any dispensed legend drug, or nonlegend drug not dispensed in the manufacturer's original

Ex. F, p. 006

# Proposed Rules

container, must be labeled with its physical description, including any identification code that may appear on tablets and capsules. This requirement does not apply to drugs dispensed as part of an investigational drug study.

Subp. 1a. **Additional labeling information.** After January 1, 2026, except for radiopharmaceuticals, all drugs dispensed to or for a patient, other than an inpatient of a hospital, may also be labeled with the following information:

A.  the complete and unabbreviated generic name of the drug; and

B.  instructions written in plain language explaining the patient-specific indications for the drug if the patient-specific indications are indicated on the prescription.

*[For text of subparts 2 to 5, see Minnesota Rules]*

---

# Expedited Rules

Provisions exist for the Commissioners of some state agencies to adopt expedited rules when conditions exist that do not allow the Commissioner to comply with the requirements for normal rules.  The Commissioner must submit the rule to the attorney general for review and must publish a notice of adoption that includes a copy of the rule and the conditions. Expedited rules are effective upon publication in the State Register, and may be effective up to seven days before
publication under certain conditions.

Expedited  rules are effective for the period stated or up to 18 months.  Specific *Minnesota Statute* citations accompanying these expedited rules detail the agency's rulemaking authority.

**KEY:  Proposed Rules**  -  Underlining indicates additions to existing rule language.  ~~Strikeouts~~ indicate deletions from existing rule language.  If a proposed rule is totally new, it is designated "all new material."
**Adopted Rules**  - Underlining indicates additions to proposed rule language.  ~~Strikeout~~ indicates deletions from proposed rule language.

---

## Nursing Home Workforce Standards Board
**Adopted Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards**

The rules proposed and published at State Register, Volume 48, Number 52, pages 1148-1150, June 24, 2024 (48 SR 1148), are adopted as proposed.

Ex. F, p. 007

# Official Notices

Pursuant to *Minnesota Statutes* §§ 14.101, an agency must first solicit comments from the public on the subject matter of a possible rulemaking proposal under active consideration within the agency by publishing a notice in the *State Register* at least 60 days before publication of a notice to adopt or a notice of hearing, and within 60 days of the effective date of any new statutory grant of required rulemaking.

The *State Register* also publishes other official notices of state agencies and non-state agencies, including notices of meetings and matters of public interest.

## Minnesota Department of Revenue
### Official Notice: Cigarette Sales Tax – Rate Change

Pursuant to *Minnesota Statutes*, section 297F.25, the Commissioner of Revenue has determined that the new cigarette sales tax rate will be 78.6 cents per pack of 20 cigarettes. For packs of cigarettes with other than 20 cigarettes, the tax must be adjusted proportionally. This rate is effective for sales on or after January 1, 2025.

Publication Date: October 28, 2024

## Teachers Retirement Association
### Audit Committee
### Notice of Meeting

The Minnesota Teachers Retirement Association Audit Committee will hold a meeting on **Tuesday, November 12, 2024 at 2:00 p.m.** in Room 414, 60 Empire Drive, St. Paul, MN to consider matters which may properly come before the committee. Committee members may participate in the meeting by electronic means.

The public may monitor the meeting electronically from a remote site as set out on the Teachers Retirement Association's website, which can be found at ***www.minnesotatra.org***.

## Teachers Retirement Association
### Board of Trustees
### Notice of Meeting

The Minnesota Teachers Retirement Association Board of Trustees will hold a meeting on **Wednesday, November 13, 2024 at 9:30 a.m.** in Room 414, 60 Empire Drive, St. Paul, MN to consider matters which may properly come before the Board. Board members may participate in the meeting by electronic means.

The public may monitor the meeting electronically from a remote site as set out on the Teachers Retirement Association's website, which can be found at ***www.minnesotatra.org***.

Ex. F, p. 008

# State Grants & Loans

In addition to requests by state agencies for technical/professional services (published in the State Contracts Section), the *State Register* also publishes notices about grants and loans available through any agency or branch of state government.  Although some grant and loan programs specifically require printing in a statewide publication such as the State Register, there is no requirement for publication in the *State Register* itself. Agencies are encouraged to publish grant and loan notices, and to provide financial estimates as well as sufficient time for interested parties to respond.

SEE ALSO: Office of Grants Management (OGM) at: *https://mn.gov/admin/citizen/grants/*

# Department of Commerce
## Division of Energy Resources
### Request for Proposals for Electric School Buses: Application for Equipment

The Minnesota Department of Commerce ("Department") seeks proposals to purchase and begin operations of electric school buses for the student transportation needs of eligible school districts throughout Minnesota. This grant program is for applicants to fund electric school buses and needed charging infrastructure for eligible school districts.

The State Legislature allocated a total of $13 million (**Minn. Stat. 216C.374**) to accelerate school districts' utilization of electric school buses and to encourage schools to use vehicle electrification as a teaching tool that can be integrated into the school's curriculum. Public school districts, tribal contract schools, as well as eligible applicants representing them are eligible for funding based on financial need and prioritization criteria. Statute mandates two types of assistance to accelerate electric school bus utilization: 1) Funding for eligible applicants to pay for technical assistance in preparation for adopting electric school buses, and 2) Funding to pay for electric school buses and other necessary equipment.

This RFP will provide funding to pay for the procurement of electric school buses and other related equipment.

Activities funded under this grant award include:

- The purchase of up to three electric school buses, or the conversion of up to three fossil-fuel powered school buses to be powered by electricity.
- Administration of the process to purchase electric school buses, or to convert or repower fossil-fuel-powered school buses to be powered by electricity;
- Deployment, on the school district or transportation service provider's real property, of infrastructure required to operate electric school buses, such as charging stations. This grant will cover up to one level 2 alternating current (AC) charger port per electric school bus, or one direct current (DC) fast charger per application.

Beginning on **Monday, October 28, 2024 until Tuesday, December 17, 2024 at 5pm CST**, a Request for Proposals (RFP) will be available for download on the Department's RFP website at ***Request for Proposals (RFP) / Minnesota Department of Commerce - Business (mn.gov)***.

All responses to this RFP need to be submitted through a single responder user account via the grant portal. Applications must be submitted by the deadline of each respective round. **Late proposals will not be considered.** Instructions and links for submitting bids are detailed in the RFP and attachments.

This request does not obligate the State to complete the work contemplated in this notice. The State reserves the right to cancel this solicitation. All expenses incurred in responding to this notice are solely the responsibility of the responder.

Ex. F, p. 009

# State Grants & Loans ══════════

## Department of Employment and Economic Development (DEED)
### Notice of Grant Opportunity

NOTICE IS HEREBY GIVEN that the Minnesota Department of Employment and Economic Development (DEED) places notice of any available grant opportunities online at ***https://mn.gov/deed/about/contracts/open-rfp.jsp***

## Department of Human Services
### Contracts and Legal Compliance Division
### Notice of Changes to Grant Request for Proposal noticing in the State Register for the Department of Human Services

The Minnesota Department of Human Services (DHS) will no longer publish individual grant RFP notices to the State Register effective March 27, 2023.  The RFPs and RFIs can be viewed by visiting the Minnesota Department of Human Services Grants, Requests for Proposals (RFP) and Requests for Information (RFI) website: ***https://mn.gov/dhs/partners-and-providers/grants-rfps/open-rfps/***.

The RFPs and RFIs do not obligate the State to complete the work contemplated in the respective notices. The State reserves the right to cancel solicitations. All expenses incurred in responding to the RFPs and RFIs are solely the responsibility of the responder.

---

# State Contracts

**Informal Solicitations:**  Informal solicitations for professional/technical (consultant) contracts valued at over $5,000 through $50,000, may either be published in the *State Register* or posted on the Department of Administration, Office of State Procurement (OSP) Website.  Interested vendors are encouraged to monitor the P/T Contract Section of the OSP Website at *https://mn.gov/admin/osp* for informal solicitation announcements.

**Formal Solicitations:**  Department of Administration procedures require that formal solicitations (announcements for contracts with an estimated value over $50,000) for professional/technical contracts must be published in the *State Register*.  Certain quasi-state agency and Minnesota State College and University institutions are exempt from these requirements.

**Requirements:**  There are no statutes or rules requiring contracts to be advertised for any specific length of time, but the Office of State Procurement strongly recommends meeting the following requirements: $0 - $5000 does not need to be advertised; $5,000 - $25,000 should be advertised in the *State Register* for a period of at least seven calendar days; $25,000 - $50,000 should be advertised in the *State Register* for a period of at least 14 calendar days; and anything above $50,000 should be advertised in the *State Register* for a minimum of at least 21 calendar  days.

Contact the Office of State Procurement at: (651) 296-2600

---

## Capitol Area Architectural and Planning Board (CAAPB)
### Request for Proposals for Update to the Minnesota Rules Governing Zoning and Design

Minnesota's Capitol Area Architectural and Planning Board (CAAPB) ***https://mn.gov/caapb/*** seeks a consultant team to develop and update the ***Minnesota Rules Chapter 2400, Capitol Area Zoning and Design rules*** for the Capitol Area in Saint Paul, Minnesota.

The update to the Rules will build upon the 2040 Comprehensive Plan for the Minnesota State Capitol Area and the

Ex. F, p. 010

# State Contracts

existing Rules to regulate and manage the Capitol Area environment and its physical form.

The Minnesota Legislature provided the CAAPB with funds to update the Rules by June 30, 2025. The development of the Rules will require formal approval by CAAPB and will go through the formal Administrative Rulemaking process per the Permanent Rulemaking process (*Minn. Stat. 12.05 to 14.28*), following the Office of Administrative Hearings (OAH), Minnesota Administrative Rule, *Minnesota Rules, chapter 1400* process (see the *rulemaking manual* hosted by the Minnesota Department of Health).

The Capitol Area is approximately 333 acres encompassing 60 blocks. It is divided into five distinct subdistricts: 1) Capitol Campus – the Capitol building, the Mall, and surrounding area; 2) Capitol Rice District – the area to the west and northwest of the Capitol campus; 3) Capitol Heights – a well-established neighborhood to the north of the Capitol building; 4) Fitzgerald Park (Neighborhood) – five downtown blocks southeast from the Capitol campus; and 5) I-94 and I-35E Freeway Corridor.

The goal of the Rules update is to make the rules more current, plain language, responsive to current needs, comprehensive, and flexible. Project resources will allow for a full review, revisions, and updates to the existing structure, but may not include time or funding for major rewrites, major new elements, or extensive research - nor related public engagement required for more in depth changes. Revisions will focus on attaining compliance with the Comprehensive Plan, achieving clarity, correcting errors, and potentially identifying elements that need to be added in the future.

All elements will require review for compliance with laws of the State of Minnesota and the Constitution of the United States. The Rules replace zoning of the City of Saint Paul, however alignment with City regulatory approaches is required, as well as the Rules' clarity on the relationship of CAAPB permitting to City code, infrastructure and building permitting.

CAAPB is looking for consultant or consultant teams with specialized knowledge and expertise including, but not limited to, land use, design, and zoning administration and regulations, with specific experience in **form-based and context sensitive regulation for sophisticated urban environments** with both public and private property. Teams should include **expertise in the Administrative Rules Process in Minnesota**.

The contractor will work closely with CAAPB staff and submit the work to the CAAPB for approval.

**How to submit a proposal:**

The full request for proposals can be accessed by visiting ***https://www.mn.gov/caapb*** .

Formal questions about the RFP are due by 5:00 PM on Wednesday, October 23, 2024. Please send to the agency contact below.

All proposals must be received no later than 5:00 PM Central Time on <u>Friday, November 8, 2024.</u>

**Agency Contact:**  Jessie Hughes *jessie.hughes@state.mn.us*

# Department of Commerce
## Division of Energy Resources
### Request for Proposals for Grant Administration Support

The Minnesota Department of Commerce seeks proposals from qualified organizations or individuals to be the primary grant administrator for the Joint Targeted Interconnection Queue (JTIQ) Transmission Study Process and Portfolio grant from the US Department of Energy. This administrator, or administrators, will work with project partners to ensure compliance with DOE reporting requirements, work to develop a governance structure for the organizations

Ex. F, p. 011

# State Contracts ━━━━━━━━━━━━━━━━━━━━

working in partnership on the grant, and help to develop budgets for future phases of this large multiyear project.

A Request for Proposals and required forms are available to view and download on the Minnesota Department of Commerce's RFP website at *https://mn.gov/commerce/business/rfp.jsp* through the submission deadline.

Proposals must be submitted by no later than Monday, November 18, 2024 at 5:00 PM Central Time. Proposals must be submitted to *JTIQ.RFP.COMM@state.mn.us*. Instructions for submitting proposals are detailed in the RFP. **Late proposals will not be considered.**

This request does not obligate the State to complete the work contemplated in this notice. The State reserves the right to cancel this solicitation. All expenses incurred in responding to this notice are solely the responsibility of the responder.

# Department of Commerce
## Division of Energy Resources
**Request for Proposals for Investigation of Proposed Acquisition of ALLETE by Canada Pension Plan Investment Board and Global Infrastructure Management**

On behalf of the Minnesota Public Utilities Commission ("Commission"), the Department of Commerce ("Department") seeks highly specialized professional/technical services to investigate the potential risks and benefits of the proposed acquisition of Minnesota Power's corporate parent, ALLETE, Inc. According to Minn. Stat. 216A.07, the Department has the responsibility to advise and support the Commission on matters of importance to the public interest.

On July 19, 2024, ALLETE, Inc. (ALLETE), the corporate parent of Minnesota Power, a vertically integrated electric utility serving northeast Minnesota, initiated a proceeding with the Commission seeking approval of its proposed acquisition by Global Infrastructure Management, LLC, and Canada Pension Plan Investment Board, both private equity entities. (Docket No. E015/PA-24-198). The Department requests proposals for a technical expert or experts to investigate whether the proposed acquisition is consistent with the public interest, as required by Minnesota Statute.

The Department is seeking a technical expert or experts to assist with its review of the proposed transaction and allow the Department to fully participate in these investigative proceedings to represent the public interest. Through written testimony or expert reports, the selected responder(s) will be asked to analyze and explain the potential benefits and risks of the proposed acquisition to a lay audience, and evaluate whether the acquisition is consistent with the public interest. In the course of this work, the selected responder(s) will also assist with developing written discovery topics and questions, and review legal briefs drafted by the Department's attorneys for technical accuracy.

A Request for Proposals (RFP) is available for download on the Department's RFP website at *Request for Proposals (RFP) / Minnesota Department of Commerce - Business (mn.gov).*

All responses to this RFP need to be submitted through a single responder user account via the grant portal. Applications must be submitted by the deadline of each respective round. **Late proposals will not be considered.** Instructions and links for submitting bids are detailed in the RFP and attachments.

This request does not obligate the State to complete the work contemplated in this notice. The State reserves the right to cancel this solicitation. All expenses incurred in responding to this notice are solely the responsibility of the responder.

# Minnesota State Colleges and Universities (Minnesota State)
## Notice of Bid and Contracting Opportunities

Minnesota State is now placing additional public notices for contract opportunities for goods and services on its Vendor and Supplier Opportunities website (*https://www.minnstate.edu/vendors/index.html*). Minnesota State may add new public notices to the website daily and post for the time indicated within the public notice.

Ex. F, p. 012

# State Contracts

If you have any questions regarding this notice or are having problems viewing the information on the Vendor and Supplier Opportunities website, please email the Minnesota State Procurement Unit at *Sourcing@MinnState.edu*.

# Minnesota State Colleges and Universities (Minnesota State)
## Minnesota West Community & Technical College
### Notice of Request for Quadruped with Curriculum Support

Quadruped must have the following minimum requirements:

- Customizable allowing additional sensing, communication, and control capabilities including adding a robotic arm
- Perception enhanced mobility and obstacle avoidance based on visual and 3D LIDAR
- Industrial Grade Manufacturing with 10-year lifespan in education facility

The State of Minnesota, acting through its Board of Trustees of the Minnesota State Colleges and Universities, on behalf of Minnesota West Community and Technical College, is requesting proposals for a Quadruped with Curriculum support for Mechatronics and Peace Officer.  Delivery is preferred by January 1, 2025.

To receive a copy of the proposal, please email *craig.peters@mnwest.edu*

Proposals must be sealed with a notation on the outside of the envelope stating: Bid for Quadruped with Curriculum DELIVER IMMEDIATELY.

Mail or delivered (faxes and email will not be accepted) sealed proposals must be delivered no later than November 8, 2024 by 12:00pm:

Minnesota West Community & Technical College
Attn: Craig Peters
401 West St
Jackson, MN 56143

PROPOSAL CLOSE DATE is November 8, 2024 at 12:00 pm CST

# Minnesota Housing Finance Agency
### Request for Proposals for Family Homeless Prevention and Assistance Program (FHPAP) Technical Assistance (TA)

**PROJECT NAME:** Family Homeless Prevention and Assistance Program (FHPAP) Technical Assistance (TA)

**DETAILS:** Minnesota Housing Finance Agency is requesting proposals for a qualified contractor to provide technical assistance (TA) to newly selected grantees of the Family Homeless Prevention and Assistance Program (FHPAP). Providing TA will ensure that new grantees can effectively manage their programs in compliance with the FHPAP statue, Program Guide, Office of Grant Management policies and other regulations, and will assist the organizations in establishing necessary administrative infrastructure and operational procedures.

Work is anticipated to start after February 1, 2025.

**COPY REQUEST:** To get a copy of the Request for Proposals, please send a written request, by email, to:

Ex. F, p. 013

# State Contracts ▬▬▬▬▬▬▬▬▬▬

Ji-Young Choi
Policy Specialist
*Ji-young.choi@state.mn.us*

**PROPOSAL DEADLINE:** Proposals submitted in response to the Request for Proposals in this advertisement must be received by email no later than **12 pm (noon), CT, on December 4, 2024. Late proposals will not be considered.** Faxed and mailed proposals will not be considered.

This request does not obligate Minnesota Housing Finance Agency to complete the work contemplated in this notice. Minnesota Housing Finance Agency reserves the right to cancel this solicitation.  All expenses incurred in responding to this notice are solely the responsibility of the responder.

# Minnesota State Board of Investment
## Notice of Request for Proposals for Public Relations and Consulting Services

The Minnesota State Board of Investment (MSBI) is soliciting proposals for the purpose of receiving professional public relations consultation contractor to assist MSBI with maintenance and modifications of communication strategies.

Work is anticipated to start after November 30, 2024.

All interested vendors can find the RFP on the State Board of Investment website at *https://msbi.us/RFPs*.  You may also contact the person below by email to request a copy of the Request For Proposal.  For the subject line in your email request, please use "Public Relations and Consulting Services".

**Andy Christensen**
Deputy Executive Director
Minnesota State Board of Investment
*minn.sbi@state.mn.us*

All Proposals in response to the Request for Proposals in this advertisement must be received by the above email no later than **4:00 p.m., Central Time, November 18, 2024.  Early submission is encouraged.**

**LATE PROPOSALS OR MAILED PROPOSALS WILL NOT BE CONSIDERED.**

This request does not obligate the State of Minnesota to award a contract or complete the proposed program, and the State reserves the right to cancel this solicitation if it is considered in its best interest. All costs incurred in responding to this solicitation will be borne by the responder.

# Minnesota Department of Transportation (MnDOT)
## Engineering Services Division
### Notices Regarding Professional/Technical (P/T) Contracting

**P/T Contracting Opportunities:** MnDOT is now placing additional public notices for P/T contract opportunities on the MnDOT's Consultant Services website. New public notices may be added to the website on a daily basis and be available for the time period as indicated within the public notice.

**Taxpayers' Transportation Accountability Act (TTAA) Notices:** MnDOT is posting notices as required by the TTAA on the MnDOT Consultant Services website.

**MnDOT's Prequalification Program:** MnDOT maintains a Pre-Qualification Program in order to streamline the process of contracting for highway related P/T services.  Program information, application requirements, application

Ex. F, p. 014

# State Contracts

forms and contact information can be found on MnDOT's Consultant Services website. Applications may be submitted at any time for this Program.

**MnDOT Consultant Services website: *www.dot.state.mn.us/consult***

If you have any questions regarding this notice, or are having problems viewing the information on the Consultant Services website, please all the Consultant Services Help Line at 651-366-4611, Monday – Friday, 9:00am – 4:00pm.

---

# Non-State Public Bids, Contracts & Grants

The State Register also serves as a central marketplace for contracts let out on bid by the public sector. The *State Register* meets state and federal guidelines for statewide circulation of public notices. Any tax-supported institution or government jurisdiction may advertise contracts and requests for proposals from the private sector. It is recommended that contracts and RFPs include the following: 1) name of contact person; 2) institution name, address, and telephone number; 3) brief description of commodity, project or tasks; 4) cost estimate; and 5) final submission date of completed contract proposal. Allow at least three weeks from publication date (four weeks from the date article is submitted for publication). Surveys show that subscribers are interested in hearing about contracts for estimates as low as $1,000. Contact editor for further details.

Besides the following listing, readers are advised to check: *https://mn.gov/admin/osp* as well as the Office of Grants Management (OGM) at: *https://mn.gov/admin/citizen/grants/*.

---

## Metropolitan Airports Commission (MAC)
### Notice of Call for Bids for Concourse G – Conference Center Development

| | |
|---|---|
| **Airport Location:** | **Minneapolis-St. Paul International Airport** |
| **Project Name:** | **Concourse G – Conference Center Development** |
| **MAC Contract No.:** | **106-2-1087** |
| **Bids Close At:** | **2:00 PM on November 12, 2024** |
| **Bid Opening Conference Call:** | **3:00 PM on November 12, 2024** |
| **Teleconference Dial In #:** | **1-612-405-6798** |
| **Conference ID #:** | **897 927 742#** |

**Notice to Contractors:** Electronic Bid Submission for the project listed above will be received by the MAC, a public corporation, via *QuestCDN's website* until the official time and date as displayed in QuestCDN Online.

**Note:** You can sign up on our web site (*https://metroairports.org/doing-business/solicitations*) to receive email notifications of new business opportunities.

**Targeted Group Businesses (TGB):** The goal of the MAC for the utilization of Targeted Group Businesses on this project is *9%*.

**Bid Security:** Each bid shall be accompanied by a "Bid Security" in the form of a certified check made payable to the MAC in the amount of not less than five percent (5%) of the total bid, or a surety bond in the same amount, running to the MAC, with the surety company thereon duly authorized to do business in the State of Minnesota.

**Availability of Construction Documents:** Plans and specifications are available at QuestCDN Online indicated below and at the Minnesota Builders Exchange; Rochester Builders Exchange; Dodge Data and Analytics; and NAMC-UM Plan Room. Bidders desiring drawings and specifications for personal use may secure a complete digital set at the *QuestCDN website*. Bidders may download the complete set of digital documents for $22.00, or other fee as determined by QuestCDN, by entering eBidDoc™ #9352915 in the "Search Projects" page. Contact Quest Construction

Ex. F, p. 015

# Non-State Public Bids, Contracts & Grants ▬▬▬

Data Network at (952) 233-1632 or info@questcdn.com for assistance. Hard copy drawings and specifications will not be made available to Bidders. Bid documents for this project may be viewed for no cost at QuestCDN Online. For this project, bids will **ONLY** be received electronically. Contractors submitting an electronic bid will be charged an additional $42.00, or other fee as determined by QuestCDN, at the time of bid submission via the online electronic bid service QuestCDN Online.

   **MAC Internet Access of Additional Information:** A comprehensive Notice of Call for Bids for this project will be available on October 21, 2024, at MAC's web address of ***https://metroairports.org/doing-business/solicitations*** (construction bids).

## Metropolitan Airports Commission (MAC)
### Notice of Call for Bids for 2024 Anti-Climb Fencing

| | |
|---|---|
| **Airport Location:** | **Minneapolis-St. Paul International Airport** |
| **Project Name:** | **2024 Anti-Climb Fencing** |
| **MAC Contract No.:** | **106-1-361** |
| **Bids Close At:** | **2:00 PM on November 12, 2024** |
| **Bid Opening Conference Call:** | **3:00 PM on November 12, 2024** |
| **Teleconference Dial In #:** | **1-612-405-6798** |
| **Conference ID #:** | **897 927 742#** |

   **Notice to Contractors:** Electronic Bid Submission for the project listed above will be received by the MAC, a public corporation, via ***QuestCDN's website*** until the official time and date as displayed in QuestCDN Online.

   **Note:** You can sign up on our web site (***https://metroairports.org/doing-business/solicitations***) to receive email notifications of new business opportunities.

   **Targeted Group Businesses (TGB):** The goal of the MAC for the utilization of Targeted Group Businesses on this project is 5%.

   **Bid Security:** Each bid shall be accompanied by a "Bid Security" in the form of a certified check made payable to the MAC in the amount of not less than five percent (5%) of the total bid, or a surety bond in the same amount, running to the MAC, with the surety company thereon duly authorized to do business in the State of Minnesota.

   **Availability Of Construction Documents:** Plans and specifications are at the QuestCDN Online indicated below and at the Minnesota Builders Exchange; Rochester Builders Exchange; Dodge Data and Analytics; and NAMC-UM Plan Room. Bidders desiring drawings and specifications for personal use may secure a complete digital set at the ***QuestCDN website***. Bidders may download the complete set of digital documents for $22.00, or other fee as determined by QuestCDN, by entering eBidDocTM #9219541 in the "Search Projects" page. Contact Quest Construction Data Network at (952) 233-1632 or info@questcdn.com for assistance. Hard copy drawings and specifications will not be made available to Bidders. Bid documents for this project may be viewed for no cost at QuestCDN Online. For this project, bids will **ONLY** be received electronically. Contractors submitting an electronic bid will be charged an additional $42.00, or other fee as determined by QuestCDN, at the time of bid submission via the online electronic bid service QuestCDN Online.

   **MAC Internet Access of Additional Information:** A comprehensive Notice of Call for Bids for this project will be available on October 28, 2024, at MAC's web address of ***https://metroairports.org/doing-business/solicitations*** (construction bids).



Ex. F, p. 016

# EXHIBIT G

ABOUT DLI

BOARDS AND
COUNCILS

Access Review Board

Apprenticeship
Advisory Board

Board of Electricity

Board of High-Pressure
Piping Systems

Building Efficiency
Workgroup

Combative Sports
Advisory Council

Construction Codes
Advisory Council

Governor's Committee
on the Compensation,
Wellbeing, and Fair
Treatment of
Transportation
Network Company
Drivers

Medical Services
Review Board

Nursing Home
Workforce Standards

# NHWSB MINIMUM-WAGE, HOLIDAY PAY RULES

## 2026 minimum-wage rules

### Minimum-wage standards for Minnesota nursing homes

In 2025, the Minnesota Legislature approved funding for minimum-wage standards for nursing home workers.

| Occupation | These standards will go into effect 30 days after federal approval, minimum hourly wage | Jan. 1, 2027, minimum hourly wage |
|---|---|---|
| Nursing home worker (general) | $19.00 | $20.50 |
| Certified nursing assistant | $22.50 | $24.00 |
| Trained medical assistant | $23.50 | $25.00 |
| Licensed practical nurse | $27.00 | $28.50 |

A Notice of Intent to Adopt Proposed Expedited Permanent Rules Without A Public Hearing was published in the June 24, 2024, edition of the *State Register*.

Ex. G, p. 001

Board

Occupational Safety and Health Advisory Council

Occupational Safety and Health Review Board

Plumbing Board

Rehabilitation Review Panel

State Appeals Board

Workers' Compensation Advisory Council

Workers' Compensation Insurers' Task Force

CAREERS AT DLI

NEWS, DATA REQUESTS

OUR AREAS OF SERVICE

RULEMAKING

The Notice of Adoption of Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards was published in the State Register Oct. 28, 2024. The earliest they will be implemented is Jan. 1, 2026.

View a copy of the rules as adopted.

## Holiday pay rules

The holiday pay rules for nursing home employees became effective Jan. 1, 2025. The rules state:  Nursing home workers who work on **11 state holidays** are paid at least time and a half. Each holiday includes all hours from midnight to midnight.

1. New Year's Day, Jan. 1

2. Martin Luther King's Birthday, the third Monday in January

3. Washington's and Lincoln's Birthday, the third Monday in February

4. Memorial Day, the last Monday in May

5. Juneteenth, June 19

6. Independence Day, July 4

7. Labor Day, the first Monday in September

8. Indigenous Peoples' Day, the second Monday in October

9. Veterans Day, Nov. 11

10. Thanksgiving Day, the fourth Thursday in November

11. Christmas Day, Dec. 25

- Memo:  How to, holiday pay rules

- Notice for employer use:  Holiday pay minimum standards for nursing home workers

Ex. G, p. 002

**WORKPLACE NOTICES AND POSTERS**

- Presentation:  Holiday pay and posting requirements:  An overview – PDF file | Video

BACK TO MAIN NHWSB PAGE ▶

🌐 Español | Soomaali | Hmoob | Karen/ကညီ | Chinese/简体中文

m҈ | Register to Vote ✔

Disclaimer

# EXHIBIT H



# NURSING HOME WORKFORCE STANDARDS BOARD

JOIN THE MEETING ▶

MEETING MATERIALS ▶

MEMBERS ▶

BOARDS AND COUNCILS ▶

MINIMUM WAGE, HOLIDAY PAY RULES ▶

WAIVER, VARIANCE RESOURCES ▶

CERTIFIED WORKER ORGANIZATIONS ▶

**ABOUT DLI**

**BOARDS AND COUNCILS**

Access Review Board

Apprenticeship Advisory Board

Board of Electricity

Board of High-Pressure Piping Systems

Building Efficiency Workgroup

Combative Sports Advisory Council

Construction Codes Advisory Council

Governor's Committee on the Compensation, Wellbeing, and Fair Treatment of Transportation Network Company Drivers

Medical Services Review Board

Nursing Home Workforce Standards

## Effective date of minimum-wage pay standards for nursing home workers

Note:  The effective date for the minimum-wage standards set under Minnesota Rules 5200.2080 through 5200.2090 will be 30 days after federal approval is obtained.

Previous communications reflected that Jan. 1, 2026, was the earliest the minimum-wage standards could go into effect.

Under both statute and rules, the minimum-wage standards do not become effective until after federal approval of a rate increase is obtained from the Centers for Medicare and Medicaid Services (CMS).

Under Minnesota Administrative Rules, Chapter 5200.2070, subp. 3, if federal approval of a rate increase is not obtained by Dec. 1, 2025, the minimum-wage standards do not become effective until 30 days after approval of the rate

Ex. H, p. 001

Board

NHWSB Certification/Training Workgroup

NHWSB Data Workgroup

NHWSB Principles Workgroup

NHWSB Public Hearing Workgroup

NHWSB Waiver Review Workgroup

NHWSB Waivers and Variances Workgroup

Occupational Safety and Health Advisory Council

Occupational Safety and Health Review Board

Plumbing Board

Rehabilitation Review Panel

State Appeals Board

increase is obtained. CMS has not yet approved the rate increase for 2026, so the effective date will be 30 days after federal approval has been obtained.

The Nursing Home Workforce Standards Board (NHWSB) will send email notification when federal approval is obtained from CMS. Once the Minnesota Department of Human Services (DHS) receives federal approval, the NHWSB will update this page and send email notification with the effective date of the minimum-wage standards, which will be 30 days after the date of approval. Sign up to receive these notifications.

## 2026 meeting schedule

- Dec. 10 – 11 a.m.

- Nov. 12 – 11 a.m.

- Oct. 8 – 11 a.m.

- Sept. 9 – 11 a.m.

- Aug. 13 – 11 a.m.

- July 9 – 11 a.m.

- June 11 – 11 a.m.

- May 14 – 11 a.m.

- April 9 – 11 a.m.

- March 12 – 11 a.m.

- Feb. 12 – 11 a.m.

- Jan. 8 – 11 a.m

**WORKGROUP INFORMATION ▶**

Ex. H, p. 002

# 2025 meeting schedule

Workers' Compensation Advisory Council

Workers' Compensation Insurers' Task Force

CAREERS AT DLI

NEWS, DATA REQUESTS

OUR AREAS OF SERVICE

RULEMAKING

WORKPLACE NOTICES AND POSTERS

- Dec. 11 – 11 a.m.

- Nov. 20, public forum – 5 p.m.

- ~~Nov. 13 – 11 a.m.~~ (Rescheduled to Nov. 21, 2025)

- Oct. 9 – 11 a.m.

- Sept. 11 – 11 a.m.

- ~~Aug. 14 – 11 a.m.~~ (Canceled)

- July 10 – 11 a.m.

  - Followed by a special board meeting at 2 p.m.

- June 12 – 11 a.m.

- May 8 – 11 a.m.

- April 10 – 11 a.m.

- March 13 – 11 a.m.

- Feb. 13 – 11 a.m.

- Jan. 9 – 11 a.m.

## About NHWSB

The Nursing Home Workforce Standards Board (NHWSB) was created in law during the 2023 legislative session to conduct investigations into working conditions in the nursing home industry and adopt rules establishing minimum employment standards reasonably necessary and appropriate to protect the health and welfare of nursing home workers. See Article 3 of 2023 Minnesota Session Laws Chapter 53.

Ex. H, p. 003

The board is composed of nine members, including the commissioners of the Departments of Labor and Industry, Health, and Human Services or their designees and six members appointed by the governor:  three members who represent nursing home workers or worker organizations; and three members who represent nursing home employers or employer organizations.

Email inquiries may be sent to the board at nhwsb.dli@state.mn.us.

- View member list (updated Sept. 15, 2023)

- Minnesota Nursing Home Workforce Standards Board bylaws

- Presentation:  Nursing Home Workforce Standards Board overview

- View the NHWSB 2025 annual report

## Get meeting notices, updates

Subscribe to receive Nursing Home Workforce Standards Board meeting notices and updates via email. People on this list may also receive related periodic updates from the department.

## NHWSB rulemaking

Visit the NHWSB rulemaking webpage.

TO BOARD AND COUNCILS ▶        TO JOIN THE MEETING ▶

Español | Soomaali | Hmoob | Karen/ကညီ | Chinese/简体中文



Register to Vote ✔

Disclaimer

Ex. H, p. 004

# EXHIBIT I

# Current list of certified worker organizations

The certified worker organizations (CWOs) listed below, pursuant to Minnesota Rules 5200.2050(A), have been certified to provide nursing home worker training by the Nursing Home Workforce Standards Board. In accordance with Minnesota Rules 5200.2050(B), each CWO's ability to provide training in various geographic locations, ability to train virtually, availability to train during various work shifts and contact information for the person responsible for ongoing communication with nursing home employers is provided below.

| Organization name | Geographic locations to train | Ability to train virtually | Platform used for virtual training | Shifts available to train | Contact information | Notes |
|---|---|---|---|---|---|---|
| AFL-CIO | Whole state | Yes, up to three times a month | Teams, Zoom | First, second and third | Brandon Shofner<br>bshofner@mnaflcio.org<br>218-340-0884 | Virtual training is done on an as-needed, case-by-case basis |
| SEIU Healthcare Minnesota and Iowa (SEIU HC MNIA) | Whole state | Yes | Zoom | First, second and third | Ashley Christenson<br>ashley.christenson@seiuhcmnia.org<br>651-235-3413 | Will train workers represented by SEIU HC MNIA |
| AFSCME Council 65 | Eastern Minnesota Northern Minnesota Southern Minnesota Western Minnesota | Yes | Teams, Zoom | First, second and third | Kate Black<br>kblack@afscme65.org<br>320-423-2344 | Will train at facilities with AFSCME Council 65 members |

Current list of certified worker organizations, as of December 2025

1

Ex. I, p. 001

# EXHIBIT J



# Certification of Worker Organizations and Worker Training Guide

For the Nursing Home Workforce Standard Board,
Worker Organizations and Nursing Home Employers

# Contents

| | | |
|---|---|---|
| **Guide for the NHWSB** | | 3 |
| | Review of applications criteria | 4 |
| | Board documentation requirements | 6 |
| | Timeline | 10 |
| **Guide for Nursing Home Employers** | | 11 |
| | Documentation requirements | 12 |
| | Timeline | 15 |
| **Guide for Worker Organizations** | | 16 |
| | Application | 17 |
| | Documentation requirements | 24 |
| | Timeline | 28 |
| | Curriculum | 29 |
| | Content | 32 |
| | Sample PowerPoint | 42 |
| | Sample Follow up document | 48 |

# Guide for NHWSB

- Review of applications Criteria
- Board Obligations for Documentation of Training of workers
- Timeline



Ex. J, p. 003

3

# Board Review Process for Certification Applications

The following steps will be taken to check the certification application.

1. Are all parts of the application filled out?

2. Under Establishing Eligibility, examine the following items. Failure to complete these can result in a non-certification.
   a. All items agreed to.
   b. The organization is listed as a 501(c)(3), 501(c)(4), or 501 (c)(5)? It can be checked here: Tax Exempt Organization Search | Internal Revenue Service (irs.gov).
   c. Check the Board of Directors list to ensure it does not contain leaders from a nursing home employer or employer organization. Definition of dominated or interfered by is found in United states Code, Title 29, section 158a(2): "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: *Provided*, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;"
   d. Look for public information confirming their evidence of work engaging with and/or advocating for nursing home workers.
      a. They should be in existence for over 5 years.
      b. Advocating for could include lobbying, bargaining.
      c. Seeing feedback from workers and delivering feedback to decision makers
      d. Working with Senior organizations and nursing homes could be a plus.
3. Under Data Policies
   a. Agreed to all policies.

4. Under Curriculum Details, if they fail to meet any of these items, certification can be denied.
   a. Evidence was provided in the allowed timeframe.
   b. The materials meet the curriculum provided.
      i. Any specific language requirements were met.
      ii. The standards set by the Board are addressed.
      iii. Everything that the Board laid out in the curriculum is addressed.
   c. The applicant has a reasonable plan for making their trainings interactive with a minimum of one visual or digital material (such as a handout or power point or poster) and one participatory period (such as a question-and-answer period or a breakout).
   d. The applicant provided materials for all languages they will train in.

5. Under Statements of agreements
   a. Applicant has agreed to all items.

6.   Under Assessing Capacity, if there are significant questions to this section, organizations may be asked for clarification, or it could result in a non-certification. Though we are not establishing a minimum capacity in order to receive a certification, asserting unreasonable capacity would need explanation or could be grounds to deny certification.

   a.   The plan to staff the trainings seem to reasonably match with the applicant's estimated capacity.?

7.   The Acknowledgement is signed.

# Board-Documentation of Training of Nursing Home Workers

181.214 subd. 6 says "A nursing home employer must submit written documentation to the board to certify that that every two years each of its nursing home workers completes one hour of training that meets the requirements of this section and is provided by a certified worker organization."

Below is the Board's part in accomplishing this.

## Codes

The Board has put into rules that the certified worker organizations will have a unique identification code from the Board and that the certified worker organizations will give a unique identifier to a worker once they have been trained.

The Board will provide a code to the organization. The codes will be letters that correspond to their order in being certified. The Board will maintain a full list of what letter corresponds to which worker organization.

Example: The first worker organization to be certified would be given the code "A"

## Code for training

The worker organization will then provide a code to the worker once they have been trained. The code will need the date and geographic location in it. The date will be important to include to easily identify if a worker has been trained in the last two years and the location will be important to help distinguish the training.

The board may wish to be more prescriptive about how the code will be given to the worker.

Here is the recommended formula:

Organization's code + date of training + county code of the location of the training.

For example, if the first certified worker organization held a training on September 9, 2024 in St. Peter which is located in Nicollet County, the code for the training would be:

A20240909103 (A-the organization's code+2024/09/09- the date of the training+103- Nicollet County's county code).

These codes would be decipherable to the Board and employer and certified worker organization, but long enough that they may be difficult to fraudulently produce.

## Requirements

The Board has instructed Worker Organizations to keep records of the trainings they have done and the workers who attended for 5 years, in order to allow for the possibility that the Board selects a nursing home's trainings to be verified. The Board and a Nursing Home employer should be able to ask the Worker Organization to provide a check on legitimacy of a code and that a particular worker attended that meeting.

Worker Organizations will send the list of worker attendees to the nursing homes that had workers at the training. In return, the nursing home will return the sign in sheet with contact information for those workers who have not opted out of sharing their contact information with the worker organization. This is done independently of the Board.

Ex. J, p. 007

7

## Documentation Process:

The Nursing Home will have to submit an attestation that "We certify that that every two years each of our nursing home workers completed one hour of training that meets the requirements of this section and is provided by a certified worker organization."

The Board will make a form available for Nursing Home employers to fill out to this attestation.

## Board Verification process:

The NHWSB will need to have some sort of process for confirming that the documentation is accurate. The Nursing homes will need to be able to produce a list of all employees that have been employed at the nursing home for over two years and the code for the training that each person attended.

Each year, starting in 2026(I think this should be edited to say 2027?) the Board will direct the Board's Executive Director to randomly pick a certain percentage of nursing homes in the state to verify that the workers have been trained. The Board's Executive Director would request the nursing home produce the list of all employees that have been employed at the nursing home for over two years and the codes for the training for each person. The ED would then check through the codes to ensure they are legitimate and check with the worker organizations to ensure that the workers did attend those trainings.

**EXAMPLE: Sign in sheet**

The expectation would be that this sheet is what is retained for 5 years.

| This column is filled out at the sign in or pre-filled if folks sign up in advance | This is the same for every attendee of an event, but different for each event | This can be filled out or verified/edited by the attendee | The staff of the certified worker organization would fill this out. A "no" or blank would indicate they signed up but didn't attend. |
|---|---|---|---|
| **Name** | **Training code** | **Nursing Home Employer(s)** | **Attended** |
| Jan Jansen | A20240909103 | ACME Mankato | Yes |
| John Smith | A20240909103 | ACME Springfield | No |
| Maria Gonzalez | A20240909103 | ACME Mankato, ACME Springfield | Yes |

## EXAMPLE: What would be emailed to each employer

These emails or the codes in these emails could be used to verify compliance with the rules.

Dear ACME Mankato Administrator,

Attached please find the list of who attended our training from your nursing home. This training was held on September 9, 2024 in St. Peter. Please send back the contact information of these workers and ensure they are compensated for their one hour of time spent in this training.

Sincerely,

First Certified Worker Organization

| Name | Training code | Nursing Home Employer(s) | Attended |
|------|--------------|--------------------------|----------|
| Jan Jansen | A20240909103 | ACME Mankato | Yes |
| Maria Gonzalez | A20240909103 | ACME Mankato, | Yes |

Dear ACME Springfield Administrator,

Attached please find the list of who attended our training from your nursing home. This training was held on September 9, 2024 in St. Peter. Please send back the contact information of these workers and ensure they are compensated for their one hour of time spent in this training.

Sincerely,

First Certified Worker Organization

| Name | Training code | Nursing Home Employer(s) | Attended |
|------|--------------|--------------------------|----------|
| Maria Gonzalez | A20240909103 | ACME Springfield | Yes |
|  |  |  |  |
|  |  |  |  |

## EXAMPLE: What the employer would send back

Dear First Certified Worker Organization,

Please find the attached names and contact information from your training on September 9, 2024 in St. Peter.

Sincerely,

ACME Mankato

| Name | Training code | Nursing Home Employer(s) | Attended | Contact Information |
|------|--------------|--------------------------|----------|---------------------|
| Jan Jansen | A20240909103 | ACME Mankato | Yes | Contact information filled out...... |
| ██████ | ██████ | ██████ ██████ | █ | Opted out of sharing contact information |

Ex. J, p. 009

9

# Board Timeline for Oversight of Certification of Organizations

Applications will be accepted on a rolling basis and reviewed at least quarterly. Our draft rules dictate that we must certify or deny certification within 90 days of receiving the initial application in the form prescribed by the Board.  This timeline is drafted to accommodate for room for the Board to examine the applications while also completing our work within the 90-day timeline.

- January 1, 2025, Tentative date for Certification Rules to go into effect.
- January 1-February 1, 2025, Application prepared, and curriculum finalized.
- Feb 13 Board Meeting- Application and curriculum presented to Board for final Approval.
- February 17, 2025, Applications for Certification of Worker Organizations opens.
    - Send a Gov Delivery message.
    - Offer a webinar or have one recorded and available.
- March 13 Board Meeting- Updates on Applications
- April 10, 2025- Board Meeting- Updates on Applications
- May 8, 2025- Board Meeting- Updates on Applications
- May 17, 2025- 90 days since Applications opened.
- June 12, 2025- Ensure NHWSB website is updated with list of any CWOs, as prescribed by statute.
- July, 2025- Examining certification requests becomes a regular standing item on Board meeting agendas.
    *As Organizations are certified, they must, according to draft rules, be issued a unique identification number. This should be done in accordance with our documentation plan approved July 18, 2024.

- July, 2025-December, 2026- Periodic communication with Organizations and Nursing Home Employers. Communications should remind employers of their obligations and of the resources available to find worker organizations. Communications to organizations can remind them of the resources on curriculum, obligations to share documentation of attendance at trainings, and any updates that need to be incorporated.
- September, 2026- Annual review of curriculum and public hearing
- November, 2026- Ensure worker organizations have received updates and are using new curriculum.
- January 1, 2027- 1st Deadline to for nursing homes to document that any workers who have been there for 2 years or more have had at least one hour of training.
- January, 2027- Board meeting- Board Directs Executive Director to randomly pick a certain percentage of nursing homes in the state to verify that the workers have been trained.
- February-April, 2027- Executive Director works with nursing homes to verify their documentation of training of the workers.
- 2026-27 would likely see first review and potentially adoption of new standards (MS 181.213 subd 3). Within 30 days of the adoption of new standards, the Board would need to open up the application process for renewal of certification. The application period for renewal would last 60 days.

# Guide for Nursing Home Employers

- Obligations for documentation
- Timeline for obligations



# Nursing Home Employer Documentation Requirements

## Meeting your obligations for documenting worker training

181.214 subd. 6 says "A nursing home employer must submit written documentation to the board to certify that that every two years each of its nursing home workers completes one hour of training that meets the requirements of this section and is provided by a certified worker organization."

Below is the process that Employers can follow to meet this obligation.

### Codes for Organizations and Trainings

The Board will provide a code to the organization. In turn the organization will provide training codes to the workers who attend their trainings. The Board recommends to worker organizations that the codes include ways to identify the date and location of the training.

These codes would be decipherable to the Board and employer and certified worker organization, but long enough that they may be difficult to fraudulently produce.

### Requirements

Worker Organizations would need to keep records of the trainings they have done and the workers who attended for 5 years, in order to allow for the possibility that the Board selects a nursing home's trainings to be verified.

Worker Organizations will send the list of worker attendees to the nursing homes that had workers at the training.

In return, the nursing home will return the sign in sheet with contact information for those workers who have not opted out of sharing their contact information with the worker organization (See MS 181.214 subd 6b-c)

### Documentation Process:

The Nursing Home will have to submit an attestation that "We certify that that every two years each of our nursing home workers completed one hour of training that meets the requirements of this section and is provided by a certified worker organization."

The Board will make a form available for Nursing Home employers to fill out to this attestation.

# Board Verification process

The NHWSB will have a process for confirming that the documentation is accurate. The Nursing homes will need to be able to produce a list of all employees that have been employed at the nursing home for over two years and the code for the training that each person attended.

## Examples of Sign in sheets, information sharing process

### EXAMPLE: Sign in sheet

The expectation would be that this sheet is what is retained for 5 years.

| *This column is filled out at the sign in or pre-filled if folks sign up in advance* | *This is the same for every attendee of an event, but different for each event* | *This can be filled out or verified/edited by the attendee* | *The staff of the certified worker organization would fill this out. A "no" or blank would indicate they signed up but didn't attend.* |
|---|---|---|---|
| **Name** | **Training code** | **Nursing Home Employer(s)** | **Attended** |
| Jan Jansen | A20240909103 | ACME Mankato | Yes |
| John Smith | A20240909103 | ACME Springfield | No |
| Maria Gonzalez | A20240909103 | ACME Mankato, ACME Springfield | Yes |

### EXAMPLE: What would be emailed to each employer

These emails or the codes in these emails could be used to verify compliance with the rules.

Dear ACME Mankato Administrator,

Attached please find the list of who attended our training from your nursing home. This training was held on September 9, 2024 in St. Peter. Please send back the contact information of these workers and ensure they are compensated for their one hour of time spent in this training.

Sincerely,

First Certified Worker Organization

| **Name** | **Training code** | **Nursing Home Employer(s)** | **Attended** |
|---|---|---|---|
| Jan Jansen | A20240909103 | ACME Mankato | Yes |
| Maria Gonzalez | A20240909103 | ACME Mankato, | Yes |

**EXAMPLE: What would be emailed to each employer contd.**

Dear ACME Springfield Administrator,

Attached please find the list of who attended our training from your nursing home. This training was held on September 9, 2024 in St. Peter. Please send back the contact information of these workers and ensure they are compensated for their one hour of time spent in this training.

Sincerely,

First Certified Worker Organization

| Name | Training code | Nursing Home Employer(s) | Attended |
|---|---|---|---|
| Jan Jansen | A20240909103 | ACME Mankato | Yes |
| Maria Gonzalez | A20240909103 | ACME Mankato, | Yes |

Dear ACME Springfield Administrator,

Attached please find the list of who attended our training from your nursing home. This training was held on September 9, 2024 in St. Peter. Please send back the contact information of these workers and ensure they are compensated for their one hour of time spent in this training.

Sincerely,

First Certified Worker Organization

| Name | Training code | Nursing Home Employer(s) | Attended |
|---|---|---|---|
| Maria Gonzalez | A20240909103 | ACME Springfield | Yes |
| | | | |
| | | | |

**EXAMPLE: What the employer would send back**

Dear First Certified Worker Organization,

Please find the attached names and contact information from your training on September 9, 2024 in St. Peter.

Sincerely,

ACME Mankato

| Name | Training code | Nursing Home Employer(s) | Attended | Contact Information |
|---|---|---|---|---|
| Jan Jansen | A20240909103 | ACME Mankato | Yes | Contact information filled out...... |
| ██████ | ██████ | ██████ ██████ | █ | Opted out of sharing contact information |

Ex. J, p. 014

14

# Employer Timeline for Training obligations

- Spring, 2025- First Organizations are Certified

- June 12, 2025- NHWSB website is updated with list of any CWOs, as prescribed by statute.

- January 1, 2027- 1st Deadline to for nursing homes to document that any workers who have been there for 2 years or more have had at least one hour of training.

- February-April, 2027- Executive Director works with nursing homes to verify their documentation of training of the workers.

- 2026-27 would likely see first review and potentially adoption of new standards (MS 181.213 subd 3). Within 30 days of the adoption of new standards, the Board would need to open up the application process for renewal of certification. The application period for renewal would last 60 days. Nursing Home employers may want to verify that any organization they have been working with continues to be certified.

# Guide for Worker Organizations

- Application
- Documentation Obligations
- Timeline
- Curriculum
- Content
- Sample PowerPoint
- Sample Follow up document



# Application for Certification as a Worker Organization to train Nursing Home Workers under MN Statute 181.214

**Your application will not be processed or will be delayed unless you complete all sections of this application. If you require additional space, use a separate piece of paper and attach.**

Initial certifications are valid for two years, with the opportunity for two-year renewals. Initial applications are taken on a rolling basis and evaluated quarterly. Renewal period opens after updated standards take effect and will last 60 days, during which Certified Worker Organizations must apply for renewal if they wish to continue providing trainings.

Note:  In seeking approval, the worker organization shall submit all required information, and other information the worker organization believes relevant, to the Nursing Home Workforce Standards Board (NHWSB) in the form or manner required by the Board.  The NHWSB may request additional information necessary to determine an applicant's eligibility for approval or schedule interviews to clarify information submitted.

The NHWSB may withdraw its certification of a worker organization if the worker organization fails to enforce those representations made to the NHWSB in obtaining certification. If you have questions about this application, please contact the NHWSB's Executive Director. The Executive Director may examine parts of the application and answer questions related to eligibility.

# Applicant information (write in ink or type) – Write legibly.

Federal Employer Tax Number (FEIN) or Minnesota Tax ID (if applicable)

Legal Business Name

Telephone

Website

Physical Business Address (PO Box not acceptable), City, State, Zip

Public Mailing Address (PO Box acceptable), City, State, Zip

Contact Person, phone, email for person filling out the form.

Contact Person, phone, email for the training schedules moving forward.

# Establishing Eligibility

This section established the organization's ability to become a certified worker organization. Without meeting these criteria, the organization cannot be certified.

_____ **Certify that (organization name) meets the following criteria:**

(checkbox)Organization is exempt from federal income taxation under IRS code: (checkbox) 501(c)(3), 501(c)(4), 501 (c)(5)

(checkbox) Organization is not dominated or interfered with by any nursing home employer with the meaning of United states Code, Title 29, section 158a (2). Please provide a list of Board of Directors.

(checkbox) Organization has at least five years of demonstrated experience engaging with and advocating for nursing home workers. Please specify evidence of this experience and advocacy. _____

# Data Policies

I am aware that our organization has responsibilities with the data obtained through this process. I affirm that:

- Our organization is responsible to ensure that the data we collect will be kept securely in accordance with applicable data security law.
- Any data shared with us by the employer will be kept securely and used only in accordance with MN Statues 181.214, subdivision 5.
- We will share the names of the people who attend our training with the employer and their unique identification number, along with the length of the training to ensure that the employee is paid for their time up to one hour and the employer can certify that their employee has been trained.
- We will provide the attendees with a unique identifier that they completed the training, including the time, date and location of the training.
- We will notify the NHWSB if there is a data breach of any significant kind. Though as a worker organization, you are not necessarily subject to the Data Practices Act, for reference, more information on the definitions of data breach and notification can be found here Data Breach Notification / Data Practices Office (mn.gov) and here Data Breach Notification / Data Practices Office (mn.gov).
- We will accept PO Boxes from the Safe at Home program as legitimate addresses.
- We will share the lists of people who attended our trainings as needed with the NHWSB for the purpose of confirming their attendance and maintain records of who attended a training, including the date of that training for five years.

## Curriculum Details

(checkbox) Our organization has reviewed the curriculum established by the board and will adhere to it.

(checkbox) I have attached a copy of the materials that we will use to conduct our trainings and they meet the curriculum.

(checkbox) I have attached a copy of the materials we will use that meet the follow up requirements, including a template certificate of completion.

(checkbox) Our trainings will be interactive and the materials we provide will demonstrate this. This should include one visual or digital item (such as a handout or PowerPoint) and one participatory period (such as question and answer or breakout groups).

(checkbox) Attached are details for how trainees will be able to contact us with follow up questions.

(checkbox) We will ensure all trainers are trained and skilled on the curriculum and background of the NHWSB.

(checkbox) Attached are copies our plan to ensure trainings are performed in languages that the nursing home workers are proficient in and that our follow up materials can be translated as needed.

(checkbox) Our organization understands that there will be annual updates to the curriculum and that we will update our materials to be in compliance.

# Statements of agreement

If approved, the applicant for Nursing Home Workforce Standards Board approval as a certified worker organization hereby agrees to the following:

Appropriately staff trainings in order to be effective and interactive on the established curriculum.

Provide certification of the training in a manner prescribed by the Board for the individuals completing the training.

Provide a list of workers who completed the training to the Nursing Home employer, and the NHWSB if requested.

Our organization and availability will be shared with Nursing Home employers in order to schedule trainings on site or in the geographic area.

Self-report to the NHWSB any violations of rules or breaches of data.

Be subject to immediate rescission of Certification to train Nursing Home workers on NHWSB standards in the state of Minnesota upon a determination that the organization was in non-compliance with these criteria and other criteria without limitation.

Enable a NHWSB representative to visit, attend, investigate and audit, as the NHWSB deems necessary, any training, and any activity related hereto without limitation.

Notify the NHWSB in writing of any changes, revisions or updates to the organizations rules, policies and procedures affecting the trainings.

Notify the NHWSB if your organization will no longer provide worker trainings. Such notification must include any currently scheduled trainings that your organization will no longer provide. Additionally, the organization must send certifications to each worker who has already been trained and send any remaining attendee lists not already shared to the Nursing Home employer and NHWSB.

Ex. J, p. 021    21

## Assessing Capacity

The NHWSB needs to know the organization's capacity in order to assist nursing home employers in knowing who to contact to schedule trainings and also to assess the ability to train all workers. This information will also allow the NHWSB to keep an updated list on the website. There is no minimum capacity that an organization must meet in order to be certified, but the NHWSB expects and will evaluate the organization's capacity to carry out the number and type of trainings that are committed to below. Deliberately falsifying capacity can result in revocation of certification.

Organizations must be available for follow up questions and able to provide instruction in languages that workers speak. Please indicate the following:

> Number of staff hours your organization can dedicate to training and/or any plans for how to provide training:

> What is the capacity your organization has to hold the following trainings per month:

> > # of Buildings, assuming each building will need 1-3 trainings.

> > # of in person meetings/trainings

> > # of virtual trainings

> Languages your organization can train in:

> Geographic locations that your organization can cover:

> > Whole State

> > Twin Cities 7 county Metro

> > Northern Minnesota

> > Western Minnesota

> > Southern Minnesota

> > Other _____

Ex. J, p. 022

Are you able to provide a virtual option?

If so, what applications do you use? (drop down- zoom, teams, Webex, other)

How many people can you train at one time?

Our organization is available to train during:

1st shift

2nd Shift

3rd Shift

What is your plan to staff these trainings? (Attach separately if more space is needed)

## Acknowledgement

I understand and accept that, according to Minnesota Statutes Sections 181.211 to 181.217 and the rules promulgated thereunder, the Nursing Home Workforce Standards Board may deny, revoke, suspend or limit this certification if I knowingly and willfully made a false statement or provided false documentation in this application or are unable to carry out trainings in the manner dictated by the Board. I declare that all statements and documentation provided with this application are true and correct.

**Applicant's signature**                                                   **Date (month/day/year)**

_____(organization) _____ (Job title) _____ (contact information)

Ex. J, p. 023        23

# Certified Worker Organizations' Documentation Requirements:

# Meeting your obligations for documenting worker training

181.214 subd. 6 says "A nursing home employer must submit written documentation to the board to certify that that every two years each of its nursing home workers completes one hour of training that meets the requirements of this section and is provided by a certified worker organization."

Part of the application process to become a certified worker organization included an agreement to provide documentation to the workers and the nursing home employers.

Below is the process the Board has laid out to help certified worker organizations meet these obligations.

## Code for organization

The Board will provide a code to the organization. This will be provided after the organization is certified.

## Code for training

The worker organization will then provide a code to the worker once they have been trained. The code will need the date and geographic location in it. The date will be important to include to easily identify if a worker has been trained in the last two years and the location will be important to help distinguish the training.

Here is the recommended formula:

Organization's code + date of training + county code of the location of the training.

For example, if an organization with the code "A" held a training on September 9, 2024 in St. Peter which is located in Nicollet County, the code for the training would be:

A20240909103 (A-the organization's code+2024/09/09- the date of the training+103- Nicollet County's county code).

These codes would be decipherable to the Board and employer and certified worker organization, but long enough that they may be difficult to fraudulently produce.

# Requirements

Worker Organizations would need to keep records of the trainings they have done and the workers who attended for 5 years, in order to allow for the possibility that the Board selects a nursing home's trainings to be verified. The Board and a Nursing Home employer should be able to ask the Worker Organization to provide a check on legitimacy of a code and that a particular worker attended that meeting.

Worker Organizations will send the list of worker attendees to the nursing homes that had workers at the training. In return, the nursing home will return the sign in sheet with contact information for those workers who have not opted out of sharing their contact information with the worker organization. To do this, the worker organization should have a sign in sheet that includes the following:

- Name

- Nursing homes where worker is employed

A template sign in sheet is available here. The sign in would be used to pass from the worker organization to the nursing home employer to help the employer verify worker attendance and ensure their workers are compensated for their attendance. The nursing home employer would then send the sign in sheet back to the worker organization with names and contact information of those who attended unless a worker opts out of having their information shared as prescribed by statute.

# Board Verification process

The NHWSB will have a process for verifying that nursing homes have trained their workers for an hour at least once every two years. During this process, worker organizations may be called upon to verify the codes and attendance at trainings. This is why saving your sign in sheets will be important.

## Examples of Sign in sheets, information sharing process

### EXAMPLE: Sign in sheet

The expectation would be that this sheet is what is retained for 5 years.

| *This column is filled out at the sign in or pre-filled if folks sign up in advance* | *This is the same for every attendee of an event, but different for each event* | *This can be filled out or verified/edited by the attendee* | *The staff of the certified worker organization would fill this out. A "no" or blank would indicate they signed up but didn't attend.* |
|---|---|---|---|
| **Name** | **Training code** | **Nursing Home Employer(s)** | **Attended** |
| Jan Jansen | A20240909103 | ACME Mankato | Yes |
| John Smith | A20240909103 | ACME Springfield | No |
| Maria Gonzalez | A20240909103 | ACME Mankato, ACME Springfield | Yes |

Ex. J, p. 025

## EXAMPLE: What would be emailed to each employer

These emails or the codes in these emails could be used to verify compliance with the rules.

Dear ACME Mankato Administrator,

Attached please find the list of who attended our training from your nursing home. This training was held on September 9, 2024 in St. Peter. Please send back the contact information of these workers and ensure they are compensated for their one hour of time spent in this training.

Sincerely,

First Certified Worker Organization

| Name | Training code | Nursing Home Employer(s) | Attended |
|---|---|---|---|
| Jan Jansen | A20240909103 | ACME Mankato | Yes |
| Maria Gonzalez | A20240909103 | ACME Mankato, | Yes |

Dear ACME Springfield Administrator,

Attached please find the list of who attended our training from your nursing home. This training was held on September 9, 2024 in St. Peter. Please send back the contact information of these workers and ensure they are compensated for their one hour of time spent in this training.

Sincerely,

First Certified Worker Organization

| Name | Training code | Nursing Home Employer(s) | Attended |
|---|---|---|---|
| Maria Gonzalez | A20240909103 | ACME Springfield | Yes |
| | | | |
| | | | |

## EXAMPLE: What the employer would send back

Dear First Certified Worker Organization,

Please find the attached names and contact information from your training on September 9, 2024 in St. Peter.

Sincerely,

ACME Mankato

| Name | Training code | Nursing Home Employer(s) | Attended | Contact Information |
|------|---------------|--------------------------|----------|---------------------|
| Jan Jansen | A20240909103 | ACME Mankato | Yes | Contact information filled out…… |
| ████████ | ████████ | ████ ████ | █ | Opted out of sharing contact information |

# Timeline for application for certification and ongoing obligations for worker organizations

Applications will be accepted on a rolling basis and reviewed at least quarterly. Our rules dictate that we must certify or deny certification within 90 days of receiving the initial application in the form prescribed by the Board.

- January 1, 2025- date for Certification Rules to go into effect.
- February 17, 2025- Applications for Certification of Worker Organizations opens.
- May 17, 2025- 90 days since Applications opened- first deadline for responding on applications.

*As Organizations are certified, they must, according to draft rules, be issued a unique identification number.

- September, 2026- Annual review of curriculum and public hearing
- November, 2026- Certified worker organizations should have received updates and are using new curriculum.
- January 1, 2027- 1st Deadline to for nursing homes to document that any workers who have been there for 2 years or more have had at least one hour of training.
- February-April, 2027- Executive Director works with nursing homes to verify their documentation of training of the workers.
- 2026-27 would likely see first review and potentially adoption of new standards (MS 181.213 subd 3). Within 30 days of the adoption of new standards, the Board would need to open up the application process for renewal of certification. The application period for renewal would last 60 days.

# Draft Curriculum: NHWSB Worker Training

Date: 2024

## Topic: Purpose and Objectives

### Purpose

The purpose of the trainings is to help fulfill the Board's obligation to "ensure that nursing home workers are properly trained about and fully informed of their rights" under the NHWSB Act [1]

### Objectives

At the end of the training course, the workers should understand or know where to find:
The current minimum standards set by the NHWSB.
2.   Antiretaliation protections established by the NHWSB Act.
3.   What to do if they are experiencing violations of the NHWSB Act and the rules established by the Board or experiencing retaliation, including how to report such violations.
4.   Additional rights, duties, and obligations of the NHWSB Act, updates since the last training.
5.   How to get in touch with the NHWSB or get information about upcoming NHWSB events.
6.   Other information
a.   *The Federal staffing mandates and Earned Safe and Sick time have been mentioned.*
b.   *Resources should be listed for MNOSHA, Safe Patient Handling, Employee's right to know and HAZCOM, National Labor Relations Act, Minnesota Paid Family and Medical Leave.*

## Topic: Methodology

### Interactive Trainings

Certified worker organizations must provide effective and interactive trainings.[2]   Online trainings should therefore include a synchronous (live) portion and give workers an opportunity to ask questions and have them answered. The Board can consider if there are other training features that could improve the efficacy of trainings.

---

[1]  § 181.213, subd. 1(a)

[2]  § 181.214, subd. 1(1) and § 181.214, subd. 5(2)

## Follow up

Certified Worker Organizations must provide follow up written or electronic materials that cover the topics in the training.[3] Trainings must be conducted in a language in which the workers are proficient. Follow up materials should also be provided in the languages in which the workers are proficient.[4] A certified worker organization must also make itself reasonably available to answer questions during and after training sessions.[5]

## Languages

The training and follow up must be conducted in a language in which workers are proficient.

# Topic: Pacing

## One to three training sessions

The NHWSB Act dictates that Certified Worker Organizations are not required to cover all topics in a single session. Rather, a certified worker organization may cover the required curriculum topics over the course of up to three training sessions. Nursing Home Employers however are only obligated to certify that their workers have been trained for one hour ever two years.[6]

# Topic: Evaluation

Certified Worker Organizations may conduct surveys of nursing home workers who attend a training session to evaluate the effectiveness of training sessions and industry compliance with the NHWSB Act.[7] Does the Board wish to encourage certified worker organizations to conduct these surveys and encourage organizations to share their data with the Board, to inform the Board's annual review of the adequacy of the curriculum requirements? How would the Board like to evaluate what is effective in communicating with and training workers?

## Topic: Content

See Training Content Document

---

[3] § 181.214, subd. 5(3) and § 181.214, subd. 1(2)
[4] § 181.214, subd. 5(3) and § 181.214, subd. 1(2)
[5] § 181.214, subd. 5(4) and § 181.214, subd. 1(2)
[6] § 181.214, subd. 3
[7] § 181.214, subd.5(5)

## Topic: Other obligations

Certified Worker Organizations also have other obligations, such as giving nursing home employees a confirmation of having completed the training, communicating with the employer of the nursing home workers, and keeping data securely. Please see _____ for full instructions.

## Topic: Continuing Education

The Board of Nursing does not approve specific continuing education credits, but rather is it up to individual nurses whether or not a course meets the requirements for continuing education. Those requirements can be found here: Continuing Education / Minnesota Board of Nursing (mn.gov)

If a Certified Worker Organization would like to be listed as a resource for continuing education, that information can be found here: CE_Resources_tcm21-537930.pdf (mn.gov)

We can look into other fields if the Board thinks this is a priority.

# Content: Certified Worker Organization Training Nursing Home Workforce Standards Board

Date: 2024

## Topic: Introduction

## Objective: By the end of this session, you will be able to:
- Explain the Nursing Home Workforce Standards Board
- Understand your rights under the Nursing Home Workforce Standards Board Act
- Know who to contact with questions or for help

## Nursing Home Workforce Standards Board

2023 Legislature created the Nursing Home Workforce Standards Board (NHWSB) under the Nursing Home Workforce Standards Board Act MN Statute §§ 181.211 – 181.217 _____.

The Nursing Home Workforce Standards Board was created in law during the 2023 legislative session to conduct investigations into working conditions in the nursing home industry and adopt rules establishing minimum employment standards reasonably necessary and appropriate to protect the health and welfare of nursing home workers.

Who the Board is: the nine member Board is made up of three representatives from employers appointed by the Governor; three representatives from employees appointed by the Governor; and three representatives from three state agencies—the Department of Human Services, which oversees the state funding of nursing facilities, the Minnesota Department of Health, which licenses nursing facilities, and the Department of Labor and Industry, which enforces labor laws and rules, including the NHWSB Act.

Current Board members can be found here: [Nursing Home Workforce Standards Board members, Sept. 15, 2023 (mn.gov)](#)

Ex. J, p. 032

32

What the Board does (generally)

The Board researches market conditions for nursing homes and nursing home workers in order to understand the existing working conditions in the nursing home industry, and then based on that information make rules meant to protect the health and welfare of people working in nursing homes. This includes public forums, data research, and collaboration with advocates who represent nursing home employers and nursing home workers.

The Board also ensures that nursing home workers know their rights and obligations under the NHWSB Act. It does this by using its internal expertise and information from public engagement in order to set processes for certification of worker organizations, who will provide nursing home workers with training on their rights, and the Board also sets requirements for what must be in those trainings.

If nursing home believe they cannot meet the standards set by the Board, the Board creates procedures for nursing homes to apply for waivers and variances from the standards.

The Board also reports to the legislature on their work and the cost to the state of the standards it creates for nursing home workers.

## Topic: Wage Standards and other standards

## Minimum Wages effective January 1, 2026 and January 1, 2027

If the legislature appropriates the money to fund these wages, the following Minimum Wages will apply, starting in January 1, 2026. The legislature must appropriate money to fund the states cost of these wages for them to go into effect. The legislature convenes in January 2025 and must finish their work no later than June 30, 2025.  This is when the money must be appropriated by.

The General Wage is the least amount that someone working in a nursing home who meets the definition of nursing home worker should be paid. The Minimum Wages for Certified Nursing Assistant (CNA), Trained Medication Aide (TMA), and Licensed Practical Nurse (LPN) are the least amount that someone working in that role should be paid. There is a set of minimum wages that start on January 1, 2026 and then an increase to the minimum wages that begins January 1, 2027.

| Occupation | Minimum Wage for the Occupation as of January 1, 2026 | Minimum Wage for the Occupation as of January 1, 2027 |
|---|---|---|
| General Wage | $19 | $20.50 |
| Certified Nursing Assistant (CNA) | $22.50 | $24 |
| Trained Medication Aide (TMA) | $23.50 | $25 |
| Licensed Practical Nurse (LPN) | $27 | $28.50 |

Note: The general minimum wage applies to all nursing home workers as defined by the Nursing Home Workforce Standards Board Act who are not otherwise noted in this chart. For further clarification on who meets the definition of nursing home worker,  see statute 181.211, subdivision 9.

## Waiver and Variances

If a nursing home has a waiver or variance from the minimum wages, please note that they have a waiver and what the terms and the minimum wages are associated with those terms here.

## Holiday Pay- Effective January 1, 2025

If a nursing home worker works in the nursing home on one of the designated holidays, they must be at least paid time and a half of their regular hourly wage for all hours worked during the holidays.

"Holiday" means the following dates: New Year's Day, January 1; Martin Luther King's Birthday, the third Monday in January; Washington's and Lincoln's Birthday, the third Monday in February; Memorial Day, the last Monday in May; Juneteenth, June 19; Independence Day, July 4; Labor Day, the first Monday in September; Indigenous Peoples Day, the second Monday in October; Veterans Day, November 11; Thanksgiving Day, the fourth Thursday in November; and Christmas Day, December 25.

If a nursing home worker works in the nursing home on one of these designated holidays, they must be at least paid time and a half of their regular hourly wage for all hours worked during the holidays.

This is a minimum set of holidays that must be paid at least time and a half of a worker's hourly wages. An employer may pay more than time and a half and may pay holiday pay on more days than these minimum 11 holidays. Some union contracts may have additional requirements about holidays and holiday pay, but those are always in addition to the rules set by the Board.

A holiday is a 24-hour period comprised of the time from midnight of the date designated as a holiday to the next midnight.

There are ways to change the list and the times. Agreement between the worker and employer can allow for up to 4 holidays being changed. For more details, see (rules)

# Topic: Nursing Home Workforce Standards Board Act Other Rights and Protections

## Training

The NHWSB Act directs the NHWSB to certify organizations to train nursing home workers on their rights under the NHWSB Act as well as other applicable laws and rules. Organizations that train nursing home workers on their rights must use a curriculum that meets requirements set by the NHWSB.

The training should be interactive and in a language that you, the worker, are proficient in.

You should receive follow up materials either electronically or in written form and be able to ask questions during or after the training.

The Certified Worker Organization may also follow up with you with a survey about how the training went.

A Certified Worker Organization may ask your employer for your contact information. If you do not want your contact information shared with the worker organization, you have the right to opt out of your employer giving out that information. To opt-out, submit that request in writing to your employer.

Your employer needs to certify that you have been trained for at least one hour every two years.

Finally, the NHWSB determines that you should be compensated for attending the training. "A nursing home employer must compensate its nursing home workers at their regular hourly rate of wages and benefits for each hour of training completed as required by this section and reimburse any reasonable travel expenses associated with attending training sessions not held on the premises of the nursing home." Check with your employer about travel reimbursement and communicate with your trainers about any difficulties.

https://www.revisor.mn.gov/statutes/cite/181.214#stat.181.214.7

## Posting

The nursing home employer where you work should post notice of the rights and obligations under the NHWSB Act in the same way that you would typically be notified of work-related notices.

"Provision of notice must be at least as conspicuous as:

(1) posting a copy of the notice at each work site where nursing home workers work and where the notice may be readily seen and reviewed by all nursing home workers working at the site; or

(2) providing a paper or electronic copy of the notice to all nursing home workers and applicants for employment as a nursing home worker."

Your employer must also notify you that you can request the notice in a language you are proficient in. The Board can assist in translation.

"(b) The notice required by this subdivision must include text provided by the board that informs nursing home workers that they may request the notice to be provided in a particular language. The nursing home employer must provide the notice in the language requested by the nursing home worker. The board must assist nursing home employers in translating the notice in the languages requested by their nursing home workers."

### Conflicts with Other Laws or Agreements

The rights and protections for nursing home workers established by the NHSWB Act are meant to be the minimum protections and standards employers must follow.

If a rule set by a different state agency conflicts with a rule that the NHWSB sets, the rule set by the NHWSB will apply to nursing home workers, unless the rule set by the different state agency was established after the rule set by the NHWSB AND that rule set by the other state agency is more protective or beneficial to nursing home workers.

If a rule set by the NHWSB conflicts with requirements in federal regulations for nursing home certification or with state statutes or rules governing licensure of nursing homes, the federal regulations or state nursing home licensure statutes or rules shall take precedence, and the conflicting board standard or rule shall not apply to nursing home workers or nursing home employers. The Commissioner of Health decides if such a conflict exists, not nursing home employers.

The rights and protections of the NHWSB Act do not limit the rights of workers to engage in collective bargaining (for example, by joining a union), or through a collective bargain (also called a CBA or a union contract) agree to nursing home employment standards OR mean that a nursing home employer doesn't have to comply with any contract, collective bargaining agreement, or employment benefit program or plan that meets or exceeds, and does not conflict with, the minimum standards and requirements under the NHWSB Act.

Ex. J, p. 036

36

# Anti-Retaliation

There are rules against employers retaliating against workers for exercising their rights under the NHWSB Act.

## *Rules for nursing home employers:*

A nursing home employer shall not discharge, discipline, penalize, interfere with, threaten, restrain, coerce, or otherwise retaliate or discriminate against a nursing home worker because the person has exercised or attempted to exercise rights protected under The NHWSB Act (Minnesota Statutes, sections 181.211 to 181.217), including but not limited to:

(1) exercising any right afforded to the nursing home worker under the NHWSB Act;

(2) participating in any process or proceeding under the NHWSB Act, including but not limited to board hearings, board or department investigations, or other related proceedings; or

(3) attending or participating in the training required by the NHWSB Act.

## *Rules for all employers:*

Additionally, it shall be unlawful for an employer to:

(1) inform another employer that a nursing home worker or former nursing home worker has engaged in activities protected under the NHWSB Act; or

(2) report or threaten to report the actual or suspected citizenship or immigration status of a nursing home worker, former nursing home worker, or family member of a nursing home worker to a federal, state, or local agency for exercising or attempting to exercise any right protected under the NHWSB Act.

## *There are consequences if these rules are broken:*

(c) A person found to have experienced retaliation in violation of this section shall be entitled to back pay and reinstatement to the person's previous position, wages, benefits, hours, and other conditions of employment.

# Topic: What to do if you suspect there are violations of the NHWSB Act

There are two options if you suspect you are experiencing violations of the NHWSB Act: Contact Labor Standards at the Department of Labor and Industry or use what is called a Private Right of Action.

## Labor Standards at the Department of Labor and Industry

If you suspect the NHWSB Act is not being followed, you can contact the Labor Standards department at 651-284-5075 or dli.laborstandards@state.mn.us.

## Filing a lawsuit

You can also file a lawsuit, also referred to as taking civil action or exercising a private right of action.

(a)    One or more nursing home workers may bring a civil action in district court seeking redress for violations of sections 181.211 to 181.217 or of any applicable minimum nursing home employment standards or local minimum nursing home employment standards. Such an action may be filed in the district court of the county where a violation or violations are alleged to have been committed or where the nursing home employer resides, or in any other court of competent jurisdiction, and may represent a class of similarly situated nursing home workers.

If it is found that the NHWSB Act has been violated, the employer may be liable for damages.

(a)    Upon a finding of one or more violations, a nursing home employer shall be liable to each nursing home worker for the full amount of the wages, benefits, and overtime compensation, less any amount the nursing home employer is able to establish was actually paid to each nursing home worker, and for an additional equal amount as liquidated damages. In an action under this subdivision, nursing home workers may seek damages and other appropriate relief provided by section 177.27, subdivision 7, or otherwise provided by law, including reasonable costs, disbursements, witness fees, and attorney fees. A court may also issue an order requiring compliance with sections 181.211 to 181.217 or with the applicable minimum nursing home employment standards or local minimum nursing home employment standards. A nursing home worker found to have experienced retaliation in violation of section 181.216 shall be entitled to back pay and reinstatement to the worker's previous position, wages, benefits, hours, and other conditions of employment.

If you have a collective bargaining agreement (CBA, also called a union contract), and the conditions are less favorable than these standards under the NHWSB Act, that is not an excuse to be paid less than the wages and other standards under the NHWSB Act.

(a)    An agreement between a nursing home employer and nursing home worker or labor union that fails to meet the minimum standards and requirements in sections 181.211 to 181.217 or established by the board is not a defense to an action brought under this subdivision.

Resources:

Talk to your collective bargaining agent/union

The Office of Attorney General - Hiring an attorney

National Employment Lawyers Association -  Find-A-Lawyer

Volunteer Lawyers Network – I Need Help

Ex. J, p. 039

39

# Topic: Other important Laws, Rules, Ordinances

## Federal Staffing Rules

Federal Staffing mandates are not set by the NHWSB, but we know that it affects much of the nursing home workers and employers.

You can find the mandates listed here: Federal Register :: Medicare and Medicaid Programs; Minimum Staffing Standards for Long-Term Care Facilities and Medicaid Institutional Payment Transparency Reporting

You can find a press release that summarizes this here: Medicare and Medicaid Programs: Minimum Staffing Standards for Long-Term Care Facilities and Medicaid Institutional Payment Transparency Reporting Final Rule (CMS 3442-F) | CMS

This rule is phased in over 3-5 years, depending on if your facility is considered rural or non-rural.

## Earned Safe and Sick Time

Another recent development that affects many nursing home workers is the statewide Earned Safe and Sick Time Requirements. "Sick and safe time is paid leave employers must provide to employees in Minnesota that can be used for certain reasons, including when an employee is sick, to care for a sick family member or to seek assistance if an employee or their family member has experienced domestic abuse, sexual assault or stalking." Earned sick and safe time (ESST) | Minnesota Department of Labor and Industry (mn.gov)

To ensure that your employer is meeting the minimum requirements for earned safe and sick time accumulation and usage, please visit Earned sick and safe time (ESST) | Minnesota Department of Labor and Industry (mn.gov)

- MNOSHA

    - Minnesota's chapter of OSHA (Occupational Safety and Health Administration)

- Safe Patient Handling Act

- Every licensed health care facility in the state shall adopt a written safe patient handling policy establishing the facility's plan to achieve the goal of minimizing manual lifting of patients by nurses and other direct patient care workers by utilizing safe patient handling equipment. MN Statute §182.6551 – §182.6554

Ex. J, p. 040

- **Employee's Right to Know** and **HAZCOM**

  - Employers must evaluate their workplaces for the existence of hazardous substances, harmful physical agents, and infectious agents and to provide training and information to those employees covered under this act who are routinely exposed to those substances and agents. MN Statute chapter 5206

- **MNOSHA Ergonomics**

  - Employers must proactively address ergonomics issues in the workplace MN Statutes §182.677

- **National Labor Relations Act**

  - This federal act protects your right to discuss wages at work and encourages collective bargaining by protecting workers' full freedom of association

- **Minnesota paid family and medical leave**

  - The new Minnesota law will take effect on January 1, 2026, and will provide 12 weeks of paid family or medical leave

# Topic: Updates to the Training and upcoming events

## Where to get info about upcoming Board events

You can find information about the NHWSB here Nursing Home Workforce Standards Board | Minnesota Department of Labor and Industry (mn.gov)

The NHWSB has public meeting notifications posted there and you can find out more information about how to get involved with the NHWSB there as well.

Ex. J, p. 041

41

# Sample Curriculum







# Sample Curriculum







# Sample Curriculum



# Sample Curriculum

### Wage and other standards

This is a minimum set of holidays. An employer may pay more than time and a half and may pay holiday pay on more days than these minimum 11 holidays. Some union contracts may have additional requirements about holidays and holiday pay, but those are always in addition to the rules set by the Board.

A holiday is a 24-hour period from midnight to the next midnight.

There are ways to change the holiday list and holiday the times. Agreement between the workers and employer can allow for up to 4 holidays being changed. For more details, see (rules)



**DEPARTMENT OF LABOR AND INDUSTRY**

### Rights and protections

### Other Rights and Protections

**Training**

All workers must be informed of their rights under the NHWSB Act as well as other applicable laws and rules at least every two years. Organizations that train nursing home workers on their rights must use a curriculum that meets requirements set by the NHWSB.

The training should be interactive and in a language that you, the worker, are proficient in.

You should receive follow up materials either electronically or in written form and you should be able to ask questions during or after the training.

The Certified Worker Organization may also follow up with you with a survey about how the training went. This is not required.

# Sample Curriculum

## Other Rights and Protections

**Training**

A Certified Worker Organization may ask your employer for your contact information. If you do not want your contact information shared with the worker organization, you have the right to opt out. To opt-out, submit a request in writing to your employer.

Your employer needs to certify that you have been trained for at least one hour every two years.

You should be compensated for attending the training at your hourly rate for each hour of training you attend as well as reimbursed for any reasonable travel expenses associated with attending the training sessions not held at the nursing home.

Check with your employer about policies regarding travel reimbursement and payment for time worked outside of your facility. Communicate with your trainers about any difficulties.

8/7/2024     www.dli.mn.gov     17

## Other Rights and Protections

**Posting**

Your employer should post notice of the rights and obligations under the NHWSB Act in the same way that you would typically be notified of other work-related notices.

The notice must be communicated clearly, such as:

- Posting a copy of the notice at each work site where it can be seen by all nursing home workers
- Providing a paper or electronic copy of the notice to all nursing home workers and applicants for employment

Your employer must also notify you that you can request the notice in a language you are proficient in. The Board can assist in translation.

8/7/2024     www.dli.mn.gov     18

## Other Rights and Protections

**Conflicts**

If a rule set by a different state agency conflicts with a rule that the NHWSB sets, the rule set by the NHWSB will apply to nursing home workers, unless the rule set by the different state agency was established after the rule set by the NHWSB AND that rule set by the other state agency is more protective or beneficial to nursing home workers.

The rights and protections of the NHWSB Act do not limit the rights of workers to engage in collective bargaining (for example, by joining a union), or through a collective bargain (also called a CBA or a union contract) agree to nursing home employment standards OR mean that a nursing home employer doesn't have to comply with any contract, collective bargaining agreement, or employment benefit program or plan that meets or exceeds, and does not conflict with, the minimum standards and requirements under the NHWSB Act.



8/7/2024     www.dli.mn.gov     19

## Other Rights and Protections

**Anti-retaliation**

There are rules against employers retaliating against workers for exercising their rights under the NHWSB Act.

**Rules for nursing home employers**

A nursing home employer shall not discharge, discipline, penalize, interfere with, threaten, restrain, coerce, or otherwise retaliate or discriminate against a nursing home worker because the person has exercised or attempted to exercise rights protected under the NHWSB Act, including but not limited to:

- Exercising any right afforded to the nursing home worker under the NHWSB Act;
- Participating in any process or proceeding under the NHWSB Act such as: board hearings, board or department investigations, or other related proceedings
- Attending or participating in the training required by the NHWSB Act.



8/7/2024     www.dli.mn.gov     20

Ex. J, p. 046

# Sample Curriculum

### Other Rights and Protections

**Anti-retaliation**

Additionally, it shall be unlawful for an employer to:

- Inform another employer that a nursing home worker or former nursing home worker has engaged in activities protected under the NHWSB Act; or
- Report or threaten to report the actual or suspected citizenship or immigration status of a nursing home worker, former nursing home worker, or family member of a nursing home worker to a federal, state, or local agency for exercising or attempting to exercise any right protected under the NHWSB Act.

3/7/2024    www.dli.mn.gov    21

### Other Rights and Protections

**Anti-retaliation**

There are consequences if these rules are broken.

A person found to have experienced retaliation in violation of this section shall be entitled to back pay and reinstatement to the person's previous position, wages, benefits, hours, and other conditions of employment.

3/7/2024    www.dli.mn.gov    22

## Questions?

**DEPARTMENT OF LABOR AND INDUSTRY**

### Violations

# Sample Curriculum

### Violations

If it is found that the NHWSB Act has been violated, the employer may be liable for damages.

If you have a collective bargaining agreement (sometimes referred to as a CBA or union contract), and the conditions are less favorable than the standards under the NHWSB Act, that is not an excuse to be paid less than the wages and other standards set under the NHWSB Act.

8/1/2024    www.dli.mn.gov    25

### Violations

There are two options for you if you expect your employer has violated your rights under the NHWSB Act.

1. **Labor Standards at the Department of Labor and Industry**
   If you suspect the NHWSB Act is not being followed, you can contact the Labor Standards department at 651-284-5075 or dli.laborstandards@state.mn.us.

2. **Filing a lawsuit**
   You can also file a lawsuit, also referred to as taking civil action or exercising a private right of action.

8/1/2024    www.dli.mn.gov    26

### Violations- Resources

- Talk to your collective bargaining agent/union
- The Office of Attorney General - Hiring an attorney
- National Employment Lawyers Association - Find-A-Lawyer
- Volunteer Lawyers Network – I Need Help

8/1/2024    www.dli.mn.gov    27



Questions?

# Sample Curriculum



Ex. J, p. 049

49

# Sample Curriculum

**Updates**

You can find information about the NHWSB here Nursing Home Workforce Standards Board | Minnesota Department of Labor and Industry (mn.gov)

The website contains NHWSB public meeting notifications and other information about how you can connect with the NHWSB.

**MINNESOTA**
NURSING HOME WORKFORCE STANDARDS BOARD

**Thank you**

# Sample Follow Up Document

| | Agency/Department | Resources | Contact Information |
|---|---|---|---|
| **Federal Staffing Rules** | **Centers for Medicare & Medicaid Services (CMS), Department of Health and Human Services (HHS)** | **Rule Information** | |
| **Earned Safe and Sick Time** | **State of Minnesota (MN), Department of Labor and Industry (DLI)** | **ESST FAQ's** | **esst.dli@state.mn.us** **(651) 284-5075** |
| **Minnesota OSHA** | **Minnesota OSHA (MNOSHA)** | **Standards and Regulations** | **651-284-5050 or 877-470-6742** |
| **Safe Patient Handling Act** | **Minnesota OSHA (MNOSHA)** | **Information** | **651-284-5050 or 877-470-6742** |
| **Employee's Right to Know** | **Minnesota OSHA (MNOSHA)** | **Employee Right to Know** **Statute** | **651-259-3700** |
| **HAZCOM** | **Minnesota OSHA (MNOSHA)** | **Standards and Regulations** **Statute** | **651-284-5050 or 877-470-6742** |
| **National Labor Relations Act (NLRA)** | **National Labor Relations Board (NLRB)** | **FAQ's Information Right to discuss wages** | **Region 18- (612) 348-1757** |
| **Minnesota paid family or medical leave** | **State of Minnesota (MN) Department of Employment Economic Development (DEED)** | **Information** | **Ask a question** |
| | | | |
| **(Fill in your information here)** | | | |
| **NHWSB Information:** | **Department of Labor and Industry (DLI) Nursing Home Workforce Standards Board (NHWSB)** | **About the Nursing Home Workforce Standards Board** | **nhwsb.dli@state.mn.us** |

Ex. J, p. 051    51

## Federal Staffing Rules

- Federal Staffing mandates are not set by the NHWSB, but we know they affect nursing home workers and employers. This rule is phased in over 3-5 years, depending on if your facility is considered rural or non-rural. For more information, please visit : Federal Register :: Medicare and Medicaid Programs; Minimum Staffing Standards for Long-Term Care Facilities and Medicaid Institutional Payment Transparency Reporting

## Earned Safe and Sick Time

- Another recent development that affects many nursing home workers is the statewide Earned Safe and Sick Time Requirements. "Sick and safe time is paid leave employers must provide to employees in Minnesota that can be used for certain reasons." To ensure that your employer is meeting the minimum requirements for earned safe and sick time accumulation and usage, please visit Earned sick and safe time (ESST) | Minnesota Department of Labor and Industry (mn.gov)

## MNOSHA

- Minnesota's chapter of OSHA (Occupational Safety and Health Administration)

## Safe Patient Handling Act

- Every licensed health care facility in the state shall adopt a written safe patient handling policy establishing the facility's plan to achieve the goal of minimizing manual lifting of patients by nurses and other direct patient care workers by utilizing safe patient handling equipment. MN Statute 182.6551 – 182.6554

## Employee's Right to Know and HAZCOM

- Employers must evaluate their workplaces for the existence of hazardous substances, harmful physical agents, and infectious agents and to provide training and information to those employees covered under this act who are routinely exposed to those substances and agents. MN Statute chapter 5206

## National Labor Relations Act

- This federal act protects your right to discuss wages at work and encourages collective bargaining by protecting workers' full freedom of association

## Minnesota paid family or medical leave

- The new Minnesota law will take effect on January 1, 2026, and will provide 12 weeks of paid family or medical leave

52

Ex. J, p. 052

# EXHIBIT K

This Document can be made available
in alternative formats upon request

State of Minnesota

# HOUSE OF REPRESENTATIVES

**NINETY-FOURTH SESSION**

**H. F. No. 500**

02/13/2025    Authored by Zeleznikar, Franson, Baker, Backer, Knudsen and others
The bill was read for the first time and referred to the Committee on Human Services Finance and Policy

A bill for an act

relating to labor; repealing the Nursing Home Workforce Standards Board; amending Minnesota Statutes 2024, section 177.27, subdivision 7; repealing Minnesota Statutes 2024, sections 181.211; 181.212; 181.213; 181.214; 181.215; 181.216; 181.217.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MINNESOTA:

Section 1. Minnesota Statutes 2024, section 177.27, subdivision 7, is amended to read:

Subd. 7. **Employer liability.** If an employer is found by the commissioner to have violated a section identified in subdivision 4, or any rule adopted under section 177.28, ~~181.213, or 181.215,~~ and the commissioner issues an order to comply, the commissioner shall order the employer to cease and desist from engaging in the violative practice and to take such affirmative steps that in the judgment of the commissioner will effectuate the purposes of the section or rule violated. In addition to remedies, damages, and penalties provided for in the violated section, the commissioner shall order the employer to pay to the aggrieved parties back pay, gratuities, and compensatory damages, less any amount actually paid to the aggrieved parties by the employer, and for an additional equal amount as liquidated damages. The commissioner may also order reinstatement and any other appropriate relief to the aggrieved parties. Any employer who is found by the commissioner to have repeatedly or willfully violated a section or sections identified in subdivision 4 shall be subject to an additional civil penalty of up to $10,000 for each violation for each employee. In determining the amount of a civil penalty under this subdivision, the appropriateness of such penalty to the size of the employer's business and the gravity of the violation shall be considered. In addition, the commissioner may order the employer to reimburse the department and the attorney general for all appropriate litigation and hearing costs expended

Section 1.

1

in preparation for and in conducting the contested case proceeding, unless payment of costs would impose extreme financial hardship on the employer. If the employer is able to establish extreme financial hardship, then the commissioner may order the employer to pay a percentage of the total costs that will not cause extreme financial hardship. Costs include but are not limited to the costs of services rendered by the attorney general, private attorneys if engaged by the department, administrative law judges, court reporters, and expert witnesses as well as the cost of transcripts. Interest shall accrue on, and be added to, the unpaid balance of a commissioner's order from the date the order is signed by the commissioner until it is paid, at an annual rate provided in section 549.09, subdivision 1, paragraph (c). The commissioner may establish escrow accounts for purposes of distributing remedies and damages.

Sec. 2. **REPEALER.**

Minnesota Statutes 2024, sections 181.211; 181.212; 181.213; 181.214; 181.215; 181.216; and 181.217, are repealed.

Ex. K, p. 002

APPENDIX
Repealed Minnesota Statutes: 25-02233

**181.211 DEFINITIONS.**

Subdivision 1. **Application.** The terms defined in this section apply to sections 181.211 to 181.217.

Subd. 2. **Board.** "Board" means the Minnesota Nursing Home Workforce Standards Board established under section 181.212.

Subd. 3. **Certified worker organization.** "Certified worker organization" means a worker organization that is certified by the board to conduct nursing home worker trainings under section 181.214.

Subd. 4. **Commissioner.** "Commissioner" means the commissioner of labor and industry.

Subd. 5. **Compensation.** "Compensation" means all income and benefits paid by a nursing home employer to a nursing home worker or on behalf of a nursing home worker, including but not limited to wages, bonuses, differentials, paid leave, pay for scheduling changes, and pay for training or occupational certification.

Subd. 6. **Employer organization.** "Employer organization" means:

(1) an organization that is exempt from federal income taxation under section 501(c)(6) of the Internal Revenue Code and that represents nursing home employers; or

(2) an entity that employers, who together employ a majority of nursing home workers in Minnesota, have selected as a representative.

Subd. 7. **Nursing home.** "Nursing home" means a nursing home licensed under chapter 144A, or a boarding care home licensed under sections 144.50 to 144.56.

Subd. 8. **Nursing home employer.** "Nursing home employer" means an employer of nursing home workers in a licensed, Medicaid-certified facility that is reimbursed under chapter 256R.

Subd. 9. **Nursing home worker.** "Nursing home worker" means any worker who provides services in a nursing home in Minnesota, including direct care staff, non-direct care staff, and contractors, but excluding administrative staff, medical directors, nursing directors, physicians, and individuals employed by a supplemental nursing services agency.

Subd. 10. **Worker organization.** "Worker organization" means an organization that is exempt from federal income taxation under section 501(c)(3), 501(c)(4), or 501(c)(5) of the Internal Revenue Code, that is not dominated or interfered with by any nursing home employer within the meaning of United States Code, title 29, section 158a(2), and that has at least five years of demonstrated experience engaging with and advocating for nursing home workers.

**181.212 MINNESOTA NURSING HOME WORKFORCE STANDARDS BOARD; ESTABLISHMENT.**

Subdivision 1. **Board established; membership.** (a) The Minnesota Nursing Home Workforce Standards Board is created with the powers and duties established by law. The board is composed of the following voting members:

(1) the commissioner of human services or a designee;

(2) the commissioner of health or a designee;

(3) the commissioner of labor and industry or a designee;

(4) three members who represent nursing home employers or employer organizations, appointed by the governor in accordance with section 15.066; and

(5) three members who represent nursing home workers or worker organizations, appointed by the governor in accordance with section 15.066.

(b) In making appointments under clause (4), the governor shall consider the geographic distribution of nursing homes within the state.

Subd. 2. **Terms; vacancies.** (a) Board members appointed under subdivision 1, clause (4) or (5), shall serve four-year terms following the initial staggered-lot determination.

(b) For members appointed under subdivision 1, clause (4) or (5), the governor shall fill vacancies occurring prior to the expiration of a member's term by appointment for the unexpired term. A

1R

APPENDIX
Repealed Minnesota Statutes: 25-02233

member appointed under subdivision 1, clause (4) or (5), must not be appointed to more than two consecutive terms.

(c) A member serves until a successor is appointed.

Subd. 3. **Chairperson.** The board shall elect a member by majority vote to serve as its chairperson and shall determine the term to be served by the chairperson.

Subd. 4. **Staffing.** The commissioner may employ an executive director for the board and other personnel to carry out duties of the board under sections 181.211 to 181.217.

Subd. 5. **Board compensation.** Compensation of board members is governed by section 15.0575.

Subd. 6. **Application of other laws.** Meetings of the board are subject to chapter 13D. The board is subject to chapter 13. The board shall comply with section 15.0597.

Subd. 7. **Voting.** The affirmative vote of five board members is required for the board to take any action, including actions necessary to establish minimum nursing home employment standards under section 181.213. At least two of the five affirmative votes must be cast by the commissioner members or the commissioner's appointees.

Subd. 8. **Hearings and investigations.** To carry out its duties, the board shall hold public hearings on, and conduct investigations into, working conditions in the nursing home industry in accordance with section 181.213.

Subd. 9. **Department support.** The commissioner shall provide staff support to the board. The support includes professional, legal, technical, and clerical staff necessary to perform rulemaking and other duties assigned to the board. The commissioner shall supply necessary office space and supplies to assist the board in its duties.

Subd. 10. **Antitrust compliance.** The board shall establish operating procedures that meet all state and federal antitrust requirements and may prohibit board member access to data to meet the requirements of this subdivision.

Subd. 11. **Annual report.** By December 1, 2023, and each December 1 thereafter, the executive director of the board shall submit a report to the chairs and ranking minority members of the house of representatives and senate committees with jurisdiction over labor and human services on any actions taken and any standards adopted by the board.

**181.213 DUTIES OF THE BOARD; MINIMUM NURSING HOME EMPLOYMENT STANDARDS.**

Subdivision 1. **Authority to establish minimum nursing home employment standards.** (a) The board must adopt rules establishing minimum nursing home employment standards that are reasonably necessary and appropriate to protect the health and welfare of nursing home workers, to ensure that nursing home workers are properly trained about and fully informed of their rights under sections 181.211 to 181.217, and to otherwise satisfy the purposes of sections 181.211 to 181.217. Standards established by the board must include standards on compensation for nursing home workers, and may include recommendations under paragraph (c). The board may not adopt standards that are less protective of or beneficial to nursing home workers as any other applicable statute or rule or any standard previously established by the board unless there is a determination by the board under subdivision 2 that existing standards exceed the operating payment rate and external fixed costs payment rates included in the most recent budget and economic forecast completed under section 16A.103. In establishing standards under this section, the board must establish statewide standards, and may adopt standards that apply to specific nursing home occupations.

(b) The board must adopt rules establishing initial standards for wages for nursing home workers no later than November 1, 2024. The board may use the authority in section 14.389 to adopt rules under this paragraph. The board shall consult with the department in the development of these standards prior to beginning the rule adoption process.

(c) To the extent that any minimum standards that the board finds are reasonably necessary and appropriate to protect the health and welfare of nursing home workers fall within the jurisdiction of chapter 182, the board shall not adopt rules establishing the standards but shall instead recommend the occupational health and safety standards to the commissioner. The commissioner shall adopt nursing home health and safety standards under section 182.655 as recommended by the board, unless the commissioner determines that the recommended standard is outside the statutory authority

2R

APPENDIX
Repealed Minnesota Statutes: 25-02233

of the commissioner, presents enforceability challenges, is infeasible to implement, or is otherwise unlawful and issues a written explanation of this determination.

Subd. 2. **Investigation of market conditions.** (a) The board must investigate market conditions and the existing wages, benefits, and working conditions of nursing home workers for specific geographic areas of the state and specific nursing home occupations. Based on this information, the board must seek to adopt minimum nursing home employment standards that meet or exceed existing industry conditions for a majority of nursing home workers in the relevant geographic area and nursing home occupation. Except for standards exceeding the threshold determined in paragraph (d), initial employment standards established by the board are effective beginning January 1, 2025, and shall remain in effect until any subsequent standards are adopted by rules.

(b) The board must consider the following types of information in making determinations that employment standards are reasonably necessary to protect the health and welfare of nursing home workers:

(1) wage rate and benefit data collected by or submitted to the board for nursing home workers in the relevant geographic area and nursing home occupations;

(2) statements showing wage rates and benefits paid to nursing home workers in the relevant geographic area and nursing home occupations;

(3) signed collective bargaining agreements applicable to nursing home workers in the relevant geographic area and nursing home occupations;

(4) testimony and information from current and former nursing home workers, worker organizations, nursing home employers, and employer organizations;

(5) local minimum nursing home employment standards;

(6) information submitted by or obtained from state and local government entities; and

(7) any other information pertinent to establishing minimum nursing home employment standards.

(c) In considering wage and benefit increases, the board must determine the impact of nursing home operating payment rates determined pursuant to section 256R.21, subdivision 3, and the employee benefits portion of the external fixed costs payment rate determined pursuant to section 256R.25. If the board, in consultation with the commissioner of human services, determines the operating payment rate and employee benefits portion of the external fixed costs payment rate will increase to comply with the new employment standards, the board shall report to the legislature the increase in funding needed to increase payment rates to comply with the new employment standards and must make implementation of any new nursing home employment standards contingent upon an appropriation, as determined by sections 256R.21 and 256R.25, to fund the rate increase necessary to comply with the new employment standards.

(d) In evaluating the impact of the employment standards on payment rates determined by sections 256R.21 and 256R.25, the board, in consultation with the commissioner of human services, must consider the following:

(1) the statewide average wage rates for employees pursuant to section 256R.10, subdivision 5, and benefit rates pursuant to section 256R.02, subdivisions 18 and 22, as determined by the annual Medicaid cost report used to determine the operating payment rate and the employee benefits portion of the external fixed costs payment rate for the first day of the calendar year immediately following the date the board has established minimum wage and benefit levels;

(2) compare the results of clause (1) to the operating payment rate and employee benefits portion of the external fixed costs payment rate increase for the first day of the second calendar year after the adoption of any nursing home employment standards included in the most recent budget and economic forecast completed under section 16A.103; and

(3) if the established nursing home employment standards result in an increase in costs that exceed the operating payment rate and external fixed costs payment rate increase included in the most recent budget and economic forecast completed under section 16A.103, effective on the proposed implementation date of the new nursing home employment standards, the board must determine if the rates will need to be increased to meet the new employment standards and the standards must not be effective until an appropriation sufficient to cover the rate increase and federal approval of the rate increase is obtained.

3R

APPENDIX
Repealed Minnesota Statutes: 25-02233

(e) The budget and economic forecasts completed under section 16A.103 shall not assume an increase in payment rates determined under chapter 256R resulting from the new employment standards until the board certifies the rates will need to be increased and the legislature appropriates funding for the increase in payment rates.

Subd. 3. **Review of standards.** At least once every two years, the board shall:

(1) conduct a full review of the adequacy of the minimum nursing home employment standards previously established by the board; and

(2) following that review, adopt new rules, amend or repeal existing rules, or make recommendations to adopt new rules or amend or repeal existing rules for minimum nursing home employment standards using the expedited rulemaking process in section 14.389, as appropriate to meet the purposes of sections 181.211 to 181.217.

Subd. 4. **Variance and waiver.** The board shall adopt procedures for considering temporary variances and waivers of the established standards for individual nursing homes based on the board's evaluation of the risk of closure or receivership under section 144A.15, due to compliance with all or part of an applicable standard.

Subd. 5. **Conflict.** (a) In the event of a conflict between a standard established by the board in rule and a rule adopted by another state agency, the rule adopted by the board shall apply to nursing home workers and nursing home employers.

(b) Notwithstanding paragraph (a), in the event of a conflict between a standard established by the board in rule and a rule adopted by another state agency, the rule adopted by the other state agency shall apply to nursing home workers and nursing home employers if the rule adopted by the other state agency is adopted after the board's standard and the rule adopted by the other state agency is more protective or beneficial than the board's standard.

(c) Notwithstanding paragraph (a), if the commissioner of health determines that a standard established by the board in rule or recommended by the board conflicts with requirements in federal regulations for nursing home certification or with state statutes or rules governing licensure of nursing homes, the federal regulations or state nursing home licensure statutes or rules shall take precedence, and the conflicting board standard or rule shall not apply to nursing home workers or nursing home employers.

Subd. 6. **Effect on other agreements.** Nothing in sections 181.211 to 181.217 shall be construed to:

(1) limit the rights of parties to a collective bargaining agreement to bargain and agree with respect to nursing home employment standards; or

(2) diminish the obligation of a nursing home employer to comply with any contract, collective bargaining agreement, or employment benefit program or plan that meets or exceeds, and does not conflict with, the minimum standards and requirements in sections 181.211 to 181.217 or established by the board.

**181.214 DUTIES OF THE BOARD; TRAINING FOR NURSING HOME WORKERS.**

Subdivision 1. **Certification of worker organizations.** The board shall certify worker organizations that it finds are qualified to provide training to nursing home workers according to this section. The board shall by rule establish certification criteria that a worker organization must meet in order to be certified and provide a process for renewal of certification upon the board's review of the worker organization's compliance with this section. In adopting rules to establish certification criteria under this subdivision, the board may use the authority in section 14.389. The criteria must ensure that a worker organization, if certified, is able to provide:

(1) effective, interactive training on the information required by this section; and

(2) follow-up written materials and responses to inquiries from nursing home workers in the languages in which nursing home workers are proficient.

Subd. 2. **Curriculum.** (a) The board shall establish requirements for the curriculum for the nursing home worker training required by this section. A curriculum must at least provide the following information to nursing home workers:

(1) the applicable compensation and working conditions in the minimum standards or local minimum standards established by the board;

4R

Ex. K, p. 006

APPENDIX
Repealed Minnesota Statutes: 25-02233

(2) the antiretaliation protections established in section 181.216;

(3) information on how to enforce sections 181.211 to 181.217 and on how to report violations of sections 181.211 to 181.217 or of standards established by the board, including contact information for the Department of Labor and Industry, the board, and any local enforcement agencies, and information on the remedies available for violations;

(4) the purposes and functions of the board and information on upcoming hearings, investigations, or other opportunities for nursing home workers to become involved in board proceedings;

(5) other rights, duties, and obligations under sections 181.211 to 181.217;

(6) any updates or changes to the information provided according to clauses (1) to (5) since the most recent training session;

(7) any other information the board deems appropriate to facilitate compliance with sections 181.211 to 181.217; and

(8) information on labor standards in other applicable local, state, and federal laws, rules, and ordinances regarding nursing home working conditions or nursing home worker health and safety.

(b) Before establishing initial curriculum requirements, the board must hold at least one public hearing to solicit input on the requirements.

Subd. 3. **Topics covered in training session.** A certified worker organization is not required to cover all of the topics listed in subdivision 2 in a single training session. A curriculum used by a certified worker organization may provide instruction on each topic listed in subdivision 2 over the course of up to three training sessions.

Subd. 4. **Annual review of curriculum requirements.** The board must review the adequacy of its curriculum requirements at least annually and must revise the requirements as appropriate to meet the purposes of sections 181.211 to 181.217. As part of each annual review of the curriculum requirements, the board must hold at least one public hearing to solicit input on the requirements.

Subd. 5. **Duties of certified worker organizations.** A certified worker organization:

(1) must use a curriculum for its training sessions that meets requirements established by the board;

(2) must provide trainings that are interactive and conducted in the languages in which the attending nursing home workers are proficient;

(3) must, at the end of each training session, provide attending nursing home workers with follow-up written or electronic materials on the topics covered in the training session, in order to fully inform nursing home workers of their rights and opportunities under sections 181.211 to 181.217;

(4) must make itself reasonably available to respond to inquiries from nursing home workers during and after training sessions; and

(5) may conduct surveys of nursing home workers who attend a training session to assess the effectiveness of the training session and industry compliance with sections 181.211 to 181.217 and other applicable laws, rules, and ordinances governing nursing home working conditions or worker health and safety.

Subd. 6. **Nursing home employer duties regarding training.** (a) A nursing home employer must submit written documentation to the board to certify that every two years each of its nursing home workers completes one hour of training that meets the requirements of this section and is provided by a certified worker organization. A nursing home employer may, but is not required to, host training sessions on the premises of the nursing home.

(b) If requested by a certified worker organization, a nursing home employer must, after a training session provided by the certified worker organization, provide the certified worker organization with the names and contact information of the nursing home workers who attended the training session, unless a nursing home worker opts out according to paragraph (c).

(c) A nursing home worker may opt out of having the worker's nursing home employer provide the worker's name and contact information to a certified worker organization that provided a training session attended by the worker by submitting a written statement to that effect to the nursing home employer.

5R

APPENDIX
Repealed Minnesota Statutes: 25-02233

Subd. 7. **Training compensation.** A nursing home employer must compensate its nursing home workers at their regular hourly rate of wages and benefits for each hour of training completed as required by this section and reimburse any reasonable travel expenses associated with attending training sessions not held on the premises of the nursing home.

### 181.215 REQUIRED NOTICES.

Subdivision 1. **Provision of notice.** (a) Nursing home employers must provide notices informing nursing home workers of the rights and obligations provided under sections 181.211 to 181.217 of applicable minimum nursing home employment standards and local minimum standards and that for assistance and information, nursing home workers should contact the Department of Labor and Industry. A nursing home employer must provide notice using the same means that the nursing home employer uses to provide other work-related notices to nursing home workers. Provision of notice must be at least as conspicuous as:

(1) posting a copy of the notice at each work site where nursing home workers work and where the notice may be readily seen and reviewed by all nursing home workers working at the site; or

(2) providing a paper or electronic copy of the notice to all nursing home workers and applicants for employment as a nursing home worker.

(b) The notice required by this subdivision must include text provided by the board that informs nursing home workers that they may request the notice to be provided in a particular language. The nursing home employer must provide the notice in the language requested by the nursing home worker. The board must assist nursing home employers in translating the notice in the languages requested by their nursing home workers.

Subd. 2. **Minimum content and posting requirements.** The board must adopt rules under section 14.389 specifying the minimum content and posting requirements for the notices required in subdivision 1. The board must make available to nursing home employers a template or sample notice that satisfies the requirements of this section and rules adopted under this section.

### 181.216 RETALIATION PROHIBITED.

(a) A nursing home employer shall not discharge, discipline, penalize, interfere with, threaten, restrain, coerce, or otherwise retaliate or discriminate against a nursing home worker because the person has exercised or attempted to exercise rights protected under sections 181.211 to 181.217, including but not limited to:

(1) exercising any right afforded to the nursing home worker under sections 181.211 to 181.217;

(2) participating in any process or proceeding under sections 181.211 to 181.217, including but not limited to board hearings, board or department investigations, or other related proceedings; or

(3) attending or participating in the training required by section 181.214.

(b) It shall be unlawful for an employer to:

(1) inform another employer that a nursing home worker or former nursing home worker has engaged in activities protected under sections 181.211 to 181.217; or

(2) report or threaten to report the actual or suspected citizenship or immigration status of a nursing home worker, former nursing home worker, or family member of a nursing home worker to a federal, state, or local agency for exercising or attempting to exercise any right protected under sections 181.211 to 181.217.

(c) A person found to have experienced retaliation in violation of this section shall be entitled to back pay and reinstatement to the person's previous position, wages, benefits, hours, and other conditions of employment.

### 181.217 ENFORCEMENT.

Subdivision 1. **Minimum nursing home employment standards.** Except as provided in section 181.213, subdivision 5, paragraph (b) or (c), the minimum wages and other compensation established by the board in rule as minimum nursing home employment standards shall be the minimum wages and other compensation for nursing home workers or a subgroup of nursing home workers as a matter of state law. Except as provided in section 181.213, subdivision 5, paragraph (b) or (c), it shall be unlawful for a nursing home employer to employ a nursing home worker for lower wages or other compensation than that established as the minimum nursing home employment standards.

6R

APPENDIX
Repealed Minnesota Statutes: 25-02233

Subd. 2. **Investigations.** The commissioner may investigate possible violations of sections 181.214 to 181.217 or of the minimum nursing home employment standards established by the board whenever it has cause to believe that a violation has occurred, either on the basis of a report of a suspected violation or on the basis of any other credible information, including violations found during the course of an investigation.

Subd. 3. **Civil action by nursing home worker.** (a) One or more nursing home workers may bring a civil action in district court seeking redress for violations of sections 181.211 to 181.217 or of any applicable minimum nursing home employment standards or local minimum nursing home employment standards. Such an action may be filed in the district court of the county where a violation or violations are alleged to have been committed or where the nursing home employer resides, or in any other court of competent jurisdiction, and may represent a class of similarly situated nursing home workers.

(b) Upon a finding of one or more violations, a nursing home employer shall be liable to each nursing home worker for the full amount of the wages, benefits, and overtime compensation, less any amount the nursing home employer is able to establish was actually paid to each nursing home worker, and for an additional equal amount as liquidated damages. In an action under this subdivision, nursing home workers may seek damages and other appropriate relief provided by section 177.27, subdivision 7, or otherwise provided by law, including reasonable costs, disbursements, witness fees, and attorney fees. A court may also issue an order requiring compliance with sections 181.211 to 181.217 or with the applicable minimum nursing home employment standards or local minimum nursing home employment standards. A nursing home worker found to have experienced retaliation in violation of section 181.216 shall be entitled to back pay and reinstatement to the worker's previous position, wages, benefits, hours, and other conditions of employment.

(c) An agreement between a nursing home employer and nursing home worker or labor union that fails to meet the minimum standards and requirements in sections 181.211 to 181.217 or established by the board is not a defense to an action brought under this subdivision.

7R

# EXHIBIT L

Office of the Revisor of Statutes

## Office of the Revisor of Statutes

| HF 500 | 2nd Engrossment - 94th Legislature (2025 - 2026)<br>Posted on 03/12/2025 12:33 p.m. |
|---|---|

KEY: ~~stricken~~ = removed, old language.    <u>underscored</u> = added, new language.

Version List   HF500 Authors and Status                                                 PDF   Rtf

Jump to page/line #     [ eg. 2.1 ]

A bill for an act

relating to labor; modifying the Nursing Home Workforce Standards Board; amending Minnesota Statutes 2024, sections 181.212, subdivision 7; 181.213, subdivisions 1, 2, 3; 181.214, subdivision 1; 181.215, subdivision 2.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MINNESOTA:

Section 1. Minnesota Statutes 2024, section 181.212, subdivision 7, is amended to read:

Subd. 7. **Voting.** The affirmative vote of five board members is required for the board to take ~~any~~ action<u>, including</u>. An affirmative vote of, at minimum, six board members is required for actions necessary to establish minimum nursing home employment standards under section 181.213. ~~At least two of the five affirmative votes must be cast by the~~ ~~commissioner members or the commissioner's appointees.~~<u>, including at least:</u>

<u>(1) two votes cast by members who are commissioners or commissioners' designees;</u>

<u>(2) two votes cast by members who represent nursing home employers or employer organizations; and</u>

<u>(3) two votes cast by members who represent nursing home workers or worker organizations.</u>

Sec. 2. Minnesota Statutes 2024, section 181.213, subdivision 1, is amended to read:

Subdivision 1. **Authority to establish minimum nursing home employment standards.** (a) The board must adopt rules establishing minimum nursing home employment standards that are reasonably necessary and appropriate to protect the health and welfare of nursing home workers, to ensure that nursing home workers are properly trained about and fully informed of their rights under sections 181.211 to 181.217, and to otherwise satisfy the purposes of sections 181.211 to 181.217. Standards established by the board must include standards on compensation for nursing home workers, and may include recommendations under paragraph (c). The board may not adopt standards that are less protective of or beneficial to nursing home workers as any other applicable statute or rule or any standard previously established by the board unless there is a determination by the board under subdivision 2 that existing standards exceed the operating payment rate and external fixed costs payment rates included in the most recent budget and economic forecast completed under section 16A.103. In establishing standards under this section, the board must establish statewide standards, and may adopt standards that apply to specific nursing home occupations.

(b) The board must adopt rules establishing initial standards for wages for nursing home workers no later than November 1, 2024. ~~The board may use the authority in section 14.389~~ ~~to adopt rules under this paragraph.~~ The board shall consult with the department in the development of these standards prior to beginning the rule adoption process.

(c) To the extent that any minimum standards that the board finds are reasonably necessary are appropriate to protect the health and welfare of nursing home workers fall within the jurisdiction of chapter 182, the board shall not adopt rules establishing the standards but shall instead recommend the occupational health and safety standards to the commissioner. The commissioner shall adopt nursing home health and safety standards under section 182.655 as recommended by the board, unless the commissioner determines that the recommended standard is outside the statutory authority of the commissioner, presents enforceability challenges, is infeasible to implement, or is otherwise unlawful and issues a written explanation of this determination.

Sec. 3. Minnesota Statutes 2024, section 181.213, subdivision 2, is amended to read:

Subd. 2. **Investigation of market conditions.** (a) The board must investigate market conditions and the existing wages, benefits, and working conditions of nursing home workers for specific geographic areas of the state and specific nursing home occupations. Based on this information, the board must seek to adopt minimum nursing home employment standards that meet or exceed existing industry conditions for a majority of nursing home workers in the relevant geographic area and nursing home occupation. ~~Except for standards exceeding the threshold determined in paragraph (d), initial employment standards established by the board are effective beginning January 1, 2025, and shall remain in effect until any subsequent standards are adopted by rules.~~

(b) The board must consider the following types of information in making determinations that employment standards are reasonably necessary to protect the health and welfare of nursing home workers:

(1) wage rate and benefit data collected by or submitted to the board for nursing home workers in the relevant geographic area and nursing home occupations;

(2) statements showing wage rates and benefits paid to nursing home workers in the relevant geographic area and nursing home occupations;

(3) signed collective bargaining agreements applicable to nursing home workers in the relevant geographic area and nursing home occupations;

(4) testimony and information from current and former nursing home workers, worker organizations, nursing home employers, and employer organizations;

(5) local minimum nursing home employment standards;

(6) information submitted by or obtained from state and local government entities; and

(7) any other information pertinent to establishing minimum nursing home employment standards.

(c) In considering wage and benefit increases, the board must determine the impact of nursing home operating payment rates determined pursuant to section 256R.21, subdivision 3, and the employee benefits portion of the external fixed costs payment rate determined pursuant to section 256R.25. ~~If the board, in consultation with the commissioner of human services, determines the operating payment rate and employee benefits portion of the external fixed costs payment rate will increase to comply with the new employment standards, the board shall report to the legislature the increase in funding needed to increase payment rates to comply with the new employment standards and must make implementation of any new nursing home employment standards contingent upon an appropriation, as determined by sections 256R.21 and 256R.25, to fund the rate increase necessary to comply with the new employment standards.~~

~~(d) In evaluating the impact of the employment standards on payment rates determined by sections 256R.21 and 256R.25, the board, in consultation with the commissioner of human services, must consider the following:~~

~~(1) the statewide average wage rates for employees pursuant to section 256R.10, subdivision 5, and benefit rates pursuant to section 256R.02, subdivisions 18 and 22, as determined by the annual Medicaid cost report used to determine the operating payment rate and the employee benefits portion of the external fixed costs payment rate for the first day of the calendar year immediately following the date the board has established minimum wage and benefit levels;~~

~~(2) compare the results of clause (1) to the operating payment rate and employee benefits portion of the external fixed costs payment rate increase for the first day of the second calendar year after the adoption of any nursing home employment standards included in the most recent budget and economic forecast completed under section 16A.103; and~~

~~(3) if the established nursing home employment standards result in an increase in costs that exceed the operating payment rate and external fixed costs payment rate increase included in the most recent budget and economic forecast completed under section 16A.103, effective on the proposed implementation date of the new nursing home employment~~

Ex. L, p. 002

standards, the board must determine if the rates will need to be increased to meet the new employment standards and the standards shall not be effective until an appropriation is sufficient to cover the rate increase and federal approval of the rate increase is obtained.

(c) The budget and economic forecasts completed under section 16A.103 shall not assume an increase in payment rates determined under chapter 256R resulting from the new employment standards until the board certifies the rates will need to be increased and the legislature appropriates funding for the increase in payment rates.

(d) No standard, including Minnesota Rules, parts 5200.2060, 5200.2070, 5200.2080, and 5200.2090, shall take effect unless the cost of the standard to each nursing facility reimbursed under chapter 256R is estimated and paid for as described in paragraph (e).

(e) When determining the cost estimates and the required new appropriation for any standard approved by the board, the commissioner of human services must:

(1) estimate each facility's rate impact in relation to the new standard. The estimate must be facility-specific and based on information provided to the commissioner in a form and manner determined by the commissioner about current wage rates at each facility;

(2) when determining the total and facility-specific costs to meet the standard, include:

(i) the increased costs to wages;

(ii) the employer's share of FICA taxes, Medicare taxes, state and federal unemployment taxes, workers' compensation, pensions, and contributions to employee retirement accounts cost increases attributable to a standard; and

(iii) the indirect costs, as defined by the board, resulting from the implementation of a standard; and

(3) adjust nursing facility rates by the amounts determined in clause (2), items (i) to (iii), on the first day of the previous month before the implementation date of a standard.

(f) Payments to facilities under this section shall be included in the external fixed costs payment rate under section 256R.25.

(g) If the legislature does not approve an appropriation under this section, the new standard approved by the board does not take effect.

Sec. 4. Minnesota Statutes 2024, section 181.213, subdivision 3, is amended to read:

Subd. 3. **Review of standards.** At least once every two years, the board shall:

(1) conduct a full review of the adequacy of the minimum nursing home employment standards previously established by the board; and

(2) following that review, adopt new rules, amend or repeal existing rules, or make recommendations to adopt new rules or amend or repeal existing rules for minimum nursing home employment standards using the expedited rulemaking process in section 14.389, as appropriate to meet the purposes of sections 181.211 to 181.217.

Sec. 5. Minnesota Statutes 2024, section 181.214, subdivision 1, is amended to read:

Subdivision 1. **Certification of worker organizations and employer organizations.** The board shall certify worker organizations and employer organizations that it finds are qualified to provide training to nursing home workers according to this section. The board shall by rule establish certification criteria that a worker organization or employer organization must meet in order to be certified and provide a process for renewal of certification upon the board's review of the worker organization's or employer organization's compliance with this section. In adopting rules to establish certification criteria under this subdivision, the board may use the authority in section 14.389. The criteria must ensure that a worker organization or employer organization, if certified, is able to provide:

(1) effective, interactive training on the information required by this section; and

(2) follow-up written materials and responses to inquiries from nursing home workers in the languages in which nursing home workers are proficient.

Sec. 6. Minnesota Statutes 2024, section 181.215, subdivision 2, is amended to read:

Subd. 2. **Minimum content and posting requirements.** The board must adopt rules under section 14.389 specifying the minimum content and posting requirements for the notices required in subdivision 1. The board must make available to nursing home employers a template or sample notice that satisfies the requirements of this section and rules adopted under this section.

# EXHIBIT M

**MINNPOST**

State Government

# A New Deal revival: Why labor unions love the Minnesota Nursing Home Workforce Standards Board

*The idea has its roots in the union expansion of the 1940s and the 'fight for 15' of more recent vintage.*

by **Matthew Blake**
10/16/2025

Ex. M, p. 001



A teddy bear sits on the feet of a resident at the Maplewood Rehabilitation Center on Tuesday, Sept. 30, 2025, in Maplewood, Minn. Credit: Ellen Schmidt/MinnPost/CatchLight Local/Report for America

*This story about labor unions is part of a series by MinnPost reporter Matthew Blake on Minnesota efforts to stabilize its nursing home workforce, which has long struggled with high turnover. Part one looks at* **the state's plan and the pushback to it** *from nursing home operators.* **Part two looks at the exhausting work** *performed by nursing home employees, and part three delves into* **nursing homes' complicated financial situations**.

For organized labor in Minnesota, the 2023 legislative session was a rousing success. Labor unions worked closely with the Tim Walz administration and a DFL-controlled legislature on high-profile accomplishments, like the creation of a state **paid family and medical leave**

There were also less obvious goals, like a new part of the state government dedicated exclusively to the conditions of nursing home employees.

"We were the driving advocacy group for the standards board to exist," said Jamie Gulley, president of SEIU Healthcare Minnesota and Iowa, a union that represents 40 nursing homes across the state. "The nursing home is the lowest paid segment of our membership universe."

Gulley will get no argument from the nursing home lobby, who have called the board they have **sued to eradicate** a favor to labor unions.

"The risk is the workforce board turns into a political hammer," said Toby Pearson, executive director at Care Providers of Minnesota.

*Related: 'Really taxing mentally and physically': The travails of working in a nursing home*

And Rep. Esther Agbaje, DFL-Minneapolis, said she worked with SEIU and AFSCME Council 65 in writing the bill that created the board. Asked if the measure was meant more to improve the labor conditions of nursing home employees, or simply increase the number of unionized facilities, Agbaje said, "A little bit of both."

But if the workforce board is labor unions leveraging their clout, that raises the question of why labor is so into the idea.

## Wage boards intertwine with labor unions' rapid rise

University of Michigan law professor Kate Andrias in 2019 **published an article** in the Yale Law Journal called, "An American Approach to Social Democracy: The Forgotten Promise of the Fair Labor Standards Act."

Andrias's article tells a fascinating story of a forgotten New Deal experiment that has sparked a current political movement.

"The original FLSA was more ambitious both procedurally and substantively than the low minimum wages and overtime protections for which it is known today," she wrote. "It created 'industry committees' or wage boards composed of tripartite representatives — employers, labor unions, and the public — with discretion to set minimum wages on an industry-by-industry basis with a statutorily defined range."

By 1940, 20 such committees were established for primarily low-wage industries like garment and textile manufacturing. Instead of a union bargaining behind closed doors with a single clothing manufacturer, the committees were required to meet in public, produce reports about working conditions, and set an industry-wide minimum wage.

"The resulting committees increased the wages of hundreds of thousands of workers during a short period" and "helped facilitate the rapid rise of unionism," Andrias wrote.

The law professor pointed out that these boards withstood court challenges. In fact, it was President Harry Truman who scotched the boards in exchange for a Republican-controlled Congress raising the minimum wage to 75 cents-an-hour.

## After the 'Fight for 15'

While the federal boards were wiped out, blue states like California and New York kept laws on the books for decades allowing for industry-specific wage boards. In 2015, the concept was revitalized when New York state **passed** a $15 minimum wage specifically for fast food workers.

"That helped spark the consciousness of policymakers, workers and advocates," said David Madland, senior fellow at the Center for American Progress, a Washington think tank that has advocated for wage boards.

A Center for American Progress **study** last year found that six states including Minnesota have adopted industry-specific wage boards, along with three cities. The case most relevant to Minnesota is Nevada, which has set up a commission for home care workers.

In 2023, the Nevada board raised the minimum wage of home care workers to $16 an hour, while increasing Medicaid reimbursements for state home care providers.

Nevada's health department has **touted statistics** that between December 2023 and April 2024, the state's home care workforce grew by 1,500 employees or 6.5%.

**_Related: Direct Care Workers are in high demand but face meager pay despite recent increase – labor unions are looking to change that_**

But the health department also acknowledged that the state is thousands of home care workers short. Meanwhile, SEIU representatives in Nevada **have pushed** for a $20-an-hour home care worker minimum wage.

If there is a throughline between fast food, nursing home and home care workers, it is occupations that tend to elicit public, and political, sympathy.

"The goal of the workforce board is to make sure our caretakers are cared for themselves," Agbaje said.

---

© 2026 MinnPost

Powered by Newspack

# EXHIBIT N


**DEPARTMENT OF LABOR AND INDUSTRY**

# Meeting Minutes: Nursing Home Workforce Standards Board

Date:  Thursday, May 9, 2024
Minutes prepared by:  Linnea Becerra
Location:  Minnesota Room, DLI, 443 Lafayette Rd. N., St. Paul, MN 55155 and online via Webex

## Members Present
- Commissioner Nicole Blissenbach (present at 11:08)
- Chair Jaime Gulley
- Michelle Armstrong
- Kim Brenne
- Maria King (remotely)
- Katie Lundmark
- Paula Rocheleau (remotely)
- Mary Swanson

## Visitors
- Todd Bergstrom
- Jeff Bostic
- Brian Elliott
- Casey Murphy (remotely)
- Toby Pearson (remotely)
- Kari Thurlow (remotely)

## DLI Staff
- Ali Afsharjavan (remotely)
- Linnea Becerra
- Paul Enger
- Leah Solo

## Agenda items

1. **Call to order** – The meeting was called to order by Chair Jamie Gulley at 11:01 a.m. Roll call was taken by the secretary and a quorum was declared.

2. **Approval of agenda** - A motion to approve the agenda as presented was made by Kim Brenne, seconded by Mary Swanson. Item was presented for discussion; roll call was taken and the motion passed unanimously.

3. **Approval of drafted meeting minutes** – A motion to approve the April 29, 2024 drafted meeting minutes as presented was made by Kim Brenne, seconded by Mary Swanson.  Roll call was taken, the motion passed unanimously.

4. **Board Updates**
   - Executive Director Solo introduced 'Review of data for Board Meeting' by board member Lundmark and the 'Data request response May 8, 2024' by Director Elyse Bailey as well as the 'Cost to Nursing Facilities of Proposed Standards April 29, 2024' which board member Lundmark explained. Chair Gulley posed questions about the data workgroup taking on the task of gathering and interpreting more data

regarding the overall costs for facilities implementing the new minimum wage standards. The board discussed this and concluded that yes, the data workgroup should do more digging into the numbers and engage in robust discussion while acknowledging that the November forecast will ultimately influence that discussion. Todd Bergstrom and Jeff Bostic were invited to the table by the board to discuss the data collection and its implications. The Long-Term Care Imperative collected responses from employers for over 9,000 employees and their current base wage and compensated hours for the month of March. The chart explains the projected upfront cost of the standards. This survey only looked at the nursing home workers who would be affected by the initial standards going into effect. See 'Cost to Nursing Facilities of Proposed Standards April 29 2024' in Meeting Materials. Todd spoke about the chart not taking wage compression or other operating costs into account. Jeff noted that implementing the standards will take a lot of money from the facilities up front.

- OGC representative Paul Enger reviewed the rulemaking process and deadlines using the chart in the board packet.
- Executive Director Leah Solo reviewed the Minimum Nursing Wage Standards that were initially voted upon at the last meeting. Paula Rocheleau asked about the standards applying to administrative staff or not, pointing out that clerical staff are sometimes classified as administrative staff. There was acknowledgement that this is still an unsettled question. There was discussion about the reading of rules afsand statue to decide who is covered. It was discussed that labor standards would be the ones looking closely at this question when complaints come in and that they would likely have enough from the statute and rules to settle whether somebody is an administrative staff.
- There was discussion about nursing home worker and nursing home employer.
- Executive Director Solo talked about the amendment to the Holiday Pay proposal being an agreement between the employees and the employer though the adopted language only referenced the employee. The draft rules are written with the initial meaning in mind. Employers set a calendar with those four optional holidays with employee agreement.  There was discussion about a 24-hour period for holiday pay and whether they should be designated, midnight-to-midnight in this case, or any 24-hour period. There was editing of the lettering and wording in
- There was a motion to approve the Minimum Nursing Home Wage Standards by Michelle Armstrong, seconded by Commissioner Blissenbach. A roll call was taken, and the motion passed with six yes votes and three abstentions.
- There was a motion to approve the Holiday Pay Standards by Michelle Armstrong, seconded by Commissioner Blissenbach.
  o There was then a motion to amend the Holiday Pay Standards by rewriting the language in subpart 2(a) to read "The start and stop times for the 24-hour period comprising a holiday can be modified by an employer if such change is agreed upon by a majority of affected nursing home workers or the exclusive representative of the affected nursing home workers if one exists." By Commissioner Blissenbach. The motion was seconded by Kim Brenne. A roll call was taken, the motion carried with three members abstaining and the rest voting to approve.
  o The motion to approve the Holiday Pay Standards was taken back up and a roll call was taken. The motion carried with six members voting to approve and three abstaining.

5. **New Business** –
   - The board will need to look at curriculum over the summer which will require a public hearing.
   - There will need to be a process on waivers and variances.
   - Principles meeting occurred between the last board meeting and this one. Executive Director Solo is working on track changes for the group to work on a take up again at the next meeting. There was good discussion at the principles meeting.
   - 
6. **Next Meeting –** Thursday, June 13, 2024, at 11 a.m. in the Minnesota Room


## Adjournment:

A motion made by Katie Lundmark to adjourn the meeting at 12:30 p.m., seconded by Michelle Armstrong. A roll call was taken, the motion passed unanimously.

Meeting Minutes: Nursing Home Workforce Standards Board – May 9, 2024

Ex. N, p. 003    3

# EXHIBIT O



# Meeting minutes:  Nursing Home Workforce Standards Board

Date:  Thursday, June 13, 2024
Minutes prepared by:  Linnea Becerra
Location:  Minnesota Room, DLI, 443 Lafayette Road N., St. Paul, MN, and online via Webex

## Members present

- Commissioner Nicole Blissenbach
- Chair Jaime Gulley
- Michelle Armstrong
- Kim Brenne
- Michele Fredrickson (remotely)
- Maria King
- Katie Lundmark
- Paula Rocheleau

## Visitors present

- Todd Bergstrom
- Jeff Bostic
- Angela Garin
- Toby Pearson (remotely)
- Charlie Peterson (remotely)

## DLI staff members present

- Ali Afsharjavan (remotely)
- Linnea Becerra
- Paul Enger
- Leah Solo

## Agenda items

1. **Call to order** – the meeting was called to order by Chair Jamie Gulley at 11:07 a.m. Roll call was taken by the secretary and a quorum was declared.
2. **Approval of agenda** – a motion to approve the agenda as presented was made by Michelle Armstrong and seconded by Commissioner Nicole Blissenbach. An item was presented for discussion; a roll call vote was taken and the motion passed unanimously.
3. **Approval of drafted meeting minutes** – a motion to approve the May 9, 2024 drafted meeting minutes as presented was made by Armstrong and seconded by Commissioner Blissenbach. A roll call vote was taken and the motion passed unanimously.
4. **Board updates** –
   - Executive Director Leah Solo reviewed the calendar and coming work office memorandum. This memo notes important next steps, topics and rules, as well as timelines for the next 12 months.

There was no discussion about the calendar, but the board members expressed gratitude for this high-level overview.

- There was an update about the work the Certification/Training Workgroup has done. Commissioner Blissenbach talked about the meetings, reviewing the role of the board, the role of the certified organizations in making curriculum and the board's role in approving any curriculum after it is developed. There was consensus among the group to put together a shell and some examples for the certified worker organizations. There will be flexibility in how the certified worker organizations present the material and they can provide more information but not less. Commissioner Blissenbach also said the Certification/Training Workgroup is recommending a specific Waivers and Variances Workgroup and formally asked Maria King and Kim Brenne to serve on it. Gulley and Katie Lundmark will be the other two members who will join the Waivers and Variances Workgroup. There was a motion by Commissioner Blissenbach to establish a Waivers and Variances Workgroup and it was seconded by Paula Rocheleau. A roll call vote was taken and the vote carried.

- The Certification/Training Workgroup also passed the process for certifying workers have been trained by a certified worker organization and brought the final version to the board for a final vote. Chair Gulley asked the board members if they would like to take a vote on this process and members wanted another month to review the process before voting. This item will be taken up at an future meeting.

- Lundmark updated the group about the Principles Workgroup. She said the workgroup worked collaboratively to create the presented draft. Brenne presented two edits in the final bullet-point of the principles document:  changing "will" to "may"; and changing "are" to "may be." There was a motion by Commissioner Blissenbach to adopt the draft principles with the changes made and it was seconded by Lundmark. The item was presented for discussion. A roll call vote was taken and the motion carried.

- Executive Director Solo reported on behalf of the Public Engagement Workgroup. The workgroup notes there should be public engagement around implementing the rules. The workgroup also proposed a public hearing date, Sept. 19, 2024, at 6 p.m. in the Minnesota Room at the Department of Labor and Industry (DLI). There was discussion about the date and time. King made a motion to approve Sept. 19, 2024, as the scheduled date for the public engagement event. A roll call vote was taken and the motion carried.

- Paul Enger, DLI Office of General Counsel, reviewed the Nursing Home Workforce Standards Board's proposed expedited permanent rules establishing minimum nursing home wage standards. These rules do not have substantive changes and were presented for discussion and a possible vote. King asked about clarifying the definition of nursing assistant (144A.61) versus the certified nursing assistant (CNA) definition as defined in the Nursing Home Workforce Standards Board rules. Brenne said the Department of Human Services uses CNA in the cost reports. Commissioner Blissenbach said the Labor Standards Division would look at the definition in the proposed rules and if there is enough clarity to enforce them. A decision was made to leave the revised rules as they came. There was a motion by Michele Fredrickson to vote on the rules returned by the revisor and it was seconded by Armstrong. A roll call vote was taken and the motion carried with six votes in favor and two abstaining.

- Executive Director Solo explained the definition discrepancy that has been brought up. She said the definition of "nursing home" in the statute refers to 144A and the definition of "nursing home

worker" refers to the definition of nursing home. The definition of "nursing home employer" refers to 256R. Facilities that are on 256R are also on 144A, but not all on 144A are on 256R. The major differences are the Veterans Administration, a nursing home on tribal land and private nursing homes. Executive Director Solo investigated this and there doesn't seem to be a strong reason for it. She said this was an update and not an answer, and the research into this issue would continue.

5. **New business** – Executive Director Solo updated the board about the new bylaws. There are two major updates. The first update is beginning Aug. 1 there will have to be two people who are commissioners or commissioner's designees voting affirmatively on something for it to pass. The second update is the date to pass the initial wage standards is by Nov. 1, 2024. Executive Director Solo recommended the bylaws be voted on at the meeting in August.

6. **Next meeting** – the next meeting is Thursday, July 18, 2024, at 11 a.m. in the **DLI Washington Room**.

## Adjournment

A motion was made by King to adjourn the meeting at 11:59 a.m. and was seconded by Armstrong. A roll call vote was taken and the motion passed unanimously.

# EXHIBIT P

## Minimum Nursing Home Wage Standards

**5200.xxxx    DEFINITIONS.**

Subpart 1. **Scope.** Unless otherwise defined in this part, the terms used in parts \_\_\_\_\_ to \_\_\_\_\_ have the meanings given to them in Minnesota Statutes, section 181.211.

Subp. 2. **Trained Medication Aide.** "Trained medication aide" means a person who has received training and administers medications in a nursing home consistent with the requirements set forth in Minnesota Administrative Rules, part 4658.1360.

Subp. 3. **Certified Nursing Assistant.** "Certified nursing assistant" means a person who has received training and provides or assists in the provision of nursing or nursing-related services in a nursing home consistent with the requirements set forth in Minnesota Statutes, section 144A.61.

Subp. 4. **Licensed Practical Nurse.** "Licensed practical nurse" means a person who engages in the practice of practical nursing, as defined in Minnesota Statutes, section 148.171, subdivision 14, in a nursing home.

**5200.xxxx    APPLICABILITY.**

Subpart 1. **Statewide Minimum Wage Standards.** The wage standards for nursing home workers, as established by the Nursing Home Workforce Standards Board, apply statewide.

Subp. 2. **Appropriation Required.** The wage standards set forth in parts 5200.xxxx and 5200.xxxx shall not become effective unless and until:

   A.  the legislature provides an appropriation, as determined by sections 256R.21 and 256R.25, sufficient to cover the necessary rate increase; and

   B.  federal approval of the rate increase is obtained; and

Subp. 3. **Modified Implementation Date.** Unless federal approval of the rate increase referenced in subpart 2 is obtained by December 1, 2025, the wage standards set forth in parts 5200.xxxx and 5200.xxxx shall become effective 30 days after federal approval of the rate increase is obtained.

**5200.xxxx    GENERAL WAGE STANDARDS.**

Subpart 1. **Minimum Wages for All Nursing Home Workers**. Beginning January 1, 2026, the minimum wage for all nursing home workers is $19 per hour. Beginning January 1, 2027, the minimum wage for all nursing home workers is $20.50 per hour.

Ex. P, p. 001

**5200.xxxx        WAGE STANDARDS FOR CERTAIN OCCUPATIONS.**

Subpart. 1. **Occupation-Based Wages.** Notwithstanding the statewide minimum wage established in part 5200.xxxx, the minimum wages for certified nursing assistants, trained medication aides, and licensed practical nurses, for the time they work in those roles, shall be:

A.  Wages for Certified Nursing Assistants. Beginning January 1, 2026, the minimum wage for certified nursing assistants is $22.50 per hour.  Beginning January 1, 2027, the minimum wage for certified nursing assistants is $24 per hour.

B.   Wages for Trained Medication Aides. Beginning January 1, 2026, the minimum wage for trained medication aides is $23.50 per hour. Beginning January 1, 2027, the minimum wage for trained medication aides is $25 per hour.

C.  Wages for Licensed Practical Nurses. Beginning January 1, 2026, the minimum wage for licensed practical nurses is $27 per hour. Beginning January 1, 2027, the minimum wage for licensed practical nurses is $28.50 per hour.

Ex. P, p. 002

# EXHIBIT Q

06/11/24                                    REVISOR              SS/BM              RD4869

**Nursing Home Workforce Standards Board**

**Proposed Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards**

**5200.2060   DEFINITIONS.**

Subpart 1.  **Scope.**  Unless otherwise defined in this part, the terms used in parts 5200.2060 to 5200.2090 have the meanings given in Minnesota Statutes, section 181.211.

Subp. 2.  **Certified nursing assistant.**  "Certified nursing assistant" means a person who has received training and provides or assists in the provision of nursing or nursing-related services in a nursing home consistent with the requirements under Minnesota Statutes, section 144A.61.

Subp. 3.  **Licensed practical nurse.**  "Licensed practical nurse" means a person who engages in the practice of practical nursing, as defined in Minnesota Statutes, section 148.171, subdivision 14, in a nursing home.

Subp. 4.  **Trained medication aide.**  "Trained medication aide" means a person who has received training and administers medications in a nursing home consistent with the requirements under part 4658.1360.

**5200.2070   APPLICABILITY.**

Subpart 1.  **Statewide minimum wage standards.**  The wage standards for nursing home workers under parts 5200.2080 and 5200.2090 apply statewide.

Subp. 2.  **Appropriation required.**  The wage standards under parts 5200.2080 and 5200.2090 are not effective until:

A.  the legislature provides an appropriation, as determined by Minnesota Statutes, sections 256R.21 and 256R.25, sufficient to cover the necessary rate increase; and

B.  federal approval of the rate increase is obtained.

5200.2070                                        1

06/11/24                           REVISOR              SS/BM              RD4869

Subp. 3. **Modified implementation date.** Unless federal approval of the rate increase under subpart 2 is obtained by December 1, 2025, the wage standards under parts 5200.2080 and 5200.2090 shall become effective 30 days after federal approval of the rate increase is obtained.

**5200.2080   GENERAL WAGE STANDARDS.**

Beginning January 1, 2026, the minimum wage for all nursing home workers is $19 per hour. Beginning January 1, 2027, the minimum wage for all nursing home workers is $20.50 per hour.

**5200.2090   WAGE STANDARDS FOR CERTAIN OCCUPATIONS.**

Notwithstanding the statewide minimum wage established in part 5200.2080, the minimum wage for certified nursing assistants, trained medication aides, and licensed practical nurses is:

A. Beginning January 1, 2026, the minimum wage for certified nursing assistants is $22.50 per hour. Beginning January 1, 2027, the minimum wage for certified nursing assistants is $24 per hour.

B. Beginning January 1, 2026, the minimum wage for trained medication aides is $23.50 per hour. Beginning January 1, 2027, the minimum wage for trained medication aides is $25 per hour.

C. Beginning January 1, 2026, the minimum wage for licensed practical nurses is $27 per hour. Beginning January 1, 2027, the minimum wage for licensed practical nurses is $28.50 per hour.

Ex. Q, p. 002

# EXHIBIT R

About us · Boards and councils · NHWSB meeting materials

ABOUT DLI

BOARDS AND COUNCILS

Access Review Board

Apprenticeship Advisory Board

Board of Electricity

Board of High-Pressure Piping Systems

Building Efficiency Workgroup

Combative Sports Advisory Council

Construction Codes Advisory Council

Governor's Committee on the Compensation, Wellbeing, and Fair Treatment of Transportation Network Company Drivers

Medical Services Review Board

Nursing Home Workforce Standards

# NHWSB MEETING MATERIALS

## 2026 meeting materials

### Dec. 10, 2026

- Agenda
- Minutes

### Nov. 12, 2026

- Agenda
- Minutes

### Oct. 8, 2026

- Agenda
- Minutes

### Sept. 9, 2026

- Agenda
- Minutes

### Aug. 13, 2026

- Agenda
- Minutes

### July 9, 2026

- Agenda
- Minutes

Ex. R, p. 001

Board

Occupational Safety and Health Advisory Council

Occupational Safety and Health Review Board

Plumbing Board

Rehabilitation Review Panel

State Appeals Board

Workers' Compensation Advisory Council

Workers' Compensation Insurers' Task Force

CAREERS AT DLI

NEWS, DATA REQUESTS

OUR AREAS OF SERVICE

RULEMAKING

## June 11, 2026

- Agenda

- Minutes

## May 14, 2026

- Agenda

- Minutes

## April 9, 2026

- Agenda

- Minutes

## March 12, 2026

- Agenda

- Minutes

## Feb. 12, 2026

- Agenda

- Minutes

## Jan. 8, 2026

- Agenda

- Minutes

- NHWSB cert of worker orgs worker trng guide 2026 draft

- NHWSB notice update 2026 draft

- NHWSB sample curriculum presentation draft

Ex. R, p. 002

# Meeting materials archive

## Dec. 11, 2025

- Agenda

- Annual report

- Draft minutes from all public forums

- Memo:  Certified worker organization complaint

- Memo:  Fall outreach 2025

- Minutes

## Nov. 21, 2025

- Agenda

- Minutes

## Nov. 20, 2025 – public forum

- Agenda

- Minutes

## ~~Nov. 13, 2025~~

- ~~Agenda~~

- ~~Minutes~~

*rescheduled to Nov. 21, 2025

## Oct. 9, 2025

- Agenda

- Evaluation tool

- Follow-up requests -- waivers and variances

    - Instructions for minimum-wage costs workbook

    - Minimum-wage costs workbook

    - Minutes

    - Updated application for waiver or variance, Oct. 8, 2025

**Sept. 11, 2025**

- Agenda

- Draft memo for board on public forums

- Logistics memo

- Minutes

**Aug. 14, 2025 – canceled**

- ~~Agenda~~

- ~~Minutes~~

**July 10, 2025**

- Agenda

- Minutes

- Special meeting

    - Agenda

    - Minutes

**June 12, 2025**

- Agenda

Ex. R, p. 004

- AFL-CIO application followup documents (zipped file)

  - AFSCME Council 65 (zipped file)

  - Evaluation of worker organization certification application AFSCME Council 65

  - Memo:  Process for canceling waiver review meetings (updated)

  - Minutes

  - SEIU application followup documents (zipped file)

    - SEIU new member welcome handout

## May 8, 2025

- Agenda

- Evaluation of worker organization certification application AFL-CIO

- Evaluation of worker organization certification application SEIUHCMNIA

- Memo:  Next steps on public engagement

- Minutes

- MN AFLCIO (zipped file)

- SEIUHCMNIA (zipped file)

## April 10, 2025

- Agenda

- Memo from Data Workgroup

- Minutes

## March 13, 2025

- Agenda

- Minutes

## Feb. 13, 2025

- Agenda

- Certification of worker organizations and worker training guide

- Memo:  Process for canceling waiver and review meetings

- Minutes

- Sign-in template

## Jan. 9, 2025

- Agenda

- Certification of worker organizations and worker training guide

- Minutes

- Proposed amendments to Minnesota Statutes 181.211

- Year at a glance

## Dec. 12, 2024 (special meeting)

- Agenda

- Leading Age Minnesota and Care Providers – complaint

- Memorandum in support of motion for preliminary injunction or in the alternative a temporary restraining order

- Minutes

## Dec. 5, 2024

- Agenda

- Copy of cost of holiday standards 2024

  - Draft minutes, Nov. 14, 2024

  - Draft process waiver and variance application board

  - Draft waiver and variance application

  - Holiday pay and posting, employer slides

  - How to holiday pay

  - Minutes

  - NHWSB annual report 2024

  - Nursing Home Workforce Standards Board minority report

  - Template holiday pay notice

## Nov. 14, 2024

  - Agenda

  - How to, holiday pay rules

  - Minutes

  - Public engagement plan

## Nov. 7, 2024 (special meeting)

  - Agenda

  - Mandated holidays implementation questions, November 2024

  - Minutes

- Office of Administrative Hearings:  In the matter of the proposed rules governing holiday pay, certification for worker organizations and notice posting requirements for nursing home workers; Minnesota Rules Part 5200.2000 to 5200.2050

## Oct. 10, 2024

- Agenda

- Authority to modify proposed rule

- Minutes

- Proposed expedited permanent rules modifying certification criteria, notice posting requirements and holiday pay rules for nursing home workers

- Rules establishing minimum nursing home wage standards, OAH 5-9001-40100; Revisor R-4847

## Oct. 2, 2024 (special meeting)

- Agenda

- All comments – holiday pay

- Letter

- Minutes

## Sept. 19, 2024 (special meeting)

- Agenda

- Draft curriculum, August 2024

- Minutes

- Sample curriculum

- Training content draft

Ex. R, p. 008

- Draft sample follow-up document

  - Sign up to speak at the meeting:  forms.office.com/g/ikampFm643.

  - Flyer:  NHWSB public hearing on curriculum

## Sept. 12, 2024

  - Agenda

  - Minutes

  - Public hearing on curriculum 2024

## Aug. 8, 2024

  - Agenda

  - All comments

  - Bylaws, updated May 21, 2024

  - Draft curriculum, August 2024

  - Draft minutes, July 18, 2024

  - Draft sample follow-up document

  - Minutes

  - NHWSB public hearing on curriculum

  - Proposed expedited permanent rules modifying certification criteria, notice posting requirements and holiday pay rules for nursing home workers

  - Public hearing on curriculum 2024 for board

  - QR code for NHWSB public hearing on curriculum

  - QR code *only* for NHWSB public hearing on curriculum

- Sample curriculum

    - Training content draft

    - Workforce standards impact calculator, July version

## July 18, 2024

- 5d draft plan for documentation workers trained -- for workgroup and board

- Agenda

- Draft NHWSB minutes, June 13, 2024

- Minutes

- NHWSB principles edited

- Principles

## June 13, 2024

- Agenda

- Bylaws

- Calendar and upcoming work

- Draft meeting minutes May 9

- Minutes

- Principles

- Principles with additions and deletions

- Process for documenting training by a certified worker organization

- Wage standards draft from Revisor

- Agenda

- Copy of data analysis for the board

- Copy of fiscal analysis for the board

- Cost to nursing facilities of proposed standards, April 29, 2024

- Data request response

- Draft meeting minutes, April 29

- Draft rules holiday pay

- Draft rules initial wage standards

- Memo:  Nursing Home Workforce Standards Board rulemaking deadlines

- Minutes

- Review of data for board meeting

- Rulemaking process

**April 29, 2024**

- 5i. WSB scenario holiday-pay only

- 5i. WSB scenario holiday-pay wage floor

- 5ii. Revision to 2(a) and 2(b) proposals for costing

- Agenda

- Amend time-and-a-half proposal

- Fiscal analysis for the board, data request

- Memo:  Current proposals

Ex. R, p. 011

- Memo: Expense reports

    - Minutes

    - Proposal one:  Wage standards

    - Proposal one:  Wage standards note

## April 15, 2024

    - Agenda

    - Minutes

## April 11, 2024

    - Agenda

    - Minutes

## March 27, 2024

    - Agenda

    - Minutes

## March 21, 2024

    - Agenda

    - Draft meeting minutes, March 18, 2024

    - Long-Term Care Imperative:  Estimated total cost of adding holidays and paying time-and-one-half

    - Memo:  NHWSB rulemaking deadlines

    - Minimum standards options version 2(a)

    - Minimum standards options version 2(b)

- Minimum standards options version 2(c)

- Minutes

## March 18, 2024

- Agenda

- Minutes

## March 14, 2024

- Agenda

- Draft chart of wage standards questions

- Guiding principles

- Memo:  Nursing home job occupations

- Minimum standards options

- Minutes

- Presentation:  Questionnaire for current nursing home workers

- Presentation:  Questionnaire for nursing home employers

## Feb. 8, 2024

- 5a. Minnesota minimum wages and benefits

- 5b. Analysis of data

- 5b. Memo from Data Workgroup

- 5c. Memo notes at public forum

- 5c. Presentation:  Public forums

- 5c. Public forum memo – Brooklyn Park

Ex. R, p. 013

- 5c. Public forum memo – Duluth

  - 5c. Public forum memo – Redwood Falls

  - 5c. Public forum memo – virtual

  - 5d. Draft plan for documentation, workers trained

  - 5d. Draft rules for certification or worker organizations, potential amendments

  - Agenda

  - Minutes

**Jan. 11, 2024**

  - Agenda

  - Minutes

TO MEMBER LIST ▶        TO NHWSB MAIN PAGE ▶

🌐 Español | Soomaali | Hmoob | Karen/ကညီ | Chinese/简体中文

**m** | **Register to Vote** ✔

Disclaimer

Ex. R, p. 014

# EXHIBIT S



# Federal Funds and the State Budget:
# March 2025 Update

Ahna Minge, State Budget Director, Minnesota Management and Budget

Dave Greeman, Chief Financial Officer, Minnesota Department of Human Services

Ex. S, p. 001

# How many federal awards does Minnesota receive?

## 687

Federal Awards

## $23.3B

Federal Funds Budgeted in FY25

# Federal Funds Comprise One-Third of State Resources



FY 2024-25 Total Revenues: $121 Billion

All Other, 9%

Federal Funds, 35%

Taxes, 57%

Ex. S, p. 003

# Federal Spending Supporting Entitlement Programs



FY 2025 Federal Funding Supporting State Forecast Programs



Other Programs - $10.2 billion

Forecast Programs - $13.1 billion

- $13.1 billion (56%) of 2025 federal awards support state entitlement spending

- A loss of federal funding will result in increased costs for the state government to provide services required under state law

- Most of these entitlements are in Health and Human Services and Education

- Changes being considered to Medicaid at the federal level could reduce funding to the state by over a billion per year

3/21/2025

Ex. S, p. 004

4

# Federal Funding by Major Program

**Projected FY 2025 Federal Funds ($ in millions)**



3/21/2025

Ex. S, p. 005

# Minnesota Health Care Programs

- Medical Assistance - $11.4 billion in FY 25 in Medicaid and CHIP funds

  - Covers roughly 1.2 million Minnesotans per month in state fiscal year 2025

  - Federal government covers a percentage of a state's claims, percentage various a bit by program; for most it's 51%, except for the ACA expansion population which is 90%

  - Percentage set by formula in federal law based upon state per capita incomes

  - Federal funding grows to $14.7 billion by 2029, as MA costs grow

  - Approximately, $700 million per year in *additional* Medicaid funding to support administrative functions

- MinnesotaCare - $597 million in FY 25

  - State receives 95% of tax credits individuals receive if they got coverage through MNsure

  - Covers roughly 100,000 Minnesotans

3/21/2025

# Major Federal Funding Streams for Children and Families

- Supplemental Nutrition Assistance Program (SNAP) – $1.6 billion in FY25

  - Provides food assistance for more than 475,000 low-income Minnesotan families with children, seniors,  adults with disabilities, and other adults. Average benefit amount is $6.16 per day.

- Child Care Development Block Grant (CCDBG) – $553 million in FY25

  - Provides child care assistance to families with low incomes so that parents can work and children can learn in high quality settings. Serves 13,000 families per month. Eligible families must earn less than $77,500 per year. Provides additional support for child care providers and workers.

- Temporary Assistance for Needy Families (TANF) – $262 million in FY25

  - Minnesota Family Investment Program provides employment counseling and financial assistance to families in poverty. Serves 24,000 families per month and 70% of individuals served are children.

Ex. S, p. 007

# Major Federal Funding Streams for Education

- Special Education – $230 million estimated for FY 2025

  - Primarily for reimbursing local education agencies for providing special education services and early intervention services for students with disabilities.

- Nutrition - $430 million estimated for FY 2025

  - School lunch and breakfast make up majority of nutrition funds ($323 million).

  - Other nutrition programs provide funding for food services in additional settings and for times outside of the typical school calendar.

- Title 1 - $188 million estimated for FY 2025

  - Primarily provides funding for low-income schools to assist education students at-risk of not meeting academic standards ($185 million)

  - Other Title 1 funds are used for assisting educating children of migratory agricultural workers and for neglected and delinquent students.

Ex. S, p. 008

# Transportation

- State agencies have about $3.1 billion in federal funds budgeted for FY25, including:

  - Over $900 million for aeronautics

  - Over $800 million for state roads and bridges

  - Over $500 million for local roads and bridges

  - Over $100 million for transit (does not include Met Council)

3/21/2025

# Current Monitoring Efforts

- MMB is working with agencies to identify any disruptions to federal funding

- Disruptions are analyzed for impact and alternative funding sources

- MMB is also collecting and analyzing incoming federal guidance and new executive orders to understand possible impacts on state funding

- In many cases, federal communications are vague and the impact is still unknown

3/21/2025

# Disrupted Federal Funding

- Since January 28, dozens of state awards have been disrupted

- Disruption takes multiple forms:
  - Agencies unable to access funding portals
  - Requested reimbursements not paid
  - Notified by federal partners that funds are "under review" and should not be billed against federal awards

- As of the afternoon of March 20, 24 state awards were unable to access federal funding
  - One at the Department of Commerce
  - One at the Department of Health
  - Two at the Department of Agriculture
  - 20 at the Department of Public Safety

- Availability is very fluid with statuses changing from day to day

Ex. S, p. 011

# Potential Changes in Federal Funding

- House budget resolution calls for $2 trillion in spending reductions

  - $880 billion in Commerce and Energy, which includes Medicaid

  - $230 billion in Agriculture, which includes SNAP

- Policies to achieve savings are unclear, but could have significant ramifications for state budget

- Uncertain additional impacts from federal administrative action

Ex. S, p. 012

# Medicaid in Minnesota

Percentage of the population within the region enrolled in Medicaid



- Medicaid covers about 1.2 million Minnesotans, almost one-quarter of the population

    - This represents 42 percent of children

    - Medicaid funds one half of long-term care services

- State and federal Medicaid spending provides about $20 billion per year in payments to providers throughout the state, and administrative payments to counties and Tribes

    - Approximately 57% of it funded by the federal government.

    - Federal Medicaid spending is projected to account for about 17% of total projected state spending (all funds)

Ex. S, p. 013

# Status of Federal Actions

- The House Budget Resolution instructs the Committee overseeing Medicaid to propose $880 billion in cuts.  After excluding Medicare, 93% of the Committee budget is Medicaid

  - Impact to Medicaid unclear but could range from $745 billion to the full $880 billion, which would amount to an 10-12 percent reduction in federal Medicaid outlays.

  - If that reduction were distributed proportionately across all states, Minnesota could see a reduction of $1.4-1.6 billion in FY 2027, and it would increase over time.

- Senate Budget Resolution currently calls for smaller cuts

- Outcome of House and Senate negotiations, and impacts to MN, are uncertain

- Potential impacts will become clearer as the House and Senate start developing specific proposals

Ex. S, p. 014

# Assessing Possible Federal Actions

- Several approaches have been discussed to achieve federal Medicaid savings:

  - Per capita caps and block granting federal Medicaid spending

  - Eliminating enhanced FMAP for the ACA expansion group

  - Establishing work requirements

  - Imposing stricter limits on the use of health care provider taxes and directed payments

  - Eliminating the current floor on FMAP

- Impacts on Minnesota are dependent on how proposals are structured

Ex. S, p. 015

# Impact to Minnesota

- DHS is closely analyzing potential federal actions on Minnesota but will need actual language to fully assess the impact

- Impacts of some approaches can be projected now:

  - Loss of enhanced FMAP for the ACA expansion group could result in a loss of $1.2 – 1.3 billion annually.

  - Stricter federal limits on provider taxes could jeopardize some provider taxes related to MA and MinnesotaCare, which generate $1.2 billion in revenue annually.

# Looking Forward

- Unclear federal guidance, inconsistent access to funds, and uncertainty about the federal budget creates challenges for agencies and policymakers

- Upcoming budget forecast will not incorporate changes to federal spending resulting from potential Congressional actions

- Loss of billions in federal Medicaid funding would significantly worsen state's financial position

- Policymakers would need to consider solutions to larger shortfall

Ex. S, p. 017
17

# EXHIBIT T

Office of the Revisor of Statutes

## Office of the Revisor of Statutes

---

**HF 3**  Status in the **House** - 94th Legislature, 2025 1st Special Session

| | | |
|---|---|---|
| Current bill text: As Introduced | Companion: SF7 | Revisor number: 25-05696 |
| Add HF3 to MyBills | Companion Text | Session Law Chapter: 9 |
| Version List | Senate Search | |
| Long Description | Further Committee Actions | House Research Summary |
| | | Fiscal Notes |

---

## Bill Text Versions

**Engrossments**

Introduction  📄 PDF                    Posted on 06/09/2025

## Description

Human services finance bill.

## Authors (2)

Noor; Schomacker

## Senate Authors (1)

Hoffman

## Actions

Separated | Chronological

### House

| 06/09/2025 | Introduction and first reading | pg. 6 Intro |
|---|---|---|
| 06/09/2025 | Rules suspended | pg. 23 |
| 06/09/2025 | Second reading | pg. 23 |
| 06/09/2025 | Third reading | pg. 24 |
| 06/09/2025 | Bill was passed | pg. 24 vote: 96-37 |
| 06/09/2025 | Returned from Senate | pg. 44 |
| | Presented to Governor 06/12/2025 | |
| | Governor approval 06/14/2025 | pg. 63 |
| | Secretary of State, Filed 06/14/2025 | pg. 64 |

Ex. T, p. 001

| 06/09/2025 | Received from House | pg. 53 Intro |
| --- | --- | --- |
| 06/09/2025 | Introduction and first reading | pg. 53 |
| 06/09/2025 | Urgency declared rules suspended | pg. 54 vote: 45-20 |
| 06/09/2025 | Second reading | pg. 55 |
| 06/09/2025 | Third reading Passed | pg. 55 vote: 35-32 |
| | Presentment date 06/12/25 | |
| | Governor's action Approval 06/14/25 | |
| | Secretary of State Chapter 9 06/14/25 | pg. 75 |
| | Effective date various dates | |

Ex. T, p. 002

# EXHIBIT U

WHAT UNIONS DO    FORM A UNION        AMERICA'S UNIONS        WHAT WE CARE ABOUT    TAKE ACTION

**PRESS RELEASE**

# SEIU Joins AFL-CIO to Build Unprecedented Worker Power, Win Unions for All Workers

January 8, 2025

  

*Two million service and care workers to join nation's largest labor federation, bringing total membership to nearly 15 million*

*Joint commitment to long-term fight to rewrite rules to strengthen the right to organize, build worker power across entire industries, and vow to stand against attacks on workers, immigrants, health care workers*

*The announcement of the affiliation will be made at a roundtable discussion with workers Thursday, January 9, at 1:30 CT/2:30 ET.*

Ex. U, p. 001

(Washington, D.C.)—The AFL-CIO and the Service Employees International Union (SEIU) announced today that they are reuniting to launch a new, long-term effort to make it easier for workers to win a voice on our jobs with their unions. Two million SEIU service and care workers will join the nearly 13 million-member AFL-CIO, and together, these powerful organizations will push back on union-busting and win for working-class families.

The unions will formally announce the affiliation at a roundtable discussion with workers who are fighting to win their unions on Thursday, Jan. 9, in Austin, Texas, at 1:30 CT/2:30 ET, in advance of the AFL-CIO's Dr. Martin Luther King Jr. Civil and Human Rights Conference. The workers will share their stories of why they need new rules to make it easier to join together in unions.

At a critical moment when everything is on the line for the nation's working people, the labor movement is uniting to challenge the status quo and build a movement of workers who will fight—on the job, in the streets, at the ballot box, in our communities—for higher pay, expanded benefits and new rules that empower them to join together in unions and organize across industries. This new era of building worker power comes under the strong leadership of Liz Shuler and April Verrett, whose vision for the future is inclusive and innovative.

"Workers know it's better in a union, and together we are stronger in our organizing and bargaining fights because there is power in unity," **said AFL-CIO President Liz Shuler**. "CEOs and billionaires want nothing more than to see workers divided, but we're standing here today with greater solidarity

Ex. U, p. 002

than ever to reach the 60 million Americans who say they'd join a union tomorrow if the laws allowed and to unrig our labor laws to guarantee every worker in America the basic right to organize on the job."

With this news, millions of workers are doubling down on a vision to fundamentally transform our lives. Workers want to join unions because we know that pay is too low and grocery bills are too high. Child care costs as much as rent, which also costs more than it should. Everything we need to live is just one more chance for corporations to profit from us.

"SEIU members are ready to unleash a new era of worker power, as millions of service and care workers unite with workers at the AFL-CIO to build our unions in every industry and every ZIP code," **said SEIU International President April Verrett**. "Working people have been organizing our workplaces and communities to build a stronger economy and democracy. We are ready to stand up to union-busters at corporations and in government and rewrite the outdated, sexist, racist labor laws that hold us all back. We're so proud to join together as nearly 15 million members to redouble our commitment to building a thriving, healthy future for working people."

Millions of workers across the United States are locked out of labor law, including critical protections and union rights, due to a history of systemic racism, sexism and fierce corporate opposition to unions. Nonetheless, over the past year working people have joined together to make significant gains, including electric bus manufacturing workers at Blue Bird winning a union contract in Georgia, drivers for ride-sharing services winning the right to join a union in Massachusetts, and workers across Missouri winning a $15 an hour minimum wage and guaranteed paid sick leave.

Ex. U, p. 003

"I'm proud to be part of the next generation of the labor movement," said **Naomi Martinez, a Starbucks barista from Phoenix** who will attend the roundtable. "We're taking on big corporations that try to stand in our way, standing up to politicians who try to divide us, and creating powerful connections with workers across industries as we win and build our unions together."

"When working people stand together, we have the power to lift entire communities. In San Antonio, teachers are partnering with community members to create more affordable housing, stop school closures and support all local families. Having a union on the job not only makes our working conditions better but allows us to fight for the community we deserve," said **Adrian Reyna, a third-generation union public school educator and member of the San Antonio Alliance of Teachers.**

"Forming a union is life-changing," said **Lawrence Moore, who recently joined the International Association of Machinists and Aerospace Workers at his GE plant in Aurora, Ohio**. "My co-workers and I fought for our union because we were sick and tired of being treated with disrespect at work. Winning a union wasn't easy, but it was worth it. Now we can negotiate better wages, fair working conditions and the basic dignity on the job that we've earned."

"I know what solidarity means because I see it in the way Waffle House workers have stood together and the way our community has had our backs," said **Shae Parker, a Waffle House worker from Columbia, South Carolina**. "Other unions, community groups, faith groups, we all have our

Ex. U, p. 004

part to play. We're going to change the game, write new rules, and win Unions for All so every single worker can join a union to make their jobs and their lives better."

**AFL-CIO, SEIU to Take on Union-Busting, Rewrite Rules to Accelerate Organizing**

Today, more than **60 million workers** say they would join a union if they could—but only 1 in 10 workers has a union because big corporations are allowed to subject workers who organize to unrelenting hatred, harassment and hostility. Meanwhile, support for unions is at record highs as **polling shows** 7 in 10 Americans approve of unions, including 9 in 10 young people. The huge gap between workers who want to join a union and those who successfully do so represents a massive failure in law and public policy.

In response, SEIU and the AFL-CIO are uniting to take on union-busting and secure the right of every worker to safely join with their co-workers in unions to raise wages and improve their jobs. Together, our united 15 million hardworking union members will:

- Fight for new rules to strengthen the right to organize and collectively bargain and expand those rights to cover workers who currently lack them, to build worker power within individual workplaces or across employers and entire industries, whether at the local, state, or federal levels.

- Hold elected leaders accountable for doing everything in their power to ensure that all workers can have good union jobs that pay us enough to live, with accessible, affordable, quality health care and the ability to

Ex. U, p. 005

retire with dignity.

- Demand every leader take action to write more inclusive and stronger labor laws, raise wages, and make sure that every public dollar spent goes toward creating good union jobs to build thriving communities for workers of all races and ethnicities.

- Support the efforts of workers across the nation to challenge union-busting corporations; drive multi-union, multi-sector organizing campaigns; coordinate strategy; maximize resources and capacity; and learn from their collective successes and challenges.

Contact: Mia Jacobs, 202-637-5018

Ex. U, p. 006



About Us

Affiliated Unions

Executive Council Statements

Labor History

Leadership

Our Unions and Allies

Programs

Values Statement

Work with Us

Blog

AFLCIO.tv

Form a Union

Press

Speeches

Take Action

Union Plus Benefits

What Unions Do

Corporate Accountability

Social and Economic Justice Advocacy

Strike Map

Workplace Advocacy

What We Care About

Better Pay and Benefits

Civil Rights

Corporate Greed

Gender Equality

Global Worker Rights

Health Care

Immigration

Infrastructure

Labor Law

Manufacturing

Quality Education

Right to Work

Sexual Harassment

Social Security and Retirement

Tax and Budget Policy

Trade

Workplace Health and Safety

Legislative Alerts

Legislative Voting Records

Reports

Store

✉ **Get Email Updates**

Email Address

ZIP                    SIGN UP

  Text **WORK** to

**235246**

to opt in to mobile messages from the AFL-CIO. Message and data rates apply. Reply STOP to unsubscribe. Reply HELP for help. You will receive periodic messages with updates and news about our work. Privacy Policy and Terms of Use.

⊕  **Contact Us**

© 2026 AFL-CIO. All rights reserved.

Ex. U, p. 007

Ex. U, p. 008

# EXHIBIT V

# Minnesota Nursing Home Workforce Standards Board Bylaws

## Article I – Name

These are the Bylaws of the Minnesota Nursing Home Workforce Standards Board (Board).

## Article II – Purpose

The purpose of the Nursing Home Workforce Standards Board is to carry out the duties prescribed in the Minnesota Nursing Home Workforce Standards Board Act (Minnesota Statutes, sections 181.211 to 181.217).

## Article III – Membership

Section 1. The membership of the Minnesota Nursing Home Workforce Standards Board consists of nine members, as prescribed by Minnesota Statutes, section 181.212, subdivision 1.

Section 2.  A member may be replaced as provided by Minnesota law.

## Article IV – Officers

The Board shall elect a Chairperson. All members of the Board are eligible to serve as Chairperson. The Chairperson shall preside at Board meetings. If the Chairperson cannot attend a meeting, the commissioner of the Department of Labor and Industry or their designee shall preside at the Board meeting.

The Chairperson shall serve a two-year term.

## Article V – Meetings

Section 1.  Regular meetings are held on a schedule determined by the Board. The Board may increase its meeting frequency by an affirmative vote of at least five members. Meetings may be canceled by an affirmative vote of at least five members or by the Executive Director as needed.

Section 2. The regular Board meeting schedule shall be maintained at 443 Lafayette Road N., St. Paul, MN, and on the Department of Labor and Industry website.

Section 3.  Special meetings may be called at any time by the Executive Director, Chairperson or a majority of the members of the Board in accordance with Minnesota Statutes, section 13D.04, subdivision 2. Notice may be given by email, mail or telephone. The notice shall state the purpose of the meeting.

Section 4. If the Executive Director or the Chairperson determines that circumstances require immediate consideration by the Board, the Chairperson shall call an emergency meeting in accordance with Minnesota Statutes, section 13D.04, subdivision 3.

Section 5. A majority of the members of the Board constitutes a quorum. The Board may take testimony and discuss agenda items without a quorum present, but no question may be decided in the absence of a quorum.

Section 6. Agenda –

Ex. V, p. 001

a. At all regular meetings of the Board, the following shall normally be the order of business:
1. call to order;
2. roll call and declaration of quorum;
3. approval of meeting agenda, which may be modified prior to approval, and no matter may be voted on at a regular meeting unless it is on the approved agenda;
4. approval of the minutes of the preceding meeting and actions thereon, and the minutes may be modified prior to approval;
5. reports of the Executive Director, Chairperson and committees (including subcommittees and workgroups);
6. new business;
7. unfinished business;
8. Board member discussion;
9. announcements; and
10. adjournment.

b. At all special meetings of the Board, the following shall normally be the order of business:
1. roll call and declaration of quorum;
2. reports of the Executive Director, Chairperson and committees (including subcommittees and workgroups) concerning the purpose for which the meeting is called; and
3. discussion of the purpose for which the meeting is called.

Section 7. Meeting agendas shall be prepared by the Executive Director in consultation with the Chairperson or a member appointed by the Chairperson. If a member wishes to have an issue placed on the agenda, that member shall give notice to the Executive Director or Chairperson prior to the meeting by email, mail or telephone.

Section 8. Meeting minutes –

a. The Chairperson of the Board and any committee shall cause minutes to be kept and the minutes must include:
1. the name of the Board;
2. the start time of the meeting;
3. the location of the meeting;
4. a list of Board members present;
5. the names of all persons attending the meeting;
6. the name of the person or entity who has proposed any workforce standard, administrative rule or guidance, which may include a description of all proposed and/or adopted workforce standards, administrative rules, guidance or legal opinion which the Board or any committee discusses, reviews or adopts during any meeting;
7. attached copies of all administrative rules, workforce standards or guidance proposed at the meeting;
8. the disposition of each item on the agenda;
9. the substance of each motion, the person so moving and the result of any vote on the motion;
10. a summary of other important discussion related to the work of the Board; and
11. the time of adjournment.

b. Minutes of Board meetings shall be reviewed and approved at the next regular meeting of the Board.

Bylaws:  Nursing Home Workforce Standards Board                                                                 2

Section 9.  Unless otherwise provided by law, all Board meetings, including committee meetings, shall be open to the public and are to be held at the Department of Labor and Industry offices located at 443 Lafayette Road N., St. Paul, MN, though if noticed, as such, the Board may hold meetings in other locations. As provided in Minnesota Statutes, chapter 13D, meetings may be conducted through use telephone or other electronic means.

Section 10. Robert's Rules of Order may be used to help the Board conduct its meetings.

Section 11. Department of Labor and Industry staff members who have a role in supporting the work of the Board may attend and participate in all committee, subcommittee and workgroup meetings.

Section 12. Each Board member may give notice to the Executive Director of up to two people who shall be permitted to receive meeting notifications and materials for the purposes of providing them support.

## Article VI – Attendance

A member of the Board who is absent from two consecutive regular meetings shall receive written notice from the Chairperson indicating the member may be removed if three consecutive meetings are unattended. The Chairperson shall inform the appointing authority of a member missing three consecutive meetings.

## Article VII – Voting

The affirmative vote of five Board members is required for the Board to take any action, including actions necessary to establish minimum nursing home employment standards under Minnesota Statutes, section 181.213. At least two of the affirmative votes must be cast by commissioner members or the commissioner's appointees.

## Article VIII – Committees

Section 1. Committees, subcommittees or workgroups may be formed to consider and report on subjects requiring special study. The Board shall appoint these committees and their members by an affirmative vote of at least five members. However, the Board may delegate this appointment responsibility to the Chairperson and/or Executive Director. The members of said groups should have experience in the subjects being studied by the group. The members of said group should also represent diverse viewpoints on the subjects being studied by the group.

Section 2. Committees, subcommittees or workgroups will be charged with an issue for study as determined by the Board. Their responsibility will be to review the issue and make recommendations to the Board in a time and manner determined by the Board.

Section 3. No more than four Board members may serve on the same committee, subcommittee or workgroup.

Section 4. Each member of a committee, subcommittee or workgroup may give notice to the Executive Director of up to two people providing them support and expertise in the subjects being studied by the group, who shall be permitted to receive meeting notifications and materials for the purposes of providing them support and to participate in meetings of the committee, subcommittee or workgroup in a nonvoting capacity.

Section 5. Department of Labor and Industry staff members who have a role in supporting the work of the Board may attend and participate in all committee, subcommittee and workgroup meetings.

Ex. V, p. 003

## Article IX – Responsibilities and expectations of members

Section 1. Members are generally expected to:

a.  prepare for active discussion in meetings and to serve on committees;
b.  comply with the provisions set forth in Minnesota Statutes, sections 10A.07 to 10A.09; and
c.  refrain from writing letters or other communication in the name of Board except as authorized elsewhere in these Bylaws.

Section 2. The Board intends to have its activities conform to all state and federal antitrust requirements. The members acknowledge that some members may compete with other members in business and that it is important that member actions do not violate any applicable antitrust laws. Members who are competitors shall not discuss with one another, to the extent that the information is not publicly available, information relating to: costs; allocation of customers or sales areas; pricing; customer identity; or marketing. The Board may prohibit Board member access to data to meet the requirements of Minnesota Statutes, section 181.212, subdivision 10. When data is withheld from certain Board members, the Executive Director shall, to the extent practicable, provide a written explanation for why the data is being withheld.

## Article X – Per diem and expenses

Section 1. Consistent with Minnesota Statutes, section 15.0575, subdivision 3, members of the Board may be compensated at the rate of $55 a day spent on Board activities. But members who are state employees or employees of the political subdivisions of the state must not receive the daily payment for activities that occur during working hours for which they are compensated by the state or political subdivision. However, a state or political subdivision employee may receive the daily payment if the employee uses vacation time or compensatory time accumulated in accordance with a collective bargaining agreement or compensation plan for Board activities.

Section 2. The Board defines a day spent on Board activities as any day members attend a regular or special Board meeting, or when specifically authorized by the Board to attend committee meetings or other meetings or activities, or perform other duties on any day other than the day of a regular or special Board meeting.

Section 3. Consistent with Minnesota Statutes, section 15.0575, subdivision 3, members of the Board may be compensated for expenses in the same manner and amount as authorized by the commissioner's plan adopted under Minnesota Statutes, section 43A.18, subdivision 2.

## Article XI – Amendments to bylaws

Section 1. The Executive Director or any member may propose an amendment to these Bylaws provided such a proposal is submitted to the Chairperson.

Section 2. All proposed amendments shall be distributed to the entire Board membership at least seven days prior to being placed on the agenda for action.

Section 3. Proposed amendments must be passed by an affirmative vote of at least five Board members at a meeting at which a quorum is present.

Ex. V, p. 004

# Article XII – Scope

Section 1. These Bylaws apply to the Board, the committees and other groups appointed by the Board.

**Adopted by unanimous vote:**  Nov. 9, 2023.

**Amended by unanimous vote:**  Jan. 11, 2024.

**Amended by unanimous vote:**  Aug. 8, 2024.

Ex. V, p. 005

# EXHIBIT W


**DEPARTMENT OF LABOR AND INDUSTRY**

# Minutes:  Nursing Home Workforce Standards Board

Date:  Thursday, July 10, 2025
Minutes prepared by:  Linnea Becerra
Location:  Hybrid – Washington Room at the Department of Labor and Industry and via Webex

## Attendance

| Members present | Visitors present | DLI staff members present |
| --- | --- | --- |
| Michelle Armstrong | Todd Bergstrom | Linnea Becerra |
| Kim Brenne | Maisie Blaine (remotely) | Paul Enger |
| Michele Fredrickson (remotely) | Brian Elliott | Ken McGurran |
| Jamie Gulley | Ben Hansen (remotely) | Josiah Moore |
| Maria King (remotely) | M (remotely) | Leah Solo |
| Katie Lundmark | Kayla Revier (remotely) | Krystle Conley (remotely) |
| Paula Rocheleau | Debbie Prokopf (remotely) | |
| Mary Swanson (remotely) | John Wilson | |

## Agenda items

1. **Call to order** – The meeting was called to order by Chair Jamie Gulley at 11:08 a.m. Roll call was taken. A quorum was declared.
2. **Approval of agenda** – A motion to approve the agenda as presented was made by Michelle Armstrong and seconded by Paula Rocheleau. A roll call vote was taken and the motion passed unanimously.
3. **Approval of drafted meeting minutes** – A motion to approve the June 12, 2025, drafted meeting minutes as presented was made by Armstrong and seconded by Rocheleau. A roll call vote was taken and the motion passed unanimously.
4. **Board updates** –
   - Executive Director Leah Solo recognized the events of June 12 and noted that many members of the Nursing Home Workforce Standards Board worked with both Melissa Hortman and John Hoffman.
   - Solo began with the Certification/Training Workgroup update. Solo recapped the discussion from the workgroup and said she asked all board members for any additional feedback or questions at the most recent meeting and did not receive any responses. Solo recommended the board take a vote on the applications at this meeting to be in compliance with Minnesota Rules 5200.2040, subpart 1(A). Solo took the lead on the discussion as Chair Gulley has recused himself from discussions regarding AFL-CIO and SEIU HC MNIA.
   - The board discussed certified worker organization (CWO) applications, beginning with MN AFL-CIO. Rocheleau expressed dissatisfaction with some wording on the slides and asked how the board would know if the presentation was changed when presenting it to workers. Solo read the rules regarding CWOs and revoking of the organization's certification. It was explained that if the presentation that the CWO was using was no longer compliant, or no longer providing the training

as the board requires, then a complaint could be submitted to the executive director or the executive director's designee and an investigation would ensue. The executive director would then make a recommendation to the board about whether decertification should occur. Katie Lundmark asked about the process after receiving a complaint and what additional consequences would entail following a revocation. Solo said the board could make a process, but would need to be careful about not engaging in unpromulgated rulemaking.

- Gulley, in reference to the AFSCME application, pointed out the training sessions are interactive so each one will be slightly different. Armstrong pointed out there was feedback after the first meeting and the organization changed the slides with the edits provided. There was much discussion about the phrasing of slide number four and the implications some members felt were in the text. Gulley spoke to the facts provided in the AFSCME slide, which is very similar to the AFL-CIO slide. There was discussion about the role of the board in determining what is included in the CWOs' presentations and it was concluded the board could make a recommendation, but it is unclear what the enforcement would be.

- Paul Enger said neither statute nor rule require the board to establish a sample presentation, only a curriculum, and nothing in statute or rule would require the CWO to use the presentation created by the board. Enger explained Minnesota Statutes § 181.214, subdivision 1, states the board shall certify organizations it finds are qualified to provide training and a failure to certify such qualified organizations presents a legal risk. Enger also said that within 30 days of the board changing or updating a standard, the CWO would need to resubmit its materials to reflect the updates. Rocheleau made a motion to approve AFL-CIO as a certified worker organization, with a recommendation to include a reference to "all stakeholders" in the text of slide number four. The motion was seconded by Armstrong. A roll call vote was taken and the motion passed unanimously, with Gulley abstaining.

- The next CWO up for discussion was SEIU HC MNIA. A motion to approve SEIU HC MNIA as a certified worker organization, with a recommendation to include a reference to "all stakeholders" in the text of slide number four, was made by Rocheleau and seconded by Armstrong. A roll call vote was taken and the motion passed unanimously, with Gulley abstaining.

- The final CWO discussed was AFSCME Council 65. In the email between Solo and AFSCME Council 65, it stated it decided not to make all the same changes on slide number four as AFL-CIO and SEIU HC MNIA. Rocheleau made a motion to certify AFSCME Council 65 as a certified worker organization, with a recommendation to add "may" in the first paragraph and include a reference to "all stakeholders" in the last paragraph of slide number four. Armstrong seconded the motion. A roll call vote was taken and the motion passed unanimously.

- Rocheleau asked if the board would be monitoring the training sessions completed; Solo said the Certification/Training Workgroup can discuss this at its next meeting.

- Rocheleau updated the board about the most recent Data Workgroup meeting. The Data Workgroup heard a presentation from Todd Bergstrom and Jeff Bostic about the different parts of a cost report. Kim Brenne added that the board could collect data using the rate add-on application.

- Solo reported about the Public Hearing Workgroup. The workgroup decided on dates and places for the next round of public hearings. The board members are not expected to attend all the hearings and should email the executive director with their availability. These hearings will be two hours long,

from 5 to 7 p.m. A motion was made to approve the presented schedule by Mary Swanson and seconded by Lundmark. A roll call vote was taken and the motion passed unanimously.

- The Waivers and Variances Workgroup has not met since its most recent meeting, but is planning on meeting at the end of the month to discuss the waiver process now that one waiver has been evaluated.
- Solo asked that the board discuss the waiver that was submitted. Solo said the Waiver Review Workgroup would like the Waivers and Variances Workgroup to more fully define "risk of" in the "risk of closure" line. The workgroup agreed this facility was not at risk of receivership though and the parent company has already been talking about closing or selling the nursing home. Solo asked the applicant some follow-up questions and shared its responses. The applicant proposed a waiver for the remainder of the calendar year.
- Rocheleau asked if they were granted a waiver, would that be retroactive or for only the remainder of the year. Solo said the waiver would not be retroactive. Gulley said the applicant has six months of cash on hand, so the holiday pay should not be enough to risk closure or receivership. Rocheleau said that applying for the waiver is a risk. Rocheleau also said a clearer, more consistent way of analyzing the application would be helpful. Brenne said her surprise that the nursing home has no access to the investment income and that the applicant's proposal to waive the holiday pay through the remainder of the year seems appropriate. Gulley asked if the applicant's board could approve use of the investment income to fund the nursing home. There was discussion about nonprofit foundations and investments. Rocheleau made a motion to approve the waiver for this applicant through calendar-year 2025, letting the applicant know it can reapply after that; the motion was seconded by Lundmark. Discussion ensued and a roll call vote was taken. The motion passed with six votes in the affirmative and two votes in opposition.
- Gulley asked if once this waiver is approved, the information will be public, because the workers will need to know they are not getting holiday pay through the end of the year. Enger said that pursuant to Minn. Stat. § 181.215, regarding provision of notice, a nursing home is required to post notice of any locally applicable standards, which would include a waiver or variance in effect.
- There was a motion to refer defining "risk of" to the Waivers and Variances Workgroup by Rocheleau and was seconded by Armstrong. A roll call vote was taken and the motion passed unanimously.

5. **New business** –
6. **Next meeting** – The next meeting is at 11 a.m., Thursday, Sept. 11.

# Adjournment

A motion was made by Brenne to adjourn the meeting at 12:48 p.m. and seconded by Armstrong. A roll call vote was taken and the motion passed unanimously.

Minutes:  Nursing Home Workforce Standards Board, July 10, 2025

Ex. W, p. 003

3

# EXHIBIT X





# SEIU HCMNIA Run Statewide Ads Thanking Gov. Walz as Nursing Home Standards Board Votes to Implement Groundbreaking Policy Changes

May 21, 2024

The Nursing Home Workforce Standards Board, the first of its kind in the country created by MN legislature in 2023, voted for the first time ever this month to approve raising wages and improving holiday pay for nursing home workers to address staffing crisis

Ex. X, p. 001

NURSING HOME SECTOR

# NURSING HOME STAFF PRAISE GOV. WALZ FOR HONORING COMMITMENT TO WORKERS AND RESIDENTS

**STANDARDS BOARD CHAMPIONED BY WALZ RAISES INDUSTRY STANDARDS**



Nessa Higgins, a 25-year nursing home worker in Minneapolis, celebrates the passage of new nursing home standards.

**The Nursing Home Workforce Stands Board**, created into law by the DFL legislature and Gov. Walz in 2023, voted this month to raise wages for nursing home workers across Minnesota and ensure they will get time-and-a-half on all state holidays, making Minnesota a nationwide leader in caring for workers & seniors. These historic changes will help ensure we can recruit and retain the best staff to care for Minnesota seniors in our community!



Nursing home workers and union leaders meet with Gov. Tim Walz during a one-day strike in March, the largest nursing home worker action in state history.

"The new standards will help us care for our families and keep doing the work we love caring for our residents. Thank you, Gov. Walz!"

Nessa Higgins, Nursing Home Worker



Paid for by
**SEIU**
Healthcare
MN & IA

SEIU Healthcare Minnesota & Iowa, who represent thousands of nursing home workers and over 50,000 healthcare workers overall, are celebrating and thanking Governor Walz and the Minnesota legislature for their role in creating the Nursing Home Workforce Standards Board with full page ads in newspapers across the state. There will be additional digital ads also highlighting that the Board voted in the last month to raise wages for workers across the state and pass a standard that ensures all nursing home workers receive time-and-a-half on all 11 state holidays.

The Board was created by the Minnesota legislature during the 2023 session and signed into law by Governor Walz to address the ongoing workforce shortage crisis that is hurting residents, workers and our whole state. The Board is the first of its kind in the country that covers nursing home workers and has the authority to set standards like pay & benefits.

**Nessa Higgins, who has worked in the industry for over 25 years** and who spoke out following the initial vote on the standards, spoke about the importance of the standards and thanked Gov. Walz:

"These new standards will help us care for our families and keep us doing the work we love caring for our residents. Thank you, Gov. Walz!"

The board brings together three government representatives, three employer representatives, and three worker representatives and has the power to set minimum labor standards, like a minimum wage above the current state floor, for the nursing home industry to help strengthen the industry for residents and workers. The Board voted to raise wages for all workers to at least $20.50 in the next three years, with wage floors for certified nursing assistants in nursing homes at $24 per hour wage floor, trained medication aides at $25 per hour and licensed practical nurses at $28.50. The next step in the process of making these proposals a reality is a public comment period that should start sometime in the coming weeks.

These critical changes were passed with the three worker and three government representatives voting yes to support these improvements while the three employer representatives abstained from the vote both times it came

Ex. X, p. 002

up despite repeated acknowledgements by all members of the Board of the need to address the worker shortage.

**Rasha Ahmad Sharif, Executive Vice President of SEIU HCMNIA and leader of the Long Term Care sector**, shared the work that went into this victory and why it is so important in the fight to improve conditions for workers and residents:

"We hear every day from our members who work in nursing homes that they love this work, that this work is who they are, and they can't see themselves doing anything else, but the work has become intolerable. People are leaving this field because of the low pay, lack of benefits, and disrespect they face from the people who run this industry. They see executives making hundreds of thousands of dollars a year, all while struggling to live on their paychecks as they do some of the most challenging work. It has been a revolutionary moment seeing nursing home workers – union and non-union alike – standing up and demanding change. We stand by and support this board and are excited for these new standards. We still have a lot of work to do, but this is an amazing step forward for nursing home workers and residents all across Minnesota."

Minnesota has the dubious distinction of having the worst nursing home workforce shortage in the country. Nursing home workers at dozens of nursing homes have been sounding the alarm, holding rallies, and even holding the largest nursing home worker strike in state history in early March. But despite huge amounts of state money sent to the industry in the previous decades, nursing home executives have refused to listen.

###



© 2026 SEIU Healthcare Minnesota & Iowa. 345 Randolph Ave., Suite 100 | St. Paul, MN 55102 Privacy Policy.

Ex. X, p. 003

# EXHIBIT Y

# Minnesota State Senate

Senate Confirmation of Executive Appointments
2023 - 2024, Ninety-third Legislature

The Senate is authorized to give its advice and consent on executive appointments under Minnesota Statutes, section 15.066. Appointments made by the Governor to state agencies that require confirmation by the Senate are referred to the appropriate committees. The Engrossing Secretary processes governor's appointments for Senate approval and fields any questions.

A  B  C  D  E  F  G  H  I  J  K  L  M  N  O  P  Q  R  S  T  U  V  W  Y  Z

Appointees Listed by Last Name

Back to Top

**Notaries Public**

| | |
|---|---|
| **Appointment:** | Notaries Public |
| **Term:** | - |
| **Referred to:** | No committee referral necessary Committee on 04/02/2024 |
| **Committee Action:** | Notary Public appointments are not referred to a committee; they receive floor action only. |
| **Floor Action:** | Laid on table on 04/02/2024, Confirmed on 04/11/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Notaries Public**

| | |
|---|---|
| **Appointment:** | Notaries Public |
| **Term:** | - |
| **Referred to:** | No committee referral necessary Committee on 05/20/2023 |
| **Committee Action:** | Notary Public appointments are not referred to a committee; they receive floor action only. |
| **Floor Action:** | Laid on table on , Confirmed on 05/21/2023 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Notaries Public**

| | |
|---|---|
| **Appointment:** | Notaries Public |
| **Term:** | - |
| **Referred to:** | No committee referral necessary Committee on 01/04/2023 |
| **Committee Action:** | Notary Public appointments are not referred to a committee; they receive floor action only. |
| **Floor Action:** | Laid on table on , Confirmed on 05/21/2023 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**A**

Back to Top

**Abbott, Joseph**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Metro High Pressure Piping Master Pipefitter Member |
| **Term:** | 10/24/2022 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/09/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/08/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Abrahamson, Karl**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Metro Municipal Plumbing Inspector |
| **Term:** | 10/24/2022 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Aho, Amy**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Teacher in Related Services Category |
| **Term:** | 01/17/2024 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Aho, Amy**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Teacher-Related Services Category |
| **Term:** | 03/14/2023 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 04/26/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Albrecht, Rita**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Citizen Member |
| **Term:** | 04/05/2021 - 12/31/2024 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Anderson, Carol**

| | |
|---|---|
| **Appointment:** | Minnesota Rural Finance Authority, Public Member |
| **Term:** | 02/03/2021 - 01/06/2025 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Agriculture, Broadband, and Rural Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Anderson, Steven**

Ex. Y, p. 003

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 10/18/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Anderson Rons, Bonnie**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 07/19/2023 - 01/04/2027 |
| **Referred to:** | Higher Education Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Antoine, Nancy**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Elementary School Principal Member |
| **Term:** | 01/04/2021 - 01/06/2025 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Archer, Aubrey**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Public Member |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 03/09/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Arnold, Grace**

| | |
|---|---|
| **Appointment:** | Department of Commerce, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Commerce and Consumer Protection Committee on 01/11/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/24/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/16/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Arnold, Samuel**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Non-Metro Commercial/Industrial Journeyworker Plumber Member |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 03/23/2023 |

Ex. Y, p. 004

| | |
|---|---|
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Ayemobuwa, Victor**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, State University Student Member |
| **Term:** | 09/01/2021 - 06/30/2023 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**B**

Back to Top

**Bain, Kyle**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Industrial Company Representative |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 03/09/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Baird, Suzanne**

| | |
|---|---|
| **Appointment:** | Lessard-Sams Outdoor Heritage Council, Public Member |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 04/30/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Bakken, Peter**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Board Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2022 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Barber, Deb**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 4 Representative |

Ex. Y, p. 005

| | |
|---|---|
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Barber, Deb**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 4 Representative |
| **Term:** | 03/08/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Barten, John**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Lakes/Streams Nonprofit Representative |
| **Term:** | 05/31/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Bauerkemper, Joseph**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Board Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Becker, Richard**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Licensed Professional Engineer Member |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Benjamin, Melanie**

| | |
|---|---|
| **Appointment:** | Minnesota Housing Finance Agency, Public Member |
| **Term:** | 03/30/2021 - 01/06/2025 |
| **Referred to:** | Housing and Homelessness Prevention Committee on 01/04/2023 |

Ex. Y, p. 006

| | |
|---|---|
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Housing and Homelessness Prevention Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Benson, Gary**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member with Building Construction Field Expertise |
| **Term:** | 07/19/2023 - 01/04/2027 |
| **Referred to:** | Higher Education Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Besser, Steven**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Fishing Organization Representative |
| **Term:** | 05/05/2021 - 01/01/2024 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Besser, Steven**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Statewide Fishing Organization Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 04/30/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Biske, Richard**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Environmental Organization Representative |
| **Term:** | 05/05/2021 - 01/01/2024 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Biske, Richard**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Environmental Organization Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 04/30/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |

Ex. Y, p. 007

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Blissenbach, Nicole**

| | |
|---|---|
| **Appointment:** | Department of Labor and Industry, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Labor Committee on 01/19/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/31/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/13/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Bowman, Jane**

| | |
|---|---|
| **Appointment:** | Tax Court, Judge |
| **Term:** | 01/02/2023 - 01/01/2029 |
| **Referred to:** | Taxes Committee on 01/10/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/24/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Brainerd, Richard**

| | |
|---|---|
| **Appointment:** | Clean Water Council, City Government Representative |
| **Term:** | 05/05/2021 - 01/01/2024 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Brainerd, Richard**

| | |
|---|---|
| **Appointment:** | Clean Water Council, City Government Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 04/30/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Brobeck, Linda**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 04/02/2020 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |

Ex. Y, p. 008

| Required Documents: | View Application and/or Resume |
|---|---|

**Burdorf, Gary**

| Appointment: | Clean Water Council, Township Officers Representative |
|---|---|
| Term: | 07/03/2023 - 01/04/2027 |
| Referred to: | Environment, Climate, and Legacy Committee on 02/12/2024 |
| Committee Action: | No committee action taken as of 06/05/2024 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Burnett, Aaron**

| Appointment: | Emergency Medical Services Regulatory Board, Emergency Physician |
|---|---|
| Term: | 06/16/2020 - 01/01/2024 |
| Referred to: | Health and Human Services Committee on 01/04/2023 |
| Committee Action: | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Burton, Diane**

| Appointment: | Emergency Medical Services Regulatory Board, Public Member |
|---|---|
| Term: | 07/05/2023 - 01/04/2027 |
| Referred to: | Health and Human Services Committee on 02/12/2024 |
| Committee Action: | No committee action taken as of 06/05/2024 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**C**

Back to Top

**Camarena, Uri**

| Appointment: | Board of the Arts, Member |
|---|---|
| Term: | 04/25/2020 - 01/01/2024 |
| Referred to: | State and Local Government and Veterans Committee on 01/04/2023 |
| Committee Action: | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Cameron, Anjuli**

| Appointment: | Metropolitan Council, District 8 Representative |
|---|---|
| Term: | 07/03/2023 - 01/04/2027 |
| Referred to: | Transportation Committee on 02/12/2024 |

Ex. Y, p. 009

| | |
|---|---|
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Cameron, Anjuli**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 5 Representative |
| **Term:** | 03/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Campbell, Erin**

| | |
|---|---|
| **Appointment:** | Department of Management and Budget, Commissioner |
| **Term:** | 08/15/2023 - 01/04/2027 |
| **Referred to:** | Finance Committee on 02/12/2024 |
| **Committee Action:** | Reported to the Senate Floor on 03/13/2024 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Campbell, James**

| | |
|---|---|
| **Appointment:** | Destination Medical Center Corporation, Member |
| **Term:** | 04/25/2020 - 01/06/2026 |
| **Referred to:** | Jobs and Economic Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Jobs and Economic Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Carlson, Kathryn**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 10/11/2023 - 01/04/2027 |
| **Referred to:** | Labor Committee on 02/12/2024 |
| **Committee Action:** | Reported to the Senate Floor on 03/26/2024 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Carter, Tyronne**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 3 Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |

Ex. Y, p. 010

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Carter, Tyronne**

**Appointment:** Metropolitan Council, District 3 Representative

**Term:** 03/08/2023 - 01/04/2027

**Referred to:** Transportation Committee on 04/14/2023

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Carter, Willetha**

**Appointment:** Metropolitan Council, District 14 Representative

**Term:** 07/03/2023 - 01/04/2027

**Referred to:** Transportation Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Carter, Willetha**

**Appointment:** Metropolitan Council, District 14 Representative

**Term:** 03/08/2023 - 01/04/2027

**Referred to:** Transportation Committee on 04/14/2023

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Cederberg, Gail**

**Appointment:** Metropolitan Council, District 12 Representative

**Term:** 03/08/2023 - 01/04/2027

**Referred to:** Transportation Committee on 04/14/2023

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Cederberg, Gail**

**Appointment:** Metropolitan Council, District 11 Representative

**Term:** 07/03/2023 - 01/04/2027

**Referred to:** Transportation Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

Ex. Y, p. 011

**Chamblis, Reva**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 2 Representative |
| **Term:** | 03/08/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Chamblis, Reva**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 2 Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Charron, Michael**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Member |
| **Term:** | 04/25/2020 - 01/01/2024 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Chase, Molly**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 09/28/2020 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Childers, LaTia**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 05/19/2021 - 01/06/2025 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Christenson, Steven**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Business Organization Representative |

Ex. Y, p. 012

**Term:** 05/31/2023 - 01/04/2027

**Referred to:** Environment, Climate, and Legacy Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Christenson, Thomas**

**Appointment:** Workers' Compensation Court of Appeals, Judge

**Term:** 04/27/2022 - 01/03/2028

**Referred to:** Labor Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Chu, Anthony**

**Appointment:** Emergency Medical Services Regulatory Board, Registered Nurse

**Term:** 09/21/2022 - 01/05/2026

**Referred to:** Health and Human Services Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Cirillo, Alexander C.**

**Appointment:** Board of Trustees of the Minnesota State Colleges and Universities, Trustee Member

**Term:** 07/15/2018 - 06/30/2024

**Referred to:** Higher Education Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Coatie, Micah**

**Appointment:** Board of Trustees of the Minnesota State Colleges and Universities, Technical College Student

**Term:** 08/16/2023 - 06/30/2025

**Referred to:** Higher Education Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Coffey, Julie**

**Appointment:** Professional Educator Licensing and Standards Board, School District Human Resources Director

**Term:** 05/17/2020 - 01/01/2024

**Referred to:** Education Policy Committee on 01/04/2023

Ex. Y, p. 013

| | |
|---|---|
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Cohen, Richard**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Member |
| **Term:** | 06/30/2021 - 01/06/2025 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Colombo, Barbara**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 07/06/2021 - 06/30/2027 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Cook, Jessica**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Principal |
| **Term:** | 07/05/2022 - 01/06/2025 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Cooperstein, Eric**

| | |
|---|---|
| **Appointment:** | Minnesota Housing Finance Agency, Member |
| **Term:** | 03/24/2023 - 01/04/2027 |
| **Referred to:** | Housing and Homelessness Prevention Committee on 04/12/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Cowles, John**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| **Term:** | 09/22/2020 - 06/30/2026 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |

Ex. Y, p. 014

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Cunningham, Brooke**

| | |
|---|---|
| **Appointment:** | Department of Health, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Health and Human Services Committee on 01/17/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/31/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**D**

Back to Top

**Daniels, Alfreda**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Public Member |
| **Term:** | 03/14/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 04/20/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Daubenberger, Nancy**

| | |
|---|---|
| **Appointment:** | Department of Transportation, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 01/05/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/10/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/06/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**DeCramer, John**

| | |
|---|---|
| **Appointment:** | Minnesota Housing Finance Agency, Member |
| **Term:** | 06/16/2020 - 01/01/2024 |
| **Referred to:** | Housing and Homelessness Prevention Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Housing and Homelessness Prevention Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Dehn, Raymond**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 07/06/2021 - 06/30/2027 |

Ex. Y, p. 015

| | |
|---|---|
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Delapena, Bradford S.**

| | |
|---|---|
| **Appointment:** | Tax Court, Judge |
| **Term:** | 01/05/2021 - 01/04/2027 |
| **Referred to:** | Taxes Committee on 01/04/2023 |
| **Committee Action:** | Reported to the Senate Floor on 02/02/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**DePestel, Shelly**

| | |
|---|---|
| **Appointment:** | Minnesota Rural Finance Authority, Public Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Agriculture, Broadband, and Rural Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Dolkar, Tenzin**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 15 Representative |
| **Term:** | 03/08/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Dolkar, Tenzin**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 15 Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Doyle, Rebekah**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 10/18/2023 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |

| | |
|---|---|
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Drucker, Paul**

| | |
|---|---|
| **Appointment:** | Emergency Medical Services Regulatory Board, Representative of Minnesota Hospitals |
| **Term:** | 07/05/2023 - 01/04/2027 |
| **Referred to:** | Health and Human Services Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Dryke, Michael**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Public Member |
| **Term:** | 03/01/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**E**

Back to Top

**Edminson, Thomas**

| | |
|---|---|
| **Appointment:** | Emergency Medical Services Regulatory Board, Metro EMS |
| **Term:** | 07/05/2023 - 01/04/2027 |
| **Referred to:** | Health and Human Services Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Edwards, Brian**

| | |
|---|---|
| **Appointment:** | Emergency Medical Services Regulatory Board, Emergency Medical Technician and Paramedic |
| **Term:** | 07/05/2023 - 01/04/2027 |
| **Referred to:** | Health and Human Services Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Eggert, Jessica**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Blind Community Leader |
| **Term:** | 06/30/2021 - 01/06/2025 |

Ex. Y, p. 017

| | |
|---|---|
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**English, William**

| | |
|---|---|
| **Appointment:** | Gambling Control Board |
| **Term:** | 09/03/2019 - 06/30/2023 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Erhart, Dan**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 06/28/2017 - 06/30/2023 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Erickson, Kent**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Non-Metro Municipal Plumbing Inspector Member |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Erlandson, Dawn**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Trustee Member |
| **Term:** | 07/15/2018 - 06/30/2024 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**F**

Back to Top

Ex. Y, p. 018

**Faber, William**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Citizen Member |
| **Term:** | 03/07/2022 - 12/31/2025 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Fischer, Scott**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Public Member |
| **Term:** | 04/05/2022 - 01/05/2026 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Judiciary and Public Safety Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Fisher, David F.**

| | |
|---|---|
| **Appointment:** | MNsure Board, Representative of Health Policy Issues Related to Small Group and Individual Markets |
| **Term:** | 06/16/2020 - 05/05/2024 |
| **Referred to:** | Health and Human Services Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Fletcher, Thomas**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Power Limited Technician/Technology Systems Contractor |
| **Term:** | 03/14/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 04/20/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Flynn, Carol**

| | |
|---|---|
| **Appointment:** | Campaign Finance and Public Disclosure Board, Former DFL Legislator |
| **Term:** | 03/22/2023 - 01/04/2027 |
| **Referred to:** | Elections Committee on 03/23/2023 |
| **Committee Action:** | Reported to the Senate Floor on 04/25/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/19/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Formo, Warren**

Ex. Y, p. 019

| | |
|---|---|
| **Appointment:** | Clean Water Council, Farming Organization Representative |
| **Term:** | 05/31/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Forsman, Doug**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Board Member |
| **Term:** | 07/01/2023 - 06/30/2027 |
| **Referred to:** | State and Local Government and Veterans Committee on 03/21/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Foster, Kenneth**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Member |
| **Term:** | 11/28/2022 - 01/05/2026 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Freiheit, Annette**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Superintendent Member |
| **Term:** | 07/05/2023 - 07/05/2023 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Fridgen, Marty**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Classroom Teacher Representative |
| **Term:** | 04/19/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Funseth, Cole**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Rural Electrical Supplier |
| **Term:** | 03/14/2023 - 12/31/2025 |

Ex. Y, p. 020

| | |
|---|---|
| **Referred to:** | Labor Committee on 04/20/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**G**

Back to Top

**Galusha, Emily**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Member |
| **Term:** | 06/13/2023 - 06/13/2023 |
| **Referred to:** | State and Local Government and Veterans Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gardner, Anthony**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Member |
| **Term:** | 06/23/2021 - 01/06/2025 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gausman, Brad**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Hunting Organization Representative |
| **Term:** | 05/31/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gibson, Nancy**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Citizen Member |
| **Term:** | 04/05/2021 - 12/31/2023 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Y, p. 021

**Gingold, Alan**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Commissioner |
| **Term:** | 11/24/2019 - 06/30/2025 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Goodman, Lisa**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Commissioner |
| **Term:** | 11/24/2019 - 06/30/2025 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Grabowska, Jim**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| **Term:** | 10/24/2022 - 06/30/2028 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Grans Korsh, Sally**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 10/18/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gribauval-Hite, Kelly**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Business Organization Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 04/30/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gribauval-Hite, Kelly**

Ex. Y, p. 022

| | |
|---|---|
| **Appointment:** | Clean Water Council, Business Organization Representative |
| **Term:** | 05/05/2021 - 01/01/2024 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Griffin, Mikeya**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gronvall, Tamar**

| | |
|---|---|
| **Appointment:** | Department of Administration, Commissioner |
| **Term:** | 10/09/2023 - 01/04/2027 |
| **Referred to:** | State and Local Government and Veterans Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Grove, Steve**

| | |
|---|---|
| **Appointment:** | Department of Employment and Economic Development, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Jobs and Economic Development Committee on 01/11/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/23/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gudmunson, Sarah**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Power Limited Technician/Tech System Contractor Member |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gustafson, Jinger**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Higher Educator Administrator Member |
| **Term:** | 04/19/2023 - 01/04/2027 |

Ex. Y, p. 023

| | |
|---|---|
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**H**

Back to Top

**Hable, Scott**

| | |
|---|---|
| **Appointment:** | Emergency Medical Services Regulatory Board, County Sheriff Representative |
| **Term:** | 09/21/2022 - 01/05/2026 |
| **Referred to:** | Health and Human Services Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Haiby, Steve**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Electrical Supplier in Rural Areas Representative |
| **Term:** | 10/06/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Ham, Hwikwon**

| | |
|---|---|
| **Appointment:** | Public Utilities Commission, Commissioner |
| **Term:** | 01/08/2024 - 01/03/2028 |
| **Referred to:** | Energy, Utilities, Environment, and Climate Committee on 02/12/2024 |
| **Committee Action:** | Reported to the Senate Floor on 02/14/2024 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hanson, Michael**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Master Electrician-Contractor Member |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Harpstead, Jodi**

Ex. Y, p. 024

| | |
|---|---|
| **Appointment:** | Department of Human Services, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Health and Human Services Committee on 01/09/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/31/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Harris, Theresa**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Attorney |
| **Term:** | 04/05/2022 - 01/05/2026 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Judiciary and Public Safety Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Hartwell, David**

| | |
|---|---|
| **Appointment:** | Lessard-Sams Outdoor Heritage Council, Public Member |
| **Term:** | 03/30/2021 - 01/06/2025 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hatlewick, Holly**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Soil and Water Representative |
| **Term:** | 05/31/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hawkins, Peggy**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Licensed Veterinarian |
| **Term:** | 02/23/2024 - 01/03/2028 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 03/21/2024 |
| **Committee Action:** | Reported to the Senate Floor on 04/03/2024 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hawkins, Peggy**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Licensed Veterinarian |

Ex. Y, p. 025

| | |
|---|---|
| **Term:** | 07/22/2020 - 01/01/2024 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Agriculture, Broadband, and Rural Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Heimerl, Jeff**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Journeyworker Electrician Member |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hendricks, Duane**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Master Electrician-Contractor |
| **Term:** | 03/14/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 04/20/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Herke, Larry**

| | |
|---|---|
| **Appointment:** | Department of Veterans Affairs, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/11/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/19/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/09/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Herman, Michael**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Water Conditioning Contractor Member |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hildenbrand, Drew**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Secondary School Principal Representative |
| **Term:** | 04/19/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |

Ex. Y, p. 026

| | |
|---|---|
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hince, Rylee**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Board Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Ho, Jennifer**

| | |
|---|---|
| **Appointment:** | Minnesota Housing Finance Agency, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Housing and Homelessness Prevention Committee on 01/17/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/24/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Ho-Nishimura, April**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Trustee Member |
| **Term:** | 07/15/2018 - 06/30/2024 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hoelscher, Justin**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Administrator of a Cooperative Unit Who Oversees a Special Education Program |
| **Term:** | 01/17/2024 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Holman, Todd**

| | |
|---|---|
| **Appointment:** | Board of Water and Soil Resources, Chair |
| **Term:** | 07/05/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 02/15/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |

Ex. Y, p. 027

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Huebsch, Timothy**

**Appointment:** Board of Trustees of the Minnesota State Colleges and Universities, Member

**Term:** 10/24/2022 - 06/30/2028

**Referred to:** Higher Education Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Hustoles, Paul**

**Appointment:** Board of the Perpich Center for Arts Education, Member

**Term:** 03/09/2022 - 01/05/2026

**Referred to:** Education Policy Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**I**

Back to Top

**Ibrahim, Idman**

**Appointment:** Board of Trustees of the Minnesota State Colleges and Universities, State University Student

**Term:** 08/16/2023 - 06/30/2025

**Referred to:** Higher Education Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Idelkope, Julie**

**Appointment:** Minnesota Racing Commission, Commissioner

**Term:** 11/24/2019 - 06/30/2025

**Referred to:** State and Local Government and Veterans Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Ives, Mary F.**

**Appointment:** Minnesota Higher Education Facilities Authority, Public Member

**Term:** 06/16/2020 - 01/01/2024

Ex. Y, p. 028

| | |
|---|---|
| Referred to: | Higher Education Committee on 01/04/2023 |
| Committee Action: | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**J**

Back to Top

**Jacobson, Robert**

| | |
|---|---|
| Appointment: | Department of Public Safety, Commissioner |
| Term: | 01/02/2023 - 01/04/2027 |
| Referred to: | Judiciary and Public Safety Committee on 01/17/2023 |
| Committee Action: | Reported to the Senate Floor on 02/13/2023 with recommendation to confirm. |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Jain, Nirmal**

| | |
|---|---|
| Appointment: | Board of High Pressure Piping Systems, Licensed Mechanical Engineer |
| Term: | 03/08/2023 - 12/31/2025 |
| Referred to: | Labor Committee on 03/09/2023 |
| Committee Action: | No committee action taken as of 06/05/2024 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Janezich, Jerry**

| | |
|---|---|
| Appointment: | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| Term: | 10/24/2022 - 06/30/2028 |
| Referred to: | Higher Education Committee on |
| Committee Action: | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Jankila, Erik**

| | |
|---|---|
| Appointment: | Emergency Medical Services Regulatory Board, Representative of Fire Chiefs |
| Term: | 07/05/2023 - 01/04/2027 |
| Referred to: | Health and Human Services Committee on 02/12/2024 |
| Committee Action: | No committee action taken as of 06/05/2024 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Jett II, Willie**

| | |
|---|---|
| Appointment: | Department of Education, Commissioner |

Ex. Y, p. 029

| | |
|---|---|
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 01/19/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/30/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/16/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Johnson, Judy**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 1 Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Johnson, Judy**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 1 Representative |
| **Term:** | 03/08/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Johnson, Roy**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 06/27/2017 - 06/30/2023 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**K**

Back to Top

**Katzenberger, Daniel**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Member |
| **Term:** | 04/17/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 05/02/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Y, p. 030

**Kelsey, Brent**

| | |
|---|---|
| **Appointment:** | Minnesota Rural Finance Authority, Public Member |
| **Term:** | 08/16/2023 - 01/04/2027 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Kennedy, Jessica**

| | |
|---|---|
| **Appointment:** | MNsure Board, Representative of Consumers Eligible for Public Health Care Program Coverage |
| **Term:** | 08/18/2021 - 05/05/2025 |
| **Referred to:** | Health and Human Services Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Kessler, Katrina**

| | |
|---|---|
| **Appointment:** | Minnesota Pollution Control Agency, Commissioner |
| **Term:** | 01/02/2023 - 01/01/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/09/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/18/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Khosravi, Pasha**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 10/18/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Kincs, Mark**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Utility Company Representative |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 03/09/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Klinzing, Stephanie**

| | |
|---|---|
| **Appointment:** | Minnesota Housing Finance Agency, Member |

Ex. Y, p. 031

| | |
|---|---|
| **Term:** | 03/24/2023 - 01/04/2027 |
| **Referred to:** | Housing and Homelessness Prevention Committee on 04/12/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Knight, Annie**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Environmental Organization Representative |
| **Term:** | 05/31/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Kocken, Dr. Paula Fink**

| | |
|---|---|
| **Appointment:** | Emergency Medical Services Regulatory Board, Pediatrician |
| **Term:** | 06/16/2020 - 01/01/2024 |
| **Referred to:** | Health and Human Services Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Konar-Steenberg, Mehmet**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Board Member |
| **Term:** | 01/05/2021 - 01/06/2025 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Koob, David**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 03/07/2022 - 06/30/2027 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Koppien-Fox, Jessica**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Licensed Veterinarian Member |
| **Term:** | 05/05/2021 - 01/06/2025 |

Ex. Y, p. 032

| | |
|---|---|
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Agriculture, Broadband, and Rural Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**L**

Back to Top

**Lage, Amber**

| | |
|---|---|
| **Appointment:** | Emergency Medical Services Regulatory Board, Professional Firefighter Member |
| **Term:** | 06/16/2020 - 01/01/2024 |
| **Referred to:** | Health and Human Services Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Le, Julie**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Public Member |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 04/30/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**LeCuyer, Leslie**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 05/19/2021 - 01/06/2025 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lee, Chai**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 13 Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Y, p. 033

**Lee, Chai**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 13 Representative |
| **Term:** | 03/08/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lee, Yolonde**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 05/19/2021 - 01/06/2025 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lemke, Jonathan**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Metro Commerical/Industrial Journeyworker Plumber Member |
| **Term:** | 10/24/2022 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lilligren, Robert**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 6 Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lilligren, Robert**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 7 Representative |
| **Term:** | 03/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lindsay, Brad**

| | |
|---|---|
| **Appointment:** | Department of Veterans Affairs, Commissioner |
| **Term:** | 12/20/2023 - 01/04/2027 |

Ex. Y, p. 034

| | |
|---|---|
| **Referred to:** | State and Local Government and Veterans Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lindstrom, Peter**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 10 Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lindstrom, Peter**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 10 Representative |
| **Term:** | 03/08/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lofald, Jill**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Public Member |
| **Term:** | 03/09/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lorenzo, Janet**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Member |
| **Term:** | 07/01/2021 - 06/30/2025 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2024 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Loritz, Dan**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 04/02/2020 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |

Ex. Y, p. 035

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lucero, Rebecca**

| | |
|---|---|
| **Appointment:** | Department of Human Rights, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/09/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/23/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 03/09/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Luthner, Kate**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Member |
| **Term:** | 04/05/2023 - 06/30/2024 |
| **Referred to:** | State and Local Government and Veterans Committee on 04/20/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**M**

Back to Top

**Mahoney, Timothy**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Director |
| **Term:** | 08/29/2022 - |
| **Referred to:** | State and Local Government and Veterans Committee on 01/23/2023 |
| **Committee Action:** | Reported to the Senate Floor on 05/10/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Marquart, Paul**

| | |
|---|---|
| **Appointment:** | Department of Revenue, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Taxes Committee on 01/17/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/19/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/08/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Marquis, Matthew**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, High Pressure Piping Industry Representative |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |

Ex. Y, p. 036

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Martin, Ken**

**Appointment:** Board of the Arts, Member

**Term:** 01/03/2023 - 01/04/2027

**Referred to:** State and Local Government and Veterans Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Martin, Nicholas**

**Appointment:** Minnesota Environmental Quality Board, Public Board Member

**Term:** 10/06/2020 - 01/01/2024

**Referred to:** Environment, Climate, and Legacy Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Martinson, Trista**

**Appointment:** Clean Water Council, County Government Representative

**Term:** 04/24/2024 - 01/03/2028

**Referred to:** Environment, Climate, and Legacy Committee on 05/03/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Maynard, Abigail**

**Appointment:** Board of Animal Health, Licensed Veterinarian Specializing in Companion Animals

**Term:** 11/14/2023 - 01/04/2027

**Referred to:** Agriculture, Broadband, and Rural Development Committee on 02/12/2024

**Committee Action:** Reported to the Senate Floor on 04/03/2024 with recommendation to confirm.

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**McArdle, Camille**

**Appointment:** Minnesota Racing Commission, Public Member

**Term:** 08/02/2023 - 01/01/2029

**Referred to:** State and Local Government and Veterans Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

Ex. Y, p. 037

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**McArdle, Camille**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 06/28/2017 - 06/30/2023 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**McCullough, Patrick**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, High Pressure Piping Instructor |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**McKenzie, Phillip**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Member |
| **Term:** | 04/25/2020 - 01/01/2024 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Melton-Mitchell, Nichole**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Milun, Patricia**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 01/23/2023 - 01/01/2029 |
| **Referred to:** | Labor Committee on 02/13/2023 |
| **Committee Action:** | Reported to the Senate Floor on 03/26/2024 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |

Ex. Y, p. 038

Page 307 of 503

| | |
|---|---|
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Miranda, Suyapa**

| | |
|---|---|
| **Appointment:** | MNsure Board, Representative of Public Health Care Programs |
| **Term:** | 06/16/2020 - 05/05/2024 |
| **Referred to:** | Health and Human Services Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Moe, Roger**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| **Term:** | 09/22/2020 - 06/30/2026 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Mohr, Janet**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 04/05/2022 - 01/06/2025 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Moore, Reuben**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Public Member |
| **Term:** | 07/05/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Moore, Seth**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Citizen Member |
| **Term:** | 03/07/2022 - 12/31/2025 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |

Ex. Y, p. 039

| Required Documents: | View Application and/or Resume |
|---|---|

**Morales, Diego**

| Appointment: | Metropolitan Council, District 9 Representative |
|---|---|
| Term: | 07/03/2023 - 01/04/2027 |
| Referred to: | Transportation Committee on 02/12/2024 |
| Committee Action: | No committee action taken as of 06/05/2024 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Morales, Diego**

| Appointment: | Metropolitan Council, District 9 Representative |
|---|---|
| Term: | 03/08/2023 - 01/04/2027 |
| Referred to: | Transportation Committee on 04/14/2023 |
| Committee Action: | No committee action taken as of 06/05/2024 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Morillo, Javier**

| Appointment: | Board of Trustees of the Minnesota State Colleges and Universities, Member |
|---|---|
| Term: | 09/22/2020 - 06/30/2026 |
| Referred to: | Higher Education Committee on 01/04/2023 |
| Committee Action: | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**N**

Back to Top

**Nardone, James**

| Appointment: | Gambling Control Board, Member |
|---|---|
| Term: | 06/23/2021 - 06/30/2024 |
| Referred to: | State and Local Government and Veterans Committee on 01/04/2023 |
| Committee Action: | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Neil, Steve**

| Appointment: | Board of Animal Health, Livestock Producer |
|---|---|
| Term: | 07/03/2023 - 01/04/2027 |
| Referred to: | Agriculture, Broadband, and Rural Development Committee on 02/12/2024 |
| Committee Action: | Reported to the Senate Floor on 04/03/2024 with recommendation to confirm. |

Ex. Y, p. 040

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Nelson, Paul**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Board Member |
| **Term:** | 01/04/2022 - 01/05/2026 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**O**

Back to Top

**O'Brien, Timothy**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Attorney |
| **Term:** | 12/20/2023 - 01/03/2028 |
| **Referred to:** | Judiciary and Public Safety Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Ogungbe, Oluwagbenga**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Member of the General Public with Business, Administrative, or Financial Expertise |
| **Term:** | 09/22/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Olmanson, Ole**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Tribal Government Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Olson, Dennis**

| | |
|---|---|
| **Appointment:** | Office of Higher Education, Commissioner |

Ex. Y, p. 041

**Term:**                                     01/02/2023 - 01/04/2027

**Referred to:**                              Higher Education Committee on 01/10/2023

**Committee Action:**                         Reported to the Senate Floor on 01/24/2023 with recommendation to confirm.

**Floor Action:**                             Confirmed on 02/13/2023

**Statement of Economic Interest:**           View Public Official Information

**Required Documents:**                       View Application and/or Resume

**Osman, Yassin**

**Appointment:**                              Metropolitan Council, District 7 Representative

**Term:**                                     07/03/2023 - 01/04/2027

**Referred to:**                              Transportation Committee on 02/12/2024

**Committee Action:**                         No committee action taken as of 06/05/2024

**Floor Action:**                             No floor action taken as of 06/05/2024

**Statement of Economic Interest:**           View Public Official Information

**Required Documents:**                       View Application and/or Resume

**Osman, Yassin**

**Appointment:**                              Metropolitan Council, District 8 Representative

**Term:**                                     03/08/2023 - 01/04/2027

**Referred to:**                              Transportation Committee on 04/14/2023

**Committee Action:**                         No committee action taken as of 06/05/2024

**Floor Action:**                             No floor action taken as of 06/05/2024

**Statement of Economic Interest:**           View Public Official Information

**Required Documents:**                       View Application and/or Resume

**Osuji, Angela**

**Appointment:**                              Professional Educator Licensing and Standards Board, Metro Teacher

**Term:**                                     03/14/2023 - 01/04/2027

**Referred to:**                              Education Policy Committee on 04/26/2023

**Committee Action:**                         No committee action taken as of 06/05/2024

**Floor Action:**                             No floor action taken as of 06/05/2024

**Statement of Economic Interest:**           View Public Official Information

**Required Documents:**                       View Application and/or Resume

**P**

Back to Top

**Pacheco Jr., John**

**Appointment:**                              Metropolitan Council, District 5 Representative

**Term:**                                     07/03/2023 - 01/04/2027

**Referred to:**                              Transportation Committee on 02/12/2024

**Committee Action:**                         No committee action taken as of 06/05/2024

**Floor Action:**                             No floor action taken as of 06/05/2024

**Statement of Economic Interest:**           View Public Official Information

**Required Documents:**                       View Application and/or Resume

**Pacheco Jr., John**

Ex. Y, p. 042

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 6 Representative |
| **Term:** | 03/08/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Parizek, Justin**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Residential Plumbing-Journeyworker Member |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2021 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Payne, Lucy**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Teacher from a Teacher Preparation Program |
| **Term:** | 07/05/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Peichel, Jeremy**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Citizen Member |
| **Term:** | 04/19/2021 - 12/31/2024 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Peltier, Paul**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Non-Metro Teacher |
| **Term:** | 03/14/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 04/26/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Peters, Ashley**

| | |
|---|---|
| **Appointment:** | Lessard-Sams Outdoor Heritage Council, Public Member |
| **Term:** | 03/14/2023 - 01/04/2027 |

Ex. Y, p. 043

| | |
|---|---|
| **Referred to:** | Environment, Climate, and Legacy Committee on 03/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Petersen, Rebecca Lynn**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 03/09/2022 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Petersen, Thom**

| | |
|---|---|
| **Appointment:** | Department of Agriculture, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 01/11/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/23/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/06/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Pettit, Jacob**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Non-Metro High Pressure Piping Journeyworker Member |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 03/09/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Pint, Norm**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Member |
| **Term:** | 07/01/2019 - 06/30/2023 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Plieseis, Steven**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Non-Metro High Pressure Piping Master Pipefitter |
| **Term:** | 12/27/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |

Ex. Y, p. 044

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Pratt, Sara**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Special Education Director Member |
| **Term:** | 09/06/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Prock, Adam**

| | |
|---|---|
| **Appointment:** | State Lottery, Director |
| **Term:** | 04/10/2019 - |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Pylkas, Bruce**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Metro Commerical/Industrial Journeyworker Plumber Member |
| **Term:** | 03/06/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 03/23/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Q**

Back to Top

**Quinn, Sean M.**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 10/28/2019 - 01/06/2025 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**R**

Back to Top

Ex. Y, p. 045

**Rappe, Brian**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Teacher-Special Education |
| **Term:** | 03/08/2021 - 01/06/2025 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Rashid, Faris**

| | |
|---|---|
| **Appointment:** | Campaign Finance and Public Disclosure Board, Member |
| **Term:** | 03/22/2023 - 01/04/2027 |
| **Referred to:** | Elections Committee on 03/23/2023 |
| **Committee Action:** | Reported to the Senate Floor on 04/25/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/19/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Reimer, Tracy**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Higher Education Faculty in an Educational Administration Program Member |
| **Term:** | 01/04/2021 - 01/06/2025 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Reinhardt, Victoria**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Metro County Government Representative |
| **Term:** | 05/05/2021 - 01/01/2024 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Richter, Christopher**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Community College Student |
| **Term:** | 08/16/2023 - 06/30/2025 |
| **Referred to:** | Higher Education Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Roberts Davis, Alice**

Ex. Y, p. 046

| | |
|---|---|
| **Appointment:** | Department of Administration, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/12/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/24/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/08/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Rowland, David**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 06/02/2021 - 01/06/2025 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Rukavina, Ida**

| | |
|---|---|
| **Appointment:** | Iron Range Resources and Rehabilitation, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Jobs and Economic Development Committee on 01/17/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/23/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 03/09/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Rybak, R.T.**

| | |
|---|---|
| **Appointment:** | Destination Medical Center Corporation, Member |
| **Term:** | 02/21/2024 - 01/01/2029 |
| **Referred to:** | Jobs and Economic Development Committee on 04/02/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Rybarczyk, Sara**

| | |
|---|---|
| **Appointment:** | Emergency Medical Services Regulatory Board, Ambulance Service Director |
| **Term:** | 09/21/2022 - 01/05/2026 |
| **Referred to:** | Health and Human Services Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**S**

Back to Top

Ex. Y, p. 047

**Saehr, Scott**

| | |
|---|---|
| **Appointment:** | Emergency Medical Services Regulatory Board, Volunteer Firefighter Member |
| **Term:** | 06/16/2020 - 01/01/2024 |
| **Referred to:** | Health and Human Services Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sakaguchi, Scott**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Public Member |
| **Term:** | 03/01/2021 - 01/06/2025 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Judiciary and Public Safety Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Salazar, Ronald**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Saloka, Gift**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Special Education Teacher |
| **Term:** | 03/14/2023 - 01/06/2025 |
| **Referred to:** | Education Policy Committee on 04/26/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sampair, Nancy**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Y, p. 048

**Sannerud, Eric**

| | |
|---|---|
| **Appointment:** | Minnesota Rural Finance Authority, Public Member |
| **Term:** | 02/03/2021 - 01/06/2025 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Agriculture, Broadband, and Rural Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sawatzke, Erica**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Livestock Producer |
| **Term:** | 04/05/2022 - 01/05/2026 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Agriculture, Broadband, and Rural Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Saxhaug, Tom**

| | |
|---|---|
| **Appointment:** | Lessard-Sams Outdoor Heritage Council, Public Member |
| **Term:** | 03/14/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 03/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schafer, Brandon**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Livestock Producer |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 02/12/2024 |
| **Committee Action:** | Reported to the Senate Floor on 04/03/2024 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schaller, Melissa**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Special Education Director Representative |
| **Term:** | 03/29/2024 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 04/30/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schaller, Melissa**

Ex. Y, p. 049

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Director of Special Education |
| **Term:** | 01/13/2020 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schnell, Paul**

| | |
|---|---|
| **Appointment:** | Department of Corrections, Commissioner |
| **Term:** | 01/02/2023 - 01/01/2027 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/09/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/23/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schowalter, James D.**

| | |
|---|---|
| **Appointment:** | Department of Management and Budget, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Finance Committee on 01/17/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/25/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 02/09/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schuerger, Matthew**

| | |
|---|---|
| **Appointment:** | Public Utilities Commission, Commissioner |
| **Term:** | 07/13/2022 - 01/03/2028 |
| **Referred to:** | Energy, Utilities, Environment, and Climate Committee on 01/04/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/11/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 05/12/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schwagerl, Peter**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Farming Organization Representative |
| **Term:** | 05/05/2021 - 01/01/2024 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schwagerl, Peter**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Farm Organization Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |

Ex. Y, p. 050

| | |
|---|---|
| Referred to: | Environment, Climate, and Legacy Committee on 04/30/2024 |
| Committee Action: | No committee action taken as of 06/05/2024 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Sheran, Kathy**

| | |
|---|---|
| Appointment: | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| Term: | 09/22/2020 - 06/30/2026 |
| Referred to: | Higher Education Committee on 01/04/2023 |
| Committee Action: | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Shoemaker, Brandee**

| | |
|---|---|
| Appointment: | Professional Educator Licensing and Standards Board, Teacher Outside Seven-County Metro Area |
| Term: | 11/01/2023 - 01/06/2025 |
| Referred to: | Education Policy Committee on 02/12/2024 |
| Committee Action: | No committee action taken as of 06/05/2024 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Sieben, Katherine**

| | |
|---|---|
| Appointment: | Public Utilities Commission, Chair |
| Term: | 01/03/2023 - 01/01/2029 |
| Referred to: | Energy, Utilities, Environment, and Climate Committee on 01/09/2022 |
| Committee Action: | Reported to the Senate Floor on 01/11/2023 with recommendation to confirm. |
| Floor Action: | Confirmed on 05/12/2023 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Siverson Hall, Brian**

| | |
|---|---|
| Appointment: | Board of School Administrators, Community Education Director |
| Term: | 04/19/2023 - 01/05/2026 |
| Referred to: | Education Policy Committee on 02/12/2024 |
| Committee Action: | No committee action taken as of 06/05/2024 |
| Floor Action: | No floor action taken as of 06/05/2024 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Soule, George**

| | |
|---|---|
| Appointment: | Board of Trustees of the Minnesota State Colleges and Universities, Trustee Member |
| Term: | 07/15/2018 - 06/30/2024 |
| Referred to: | Higher Education Committee on 01/04/2023 |
| Committee Action: | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| Floor Action: | No floor action taken as of 06/05/2024 |

Ex. Y, p. 051

| | |
|---|---|
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sparks, Dan**

| | |
|---|---|
| **Appointment:** | Clean Water Council, County Government Representative |
| **Term:** | 05/31/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Spears, Stephen**

| | |
|---|---|
| **Appointment:** | Minnesota Housing Finance Agency, Member |
| **Term:** | 02/16/2022 - 01/05/2026 |
| **Referred to:** | Housing and Homelessness Prevention Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Housing and Homelessness Prevention Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Speier, Jamie**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Public Member with Business, Administrative, or Financial Expertise |
| **Term:** | 05/17/2020 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Stade, Alex**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Livestock Producer |
| **Term:** | 04/05/2022 - 01/05/2026 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Agriculture, Broadband, and Rural Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Starr, Jenny**

| | |
|---|---|
| **Appointment:** | Office of Administrative Hearing, Chief Administrative Law Judge |
| **Term:** | 09/03/2019 - 06/30/2025 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Reported to the Senate Floor on 02/14/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |

Ex. Y, p. 052

Required Documents:                    View Application and/or Resume

**Staskivige, Ronald**

Appointment:                    Board of High Pressure Piping Systems, Non-Metro High Pressure Piping Master Pipefitter

Term:                    10/24/2022 - 12/31/2025

Referred to:                    Labor Committee on 01/09/2023

Committee Action:                    Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/08/2023

Floor Action:                    No floor action taken as of 06/05/2024

Statement of Economic Interest:        View Public Official Information

Required Documents:                    View Application and/or Resume

**Sterner, Michele**

Appointment:                    Board of the Arts, Member

Term:                    06/14/2023 - 01/04/2027

Referred to:                    State and Local Government and Veterans Committee on 02/12/2024

Committee Action:                    No committee action taken as of 06/05/2024

Floor Action:                    No floor action taken as of 06/05/2024

Statement of Economic Interest:        View Public Official Information

Required Documents:                    View Application and/or Resume

**Stewart, Scott**

Appointment:                    Plumbing Board, Residential Plumbing Contractor

Term:                    03/08/2023 - 12/31/2025

Referred to:                    Labor Committee on 03/23/2023

Committee Action:                    No committee action taken as of 06/05/2024

Floor Action:                    No floor action taken as of 06/05/2024

Statement of Economic Interest:        View Public Official Information

Required Documents:                    View Application and/or Resume

**Stoffel, Stephanie**

Appointment:                    MNsure Board, Small Employer Representative

Term:                    06/28/2023 - 05/05/2027

Referred to:                    Health and Human Services Committee on 02/12/2024

Committee Action:                    No committee action taken as of 06/05/2024

Floor Action:                    No floor action taken as of 06/05/2024

Statement of Economic Interest:        View Public Official Information

Required Documents:                    View Application and/or Resume

**Stoffel, Stephanie**

Appointment:                    MNsure Board, Small Employer Representative

Term:                    03/10/2020 - 05/05/2023

Referred to:                    Health and Human Services Committee on 01/04/2023

Committee Action:                    Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023

Floor Action:                    No floor action taken as of 06/05/2024

Statement of Economic Interest:        View Public Official Information

Required Documents:                    View Application and/or Resume

Ex. Y, p. 053

**Stofferahn, David A.**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 02/03/2021 - 01/04/2027 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Strommen, Sarah**

| | |
|---|---|
| **Appointment:** | Department of Natural Resources, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/17/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/19/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Stumpf, Kurt**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Superintendent |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sundin, Louise**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Public Member |
| **Term:** | 01/13/2020 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sundin, Mike**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Public Member |
| **Term:** | 07/05/2023 - 06/30/2026 |
| **Referred to:** | State and Local Government and Veterans Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sundquist, Deborah K.**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 02/03/2021 - 01/04/2027 |

Ex. Y, p. 054

| | |
|---|---|
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Swenson, Jamie**

| | |
|---|---|
| **Appointment:** | Lessard-Sams Outdoor Heritage Council, Public Member |
| **Term:** | 03/30/2021 - 01/06/2025 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**T**

Back to Top

**Tefer, Cheryl**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| **Term:** | 10/24/2022 - 06/30/2028 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Thao, Terri**

| | |
|---|---|
| **Appointment:** | Minnesota Housing Finance Agency, Member |
| **Term:** | 06/16/2020 - 01/01/2024 |
| **Referred to:** | Housing and Homelessness Prevention Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Housing and Homelessness Prevention Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Thein, Roger**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Metro High Pressure Piping Journeyworker Member |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Y, p. 055

**Thor, May**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Teacher-Related Services Category |
| **Term:** | 03/08/2021 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Thul, Travis**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Registered Consulting Electrical Engineer Member |
| **Term:** | 01/04/2021 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Tien, Wendy**

| | |
|---|---|
| **Appointment:** | Tax Court, Judge |
| **Term:** | 11/13/2019 - 01/06/2025 |
| **Referred to:** | Taxes Committee on 01/04/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/24/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Toberman, Debbie**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Public Member |
| **Term:** | 01/02/2024 - 01/04/2027 |
| **Referred to:** | Judiciary and Public Safety Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Toberman, Debbie**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Public Member |
| **Term:** | 04/25/2020 - 01/01/2024 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Judiciary and Public Safety Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Toledo, Glazell**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Teacher Within Seven-County Metro Area |

Ex. Y, p. 056

**Term:** 11/01/2023 - 01/06/2025

**Referred to:** Education Policy Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume


**Tomes, Tarek**

**Appointment:** Office of MN.IT Services, Commissioner

**Term:** 01/02/2023 - 01/01/2027

**Referred to:** State and Local Government and Veterans Committee on 01/09/2023

**Committee Action:** Reported to the Senate Floor on 01/24/2023 with recommendation to confirm.

**Floor Action:** Confirmed on 02/16/2023

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume


**Trajano, Daniel**

**Appointment:** MNsure Board, Member Representing the Areas of Health Administration, Health Care Finance, Health Plan Purchasing,

**Term:** 01/12/2022 - 05/05/2025

**Referred to:** Health and Human Services Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume


**Trask, Jennifer**

**Appointment:** Professional Educator Licensing and Standards Board, Non-Metro Teacher

**Term:** 07/03/2023 - 01/04/2027

**Referred to:** Education Policy Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume


**Tucci Osorio, Christine**

**Appointment:** Board of School Administrators, Superintendent Member

**Term:** 03/09/2022 - 01/05/2026

**Referred to:** Education Policy Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume


**Tuma, John**

**Appointment:** Public Utilities Commission, Commissioner

**Term:** 03/28/2021 - 01/04/2027

Ex. Y, p. 057

| | |
|---|---|
| **Referred to:** | Energy, Utilities, Environment, and Climate Committee on 01/04/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/11/2023 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 05/12/2023 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Turek, Trevor**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Journeyworker Electrician |
| **Term:** | 03/14/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 04/20/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**U**

Back to Top

**V**

Back to Top

**Vang, Nhia**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Public Member |
| **Term:** | 12/20/2023 - 01/03/2028 |
| **Referred to:** | Judiciary and Public Safety Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Varilek, Matt**

| | |
|---|---|
| **Appointment:** | Department of Employment and Economic Development, Commissioner |
| **Term:** | 05/31/2023 - 01/04/2027 |
| **Referred to:** | Jobs and Economic Development Committee on 02/26/2024 |
| **Committee Action:** | Reported to the Senate Floor on 03/04/2024 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 04/11/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Vento, Susan**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 12 Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |

Ex. Y, p. 058

| | |
|---|---|
| **Required Documents:** | View Application and/or Resume |

**Vento, Susan**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, District 11 Representative |
| **Term:** | 03/08/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 04/14/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Villarreal, Johnny**

| | |
|---|---|
| **Appointment:** | Bureau of Mediation Services, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Labor Committee on 01/12/2023 |
| **Committee Action:** | Reported to the Senate Floor on 02/15/2024 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**VinZant, Raymond**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Public Member |
| **Term:** | 07/15/2020 - 01/01/2024 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**W**

Back to Top

**Wahlen, Rick**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Municipal Public Water Supply Superintendent |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 03/06/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wallner, Scott**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Community Education Director |
| **Term:** | 03/09/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |

Ex. Y, p. 059

| | |
|---|---|
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wangberg, Katherine**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Deaf Community Member |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Weigel, Desiree**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Electrical Inspector |
| **Term:** | 07/01/2020 - 12/31/2023 |
| **Referred to:** | Labor Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Weinandt, Marcie**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Watershed District Representative |
| **Term:** | 05/05/2021 - 01/01/2024 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Environment, Climate, and Legacy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Weinandt, Marcie**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Watershed District Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 04/30/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wertish, Gary**

| | |
|---|---|
| **Appointment:** | Minnesota Rural Finance Authority, Public Member |
| **Term:** | 08/16/2023 - 01/04/2027 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Y, p. 060

**West, Dobson**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Member |
| **Term:** | 06/23/2021 - 01/06/2025 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wheelock, Pamela**

| | |
|---|---|
| **Appointment:** | Destination Medical Center Corporation, Member |
| **Term:** | 02/21/2024 - 01/01/2029 |
| **Referred to:** | Jobs and Economic Development Committee on 04/02/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Whitman, Andrew**

| | |
|---|---|
| **Appointment:** | MNsure Board, Consumer-Eligible for Individual Coverage |
| **Term:** | 06/28/2023 - 05/05/2027 |
| **Referred to:** | Health and Human Services Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Whitman, Andrew**

| | |
|---|---|
| **Appointment:** | MNsure Board, Representative of Consumers Eligible for Individual Coverage |
| **Term:** | 06/16/2020 - 05/05/2024 |
| **Referred to:** | Health and Human Services Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Health and Human Services Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wilcox, Dr. Michael**

| | |
|---|---|
| **Appointment:** | Emergency Medical Services Regulatory Board, Family Practice Physician |
| **Term:** | 07/05/2023 - 01/04/2027 |
| **Referred to:** | Health and Human Services Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Y, p. 061

**Williams, Paul D.**

| | |
|---|---|
| **Appointment:** | Destination Medical Center Corporation, Member |
| **Term:** | 04/25/2020 - 01/06/2026 |
| **Referred to:** | Jobs and Economic Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Jobs and Economic Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Willis, Shane**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Public Member |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 03/23/2023 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wilson, Jessica**

| | |
|---|---|
| **Appointment:** | Clean Water Council, City Government Representative |
| **Term:** | 07/03/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 02/12/2024 |
| **Committee Action:** | No committee action taken as of 06/05/2024 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wolle, Harold**

| | |
|---|---|
| **Appointment:** | Minnesota Rural Finance Authority, Public Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Agriculture, Broadband, and Rural Development Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Agriculture, Broadband, and Rural Development Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Woods, Christina**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | State and Local Government and Veterans Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from State and Local Government and Veterans Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Workman, Julia**

Ex. Y, p. 062

**Appointment:** Board of the Perpich Center for Arts Education, Member

**Term:** 04/02/2020 - 01/01/2024

**Referred to:** Education Policy Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Worms, Mark**

**Appointment:** Board of High Pressure Piping Systems, Metro High Pressure Piping Master Pipefitter Member

**Term:** 01/04/2021 - 12/31/2023

**Referred to:** Labor Committee on 01/04/2023

**Committee Action:** Pursuant to Rule 8.2 this appointment was withdrawn from Labor Committee on 05/03/2023

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Wulff, Wendy**

**Appointment:** Metropolitan Council, District 16 Representative

**Term:** 07/03/2023 - 01/04/2027

**Referred to:** Transportation Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Wulff, Wendy**

**Appointment:** Metropolitan Council, District 16 Representative

**Term:** 03/08/2023 - 01/04/2027

**Referred to:** Transportation Committee on 04/14/2023

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Y**

Back to Top

**Yang, Janie**

**Appointment:** Professional Educator Licensing and Standards Board, Teacher-Charter School

**Term:** 07/03/2023 - 01/05/2026

**Referred to:** Education Policy Committee on 02/12/2024

**Committee Action:** No committee action taken as of 06/05/2024

**Floor Action:** No floor action taken as of 06/05/2024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

Ex. Y, p. 063

**Yang Thao, Mary**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 07/06/2021 - 01/06/2025 |
| **Referred to:** | Higher Education Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Higher Education Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**York, Amy**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Administrator of a Cooperative Unit who Oversees a Special Education Program |
| **Term:** | 06/30/2021 - 01/01/2024 |
| **Referred to:** | Education Policy Committee on 01/04/2023 |
| **Committee Action:** | Pursuant to Rule 8.2 this appointment was withdrawn from Education Policy Committee on 05/03/2023 |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Z**

Back to Top

**Zelle, Charles**

| | |
|---|---|
| **Appointment:** | Metropolitan Council, Chair |
| **Term:** | 01/10/2023 - 01/04/2027 |
| **Referred to:** | Transportation Committee on 02/21/2023 |
| **Committee Action:** | Reported to the Senate Floor on 05/03/2023 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 06/05/2024 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

## Session Navigator

2025 - 2026 Confirmations
2023 - 2024 Confirmations
2021 - 2022 Confirmations
2019 - 2020 Confirmations
2017 - 2018 Confirmations
2015 - 2016 Confirmations
2013 - 2014 Confirmations
2011 - 2012 Confirmations
2009 - 2010 Confirmations
2007 - 2008 Confirmations
2005 - 2006 Confirmations
2003 - 2004 Confirmations
2001 - 2002 Confirmations
1999 - 2000 Confirmations
1997 - 1998 Confirmations

Ex. Y, p. 064

Ex. Y, p. 065

# EXHIBIT Z

# Minnesota State Senate

Senate Confirmation of Executive Appointments
2025 - 2026, Ninety-fourth Legislature

The Senate is authorized to give its advice and consent on executive appointments under Minnesota Statutes, section 15.066. Appointments made by the Governor to state agencies that require confirmation by the Senate are referred to the appropriate committees. The Engrossing Secretary processes governor's appointments for Senate approval and fields any questions.

A   B   C   D   E   F   G   H   I   J   K   L   M   N   O   P   Q   R   S   T   U   V   W   Y   Z

Appointees Listed by Last Name

Back to Top

**Notaries Public**

| | |
|---|---|
| **Appointment:** | Notaries Public |
| **Term:** | - |
| **Referred to:** | No committee referral necessary Committee on 03/06/2025 |
| **Committee Action:** | Notary Public appointments are not referred to a committee; they receive floor action only. |
| **Floor Action:** | Laid on table on 03/06/2025, Confirmed on 05/16/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**A**

Back to Top

**Abbott, Joseph**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Metro High Pressure Piping Master Pipefitter |
| **Term:** | 10/24/2022 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Abrahamson, Karl**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Metro Municipal Plumbing Inspector |
| **Term:** | 10/24/2022 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Aho, Amy**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Teacher in Related Services Category |
| **Term:** | 01/17/2024 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Albrecht, Rita**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Public Member |
| **Term:** | 04/16/2025 - 12/31/2029 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 05/08/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Anderson, Matthew**

| | |
|---|---|
| **Appointment:** | MNsure Board, Public Health Programs Representative |
| **Term:** | 06/12/2024 - 05/05/2028 |
| **Referred to:** | Health and Human Services Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Anderson, Steven**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 10/18/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Anderson Rons, Bonnie**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 07/19/2023 - 01/04/2027 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Archer, Aubrey**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Public Member |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Arnold, Samuel**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Non-Metro Commerical/Industry Journeyworker |
| **Term:** | 03/08/2023 - 12/31/2025 |

Ex. Z, p. 003

| | |
|---|---|
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**B**

Back to Top

**Bain, Kyle**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Industrial Company Representative |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Baird, Suzanne**

| | |
|---|---|
| **Appointment:** | Lessard-Sams Outdoor Heritage Council, Public Member |
| **Term:** | 04/03/2024 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Bakken, Peter**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Board Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Barten, John**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Lakes/Streams Nonprofit Representative |
| **Term:** | 05/31/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Bauerkemper, Joseph**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Board Member |

Ex. Z, p. 004

| | |
|---|---|
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Becker, Richard**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Licensed Professional Engineer |
| **Term:** | 05/29/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Beeman, Michelle**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Public Member |
| **Term:** | 04/16/2025 - 12/31/2029 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 05/08/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Benjamin, Melanie**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 07/01/2024 - 06/30/2029 |
| **Referred to:** | State and Local Government Committee on 01/30/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Benson, Gary**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member with Building Construction Field Expertise |
| **Term:** | 07/19/2023 - 01/04/2027 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Besser, Steven**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Statewide Fishing Organization Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |

Ex. Z, p. 005

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Biel, Eunice**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Township Officers Representative |
| **Term:** | 03/12/2025 - 01/01/2029 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 03/17/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Biske, Richard**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Environmental Organization Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Bowman, Jane**

| | |
|---|---|
| **Appointment:** | Tax Court, Judge |
| **Term:** | 01/02/2023 - 01/01/2029 |
| **Referred to:** | Taxes Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Brainerd, Richard**

| | |
|---|---|
| **Appointment:** | Clean Water Council, City Government Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Brands, Ed**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Member |
| **Term:** | 07/03/2024 - 01/05/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Z, p. 006

**Brown, Tikki**

|  |  |
|---|---|
| **Appointment:** | Department of Children, Youth, and Families, Commissioner |
| **Term:** | 07/01/2024 - 01/04/2027 |
| **Referred to:** | Health and Human Services Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Bruess, Carol**

|  |  |
|---|---|
| **Appointment:** | Board of the Arts, Member-Congressional District 6 |
| **Term:** | 01/07/2025 - 01/01/2029 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**C**

Back to Top

**Camarena Michel, Jose Uriel**

|  |  |
|---|---|
| **Appointment:** | Board of the Arts, At-Large Member |
| **Term:** | 03/29/2024 - 01/03/2028 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Campbell, Erin**

|  |  |
|---|---|
| **Appointment:** | Department of Management and Budget, Commissioner |
| **Term:** | 08/15/2023 - 01/04/2027 |
| **Referred to:** | Finance Committee on 01/16/2025 |
| **Committee Action:** | Reported to the Senate Floor on 02/11/2025 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Campbell, Jim**

|  |  |
|---|---|
| **Appointment:** | Destination Medical Center Corporation, Member |
| **Term:** | 04/25/2020 - 01/06/2026 |
| **Referred to:** | Jobs and Economic Development Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |

Ex. Z, p. 007

**Required Documents:** View Application and/or Resume

**Carlson, Kathryn**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 10/11/2023 - 01/04/2027 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | Reported to the Senate Floor on 01/28/2025 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 05/16/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Charron, Michael**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Congressional District 1 Member |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Chavers, Catherine**

| | |
|---|---|
| **Appointment:** | Executive Board of Direct Care and Treatment, Member with Experience |
| **Term:** | 04/16/2025 - 01/01/2029 |
| **Referred to:** | Human Services Committee on 04/30/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Christenson, Sam**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, High Pressure Piping Master Pipefitter Non-Metro |
| **Term:** | 05/22/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Christenson, Thomas**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 04/27/2022 - 01/03/2028 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | Reported to the Senate Floor on 01/28/2025 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 05/16/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Colombo, Barbara**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 07/06/2021 - 06/30/2027 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Colvard, Keith**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Master Electrician-Contractor |
| **Term:** | 05/22/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Cooper, Quennel**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Principal |
| **Term:** | 01/07/2025 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Cowles, John**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| **Term:** | 09/22/2020 - 06/30/2026 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Cunningham, Brooke**

| | |
|---|---|
| **Appointment:** | Department of Health, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Health and Human Services Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**D**

Back to Top

Ex. Z, p. 009

**Daniels, Alfreda**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Public Member |
| **Term:** | 03/14/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**De Jesus, Alan**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Member |
| **Term:** | 07/03/2024 - 06/30/2027 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**DeCramer, John**

| | |
|---|---|
| **Appointment:** | Minnesota Housing Finance Agency, Chair |
| **Term:** | 07/03/2024 - 01/03/2028 |
| **Referred to:** | Housing and Homelessness Prevention Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Dehn, Raymond**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 07/06/2021 - 06/30/2027 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Delapena, Bradford S.**

| | |
|---|---|
| **Appointment:** | Tax Court, Judge |
| **Term:** | 01/05/2027 - 01/04/2027 |
| **Referred to:** | Taxes Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**DePestel, Shelly**

| | |
|---|---|
| **Appointment:** | Minnesota Rural Finance Authority, Public Member |
| **Term:** | 05/04/2022 - 01/05/2026 |

Ex. Z, p. 010

| | |
|---|---|
| Referred to: | Agriculture, Veterans, Broadband and Rural Development Committee on 01/16/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Dinsmore, John**

| | |
|---|---|
| Appointment: | Executive Board of Direct Care and Treatment, Member with Experience |
| Term: | 04/16/2025 - 01/01/2029 |
| Referred to: | Human Services Committee on 04/30/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Doyle, Rebekah**

| | |
|---|---|
| Appointment: | Board of the Perpich Center for Arts Education, Member |
| Term: | 10/18/2023 - 01/05/2026 |
| Referred to: | Education Policy Committee on 01/16/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Dyer, Rochelle**

| | |
|---|---|
| Appointment: | Professional Educator Licensing and Standards Board, Teacher |
| Term: | 04/24/2024 - 01/05/2026 |
| Referred to: | Education Policy Committee on 01/16/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**E**

Back to Top

**Erickson, Kent**

| | |
|---|---|
| Appointment: | Plumbing Board, Non-Metro Municipal Plumbing Inspector |
| Term: | 06/12/2024 - 12/31/2026 |
| Referred to: | Labor Committee on 01/16/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Erlandson, Dawn**

| | |
|---|---|
| Appointment: | Board of Trustees of the Minnesota State Colleges and Universities, At-Large Member |

Ex. Z, p. 011

| | |
|---|---|
| **Term:** | 08/02/2024 - 06/30/2030 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**F**

Back to Top

**Faber, William**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Citizen Member |
| **Term:** | 03/07/2022 - 12/31/2025 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Ferguson, Dylan**

| | |
|---|---|
| **Appointment:** | Office of Emergency Medical Services, Director |
| **Term:** | 01/01/2025 - |
| **Referred to:** | Health and Human Services Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Finnegan, Shannon**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 02/12/2025 - 01/01/2029 |
| **Referred to:** | Education Policy Committee on 04/22/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Fischer, Scott**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Public Member |
| **Term:** | 04/05/2024 - 01/05/2026 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Fisher, David**

Ex. Z, p. 012

| | |
|---|---|
| **Appointment:** | MNsure Board, Small Group or Individual Health Policy Representative |
| **Term:** | 06/12/2024 - 05/05/2028 |
| **Referred to:** | Health and Human Services Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Fletcher, Thomas**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Power Limited Technician/Technology Systems Contractor |
| **Term:** | 03/14/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Forsman, Doug**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Board Member |
| **Term:** | 07/05/2023 - 06/30/2027 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Freiheit, Annette**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Superintendent Member |
| **Term:** | 07/05/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Funseth, Cole**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Rural Electrical Supplier |
| **Term:** | 03/14/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**G**

Back to Top

Ex. Z, p. 013

**Gandhi, Shireen**

| | |
|---|---|
| **Appointment:** | Department of Human Services, Temporary Commissioner |
| **Term:** | 02/04/2025 - |
| **Referred to:** | No committee referral necessary Committee on 04/07/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gardner, Anthony**

| | |
|---|---|
| **Appointment:** | Board of the Arts, Congressional District 3 Member |
| **Term:** | 04/03/2024 - 01/05/2026 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gingold, Alan**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Commissioner |
| **Term:** | 11/24/2019 - 06/30/2025 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Goering, Paul**

| | |
|---|---|
| **Appointment:** | Executive Board of Direct Care and Treatment, Licensed Physician who is a Psychiatrist or has Experience in Serving Behavioral Health Patients |
| **Term:** | 01/01/2025 - 01/03/2028 |
| **Referred to:** | Human Services Committee on 03/24/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Goodman, Lisa**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Commissioner |
| **Term:** | 11/24/2019 - 06/30/2025 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Grabowska, Jim**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |

Ex. Z, p. 014

| | |
|---|---|
| **Term:** | 10/24/2022 - 06/30/2028 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Grans Korsh, Sally**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 10/18/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gribauval-Hite, Kelly**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Business Organization Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Griffin, Mikeya**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gronvall, Tamar**

| | |
|---|---|
| **Appointment:** | Department of Administration, Commissioner |
| **Term:** | 10/09/2023 - 01/04/2027 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Gudmunson, Sarah**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Power Limited Technician who is a Technology Systems Contractor |
| **Term:** | 05/22/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |

Ex. Z, p. 015

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**H**

Back to Top

**Haiby, Steve**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Electrical Supplier in a Rural Area |
| **Term:** | 05/22/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Haley, Megan**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 02/12/2025 - 01/01/2029 |
| **Referred to:** | Education Policy Committee on 04/22/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Ham, Hwikwon**

| | |
|---|---|
| **Appointment:** | Public Utilities Commission, Commissioner |
| **Term:** | 01/08/2024 - 01/03/2028 |
| **Referred to:** | Energy, Utilities, Environment, and Climate Committee on 01/16/2025 |
| **Committee Action:** | Reported to the Senate Floor on 02/26/2025 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 04/23/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Harpstead, Jodi**

| | |
|---|---|
| **Appointment:** | Department of Human Services, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Health and Human Services Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Harris, Theresa**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Attorney |
| **Term:** | 04/05/2022 - 01/05/2026 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/16/2025 |

Ex. Z, p. 016

| | |
|---|---|
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Hawkins, Peggy Anne**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Licensed Veterinarian |
| **Term:** | 02/28/2024 - 01/03/2028 |
| **Referred to:** | Agriculture, Veterans, Broadband and Rural Development Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hedstrom, Monica**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Public Member |
| **Term:** | 04/16/2025 - 12/31/2029 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 05/08/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Heimerl, Jeff**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Journeyman Electrician |
| **Term:** | 05/22/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Hendricks, Duane**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Master Electrician/Contractor |
| **Term:** | 03/14/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Heppner, Erich**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member (Higher Education Affiliation) |
| **Term:** | 04/09/2025 - 01/01/2029 |
| **Referred to:** | Higher Education Committee on 04/22/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |

Ex. Z, p. 017

Required Documents:                  View Application and/or Resume

**Hince, Rylee**

Appointment:                          Minnesota Environmental Quality Board, Public Board Member

Term:                                 05/04/2022 - 01/05/2026

Referred to:                          Environment, Climate, and Legacy Committee on 01/16/2025

Committee Action:                     No committee action taken as of 05/19/2025

Floor Action:                         No floor action taken as of 05/19/2025

Statement of Economic Interest:       View Public Official Information

Required Documents:                   View Application and/or Resume

**Ho, Jennifer**

Appointment:                          Minnesota Housing Finance Agency, Commissioner

Term:                                 01/02/2023 - 01/04/2027

Referred to:                          Housing and Homelessness Prevention Committee on 02/24/2025

Committee Action:                     No committee action taken as of 05/19/2025

Floor Action:                         No floor action taken as of 05/19/2025

Statement of Economic Interest:       View Public Official Information

Required Documents:                   View Application and/or Resume

**Hoelscher, Justin**

Appointment:                          Professional Educator Licensing and Standards Board, Administrator of a Cooperative Unit Who Oversees a Special Education Program

Term:                                 01/17/2024 - 01/03/2028

Referred to:                          Education Policy Committee on 01/16/2025

Committee Action:                     No committee action taken as of 05/19/2025

Floor Action:                         No floor action taken as of 05/19/2025

Statement of Economic Interest:       View Public Official Information

Required Documents:                   View Application and/or Resume

**Holman, Todd**

Appointment:                          Board of Water and Soil Resources, Chair

Term:                                 07/05/2023 - 01/04/2027

Referred to:                          Environment, Climate, and Legacy Committee on 01/16/2025

Committee Action:                     No committee action taken as of 05/19/2025

Floor Action:                         No floor action taken as of 05/19/2025

Statement of Economic Interest:       View Public Official Information

Required Documents:                   View Application and/or Resume

**Huebsch, Timothy**

Appointment:                          Board of Trustees of the Minnesota State Colleges and Universities, Member

Term:                                 10/24/2022 - 06/30/2028

Referred to:                          Higher Education Committee on 01/16/2025

Committee Action:                     No committee action taken as of 05/19/2025

Floor Action:                         No floor action taken as of 05/19/2025

Statement of Economic Interest:       View Public Official Information

Required Documents:                   View Application and/or Resume

Ex. Z, p. 018

**Hustoles, Paul**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 03/09/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**I**

Back to Top

**Ibrahim, Idman**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, State University Student |
| **Term:** | 08/16/2023 - 06/30/2025 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Idelkope, Julie**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Commissioner |
| **Term:** | 11/24/2019 - 06/30/2025 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Ives, Mary F.**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 07/03/2024 - 01/03/2028 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**J**

Back to Top

**Jacobson, Robert**

| | |
|---|---|
| **Appointment:** | Department of Public Safety, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/16/2025 |

Ex. Z, p. 019

| | |
|---|---|
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Jain, Nirmal**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Licensed Mechanical Engineer |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Janezich, Jerry**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| **Term:** | 10/24/2022 - 06/30/2028 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Johnson, Adam**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Water Conditioning Contractor |
| **Term:** | 06/12/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Johnson, Jacqueline**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, At-Large Member |
| **Term:** | 08/02/2024 - 06/30/2030 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Johnson, Jana**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member-Congressional District 2 |
| **Term:** | 08/02/2024 - 06/30/2030 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |

Ex. Z, p. 020

Required Documents:               View Application and/or Resume

**Johnson, Johnny**

   Appointment:                   Minnesota Racing Commission, Member

   Term:                          07/01/2024 - 06/30/2029

   Referred to:                   State and Local Government Committee on 01/30/2025

   Committee Action:              No committee action taken as of 05/19/2025

   Floor Action:                  No floor action taken as of 05/19/2025

   Statement of Economic Interest:    View Public Official Information

   Required Documents:            View Application and/or Resume

**K**

Back to Top

**Kelsey, Brent**

   Appointment:                   Minnesota Rural Finance Authority, Public Member

   Term:                          08/16/2023 - 01/04/2027

   Referred to:                   Agriculture, Veterans, Broadband and Rural Development Committee on 01/16/2025

   Committee Action:              No committee action taken as of 05/19/2025

   Floor Action:                  No floor action taken as of 05/19/2025

   Statement of Economic Interest:    View Public Official Information

   Required Documents:            View Application and/or Resume

**Kessler, Katrina**

   Appointment:                   Minnesota Pollution Control Agency, Commissioner

   Term:                          01/02/2023 - 01/04/2027

   Referred to:                   Environment, Climate, and Legacy Committee on 01/16/2025

   Committee Action:              No committee action taken as of 05/19/2025

   Floor Action:                  No floor action taken as of 05/19/2025

   Statement of Economic Interest:    View Public Official Information

   Required Documents:            View Application and/or Resume

**Khosravi, Pasha**

   Appointment:                   Board of the Perpich Center for Arts Education, Member

   Term:                          10/18/2023 - 01/04/2027

   Referred to:                   Education Policy Committee on 01/16/2025

   Committee Action:              No committee action taken as of 05/19/2025

   Floor Action:                  No floor action taken as of 05/19/2025

   Statement of Economic Interest:    View Public Official Information

   Required Documents:            View Application and/or Resume

**Kincs, Mark**

   Appointment:                   Board of High Pressure Piping Systems, Utility Company Representative

   Term:                          03/08/2023 - 12/31/2025

   Referred to:                   Labor Committee on 01/16/2025

   Committee Action:              No committee action taken as of 05/19/2025

   Floor Action:                  No floor action taken as of 05/19/2025

Ex. Z, p. 021

| | |
|---|---|
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Kleis, Dave**

| | |
|---|---|
| **Appointment:** | Campaign Finance and Public Disclosure Board, Member |
| **Term:** | 08/02/2024 - 01/03/2028 |
| **Referred to:** | Elections Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Koob, David**

| | |
|---|---|
| **Appointment:** | Minnesota Racing Commission, Member |
| **Term:** | 03/07/2022 - 06/30/2027 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Koppien-Fox, Jessica**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Licensed Veterinarian |
| **Term:** | 02/12/2025 - 01/01/2029 |
| **Referred to:** | Agriculture, Veterans, Broadband, and Rural Development Committee on 02/13/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**L**

Back to Top

**Le, Julie**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Public Member |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lemke, Jonathan**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Metro Commercial or Industrial Journeyworker Plumber |
| **Term:** | 05/29/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |

Ex. Z, p. 022

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lindsay, Brad**

| | |
|---|---|
| **Appointment:** | Department of Veterans Affairs, Commissioner |
| **Term:** | 12/20/2023 - 01/04/2027 |
| **Referred to:** | Agriculture, Veterans, Broadband and Rural Development Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lofald, Jill**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Public Member |
| **Term:** | 03/09/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Lorenzo, Janet**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Member |
| **Term:** | 07/01/2021 - 06/30/2025 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Luther Quast, Beverly**

| | |
|---|---|
| **Appointment:** | Tax Court, Judge |
| **Term:** | 03/26/2025 - 01/06/2031 |
| **Referred to:** | Taxes Committee on 03/06/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Luthner, Kate**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Member |
| **Term:** | 07/03/2024 - 06/30/2028 |
| **Referred to:** | State and Local Government Committee on 01/16/2024 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Z, p. 023

**M**

Back to Top

**Maertens, Mary**

| | |
|---|---|
| Appointment: | Executive Board of Direct Care and Treatment, Member with Experience Serving on a Hospital or Nonprofit Board |
| Term: | 01/01/2025 - 01/03/2028 |
| Referred to: | Human Services Committee on 03/24/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Marquis, Matthew**

| | |
|---|---|
| Appointment: | Board of High Pressure Piping Systems, High Pressure Piping Industry Representative |
| Term: | 06/26/2024 - 12/31/2027 |
| Referred to: | Labor Committee on 01/16/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Martin, Ken**

| | |
|---|---|
| Appointment: | Board of the Arts, Member |
| Term: | 01/03/2023 - 01/04/2027 |
| Referred to: | State and Local Government Committee on 01/16/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Martin, Nicholas**

| | |
|---|---|
| Appointment: | Minnesota Environmental Quality Board, Public Member |
| Term: | 07/03/2024 - 01/03/2028 |
| Referred to: | Environment, Climate, and Legacy Committee on 01/16/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |
| Statement of Economic Interest: | View Public Official Information |
| Required Documents: | View Application and/or Resume |

**Martinson, Trista**

| | |
|---|---|
| Appointment: | Clean Water Council, County Government Representative |
| Term: | 04/24/2024 - 01/03/2028 |
| Referred to: | Environment, Climate, and Legacy Committee on 01/16/2025 |
| Committee Action: | No committee action taken as of 05/19/2025 |
| Floor Action: | No floor action taken as of 05/19/2025 |

Ex. Z, p. 024

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Maynard, Abigail**

  **Appointment:** Board of Animal Health, Licensed Veterinarian Specializing in Companion Animals

  **Term:** 11/14/2023 - 01/04/2027

  **Referred to:** Agriculture, Veterans, Broadband and Rural Development Committee on 01/16/2025

  **Committee Action:** No committee action taken as of 05/19/2025

  **Floor Action:** No floor action taken as of 05/19/2025

  **Statement of Economic Interest:** View Public Official Information

  **Required Documents:** View Application and/or Resume

**McArdle, Camille Jeanne**

  **Appointment:** Minnesota Racing Commission, Public Member

  **Term:** 08/02/2023 - 06/30/2029

  **Referred to:** State and Local Government Committee on 01/16/2025

  **Committee Action:** No committee action taken as of 05/19/2025

  **Floor Action:** No floor action taken as of 05/19/2025

  **Statement of Economic Interest:** View Public Official Information

  **Required Documents:** View Application and/or Resume

**McCullough, Patrick**

  **Appointment:** Board of High Pressure Piping Systems, High Pressure Piping Inspector

  **Term:** 05/22/2024 - 12/31/2026

  **Referred to:** Labor Committee on 01/16/2025

  **Committee Action:** No committee action taken as of 05/19/2025

  **Floor Action:** No floor action taken as of 05/19/2025

  **Statement of Economic Interest:** View Public Official Information

  **Required Documents:** View Application and/or Resume

**McKenzie, Phillip**

  **Appointment:** Board of the Arts, Congressional District 7 Member

  **Term:** 04/03/2024 - 03/29/2024

  **Referred to:** State and Local Government Committee on 01/16/2025

  **Committee Action:** No committee action taken as of 05/19/2025

  **Floor Action:** No floor action taken as of 05/19/2025

  **Statement of Economic Interest:** View Public Official Information

  **Required Documents:** View Application and/or Resume

**Meyer, Christine**

  **Appointment:** Clean Water Council, County Government Representative-Rural

  **Term:** 01/29/2025 - 01/04/2027

  **Referred to:** Environment, Climate, and Legacy Committee on 03/17/2025

  **Committee Action:** No committee action taken as of 05/19/2025

  **Floor Action:** No floor action taken as of 05/19/2025

  **Statement of Economic Interest:** View Public Official Information

  **Required Documents:** View Application and/or Resume

Ex. Z, p. 025

**Milun, Patricia**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 01/23/2023 - 01/01/2029 |
| **Referred to:** | Labor Committee on 01/16/2023 |
| **Committee Action:** | Reported to the Senate Floor on 01/28/2025 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 05/16/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Miron, Fran**

| | |
|---|---|
| **Appointment:** | Clean Water Council, County Government Representative-Seven County Metro Area |
| **Term:** | 01/29/2025 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 03/17/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Moe, Roger**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| **Term:** | 09/22/2020 - 06/30/2026 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Moncada, Hernan**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Blind Community Member |
| **Term:** | 07/01/2024 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Moore, Reuben**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Public Member |
| **Term:** | 07/05/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Moore, Seth**

| | |
|---|---|
| **Appointment:** | Legislative-Citizen Commission on Minnesota Resources, Citizen Member |
| **Term:** | 03/07/2022 - 12/31/2025 |

Ex. Z, p. 026

| | |
|---|---|
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Morillo, Javier**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| **Term:** | 09/22/2020 - 06/30/2026 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**N**

Back to Top

**Nardone, James**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Member |
| **Term:** | 07/03/2024 - 06/30/2028 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Nelson, Paul**

| | |
|---|---|
| **Appointment:** | Minnesota Environmental Quality Board, Public Board Member |
| **Term:** | 01/04/2022 - 01/05/2026 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**O**

Back to Top

**O'Brien, Timothy**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Attorney |
| **Term:** | 12/20/2023 - 01/04/2027 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |

Ex. Z, p. 027

| | |
|---|---|
| **Required Documents:** | View Application and/or Resume |

**Ogungbe, Oluwagbenga**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Member of the General Public with Business, Administrative, or Financial Expertise |
| **Term:** | 09/21/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Olson, Carol**

| | |
|---|---|
| **Appointment:** | Executive Board of Direct Care and Treatment, Member with Experience |
| **Term:** | 01/01/2025 - 01/01/2029 |
| **Referred to:** | Human Services Committee on 03/24/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**P**

Back to Top

**Parizek, Justin**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Residential Plumbing Journeyworker |
| **Term:** | 06/12/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Partridge, Audrey**

| | |
|---|---|
| **Appointment:** | Public Utilities Commission, Commissioner |
| **Term:** | 02/10/2025 - 01/06/2031 |
| **Referred to:** | Energy, Utilities, Environment, and Climate Committee on 02/17/2025 |
| **Committee Action:** | Reported to the Senate Floor on 02/26/2025 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 04/23/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Pettit, Jacob**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Non-Metro High Pressure Piping Journeyworker Member |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |

Ex. Z, p. 028

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Pierre-Toussaint, Dominique**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 02/12/2025 - 01/01/2029 |
| **Referred to:** | Education Policy Committee on 04/22/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Pratt, Sara**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Special Education Director Member |
| **Term:** | 09/06/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Prock, Adam**

| | |
|---|---|
| **Appointment:** | State Lottery, Executive Director |
| **Term:** | 04/10/2019 - |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Pylkas, Bruce**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Metro Commercial/Industrial Plumbing Contractor |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Q**

Back to Top

**Quinn, Sean M.**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 01/27/2025 - 01/06/2031 |
| **Referred to:** | Labor Committee on 01/30/2025 |

Ex. Z, p. 029

| | |
|---|---|
| **Committee Action:** | Reported to the Senate Floor on 01/30/2025 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 05/16/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**R**

Back to Top

**Richter, Christopher**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Community College Student |
| **Term:** | 08/16/2023 - 06/30/2025 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Rowland, David**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member (with Experience in Municipal Finance) |
| **Term:** | 04/09/2025 - 01/01/2029 |
| **Referred to:** | Higher Education Committee on 04/22/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Rybak, R.T.**

| | |
|---|---|
| **Appointment:** | Destination Medical Center Corporation, Member |
| **Term:** | 02/21/2024 - 01/01/2029 |
| **Referred to:** | Jobs and Economic Development Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**S**

Back to Top

**Salazar, Ronald**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Z, p. 030

**Saloka, Gift**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Teacher-Special Education Teacher |
| **Term:** | 03/12/2025 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 03/13/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sampair, Nancy**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sawatzke, Erica**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Livestock Producer |
| **Term:** | 04/05/2022 - 01/05/2026 |
| **Referred to:** | Agriculture, Veterans, Broadband and Rural Development Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schaller, Melissa**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Special Education Director Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schnell, Paul**

| | |
|---|---|
| **Appointment:** | Department of Corrections, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Schwagerl, Peter**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Farm Organization Representative |

Ex. Z, p. 031

**Term:** 04/03/2024 - 01/03/2028

**Referred to:** Environment, Climate, and Legacy Committee on 01/16/2025

**Committee Action:** No committee action taken as of 05/19/2025

**Floor Action:** No floor action taken as of 05/19/2025

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Sheran, Kathy**

**Appointment:** Board of Trustees of the Minnesota State Colleges and Universities, Member

**Term:** 09/22/2020 - 06/30/2026

**Referred to:** Higher Education Committee on 01/16/2025

**Committee Action:** No committee action taken as of 05/19/2025

**Floor Action:** No floor action taken as of 05/19/2025

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Shoemaker, Brandee**

**Appointment:** Professional Educator Licensing and Standards Board, Teacher Outside Seven-County Metro Area

**Term:** 03/12/2025 - 01/03/2028

**Referred to:** Education Policy Committee on 03/13/2025

**Committee Action:** No committee action taken as of 05/19/2025

**Floor Action:** No floor action taken as of 05/19/2025

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Smith, Angela**

**Appointment:** Minnesota Environmental Quality Board, Public Member-5th Congressional District

**Term:** 01/07/2025 - 01/01/2029

**Referred to:** Environment, Climate, and Legacy Committee on 01/16/2025

**Committee Action:** No committee action taken as of 05/19/2025

**Floor Action:** No floor action taken as of 05/19/2025

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Soule, George**

**Appointment:** Board of Trustees of the Minnesota State Colleges and Universities, Member-Congressional District 5

**Term:** 08/02/2024 - 06/30/2030

**Referred to:** Higher Education Committee on 01/16/2025

**Committee Action:** No committee action taken as of 05/19/2025

**Floor Action:** No floor action taken as of 05/19/2025

**Statement of Economic Interest:** View Public Official Information

**Required Documents:** View Application and/or Resume

**Spears, Stephen**

**Appointment:** Minnesota Housing Finance Agency, Member

**Term:** 02/16/2022 - 01/05/2026

**Referred to:** Housing and Homelessness Prevention Committee on 01/16/2025

**Committee Action:** No committee action taken as of 05/19/2025

Ex. Z, p. 032

| | |
|---|---|
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Speier, Jamie**

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Public Member with Business, Administrative, or Financial Expertise #1 |
| **Term:** | 07/01/2024 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Stade, Alex**

| | |
|---|---|
| **Appointment:** | Board of Animal Health, Livestock Producer |
| **Term:** | 04/05/2022 - 01/05/2026 |
| **Referred to:** | Agriculture, Veterans, Broadband and Rural Development Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Starr, Jenny**

| | |
|---|---|
| **Appointment:** | Office of Administrative Hearing, Chief Administrative Law Judge |
| **Term:** | 09/03/2019 - 06/30/2025 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Staskivige, Ronald**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, Non-Metro High Pressure Piping Master Pipefitter |
| **Term:** | 10/24/2022 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Stewart, Scott**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Residential Plumbing Contractor |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |

|  | |
|---|---|
| **Required Documents:** | View Application and/or Resume |

**Striker, Prachi**

| | |
|---|---|
| **Appointment:** | Executive Board of Direct Care and Treatment, Licensed Physician who is a Psychiatrist or has Experience in Serving Behavioral Health Patients |
| **Term:** | 01/01/2025 - 01/04/2027 |
| **Referred to:** | Human Services Committee on 03/24/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Strommen, Sarah**

| | |
|---|---|
| **Appointment:** | Department of Natural Resources, Commissioner |
| **Term:** | 01/02/2023 - 01/04/2027 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sundin, Mike**

| | |
|---|---|
| **Appointment:** | Gambling Control Board, Public Member |
| **Term:** | 07/05/2023 - 06/30/2026 |
| **Referred to:** | State and Local Government Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Sundquist, Deborah K.**

| | |
|---|---|
| **Appointment:** | Workers' Compensation Court of Appeals, Judge |
| **Term:** | 02/03/2021 - 01/04/2027 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | Reported to the Senate Floor on 01/28/2025 with recommendation to confirm. |
| **Floor Action:** | Confirmed on 05/16/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Swanson, Stephen**

| | |
|---|---|
| **Appointment:** | Campaign Finance and Public Disclosure Board, Member |
| **Term:** | 07/03/2024 - 01/03/2028 |
| **Referred to:** | Elections Committee on 01/16/2025 |
| **Committee Action:** | Reported to the Senate Floor on 02/06/2025 with recommendation to confirm. |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

Ex. Z, p. 034

**T**

Back to Top

**Tefer, Cheryl**

| | |
|---|---|
| **Appointment:** | Board of Trustees of the Minnesota State Colleges and Universities, Member |
| **Term:** | 10/24/2022 - 06/30/2028 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Thao, Terri**

| | |
|---|---|
| **Appointment:** | Minnesota Housing Finance Agency, Member |
| **Term:** | 07/03/2024 - 01/03/2028 |
| **Referred to:** | Housing and Homelessness Prevention Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Thein, Roger**

| | |
|---|---|
| **Appointment:** | Board of High Pressure Piping Systems, High Pressure Piping Journeyworker-Metro |
| **Term:** | 05/17/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Thul, Travis**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Registered Consulting Electrical Engineer |
| **Term:** | 05/22/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Toberman, Debbie**

| | |
|---|---|
| **Appointment:** | Board on Judicial Standards, Public Member |
| **Term:** | 12/20/2023 - 01/04/2027 |
| **Referred to:** | Judiciary and Public Safety Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

Ex. Z, p. 035

**Toledo, Glazell**

| | |
|---|---|
| **Appointment:** | Professional Educator Licensing and Standards Board, Teacher Within Seven-County Metro Area |
| **Term:** | 03/12/2025 - 01/03/2028 |
| **Referred to:** | Education Policy Committee on 03/13/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Trajano, Daniel**

| | |
|---|---|
| **Appointment:** | MNsure Board, Member Representing the Areas of Health Administration, Health Care Finance, Health Plan Purchasing, |
| **Term:** | 01/12/2022 - 05/05/2025 |
| **Referred to:** | Health and Human Services Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Tucci Osorio, Christine**

| | |
|---|---|
| **Appointment:** | Board of School Administrators, Superintendent Member |
| **Term:** | 03/09/2022 - 01/05/2026 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Turek, Trevor**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Journeyworker Electrician |
| **Term:** | 03/14/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**U**

Back to Top

**V**

Back to Top

**Vande Linde, Aaron**

| | |
|---|---|
| **Appointment:** | School Trust Lands, Director |

Ex. Z, p. 036

**Term:**       01/01/2025 - 12/31/2029

**Referred to:**       Education Policy Committee on 01/16/2025

**Committee Action:**       No committee action taken as of 05/19/2025

**Floor Action:**       No floor action taken as of 05/19/2025

**Statement of Economic Interest:**

**Required Documents:**       View Application and/or Resume

**Vang, Nhia**

**Appointment:**       Board on Judicial Standards, Public Member

**Term:**       12/20/2023 - 01/04/2027

**Referred to:**       Judiciary and Public Safety Committee on 01/16/2025

**Committee Action:**       No committee action taken as of 05/19/2025

**Floor Action:**       No floor action taken as of 05/19/2025

**Statement of Economic Interest:**

**Required Documents:**       View Application and/or Resume

**Villarreal, Johnny**

**Appointment:**       Bureau of Mediation Services, Commissioner

**Term:**       01/02/2023 - 01/04/2027

**Referred to:**       Labor Committee on 01/16/2025

**Committee Action:**       Reported to the Senate Floor on 01/28/2025 with recommendation to confirm.

**Floor Action:**       No floor action taken as of 05/19/2025

**Statement of Economic Interest:**       View Public Official Information

**Required Documents:**       View Application and/or Resume

**W**

Back to Top

**Wade, Laura**

**Appointment:**       Gambling Control Board, Executive Director

**Term:**       04/15/2024 -

**Referred to:**       State and Local Government Committee on 01/16/2025

**Committee Action:**       No committee action taken as of 05/19/2025

**Floor Action:**       No floor action taken as of 05/19/2025

**Statement of Economic Interest:**       View Public Official Information

**Required Documents:**       View Application and/or Resume

**Wahlen, Rick**

**Appointment:**       Plumbing Board, Municipal Public Water Supply Superintendent

**Term:**       03/08/2023 - 12/31/2025

**Referred to:**       Labor Committee on 01/16/2025

**Committee Action:**       No committee action taken as of 05/19/2025

**Floor Action:**       No floor action taken as of 05/19/2025

**Statement of Economic Interest:**       View Public Official Information

**Required Documents:**       View Application and/or Resume

**Wangberg, Katherine**

Ex. Z, p. 037

| | |
|---|---|
| **Appointment:** | Board of the Minnesota State Academies, Deaf Community Member |
| **Term:** | 07/05/2023 - 01/04/2027 |
| **Referred to:** | Education Policy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | |
| **Required Documents:** | View Application and/or Resume |

**Weigel, Desiree**

| | |
|---|---|
| **Appointment:** | Board of Electricity, Electrical Inspector |
| **Term:** | 05/22/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Weinandt, Marcie**

| | |
|---|---|
| **Appointment:** | Clean Water Council, Watershed District Representative |
| **Term:** | 04/03/2024 - 01/03/2028 |
| **Referred to:** | Environment, Climate, and Legacy Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wertish, Gary**

| | |
|---|---|
| **Appointment:** | Minnesota Rural Finance Authority, Public Member |
| **Term:** | 08/16/2023 - 01/04/2027 |
| **Referred to:** | Agriculture, Veterans, Broadband and Rural Development Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Westphal, Kenneth**

| | |
|---|---|
| **Appointment:** | Minnesota Higher Education Facilities Authority, Member |
| **Term:** | 07/03/2024 - 01/03/2028 |
| **Referred to:** | Higher Education Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wheelock, Pamela**

| | |
|---|---|
| **Appointment:** | Destination Medical Center Corporation, Member |
| **Term:** | 02/21/2024 - 01/01/2029 |
| **Referred to:** | Jobs and Economic Development Committee on 01/16/2025 |

Ex. Z, p. 038

| | |
|---|---|
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Williams, Paul D.**

| | |
|---|---|
| **Appointment:** | Destination Medical Center Corporation, Member |
| **Term:** | 04/25/2020 - 01/06/2026 |
| **Referred to:** | Jobs and Economic Development Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Willis, Shane**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Public Member |
| **Term:** | 03/08/2023 - 12/31/2025 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wolle, Harold**

| | |
|---|---|
| **Appointment:** | Minnesota Rural Finance Authority, Public Member |
| **Term:** | 05/04/2022 - 01/05/2026 |
| **Referred to:** | Agriculture, Veterans, Broadband and Rural Development Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wollenzien, Timothy**

| | |
|---|---|
| **Appointment:** | Board of the Perpich Center for Arts Education, Member |
| **Term:** | 02/12/2025 - 01/01/2029 |
| **Referred to:** | Education Policy Committee on 04/22/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |
| **Required Documents:** | View Application and/or Resume |

**Wood, Philip**

| | |
|---|---|
| **Appointment:** | Plumbing Board, Non-Metro Commercial or Industry Plumbing Contractor |
| **Term:** | 06/12/2024 - 12/31/2026 |
| **Referred to:** | Labor Committee on 01/16/2025 |
| **Committee Action:** | No committee action taken as of 05/19/2025 |
| **Floor Action:** | No floor action taken as of 05/19/2025 |
| **Statement of Economic Interest:** | View Public Official Information |

Ex. Z, p. 039

**Required Documents:**  View Application and/or Resume

**Woods, Christina**

**Appointment:**  Board of the Arts, Member

**Term:**  05/04/2022 - 01/05/2026

**Referred to:**  State and Local Government Committee on 01/16/2025

**Committee Action:**  No committee action taken as of 05/19/2025

**Floor Action:**  No floor action taken as of 05/19/2025

**Statement of Economic Interest:**  View Public Official Information

**Required Documents:**  View Application and/or Resume

**Worms, Mark**

**Appointment:**  Board of High Pressure Piping Systems, High Pressure Piping Master Pipefitter Metro

**Term:**  05/22/2024 - 12/31/2026

**Referred to:**  Labor Committee on 01/16/2025

**Committee Action:**  No committee action taken as of 05/19/2025

**Floor Action:**  No floor action taken as of 05/19/2025

**Statement of Economic Interest:**  View Public Official Information

**Required Documents:**  View Application and/or Resume

**Y**

Back to Top

**Z**

Back to Top

**Zelle, Charles**

**Appointment:**  Metropolitan Council, Chair

**Term:**  01/10/2023 - 01/04/2027

**Referred to:**  Transportation Committee on 01/16/2025

**Committee Action:**  No committee action taken as of 05/19/2025

**Floor Action:**  No floor action taken as of 05/19/2025

**Statement of Economic Interest:**  View Public Official Information

**Required Documents:**  View Application and/or Resume

Ex. Z, p. 040

**Session Navigator**

2025 - 2026 Confirmations
2023 - 2024 Confirmations
2021 - 2022 Confirmations
2019 - 2020 Confirmations
2017 - 2018 Confirmations
2015 - 2016 Confirmations
2013 - 2014 Confirmations
2011 - 2012 Confirmations
2009 - 2010 Confirmations
2007 - 2008 Confirmations
2005 - 2006 Confirmations
2003 - 2004 Confirmations
2001 - 2002 Confirmations
1999 - 2000 Confirmations
1997 - 1998 Confirmations

Ex. Z, p. 041

# EXHIBIT AA



# Office memo

**Date:**    **April 27, 2024**

**To:**      **Nursing Home Workforce Standards Board**

**From:**    **Leah Solo, NHWSB Executive Director**

## RE: Analysis of Proposals in currently discussed by the NHWSB

During discussion of the proposals submitted to the Board for consideration on March 20, 2024 (hereinafter "Union 2(a) and 2(b)") at the April 15, 2024 NHWSB Meeting, the Board reviewed the Memo "Analyzing Proposals," which walks through the NHWSB Act data obligations for analyzing proposals. During that discussion, a request was made by the Board for Staff to analyze 2(a) and 2(b) according to the terms laid out in the memo. In response, staff reached out for assistance from the Department of Labor and Industry to use the data and tools the Board has collected to analyze the proposals. On April 22, 2024, Board Members Lundmark, Rocheleau, and Swanson shared two additional proposals. Below is that analysis of Union 2(a) and 2(b), as well as the additional proposals from Board members Lundmark, Rocheleau, and Swanson (hereinafter "Wage 1 Proposal" and "Amend Time and a Half").

## Statutory language

To summarize the Board's statutory obligations with regards to data and setting initial wage standards, there are three items to keep in mind.

1.  "The board must adopt rules establishing minimum nursing home employment standards that are reasonably necessary and appropriate to protect the health and welfare of nursing home workers…" Minn. Stat. § 181.213 subd. 1(a). This is the Board's guiding statute from the legislature. Standards for wages should be reasonably necessary and appropriate to protect the health and welfare of nursing home workers.

2.  "The board must investigate market conditions and the existing wages, benefits, and working conditions of nursing home workers for specific geographic areas of the state and specific nursing home occupations." Minn. Stat. § 181.213 subd. 2(a). This directs the Board to research and gather data about the conditions of nursing home workers. Statute further directed the Board on what data must be collected in Minn. Stat. 181.213, subd. 2(b); an in-depth discussion of each type of information the Board was directed to collect can be found in the April 10, 2024 memo titled "Analyzing Proposals" memo. This is why the Board collected wage data, sought public testimony, and examined cost of living data in Minnesota.

3.  "Based on this information, the board must seek to adopt minimum nursing home employment standards that meet or exceed existing industry conditions for a majority of nursing home workers in the relevant geographic area and nursing home occupation." Minn. Stat. § 181.213 subd. 2(a). This is what we have referred to as the "majority benchmark." The Board should seek to establish a minimum wage

443 Lafayette Road N., St. Paul, MN  55155 • (651) 284-5005 • www.dli.mn.gov

Ex. AA, p. 001

standard that meets or exceeds the current conditions for a majority of nursing home workers; put another way, the standards the Board sets should attempt to raise the minimum wage to a level beyond the current wages of over half of the nursing home workers in a given geographic area and occupation. The Board should be using the data gathered from the research the Board has done to be able to show this.

The Board should be able to show, based on the research that has been done, that the initial minimum wage standards set by the Board are reasonably necessary and appropriate to protect the health and welfare of nursing home workers and that they are seeking to meet or exceed the current conditions for a majority of workers that fall under the NHWSB Act.

*Additional language*

In addition to the language directing the Board's general goal, the imperative to research, and the majority benchmark, it is important to keep in mind the process laid out in Minn. Stat. § 181.213 subd. 2 (c-e), regarding the consideration to be given to funding new standards, the acquisition of said funding, and the implementation of standards when additional funding is required. This process has been examined by the Board on several occasions, most notably through the April 10, 2024 "Analyzing Proposals" memo, and the corresponding discussion at the April 11, 2024 meeting of the Board. Below is a summary of relevant information as it pertains to the proposals before the Board; for a more fulsome discussion of this process, please see the April 10, 2024 "Analyzing Proposals" memo.

1. "In considering wage and benefit increases, the board must determine the impact of nursing home operating payment rates determined pursuant to section 256R.21, subdivision 3, and the employee benefits portion of the external fixed costs payment rate determined pursuant to section 256R.25…" Minn. Stat. § 181.213 subd. 2 (c). This language is the statutory charge of the Board to look at the costs that the state will incur due to the standards going into effect. Note that this portion of the statute points to parts of the Medicare reimbursement rates for nursing homes as calculated by DHS as being the metric by which the Board determines the cost to the State.

2. "…If the board, in consultation with the commissioner of human services, determines the operating payment rate and employee benefits portion of the external fixed costs payment rate will increase to comply with the new employment standards, the board shall report to the legislature the increase in funding needed to increase payment rates to comply with the new employment standards and must make implementation of any new nursing home employment standards contingent upon an appropriation, as determined by sections 256R.21 and 256R.25, to fund the rate increase necessary to comply with the new employment standards." Minn. Stat. § 181.213 subd. 2 (c). This portion of statute gives the direction to the Board to report to the legislature any increase in funding needed as a result of an increase in payment rates to comply with the new standards. The statute does not direct the Board to modify schedules or calculations of payment rates to nursing homes.

3. The next section gives specific instructions about how to calculate any increased need in funding in consultation with the commissioner of DHS. Some specific observations about Minn. Stat. § 181.213, subd. 2(d):

   a. Section (1) states: "the statewide average wage rates for employees pursuant to section 256R.10, subdivision 5, and benefit rates pursuant to section 256R.02, subdivisions 18 and 22, as determined by the annual Medicaid cost report used to determine the operating

2

payment rate and the employee benefits portion of the external fixed costs payment rate for the first day of the calendar year immediately following the date the board has established minimum wage and benefit levels;" This section specifically cites a need to examine a statewide average rate for employees.

    b.  Sections (2) and (3) specifically cite the operating payment rate and employee benefits portion of the external fixed costs payment rate and the most recent budget and economic forecast completed under Minn. Stat. § 16A.103 as the elements needed to be examined to determine what needs to be reported to the legislature for an appropriation.

## Data Sources

As laid out in statute, the Board used several sources of data and research.

"5b Analysis of Data for WFSB 20240130 11452" from February 8 Board Packet can be referenced for the best compilation of data regarding the requirements of Minn. Stat. §§ 181.213 subd. 2(b)(1),(2),(6). This data is from DHS and comes from the workforce incentive grant program, which allowed DHS to see actual wage-per-hour data on a significant amount of nursing home workers who make less than $30/hour. Based on a sample of that data from 132 facilities out of approximately 340 possible facilities, one can input a hypothetical minimum wage per hour for one of 5 occupations (CNA, Dietary Aide, Cook, Housekeeping, Activities Aide) and determine the percentage of people working in that profession whose wages currently fall below the proposed minimum standard.

"5a Minnesota Minimum Wages and Benefits – Summary for NHWSB Feb 2024" in the February 8 2024 Board packet laid out minimum wages and other requirements for wages and benefits in Minnesota. Of note in this memo is that many employers in Minneapolis and St. Paul have a minimum wage of $15.57/hour and that will see an annual increase on 1/1/2025 and each year afterwards. This memo draws heavily on the Minnesota Department of Labor and Industry's website and relates to requirements under Minn. Stat. § 181.213 subd. 2(b)(5).

The Board also heard a presentation from DEED in regards to the Cost of Living Tool. This tool helps determine what a person or family in Minnesota would need to earn in a year or per hour in order to maintain a very basic standards of living. This helps both understand potential wages needed for the health and welfare of nursing home workers and falls into the category listed in Minn. Stat. § 181.213 subd. 2(b)(7).

To help determine what would be relevant nursing home occupations, the Board examined statute governing nursing home reimbursement in Minn. Stat. § 256R.02. This research helped determine the need to look specifically at Certified Nursing Assistants, Dietary Aides and others as well as understand how we could define categories of occupations. This is in line with Minn. Stat. § 181.213 subd. 2(b)(7).

"Employee Counts" is a data workbook that was shared at the October 23, 2023 Data workgroup meeting. It draws on data provided by DHS from cost reports. This data source includes the number of full or part time employees that are reported to DHS in various categories of workers which can be used to determine the majority benchmark.

Minn. Stat. § 181.213 subd. 2(b)(4) instructed the Board to listen to testimony from current and former nursing home workers, worker organizations, nursing home employers, and employer organizations. The Board did this

through 5 public forums and a set of online questionnaires. Highlights from the forums included workers advocating for $25/hour and employers asking the Board to ensure the minimum wages were paid for by the legislature. Summaries of the data from the questionnaires can be found under the March 14, 2024 data workgroup meeting materials NHWSB Data Workgroup meeting materials | Minnesota Department of Labor and Industry (mn.gov).

Minn. Stat. § 181.213 subd. 2(b)(3) directed the Board to collect collective bargaining agreements (CBAs). The Board did do this, but determined that because they only represent a third of facilities, they were not the correct data set for comparison with proposed standards.

## Limitations of the Data

No data set is able to show a perfect reflection of market conditions and the lives of nursing home workers. Below are some ways in which the research and data is not a perfect reflection.

*Differing definitions*

A significant amount of the data the Board has researched comes from DHS, and there may be a difference between what DHS determines are administrative costs and what is meant by statute in excluding "administrative staff" from the definition of nursing home worker. See Minn. Stat. § 256R.02, subd. 4. Staff will continue to work to obtain a more precise definition of the administrative staff that are excepted from the standards the Board must set. Using DHS's definition of "administrative costs," a receptionist or a security guard at a nursing home would be excluded from the worker definition, while managers and supervisors for housekeeping and maintenance would be included in the worker definition Minn. Stat. § 256R.02, subd. 4. This uncertainty in definitions that means when staff was determining the ratio of the number of nursing home workers whose wages do not currently exceed the minimum wage of a proposed standard against the number of nursing home workers affected by the standards the Board will set for the purposes of determining if a standard meets the majority benchmark, some people who likely should be included as part of this calculation were excluded, and vice versa.

*Incomplete data*

While the data supplied by DHS has been the most fulsome collection, it is important to note some gaps in the data.  The investigative work of the Board coincided with a special data set that DHS was able to gather when all but a few of the 340+ nursing homes in the state applied for a nursing home workforce incentive grant, giving workers who make under $30 an hour a special bonus.  However, this does not provide a full set of wage data. For instance, it lacked data on anyone making over $30/hour, meaning it did not provide a statistically significant data on some positions, like LPNs or RNs, or any other individuals making more than $30/hour. Additionally, though the Board using DHS data was able to gather a statistically sound sample of data on positions such CNAs, housekeeping, dietary aides, cooks, and activities aides, there was not a capacity to gather samples for all positions.

*Timing and location of public forums*

The Board was able to hold five public forums, three in person and two online. Though the in-person events were held in three very different locations in the vicinity of nursing homes and the online events were held at

4

different times of day, workers and employers may have had difficulty attending. This absence means that while the Board gathered testimony from dozens of people, categories of issues could have been overlooked with the absence of people who were unable to attend. There was one reported incident where sereval workers who were ready to speak at a public forum were unable to do so because they needed to stay on shift due to a shortage of staff.

*Reach of online questionnaires*

Though the Board had over 200 people fill out the online questionnaires, with thousands of workers, hundreds of employers and thousands of people with a stake in nursing homes, it may have fallen short of a statistically significant sample. If it is a statistically unsound sample, the Board should look at it as additional individuals rather than representative of the nursing home workforce as a whole.

*Despite the limitations outlined above, as has been discussed in the Data workgroup and at the Board, the DHS data is the best source the Board has for estimating the impact of the pay standard proposals.*

# Analyzing Wages in Union Proposals 2(a) and 2(b)

## Union Proposals 2(a) and 2(b)

As revised at the March 27, 2024 Special Board meeting, the Union proposals were as follows in "Table 1: Minimum wages by occupation in union proposals 2(a) and 2(b)":

Table 1: Minimum wages by occupation in union proposals 2(a) and 2(b)

| Item | Enactment | 2(a) | 2(b) |
|------|-----------|------|------|
| Holiday Pay | 1/1/2025 | 11 specified Holidays where workers would receive time and a half if working. | 11 specified Holidays where workers would receive time and a half if working. |
| General Minimum Wage | 1/1/2026 | $19/hour | $18/hour |
| General Minimum Wage | 1/1/2027 | $20.50/hr. | $20/hr. |
| CNA Minimum Wage | 1/1/2026 | $22.50/hr. | $21.50/hr. |
| CNA Minimum Wage | 1/1/2027 | $24/hr. | $22.50/hr. |
| TMA Minimum Wage | 1/1/2026 | $23.50/hr. | $22.50/hr. |

5

| | | | |
|---|---|---|---|
| TMA Minimum Wage | 1/1/2027 | $25/hr. | $23.50/hr. |
| LPN Minimum Wage | 1/1/2026 | $27/hr. | $26/hr. |
| LPN Minimum Wage | 1/1/2027 | $28.50/hr. | $28/hr |

## Meeting the Majority Benchmark

There are two pieces of information that the Board needs to examine to determine if a proposal meets the majority benchmark: first is the number of workers that fall under the NHWSB Act, and second is the number of workers for whom the proposal would meet or exceed their current wage rate.

*Determining the total number of workers under the NHWSB Act*

The first step to determining whether a proposal meets the majority benchmark is to determine the total number of nursing home workers of a given geographic region and occupation. This number becomes the denominator in the fraction that illustrates if the majority benchmark is being met. The best source of this information is the "Employee Counts" data workbook that was shared at the October 23, 2023 Data workgroup meeting. Noting the shortcomings of the data listed in this memo, "Table 2:Employee counts" shares the breakdown of the employees falling under the NHWSB Act:

Table 2: Employee counts

| Job Category/Dept. | Employee Count (PT & FT) | | |
|---|---|---|---|
| Activities | 1,424 | 5% | |
| C.N.A. | 8,888 | 34% | |
| Dietary | 4,750 | 18% | 13% dietary aides, 5% cooks |
| Housekeeping | 1,474 | 6% | |
| Laundry | 424 | 2% | |
| L.P.N. | 2,546 | 10% | |
| Plant/Maintenance | 845 | 3% | |
| Medical Records | 694 | 3% | |
| Mental Health Worker | 89 | 0% | |
| Other Direct Care | 463 | 2% | |
| R.N. | 2,695 | 10% | |
| Social Worker | 639 | 2% | |
| T.M.A. | 1,075 | 4% | |
| **Total falling under NHWSBA** | **26,006** | | |

Note: all employee counts are done at a statewide level, as the proposals being examined herein would establish statewide minimum wages.

*Calculating the percentages affected by proposed minimum standards from "5b Analysis of Data…" worksheet*

After determining employee count numbers, the next step is to determine the number of employees for a given occupation whose current wages fall below the minimum wage set in the proposed standard. This number serves as the numerator in the fraction that illustrates if the majority benchmark is being met. The number can be found by using the "5b Analysis of Data for WFSB 20240130 11452" spreadsheet. This spreadsheet allows the user to enter a theoretical wage and it then calculates the number of workers from the sample do not currently meet that minimum standard. That percentage is listed in "Table 3" and "Table 4" below in the row "percentage." The row "% of all workers as defined…" in Table 3 and Table 4 below takes the percentage of a particular occupation that falls below the minimum standard being proposed and translates that into a percentage of the entire NHWSB Act workforce. The row "Total % of all workers…" combines the row above into a total number of workers whose current wages fall below the proposed standard.

### Table 3: Analysis of data using union proposal 2(a)

| UNION 2(a) Proposal | CNA | Cook | Dietary Aide | Housekeeping | Act Aide |
|---|---|---|---|---|---|
| Possible Wage | $ 22.50 | $ 19.00 | $ 19.00 | $ 19.00 | $ 19.00 |
| Current Median | $ 20.30 | $ 19.68 | $ 16.06 | $ 16.99 | $ 16.82 |
| Percentage | 76% | 44% | 88% | 83% | 72% |
| | | | | | |
| % of all workers as defined by NHWSBA for whom the proposed standard is greater than their current wage | 26% | 2% | 11% | 5% | 4% |
| | | | | | |
| Total % of all workers as defined by NHWSBA for whom the proposed standard is greater than their current wage as able to be demonstrated by "5b Analysis of Data … worksheet" | 48% | | | | |
| | | | | | |
| | | | | | |

### Table 4: Analysis of data using union proposal 2(b)

| UNION 2(b) Proposal | CNA | Cook | Dietary Aide | Housekeeping | Act Aide |
|---|---|---|---|---|---|
| Possible Wage | $ 21.50 | $ 18.00 | $ 18.00 | $ 18.00 | $ 18.00 |
| Median | $ 20.31 | $ 19.84 | $ 16.05 | $ 16.90 | $ 16.79 |
| Percentage | 64% | 27% | 80% | 67% | 65% |
| | | | | | |
| % of all workers as defined by NHWSBA for whom the proposed standard is greater than their current wage | 22% | 1% | 10% | 4% | 4% |
| | | | | | |
| Total % of all workers as defined by NHWSBA for whom the proposed standard is greater than their current wage as able to be demonstrated by "5b Analysis of Data … worksheet" | 41% | | | | |
| | | | | | |
| | | | | | |

So, with data that can be calculated using the "5b Analysis of data… worksheet" Union 2(a) meets or exceeds for 48% and Union 2(b) meets or exceeds for 41% of workers. This conclusion is reached by adding the percentages in the line % of all workers as defined by NHWSBA for whom the proposed standard is greater than their current wage. That lines calculation was made by taking the percentage of a particular occupation that fall below the

7

proposed minimum and multiplying it by the percentage of the workforce as a whole that work in that occupation. For example, in the 2(b) proposal, 64% of CNAs fall below the proposed standard and CNAs represent 34% of the workforce. Multiplying 64% of CNAs times 34% of the workforce, produces 22% of the workforce who are CNAs and fall below the proposed standard.

*Additional Calculations*

The calculation so far accounts for CNAs (34% of the workforce), Dietary (18%), Housekeeping (6%), and Activities (5%) or 63% of the nursing home workers as defined by the NHWSB Act. Of the remaining workers, let's first examine TMAs.

Conversations at the NHWSB meetings have generally agreed that TMAs earn $1 more per hour than CNAs. Union proposals 2(a) and 2(b) both propose TMAs making $1 more per hour than CNAs. The Board could estimate then that the proposals would have a similar effect on TMAs as CNAs because the proposals for TMAs are $1 above CNA wages. It would follow then that for Union 2(a) proposal, the proposed initial minimum wage of $23.50 per hour would meet or exceed current conditions for 76% of TMAs and for Union 2(b) proposal, the proposed initial minimum wage of $22.50 per hour would meet or exceed current conditions for 64% of TMAs. With TMAs making up 4% of the workforce, that adds 3% of the workforce to Union 2(a) and 2.6% of the workforce to Union 2(b).

Next, the Board could examine LPNs. It has been discussed from the workforce incentive grants data, that not a large percentage of LPNs qualified for the grant. That means that many LPNs make over $30/hour. The proposals have an LPN's minimum wage being under $30/hour, peaking at $28.50 and $28 in 2027. With the proposed LPN minimum wages falling below $30/hour and understanding that only a small percentage of LPNs were listed in our data as earning less than $30/hour, one could assume that it would be a minimal percentage of the 10% of the workforce that are LPNs that currently fall below the minimum wages in the proposals. Therefore, the proposed LPN minimum wages do not add to the workforce impacted by the proposed standards for the purposes of determining if the proposals meet the majority benchmark.

For Laundry, discussions and anecdotal evidence presented by Board members have drawn parallels between Housekeeping and Laundry salaries. If the 2% of the workforce that are Laundry workers are affected by the minimums at the same rates as housekeeping, that would add another 1.7% of the workforce to Union 2(a) and 1.3% of the workforce to Union 2(b).

RN's do not have their own minimum wage in either proposal, leaving them with the $19/hour and $18/hour minimum wages. Based upon the anecdotal reports of Board Members in discussion, and the extensive training required of RNs, it would appear that RNs generally already receive wages that would mean the standards proposed here would have a negligible impact on this occupation for determining if the proposals meet the majority benchmark.

There currently exists no method to analyze the impact of standards for Plant/Maintenance, Medical records, Social Workers, Mental health workers, and other direct care staff in terms of meeting the majority benchmark. Together these occupations make up 10% of the workforce. Consequently, the conclusions below take a conservative view of this sector of the workforce and assume that no worker's wage falls below the minimum wage set by a proposed standard. This is done to ensure that the majority benchmark calculation is not relying on overly optimistic assumptions.

8

Without knowing the final section of the workforce, the Board can estimate, based on the collected data, that the proposals will meet or exceed the market conditions for at least the following percentage of workers:

**Union 2(a) 52.7% (48% 5b analysis worksheet/Table 3 + 3% TMAs + 1.7% Laundry)**

**Union 2(b) 44.9%(41% 5b analysis worksheet/Table 4 + 2.6% TMAs + 1.3% Laundry)**

## Health and Welfare of Nursing Home Workers

As has been discussed, an important metric to look at regarding the health and welfare of nursing home workers is the Cost of living in Minnesota. To use the Cost of Living Tool, the tool asks if a person is partnered or single. If partnered, it asks if one is working full time, one working full time and the other part time, or both are working full time. It also asks if there are children in the household, though as a limitation on this data, does not specify if there are any additional custody or child support arrangements.

In the questionnaire for workers, the Board asked if a worker is single, married, divorced, separated, widowed, or co-habitating. The Board also asked if the worker has dependents in the home. 69 people answered these questions. Below are some highlights from those answers which demonstrate there are a wide variety of family situations that nursing home workers find themselves in ranging from living alone with no children to being partnered with more than 4 children in the home.

- Using the filter for married/co-habitating, 38 out of 69 people are living with another adult.
- Of those 38, 17 had no kids, 14 had 1-2kids, 5 had 3-4 kids, 2 had more than 4 kids, meaning 2 adult households had a 55% chance of having at least 1-2 kids.
- When filtered, "single, divorced, separated, widowed", 23 had no kids, 5 had 1-2 kids, 1 had 3-4 kids, 2 had more than 4 kids, meaning 26% of one adult households having at least 1-2 kids.
- Some of both the one and two adult households with part time/on call workers had kids as well, though much more common with two adult households.
- 29 of the 69 workers reported kids in the home with an average of 2 kids per home. 21 of those homes reported having another adult in the home.
- Of those reporting not having any dependents in their home, the majority identified as being the only adult (single, widowed, divorced, separated).

Understanding from the questionnaire that nursing home workers live in a wide variety of household situations, from working part time to full time, partnered or single, no kids to more than 4 kids in the household, below in "Table 5: Cost of living in MN data" the 24 different permutations of the minimum wages that a single person or two adults living together would need to earn to meet the basic needs in Minnesota as showing in the Cost of Living Tool referenced above. As Table 5 shows, hourly wages go from $10.64 to $44.78 and annual family income from $35k-$93k.

When looking at these statewide average cost of living numbers, the median wage is between $22.13 and $22.95. The average is $24.14.  Additionally, the webpage on the Cost of Living Tool's methodology notes that "Partnered, 1 full-time and 1 part-time worker, 1 child, provides a standard yearly cost and hourly wage need for a typical family, regardless of how the weekly work hours are distributed between the two adults."(Methodology for our Cost of Living in Minnesota tool / Minnesota Department of Employment and

9

Economic Development (mn.gov)). In the statewide average, the wage that both workers would need to earn is $19.46.

Though nursing home workers report a wide variety of home life situations that would require different levels of income, above it is shown that having 2 adults and 2 kids in a house is a common occurrence, as is being a single adult. As an example of what the adults in the home with two kids would need to earn in order to sustain a household if one was working full time and one was working part time, the wage would be $24.47. For the single adult, the wage would be $16.82-17.01 depending on age.

Table 5: Cost of living in MN data

| Adults | Full time/part time | Kids | Annual income | Hourly wage |
|---|---|---|---|---|
| 2 adults, 19-50y | Both full time | 0 | $44k | $10.64 |
| 2 adults  50+y | Both full time | 0 | $45k | $10.83 |
| 2 adults, 19-50y | One full, one part time | 0 | $44k | $14.18 |
| 2 adults,  50+y | One full, one part time | 0 | $45k | $14.44 |
| 2 adults | Both full time | 1 | $70k | $16.81 |
| 1 adult,  19-50 y | full time | 0 | $35k | $16.82 |
| 1 adult,50 + y | full time | 0 | $35k | $17.01 |
| **2 adults (typical MN Household)** | **One full, one part time** | **1** | **$61k** | **$19.46** |
| 2 adults, 19-50y | one full time | 0 | $43k | $20.73 |
| 2 adults, 50+y | One full time | 0 | $44k | $21.10 |
| 2 adults | Both full time | 2 | $90k | $21.70 |
| **2 adults (Median)** | **Both full time** | **3** | **$92K** | **$22.13** |
| **2 adults (Median)** | **Both full time** | **4** | **$95k** | **$22.95** |
| 2 adults | One full time | 1 | $51k | $24.43 |
| 2 adults | One full, one part time | 2 | $76k | $24.47 |
| 2 adults | One full, one part time | 3 | $78k | $25.03 |
| 2 adults | One full, one part time | 4 | $81k | $26.11 |
| 1 adult | full time | 1 | $60k | $28.82 |
| 2 adults | one full time | 2 | $62k | $29.81 |
| 2 adults | one full time | 3 | $63k | $30.48 |
| 2 adults | one full time | 4 | $67k | $32.02 |
| 1 adult | full time | 2 | $86k | $41.31 |
| 1 adult | full time | 3 | $90k | $43.18 |
| 1 adult | full time | 4 | $93k | $44.78 |
| **Average** | | | | **$24.14** |

*Comparing Median and Average Cost of living with Union 2(a) and 2(b) proposals*

The median wage as presented above is between $22.13 and $22.95. The average is $24.14.

10

The general minimum wage for both proposals falls below the median and average wages for a cost of living in Minnesota. Union 2(a) CNA wage for 2026 falls right in the middle of the median wages, but below the average. Union 2(b) CNA wage falls below the average and median. For the TMA wages, Union 2(a) is above the medians the first year, while Union 2(b) is in the middle of the median the first year. LPN wages are above the median and averages all years. Though the 2027 wages are higher, they are also an additional year out from the cost of living data which is from 2022. These are all shown below in "Graph 1: Comparing Union 2(a) and 2(b) 2026 wages with cost of living (COL), 2022."



Graph 1: Comparing Union 2(a) and 2(b) 2026 wages with Cost of Living (COL), 2022

## Conclusion of analysis wages in Union 2(a) and 2(b)

Based on the data collected by the Board, Union 2(a) does a better job of meeting the majority benchmark and lifts more people into a cost of living wage than 2(b). Union 2(b)'s minimum wages does not quite make the majority benchmark with available data and certainly lifts many people closer to meeting the cost of living in Minnesota.

# Analysis of Wage 1 Proposal

## Proposal 1 Wage Standards

Proposal 1 Wage is divided into two parts. The first part is a placeholder for minimum wages for nursing home employees to be filled in once a data request is received. Staff of the Board, in conjunction with the Department of Human Services are actively working to fulfill this request and will have the data requested shortly.

11

The second part of Proposal 1 Wage is a set of requirements for any standard. It reads:

"Part 2
For any standard approved by the Board, the cost estimates and the required new appropriation must:
1)Estimate each facility's rate impact in relation to the new standard. The estimate must be facility specific and based on information provided to the commissioner [of DHS] about current wage rates at each facility.
2) The commissioner must, when determining the total and facility specific costs to meet the standard, include:
      a) the increased cost to wages;
      b) the employer's share of FICA taxes, Medicare taxes, state and federal unemployment taxes, worker's compensation, pensions, contributions to employee retirement accounts cost increases attributable to a standard.
      c) the indirect costs as defined by the board, resulting from the implementation of a standard.
3) Nursing facility rates will be adjusted by the amounts determined in (a) through (c) on the first day of the previous month before the implementation date of a standard. Payments to facilities under this section shall be included in the external fixed payment rate under 256R.25.
4) If the Legislature does not approve an appropriation under this section prior to the effective date of the new standard, then the new standard approved by the Board cannot take effect."

## Meeting the Majority Benchmark

Determining whether this proposal meets the majority benchmark will largely rest upon the level at which the minimum wage(s) is (are) set. It is currently impossible  to determine if this proposal will meet the majority benchmark without a minimum wage.

## Health and Welfare of Nursing Home Workers

Determining how this proposal meets our goal for the health and welfare of nursing home workers will largely rest on the level at which minimum wage is set. Without those levels, the wage cannot be compared to cost of living or any other measurements.

## Interplay with Statutory Requirements and Authority

Part 2 of Proposal 1 contains provisions that would require statutory changes before they could be written into rule or used by DHS in costing out proposals. Changes required include:

1.  Part 2 includes many references to facility specific rates and costs when considering the costs of a proposed standard. Minn. Stat. § 181.213, subd. 2(d)(1) directs the Board, in consultation with DHS, to examine statewide averages to determine the costs a proposed standard would have. Statute does not prohibit the Board from collecting or utilized facility specific data, but it is not required under statute.
2.  Part 2, section 2, directs the DHS commissioner to determine costs in a way contrary to their usual method for fiscal notes and is different from the directions in statute. The statutes governing the Board do not vest the Board with the power to direct how the Commissioner of Human Services is to perform any fiscal analysis required under Minn. Stat. § 181.213 subd. 2 (c)-(d).

12

3. Part 2, section 3, contemplates securing funds beyond what is written in statute. Statute states what is to be reported to the legislature and based upon that report whether additional funding will be needed. Additionally, statute does not grant the Board the power to change schedules for changing rates or add additional amounts to rates given to nursing facilities. This proposal would require such authority and changing how reimbursement rates are set is beyond the scope of the Board's authority and beyond what can be done in rules under the NHWSB Act.

4. Part 2, section 4, adds restrictions to not allow standards to go into effect until that additional funding is secured from the legislature. Minn. Stat. §§ 181.213, subd. 2(a), and 181.213, subd. 2(d)(3) govern when initial standards will go into effect and hold that initial standards will go into effect on January 1, 2025, or if an appropriation is needed, when appropriation is secured for the additional cost to the state and federal approval of the rate increase is obtained.

# Analysis of Holiday Pay in Union 2(a) and 2(b) and Amend Time and a half

## Holiday Pay Proposal in 2(a) and 2(b)

In proposals 2(a) and 2(b), it is proposed that nursing home workers are paid time and a half on the 11 state holidays observed in Minnesota pursuant to Minn. Stat. 645.44, subd. 5(a). Those days are as follows:  New Years Day, January 1; Martin Luther King's Birthday, the third Monday in January; Washington's and Lincoln's Birthday, the third Monday in February; Memorial Day, the last Monday in May; Juneteenth, June 19; Independence Day, July 4; Labor Day, the first Monday in September; Indigenous Peoples Day, the second Monday in October; Veterans Day, November 11; Thanksgiving Day, the fourth Thursday in November; and Christmas Day, December 25. Nursing home employers, like some Minnesota public employers, would have the option to elect to include as a "holiday" the Friday after Thanksgiving but not include Indigenous Peoples Day.

## Available Data

The data available on Holiday Pay is much more limited than what is available for wages.

One source is the questionnaire for employees which included the question "If there were additional funds for compensation and benefits, what would be your top three choices for that funding to go toward?" The answers for this question in order from most to least popular where:

1. Raise in Wages (100%)
2. Pension or other retirement plan (47.14%)
3. **Paid Holidays (38.57% - tie) &** Health Insurance (38.57%- tie)
4. Childcare (20%)
5. Long-term or short-term disability insurance (17.14%)
6. Dental Insurance (12.86%)
7. Group Life Insurance (5.71%)

Regarding it can be concluded that additional holidays paid at time and a half for those working would be a popular benefit for nursing home employees.

13

Another other source of data that was collected are the Collective Bargaining agreements (CBAs). Of 36 CBAs listed under "Long Term Care - Nursing Homes & Greater MN Hospitals" at Worksites (seiuhealthcaremn.org), the CBAs had on average and a median of 7 recognized holidays per year, including holidays not recognized by Minn. Stat. 645.44, subd. 5(a), such as Easter or Christmas Eve. If the holidays that are not included in proposals 2(a) and 2(b) are removed, the average number of holidays a worker is given is 6.2 and the median is 6 holidays. In these CBAs, the average pay is 1.88 times regular pay, as a result of some CBAs having provisions that provide for holiday pay in excess of time and a half. The holidays observed by a CBA but not recognized by Minn. Stat. 645.44, subd. 5(a) would remain as holidays pursuant to the individual CBA during the agreement's lifespan, which would result in some nursing home workers and employers observing more than 11 holidays in a year.

So, for the sample of nursing home workers under a CBA, currently averaging 6.2 holidays listed in Minn. Stat. 645.44, subd. 5(a), proposals 2(a) and 2(b) would add on average 4.8 holidays where those who work would be paid time and a half of their usual rate of pay. None of the CBAs had all 11 holidays that are named in 2(a) and 2(b) included. This means 100% of workers under these CBAs would see a benefit to this proposal.

## Conclusion on Holiday Pay Proposal in 2(a) and 2(b)

Though the data is quite limited in regard to this proposal, what data is available indicates that this would be a welcome benefit and that it would benefit a majority of nursing home workers.

## Amendment to Time and a Half Proposal

In regard to the Union Proposals 2(a) and 2(b), which proposed time and a half for those working the 11 state designated holidays, with the option to swap out Indigenous Peoples Day for the day after Thanksgiving, the employer's proposal is to amend that proposal as such: "To accommodate religious, cultural and local preference, nursing facility employers may select different holidays to meet the total number of holidays mandated by rule."

As was discussed above, based on the data that the Board has, while limited, would indicate that having 11 holidays paid at time and a half would be a benefit that would have an impact on many workers and likely would meet the majority benchmark. For this proposal, however, since the employer would have flexibility to count any holiday as one of the 11 holidays, the employer could count holidays like Easter and Christmas Eve as holidays meeting this standard. So, in this case, it would be appropriate to use the average of 7 holidays found in the CBAs as the number to which to compare the proposal. In other words, on average, based on the sample CBAs, this proposal would add 4 additional holidays those who work would be paid time and a half of their usual rate of pay.

Though this proposal would allow greater employer flexibility in determining which holidays a nursing home will observe. However, this flexibility for the employer may in turn require extra scrutiny by the Board to ensure that nursing home workers are being educated and noticed about their rights pursuant to Minn. Stat. §§ 181.214 and 181.215.

14

# EXHIBIT BB

Date:    October 2, 2024

To:    Leah Solo                                  Jamie Gulley
       Executive Director                         Chair, Board of Directors
       Nursing Home Workforce Standards Board    Nursing Home Workforce Standards Board
       Minnesota Department of Labor and Industry  Minnesota Department of Labor and Industry

From:   Paula Rocheleau, Board Member
        Katie Lundmark, Board Member
        Mary Swanson, Board Member
        Nursing Home Workforce Standards Board


Our caregivers deserve higher wages for the incredible work they do in caring for our growing senior population. Long-term care settings rely on reimbursements from the state and federal government and can only raise wages for caregivers if the state provides additional funding required to achieve this goal. This is why we serve on the Nursing Home Workforce Standards Board. It is also why we continue to work toward achieving mutually agreed upon outcome of improving the wages of Minnesota's nursing facility employees.

Recently, we became aware of an unsigned letter that was hand delivered to a nursing facility employer. The unsigned letter specifically asserts that *our* voting to abstain on the minimum wage and mandated time and half pay standards leaves an impression that we do not support higher wages and benefits. Of course, the unsigned letter's characterization of abstaining could not be farther from reality. As Board members we have not engaged in gamesmanship or withheld our ideas. Instead, we have, made it noticeably clear that we are supportive of raising employee wages. But we cannot, as Board members, vote affirmatively for standards that many nursing facilities will be unable to meet without upfront funding from the legislature.

Our concern with the minimum wage rules from the Nursing Home Workforce Standards board is not out of a lack of concern for workers to earn family-sustaining wages, but precisely because these proposed rules will in fact work against the desired outcome. As evidenced by recent closing of beds or entire facilities, nursing homes cannot do this alone. If nursing home employers are to raise wages for their dedicated caregivers, the state must provide the funding to enable that to happen. An unfunded mandate will not solve the problem we are all trying to address.

For years, we have been consistent voices at the legislature advocating for our caregivers and the access to care that Minnesota's growing population of seniors deserve. During the 2024 Legislative Session, nursing home advocates put forth a bill (HF3391/SF4130) that would have provided a substantial average wage increase for all nursing home workers. Unfortunately, the legislature chose not to pass this bill, meaning long-term care settings continue to lack the funding necessary to increase caregiver wages.

We agree with the 4 out of 5 Minnesotans who believe that those who care for the elderly deserve wages comparable to working in other healthcare sectors and we hope to see state leaders meet their responsibility to our seniors and caregivers this upcoming legislative session. We stand ready to work with them to find the right solutions.

# EXHIBIT CC

Phone and email scam alert.

About the department > Boards and councils > NHWSB meeting materials

## NHWSB MEETING MATERIALS

ABOUT DLI

BOARDS AND
COUNCILS

Access Review Board

Apprenticeship
Advisory Board

Board of Electricity

Board of High-Pressure
Piping Systems

Building Efficiency
Workgroup

Combative Sports
Advisory Council

Construction Codes
Advisory Council

Governor's Committee
on the Compensation,
Wellbeing, and Fair
Treatment of
Transportation
Network Company
Drivers

Medical Services
Review Board

Nursing Home
Workforce Standards
Board

Occupational Safety
and Health Advisory
Council

Occupational Safety
and Health Review
Board

Plumbing Board

Rehabilitation Review
Panel

State Appeals Board

Workers'
Compensation
Advisory Council

Workers'
Compensation Insurers'
Task Force

CAREERS AT DLI

NEWS, DATA
REQUESTS

### 2026 meeting materials

#### Dec. 10, 2026

- Agenda

- Minutes

#### Nov. 12, 2026

- Agenda

- Minutes

#### Oct. 8, 2026

- Agenda

- Minutes

#### Sept. 9, 2026

- Agenda

- Minutes

#### Aug. 13, 2026

- Agenda

- Minutes

#### July 9, 2026

- Agenda

- Minutes

#### June 11, 2026

- Agenda

- Minutes

#### May 14, 2026

- Agenda

- Minutes

#### April 9, 2026

- Agenda

- Minutes

#### March 12, 2026

- Agenda

- Minutes

#### Feb. 12, 2026

- Agenda

- Minutes

- Sample curriculum

Ex. CC, p. 001

OUR AREAS OF
SERVICE

RULEMAKING

WORKPLACE
NOTICES AND
POSTERS

- Guides for certification of worker organizations and worker training

**Jan. 8, 2026**

- Agenda

- Minutes

- NHWSB cert of worker orgs worker trng guide 2026 draft

- NHWSB notice update 2026 draft

- NHWSB sample curriculum presentation draft

---

**Meeting materials archive**

**Dec. 11, 2025**

- Agenda

- Annual report

- Draft minutes from all public forums

- Memo:  Certified worker organization complaint

- Memo:  Fall outreach 2025

- Minutes

**Nov. 21, 2025**

- Agenda

- Minutes

**Nov. 20, 2025 – public forum**

- Agenda

- Minutes

**Nov. 13, 2025**

- ~~Agenda~~

- ~~Minutes~~

*rescheduled to Nov. 21, 2025

**Oct. 9, 2025**

- Agenda

- Evaluation tool

- Follow-up requests -- waivers and variances

- Instructions for minimum-wage costs workbook

- Minimum-wage costs workbook

- Minutes

- Updated application for waiver or variance, Oct. 8, 2025

**Sept. 11, 2025**

- Agenda

- Draft memo for board on public forums

- Logistics memo

- Minutes

Ex. CC, p. 002

**Aug. 14, 2025 – canceled**

- ~~Agenda~~

- ~~Minutes~~

**July 10, 2025**

- Agenda

- Minutes

- Special meeting

  - Agenda

  - Minutes

**June 12, 2025**

- Agenda

- AFL-CIO application followup documents (zipped file)

- AFSCME Council 65 (zipped file)

- Evaluation of worker organization certification application AFSCME Council 65

- Memo:  Process for canceling waiver review meetings (updated)

- Minutes

- SEIU application followup documents (zipped file)

  - SEIU new member welcome handout

**May 8, 2025**

- Agenda

- Evaluation of worker organization certification application AFL-CIO

- Evaluation of worker organization certification application SEIUHCMNIA

- Memo:  Next steps on public engagement

- Minutes

- MN AFLCIO (zipped file)

- SEIUHCMNIA (zipped file)

**April 10, 2025**

- Agenda

- Memo from Data Workgroup

- Minutes

**March 13, 2025**

- Agenda

- Minutes

**Feb. 13, 2025**

- Agenda

- Certification of worker organizations and worker training guide

- Memo:  Process for canceling waiver and review meetings

- Minutes

- Sign-in template

Ex. CC, p. 003

**Jan. 9, 2025**

- Agenda

- Certification of worker organizations and worker training guide

- Minutes

- Proposed amendments to Minnesota Statutes 181.211

- Year at a glance

**Dec. 12, 2024 (special meeting)**

- Agenda

- Leading Age Minnesota and Care Providers – complaint

- Memorandum in support of motion for preliminary injunction or in the alternative a temporary restraining order

- Minutes

**Dec. 5, 2024**

- Agenda

- Copy of cost of holiday standards 2024

- Draft minutes, Nov. 14, 2024

- Draft process waiver and variance application board

- Draft waiver and variance application

- Holiday pay and posting, employer slides

- How to holiday pay

- Minutes

- NHWSB annual report 2024

- Nursing Home Workforce Standards Board minority report

- Template holiday pay notice

**Nov. 14, 2024**

- Agenda

- How to, holiday pay rules

- Minutes

- Public engagement plan

**Nov. 7, 2024 (special meeting)**

- Agenda

- Mandated holidays implementation questions, November 2024

- Minutes

- Office of Administrative Hearings:  In the matter of the proposed rules governing holiday pay, certification for worker organizations and notice posting requirements for nursing home workers; Minnesota Rules Part 5200.2000 to 5200.2050

**Oct. 10, 2024**

- Agenda

- Authority to modify proposed rule

Ex. CC, p. 004

- Minutes

- Proposed expedited permanent rules modifying certification criteria, notice posting requirements and holiday pay rules for nursing home workers

- Rules establishing minimum nursing home wage standards, OAH 5-9001-40100; Revisor R-4847

### Oct. 2, 2024 (special meeting)

- Agenda

- All comments – holiday pay

- Letter

- Minutes

### Sept. 19, 2024 (special meeting)

- Agenda

- Draft curriculum, August 2024

- Minutes

- Sample curriculum

- Training content draft

- Draft sample follow-up document

- Sign up to speak at the meeting:  forms.office.com/g/ikampFm643.

- Flyer:  NHWSB public hearing on curriculum

### Sept. 12, 2024

- Agenda

- Minutes

- Public hearing on curriculum 2024

### Aug. 8, 2024

- Agenda

- All comments

- Bylaws, updated May 21, 2024

- Draft curriculum, August 2024

- Draft minutes, July 18, 2024

- Draft sample follow-up document

- Minutes

- NHWSB public hearing on curriculum

- Proposed expedited permanent rules modifying certification criteria, notice posting requirements and holiday pay rules for nursing home workers

- Public hearing on curriculum 2024 for board

- QR code for NHWSB public hearing on curriculum

- QR code *only* for NHWSB public hearing on curriculum

- Sample curriculum

- Training content draft

Ex. CC, p. 005

- Workforce standards impact calculator, July version

**July 18, 2024**

- 5d draft plan for documentation workers trained -- for workgroup and board

- Agenda

- Draft NHWSB minutes, June 13, 2024

- Minutes

- NHWSB principles edited

- Principles

**June 13, 2024**

- Agenda

- Bylaws

- Calendar and upcoming work

- Draft meeting minutes May 9

- Minutes

- Principles

- Principles with additions and deletions

- Process for documenting training by a certified worker organization

- Wage standards draft from Revisor

**May 9, 2024**

- Agenda

- Copy of data analysis for the board

- Copy of fiscal analysis for the board

- Cost to nursing facilities of proposed standards, April 29, 2024

- Data request response

- Draft meeting minutes, April 29

- Draft rules holiday pay

- Draft rules initial wage standards

- Memo:  Nursing Home Workforce Standards Board rulemaking deadlines

- Minutes

- Review of data for board meeting

- Rulemaking process

**April 29, 2024**

- 5i. WSB scenario holiday-pay only

- 5i. WSB scenario holiday-pay wage floor

- 5ii. Revision to 2(a) and 2(b) proposals for costing

- Agenda

- Amend time-and-a-half proposal

- Fiscal analysis for the board, data request

Ex. CC, p. 006

- Memo:  Current proposals

- Memo:  Expense reports

- Minutes

- Proposal one:  Wage standards

- Proposal one:  Wage standards note

### April 15, 2024

- Agenda

- Minutes

### April 11, 2024

- Agenda

- Minutes

### March 27, 2024

- Agenda

- Minutes

### March 21, 2024

- Agenda

- Draft meeting minutes, March 18, 2024

- Long-Term Care Imperative:  Estimated total cost of adding holidays and paying time-and-one-half

- Memo:  NHWSB rulemaking deadlines

- Minimum standards options version 2(a)

- Minimum standards options version 2(b)

- Minimum standards options version 2(c)

- Minutes

### March 18, 2024

- Agenda

- Minutes

### March 14, 2024

- Agenda

- Draft chart of wage standards questions

- Guiding principles

- Memo:  Nursing home job occupations

- Minimum standards options

- Minutes

- Presentation:  Questionnaire for current nursing home workers

- Presentation:  Questionnaire for nursing home employers

### Feb. 8, 2024

- 5a. Minnesota minimum wages and benefits

- 5b. Analysis of data

Ex. CC, p. 007

- 5b. Memo from Data Workgroup

- 5c. Memo notes at public forum

- 5c. Presentation:  Public forums

- 5c. Public forum memo – Brooklyn Park

- 5c. Public forum memo – Duluth

- 5c. Public forum memo – Redwood Falls

- 5c. Public forum memo – virtual

- 5d. Draft plan for documentation, workers trained

- 5d. Draft rules for certification or worker organizations, potential amendments

- Agenda

- Minutes

**Jan. 11, 2024**
- Agenda

- Minutes

TO MEMBER LIST ▶          TO NHWSB MAIN PAGE ▶

🌐 Español | Soomaali | Hmoob | Karen/ကညီ | Chinese/简体中文

m૧ | Register to Vote ✔

Disclaimer

Ex. CC, p. 008

# EXHIBIT DD


**DEPARTMENT OF LABOR AND INDUSTRY**

# Meeting minutes:  Nursing Home Workforce Standards Board

Date:  Thursday, Aug. 8, 2024
Minutes prepared by:  Linnea Becerra
Location:  In person in the Minnesota Room, Department of Labor and Industry, and online via Webex

## Members present

- Commissioner Nicole Blissenbach
- Chair Jaime Gulley
- Michelle Armstrong
- Kim Brenne
- Michele Fredrickson
- Maria King (remotely)
- Katie Lundmark
- Paula Rocheleau (remotely)
- Mary Swanson (remotely)

## DLI staff members present

- Ali Afsharjavan
- Linnea Becerra
- Paul Enger
- Josiah Moore
- Leah Solo
- Nou Yang

## Visitors present

- Todd Bergstrom
- Jeff Bostic
- Krystle Conley (remotely)
- Allison Eastham (remotely)
- Brian Elliott
- Bryce Hingst (remotely)
- Casey Murphy (remotely)
- Tom Syverson (remotely)

## Agenda items

1. **Call to order** – the meeting was called to order by Chair Jamie Gulley at 11:04 a.m. Roll call was taken by the secretary and a quorum was declared.
2. **Approval of agenda** – a motion to approve the agenda as presented was made by Commissioner Nicole Blissenbach and seconded by Michelle Armstrong. An item was presented for discussion; there was discussion about moving the public comment discussion to earlier in the agenda by Katie Lundmark, but Chair Gulley assured the board he would move quickly through the earlier agenda items to make sure there was adequate time for discussion of the public comments. A roll call vote was taken and the motion passed unanimously.
3. **Approval of drafted meeting minutes** – a motion to approve the July 18, 2024, drafted meeting minutes as presented was made by Commissioner Blissenbach and seconded by Armstrong. A roll call vote was taken and the motion passed unanimously.

Ex. DD, p. 001

4.  **Board updates** –
    - Executive Director Leah Solo presented about the updated bylaws that were passed during the 2024 legislative session. This update requires two of the three commissioners or commissioner designees to cast affirmative votes for any vote taken up by the Nursing Home Workforce Standards Board for the motion to pass. Mary Swanson requested two of the three employers also cast affirmative votes for any vote by the Nursing Home Workforce Standards Board to pass. Paul Enger provided statutory clarification and the motion proceeded as originally presented. Commissioner Blissenbach made a motion to adopt the updated bylaws and Armstrong seconded the motion. A roll call vote was taken and the motion passed unanimously.
    - Executive Director Solo updated the board about the progress made by the Certification/Training Workgroup. This included the sample content, sample follow-up document and draft sample curriculum. These items will be open for discussion and feedback at the coming public hearing.
    - Executive Director Solo updated the board about the sign up and the agenda for the public hearing. Members of the workgroup spoke briefly about their work.
    - Executive Director Solo presented about the Waivers and Variances Workgroup and the discussion about the items that may be required for applicants to provide to be considered for a waiver or variance. Lundmark and Kim Brenne gave their thoughts and additions from that workgroup.
    - Executive Director Solo reported about the Data Workgroup, which met immediately preceding the full board meeting. Brenne noted there was discussion in the Data Workgroup meeting about acknowledging the difference in numbers between the Department of Human Services fiscal note and the Long-term Care Imperative's numbers.
    - Enger brought to the table for discussion and approval, the draft from the revisor on the holiday, certification and posting rules. There was significant discussion about moving the implementation date back to June 1, 2025, presented by Lundmark. A motion was made by Lundmark to change the effective date to Jan. 1, 2026, which was seconded by Paula Rocheleau. The board discussed the proposal. A roll call vote was taken and the motion failed, with six opposing votes and three in favor. A separate motion was made by Commissioner Blissenbach to adopt the rules as drafted and authorize the Department of Labor and Industry to take the steps necessary to publish the notice of intent to adopt permanent expedited rules without a hearing for these rules with the *State Register*; the motion was seconded by Armstrong. A roll call vote was taken and the motion carried, with six affirmative votes and three opposing votes.
    - The board discussed the 247 public comments it received.
    - A motion was made to adopt the rules as drafted and approve the staff members to submit the necessary documents to the administrative law judge and the Office of Administrative Hearings, as well as approve the staff members to respond to additional inquiries necessary to effectuate that process. This motion was made by Commissioner Blissenbach and seconded by Brenne. A roll call vote was taken and the motion passed, with six members voting affirmatively and three members voting in abstention.
5.  **New business** –
6.  **Next meeting** – the next meeting is at 11 a.m., Thursday, Sept. 12, 2024, in the Minnesota Room.

## Adjournment

A motion made to adjourn the meeting at 12:45 p.m. by Armstrong and seconded by Brenne. A roll call vote was taken and the motion passed unanimously.

Ex. DD, p. 003

# EXHIBIT EE


**DEPARTMENT OF LABOR AND INDUSTRY**

# Minutes:  Nursing Home Workforce Standards Board

Date:  Thursday, Oct. 10, 2024
Minutes prepared by:  Linnea Becerra
Location:  Hybrid – Washington Room at the Department of Labor and Industry and via Webex

## Attendance

**Members present**
Commissioner Nicole Blissenbach
Jamie Gulley
Michelle Armstrong
Kim Brenne (remotely)
Michele Fredrickson (remotely)
Maria King
Katie Lundmark
Paula Rocheleau
Mary Swanson (remotely)

**Visitors present**
Todd Bergstrom
Jeff Bostic
Brian Elliott
Rachel Estroff
Grant Collins Felhaber
Brooke Hein (remotely)
Bryce Hingst (remotely)
Casey Murphy (remotely)
Kayla Revier (remotely)
Call-in user (507233****) (remotely)

**DLI staff members present**
Ali Afsharjavan
Linnea Becerra
Paul Enger
Leah Solo

## Agenda items

1. **Call to order** – the meeting was called to order by Jamie Gulley at 11:05 a.m. Roll call was taken. A quorum was declared.
2. **Approval of agenda** – a motion to approve the agenda as presented was made by Michelle Armstrong and seconded by Maria King. A roll call vote was taken and the motion passed unanimously.

Ex. EE, p. 001

3. **Approval of drafted meeting minutes** – a motion to approve the Oct. 2, 2024, drafted meeting minutes as presented was made by Armstrong and seconded by King. A roll call vote was taken and the motion passed unanimously.

4. **Board updates** –
   - The Waivers and Variances Workgroup update included the group discussion about the potential timeline for provisional waivers and the content of what the waiver applications would look like. The group began to walk through a checklist of potential items for nursing homes to submit.
   - The Public Hearing Workgroup has a meeting coming up to debrief the Sept. 16, public hearing about the draft curriculum.
   - The Certification/Training Workgroup is meeting in the next week. The next steps on the curriculum are on hold until the rules are finalized.
   - The Data Workgroup has not met since the last full Nursing Home Workforce Standards Board (NHWSB) meeting but will be meeting in December and will look at the December forecast.
   - The board discussed common themes, as requested by board member Katie Lundmark, in the public comments submitted.
     - Gulley started by asserting roles within the industry seemed to dictate the submitted comments – employers do not approve of the holiday pay rule and worker organizations do.
     - There was discussion about the tight timeline of implementing the holiday pay rules and the concern of scheduling for the upcoming year's holidays. After discussion, board members agreed that the compromise reached in the spring is still agreeable.
     - Lundmark brought up that the 11 state holidays do not represent the cultural practices of all communities. There was discussion about how the four flexible holidays accommodates for the different holidays each facility values.
     - Paula Rocheleau brought up the unfunded mandate comment made in many of the submitted comments. The board discussed whether the mandate is unfunded or the payment method is not preferred.
     - Armstrong spoke to the comments being mostly from the employers, speaking for the employees.
     - Michele Fredrickson brought up the vendor concern she noted in the comments. Commissioner Nicole Blissenbach clarified that vendors that are contracted and do work in the nursing home would be covered under the NHWSB statute.
     - Fredrickson also drew attention to the exempt versus non-exempt claim and the National Labor Relations Act (NLRA) as found in the letter submitted by Fox Rothschild on behalf of LeadingAge and Care Providers. Paul Enger, Office of General Counsel, cited Metropolitan Life Insurance company versus Massachusetts, which clearly indicates minimum labor laws are not pre-empted by NLRA.
     - Mary Swanson pointed out there were many more comments written by the employers and wondered why that was the case.
     - Kim Brenne said she did an informal check of one of the provider's comments and noticed the reported cost to the provider was much higher than what the increase would be.
     - One comment, submitted by Care Providers, drew attention to the rulemaking process NHWSB is working under and questioned the validity of the process. Enger explained that under Minnesota Statutes section 14.389, Expedited rulemaking procedure, a statement of need and

reasonableness (SONAR) is not required. The Office of General Counsel feels confident NHWSB has followed the requirements needed pursuant to the statute.

- o It was noted by Gulley there was only one comment submitted about certification of worker organizations or posting requirements. The comment referencing the certification of worker organizations noted a scenario in which an organization decides to discontinue providing training, not that they were denied a renewal or their certification was revoked. The board discussed nursing home workers who were trained would still receive their certification and when a worker organization decides to cease trainings, the board does not have authority over them.
- Lundmark brought up the implementation of the holiday pay rules versus the effective date. The employers spoke to the quick turnaround and asked for an "on ramp" to the holiday pay standard. Commissioner Blissenbach explained how the effective date for minimum wage is similar to the proposed rules being discussed and said employers have had knowledge of the proposal since August.
- Exhibit I was brought for discussion – there was no discussion.
- Armstrong made a motion to adopt the rules as drafted and approve the staff to submit the necessary documents to the administrative law judge and Office of Admininstrative Hearings, as well as approve the staff to respond to additional inquiries that would be necessary to effectuate that process; the motion was seconded by Commissioner Blissenbach. A roll call vote was taken and the motion passed with six affirmative votes and three votes of abstention.

5. **New business** –
   - Executive Director Leah Solo reminded the board its annual report is due to the state Legislature by Dec. 1, 2024. Solo said she is working on a draft and will present it for the board's approval at the meeting next month.
   - Executive Director Solo raised the scheduling of the regular meetings and asked for feedback. If no concerns are raised, the board will continue to meet on the second Thursday of the month.
6. **Next meeting** – the next meeting is Thursday, Nov. 14, at 11 a.m., in the Minnesota Room.

# Adjournment

A motion was made by Blissenbach to adjourn the meeting at 12:38 p.m. and seconded by King. A roll call vote was taken and the motion passed unanimously.

# EXHIBIT FF

 **DEPARTMENT OF LABOR AND INDUSTRY**

# Meeting minutes:  Nursing Home Workforce Standards Board

Date:  Monday, April 29, 2024
Minutes prepared by:  Linnea Becerra
Location:  Hybrid – Minnesota Room at the Department of Labor and Industry and via Webex

## Members present

- Commissioner Nicole Blissenbach
- Chair Jaime Gulley
- Michelle Armstrong
- Kim Brenne
- Michele Fredrickson (remotely)
- Maria King
- Katie Lundmark
- Paula Rocheleau
- Mary Swanson

## DLI staff members present

- Ali Afsharjavan (remotely)
- Linnea Becerra
- Paul Enger
- Leah Solo

## Visitors present

- Alfonzo (remotely)
- Todd Bergstrom
- Teresa Brees
- Jeff Bostic
- Peter Butler – Department of Human Services
- Phillip Cryan
- Geoff Dittberner
- Brian Elliott
- TJ Hart
- Ernesta (Nessa) Higgins
- Josie Kelly
- Casey Murphy (remotely)
- Jeremy Olson (remotely)
- Toby Pearson

## Agenda items

1.  **Call to order** – the meeting was called to order by Jamie Gulley at 9:10 a.m. A roll call was taken and a quorum was declared.
2.  **Approval of agenda** – a motion to approve the agenda as presented was made by Michelle Armstrong and seconded by Maria King. The item was presented for discussion; a roll call vote was taken and the motion passed unanimously.
3.  **Approval of drafted meeting minutes** – a motion to approve the April 15, 2024, drafted meeting minutes as presented was made by Armstrong and seconded by King. A roll call vote was taken and the motion passed unanimously.
4.  **Board updates** –
    - Chair Gulley spoke about the amount of work the board has done to this point, including:
        - 13 full board meetings;
        - 25 workgroup meetings;

Minutes:  Nursing Home Workforce Standards Board, April 29, 2024

- o   five public forums;
- o   43 total meetings in eight months of the board's existence;
- o   presentations from the Department of Labor and Industry, Department of Employment and Economic Development and Department of Human Services;
- o   public forums where 224 people attended and 71 attendees spoke (28 workers, 22 employers and 21 members of the public); and
- o   questionnaires that received responses from 205 people, including 101 workers, 69 employers and 35 members of the public.
- •   Executive Director Leah Solo explained her memo analyzing the proposals to the board thus far. She began by reviewing the statutory language the board is obligated to follow. She then reviewed the data sources the board has used to inform their decision-making. In addition to data, the board engaged the public in multiple ways, including public forums and questionnaires, some available in multiple languages. Director Solo then described the limitations of the data set. She presented her analysis of proposal union 2(a) and proposal union 2(b), concluding that, given the conservative estimates, within reason, both proposals could be argued to meet the majority benchmark and improve the health and welfare of nursing home workers. Director Solo explained the "Wage 1 Proposal," which is divided into two parts and did not include minimum wages, so it was impossible to analyze whether it met the majority benchmark or improved the welfare of nursing home workers. Part two of the "Wage 1 Proposal" contained language around costing and funding streams for nursing homes, which would require statutory changes by the Legislature. Director Solo explained the "Holiday Pay Proposal" and how it compares to current industry standards, concluding it would benefit a majority of workers and improve the health and welfare of nursing home workers. Chair Gulley opened the floor for discussion about the analysis memo; some discussion occurred regarding the holiday pay amendment and whom it centers – the employer or the employee.
- •   Peter Butler, Aging Disability Services Administration, presented the "Fiscal Analysis for the Board 4.25.2024 Data Request" spreadsheet. This information is a result of a request for more explanation of the data in the fiscal notes presented to the board at its April 11, 2024 meeting. Butler walked through the narrative notes in the workbook, explaining the methodology behind the previously presented fiscal notes.
- •   Chair Gulley presented an amendment to the "Union Holiday Pay Proposal" that was discussed and presented as "*Delete Indigenous people's day sentence and add the following:  If agreed to by a majority of affected employees and determined prior to the start of the calendar year, any 4 holidays on this list and be substituted for alternate days to be paid at time and a half.*" Discussion occurred.
- •   A motion was made by Armstrong to approve "Union Proposal 2(a) and Holiday Pay" components as drafted. This motion was seconded by Commissioner Nicole Blissenbach and was presented for discussion.
  - o   A proposal to approve the "Amend Time and Half Proposal" was made by Katie Lundmark and seconded by Paula Rocheleau. The proposed amendment was presented for discussion. **A roll call vote was taken and the motion failed, with three votes in favor and six votes dissenting.**
  - o   A motion was made by Commissioner Blissenbach to amend the holiday pay proposal to read "*Delete Indigenous people's day sentence and add the following:  If agreed upon by a majority of affected employees or the exclusive representative of the effected representatives if one exists, and determined prior to the start of the calendar year, up to 4 holidays on this list can be*

Minutes:  Nursing Home Workforce Standards Board, April 29, 2024

Ex. FF, p. 002

*substituted for alternate days to be paid at time and a half.*" The motion was seconded by King and presented for discussion. **A roll call vote was taken and the vote carried, with six votes in favor and three abstaining.**

- o After discussion and amendments, the motion was restated as "... move to approve Nursing Home Workforce Standards Proposal 2(a) as amended by the previous vote and direct the staff to draft the Holiday Pay and minimum wage components of that proposal into two separate rules for action at the next meeting." **A roll call vote was taken and the motion carried, with six votes in favor and three abstaining.**
  - ▪ It was noted by Rocheleau that abstaining from voting for an employee benefit did not mean the benefit was unwanted but that it is paid for by an unfunded mandate.

5. **New business** –
   - A motion was made by Armstrong to reschedule the July 11 meeting to July 18 and seconded by Kim Brenne. A roll call vote was taken and the motion carried unanimously.
   - An expense report memo was included in the board member packet to make sure members are reimbursed correctly.
6. **Next meeting** – the next meeting is May 9, 2024, at 11 a.m.

# Adjournment

A motion was made by Michele Fredrickson to adjourn the meeting at 11:06 a.m. and seconded by Rocheleau. A roll call vote was taken and the motion passed unanimously.

Minutes:  Nursing Home Workforce Standards Board, April 29, 2024

# EXHIBIT GG

**m1 DEPARTMENT OF LABOR AND INDUSTRY**

# Meeting minutes:  Nursing Home Workforce Standards Board

Date:  Thursday, March 14, 2024
Minutes prepared by:  Linnea Becerra
Location:  Hybrid – Minnesota Room (Department of Labor and Industry) and Webex

## Attendees

**Members present**

- Commissioner Nicole Blissenbach
- Chair Jaime Gulley
- Katie Lundmark
- Kim Brenne
- Maria King (remotely)
- Michele Fredrickson
- Michelle Armstrong
- Paula Rocheleau
- Mary Swanson

**DLI staff members present**

- Ali Afsharjavan
- Linnea Becerra
- Paul Enger
- Leah Solo

**Visitors present**

- Erin Huppert
- Brian Elliott
- Rick Varco
- Todd Bergstrom

## Agenda items

1.  **Call to order** – the meeting was called to order by Jamie Gulley at 11:07 a.m. A roll call was taken. *A quorum was declared.*

2.  **Approval of agenda** – *a motion to approve the agenda as presented was made by* Commissioner Nicole Blissenbach *and seconded by* Michele Fredrickson. *A roll call vote was taken and the motion passed unanimously.*

3.  **Approval of drafted meeting minutes** – *a motion to approve the* Feb. 8 *drafted meeting minutes as presented was made by* Kim Brenne *and seconded by* Michelle Armstrong. *A roll call vote was taken and the motion passed unanimously.*

Ex. GG, p. 001

4. **Board updates** –
   - Accolades were given to the Public Hearing Workgroup for a successful month of public engagement meetings and events. The Data Workgroup shared it would be meeting in the afternoon and would take up discussion started at the full board meeting, as well as taking a deeper dive into the questionnaire results. The Certification and Training Workgroup started discussion surrounding waivers and exemptions.
   - Ali Afsharjavan shared that rules are being drafted and there will be discussion regarding them in the near future.

5. **New business** –
   - Executive Director Leah Solo presented on the questionnaire reports. The reports were analyzed by question and then broken down by Greater Minnesota and Twin Cities areas.
   - Solo presented the *Draft Chart of Wage Standards Questions*, which listed categories and the statute that influences them. There was discussion around geography and occupation considerations. She highlighted some specific response information, including benefit responses, overtime, top three improvements, and difficulties of employers to attract and retain employees.
   - The board took a break in rooms other than the Minnesota Room.
   - Katie Lundmark presented the *Principles for Achieving Consensus on Nursing Home Standards* drafted by Mary Swanson, Paula Rocheleau and her. She reviewed each bullet point in the memorandum and proposed the board adopt the principles before moving forward. The group decided to hear the next agenda item before voting to adopt the principles.
   - Jamie Gulley presented *Minimum Standards Options*, which included six options for worker standards. There was discussion by the board regarding paid holidays and benefits, and whether to set minimum wage standards based on geographic location or on one amount for the whole state.
   - Option 5 – *Option 1 Plus Minimum Wage by Job Class in the Minimum Standards Options* was discussed by the board, directing questions to Kim Brenne about the abilities of the Department of Human Services (DHS) to pull data and reporting by job class. This discussion led to revisiting the analysis of data for the *WFSB 20240130 11452* spreadsheet prepared by DHS and shared at previous meetings. There was discussion about to cost to the state, the total costs and the kind of data the DHS staff could pull for review by the March 21 meeting. It was concluded the Data Workgroup would discuss this at its next meeting, which took place March 14 at 3 p.m.

6. **Next meeting** – the next meeting is Monday, March 21, 2024.

# Adjournment

*A motion was made by* Lundmark *to adjourn the meeting at 1:21 p.m. and seconded by* Armstrong. *A roll call vote was taken and the motion passed unanimously.*

# EXHIBIT HH

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------

AMAZON.COM SERVICES LLC,

                  Plaintiff,

           -against-

NEW YORK STATE PUBLIC EMPLOYMENT
RELATIONS BOARD et al.,

                  Defendants,

           -and-

AMAZON LABOR UNION NO. 1
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,

        Defendant-Intervenor.

------------------------------------

**MEMORANDUM & ORDER**
25-CV-5311(EK)(MMH)

ERIC KOMITEE, United States District Judge:

In September 2025, New York amended its State Employment Relations Act. *See* S. 8034-A, 2025-2026 Legis. Session (N.Y. 2025) (enacted). The amendment extended the state law's coverage to entities like the plaintiff — Amazon.com Services LLC — whose labor relations had previously been subject only to federal oversight. Amazon filed suit, arguing that the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, preempts the state's newly conferred oversight powers.

Ex. HH, p. 001

Amazon now seeks to enjoin any enforcement of the amendment.  For the following reasons, the motion for a preliminary injunction is granted.

## I.    Background

The Court draws the following facts from the complaint and the parties' declarations and exhibits.  *See Real Est. Bd. of N.Y., Inc. v. City of New York*, 786 F. Supp. 3d 788, 815 (S.D.N.Y. 2025) ("In deciding a motion for preliminary injunction, a court may consider the entire record . . . .").[1] All facts discussed herein are undisputed unless otherwise noted.  *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (party seeking preliminary injunction "is not entitled to have the court accept its untested representations as true if they are disputed").

## A.    The NLRA and SERA

The National Labor Relations Act ("NLRA") is "a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce."  *Nash v. Fla. Indus. Comm'n*, 389 U.S. 235, 238 (1967).  Specifically, the NLRA guarantees employees the right to self-organize, collectively bargain, engage in concerted activities, and refrain from all such activities.  29 U.S.C.

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2

§ 157.  The NLRA also prohibits both employers and labor organizations from engaging in unfair labor practices.  *Id.* § 158.  The National Labor Relations Board ("NLRB") has exclusive jurisdiction to administer the NLRA.  *See Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 291 (1986) (NLRA enforcement is "a role Congress reserved exclusively for the [NLRB].").

Historically, the New York State Employment Relations Act ("SERA") provided similar protections to laborers who were not covered by the NLRA — such as, agricultural workers and non-employee contractors.  Compl. ¶ 26, ECF No. 1.  And the State Public Employment Relations Board ("PERB") served as a state analogue to the NLRB.  *Id.* ¶ 27.  But SERA "expressly excluded from [the] PERB's jurisdiction employees covered by the NLRA." *Id.* ¶ 26; N.Y. Lab. Law § 715 (McKinney 1968) ("The provisions of this article shall not apply to: (1) employees . . . protected by the provisions of the [NLRA] . . . .").

**B.   The SERA Amendment**

On September 5, 2025, New York enacted the SERA Amendment, which eliminated SERA's exception for "employees . . . protected by the provisions of the [NLRA]."  Compl. ¶ 28; S. 8034-A (N.Y. 2025), ECF No. 1-1.[2]  Instead, SERA now

---

[2] Page numbers in citations to record documents other than briefs refer to ECF pagination.

3

Ex. HH, p. 003

presumptively applies to NLRA-covered employees.  The only exception it allows is for cases in which the NLRB "successfully asserts jurisdiction over any employer, employees, trades, or industries pursuant to an order by the federal district court." *Id.*  Upon signing the bill into law, Governor Hochul explained that — in her view — "the Trump administration has failed to prioritize a strong [NLRB]"; PERB Chair Connick (a defendant here) added that the "PERB stands ready to fill the void."  *Id.* ¶ 28 n.2 (citing Press Release, Office of the Governor (Sep. 6, 2025).[3]

As a result of the SERA Amendment, parallel provisions of SERA and the NLRA now apply to many of the same employees. *See id.* ¶ 32 (comparing SERA and NLRA definitions of "an unfair labor practice").  Amazon also contends, though the state disputes, that SERA and the NLRA "diverge[] in critical respects," meaning certain employers are subject to conflicting requirements.  *Compare id.* ¶¶ 37-42 (describing differences in the two statutes), *with* Defs.' PI Opp'n 20-22, ECF No. 30 (citing PERB case law interpreting SERA "consistently with the NLRA").

---

[3] Available at https://www.governor.ny.gov/news/governor-hochul-signs-legislation-strengthen-and-expand-worker-and-labor-protections (last accessed November 25, 2025).

**C.    The JFK8 Charge**

On September 15, the Amazon Labor Union No. 1 International Brotherhood of Teamsters ("ALU") filed a charge with the PERB alleging unfair labor practices at Amazon's JFK8 fulfillment center on Staten Island (the "JFK8 Charge").  ECF No. 1-2.  Specifically, the ALU alleges that its vice president, Brima Sylla, was pretextually disciplined for "low productivity" and ultimately fired, all in retaliation for his union activities.  *Id.* at 8-9.  The PERB served the JFK8 Charge on Amazon on September 17 and issued a notice of conference for October 13.  La Rocca Decl. ¶ 5, ECF No. 14-2; Notice of Conference, ECF No. 1-3.  At the time the ALU filed the JFK8 Charge, substantially similar charges were already pending before the NLRB.  Compl. ¶¶ 48-49.

**D.    The Instant Action**

Following receipt of the JFK8 Charge, Amazon filed this action.  The company alleges that the SERA Amendment is (1) facially unconstitutional because it is preempted by the NLRA as determined in the Supreme Court's decisions in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) and *Lodge 76, International Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976); (2) unconstitutional as applied to Amazon under *Garmon*; and (3) facially unconstitutional because it violates

5

the Due Process Clause's fair-notice requirement.  Compl. ¶¶ 55-82.

On September 23, Amazon filed a motion for a temporary restraining order ("TRO") and eventual preliminary injunction, which would enjoin Defendants from enforcing SERA against employers or employees covered by the NLRA.[4]  ECF No. 14.  The Honorable Orelia E. Merchant, acting as the Miscellaneous Duty Judge, denied Amazon's motion for a TRO the same day.[5]  ECF No. 17.  However, in a parallel action pending in Albany, New York, the Honorable Glenn T. Suddaby granted an administrative stay of any matters brought before the PERB that may implicate the NLRB's jurisdiction, pending resolution of a motion for a preliminary injunction in that case.  Order, *NLRB v. State of New York*, No. 25-CV-1283 (N.D.N.Y. Sep. 26, 2025), Dkt. No. 16.

The ALU then moved to intervene, ECF No. 26, and the Court granted that motion.  *See* Order Granting ALU's Motion to Intervene, Docket Order dated Oct. 22, 2025.

## II.  Motion for a Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits; (2) a

---

[4] Amazon's proposed order, ECF No. 14, also requests that the Court "declar[e]" the SERA Amendment unconstitutional.  But Amazon has since made clear that it is not seeking "a preliminary declaratory judgment."  Amazon's Suppl. Letter-Br. 6, ECF No. 47.
[5] Judge Merchant concluded that Amazon had not met the "stringent" requirements for an *ex parte* TRO.  ECF No. 17, at 2.

6

likelihood of irreparable harm absent relief; (3) that the balance of equities supports an injunction; and (4) that the public interest favors an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is a party to a lawsuit, the final two factors merge. *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020).

## A.    Amazon Is Likely to Succeed on the Merits of its Preemption Claim

The Supremacy Clause establishes that federal law is the "supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "This means that when federal and state law conflict, federal law prevails and state law is preempted." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). Here, Amazon has established that the SERA Amendment is likely preempted by the NLRA, as determined in *Garmon* and its progeny.

In *Garmon*, the Supreme Court held that "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB]." 359 U.S. at 245. This rule "prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own *regulatory or judicial*

7

*remedies* for conduct prohibited or arguably prohibited by the Act." *Gould*, 475 U.S. at 286 (emphasis added).

In *Garmon*, Justice Frankfurter justified the broad preemption in this arena:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

*Garmon*, 359 U.S. at 244.

Here, no party disputes that SERA, as amended, covers activity that is also subject to Sections 7 and 8 of the NLRA. Instead, the state argues that "historically unique circumstances justify exceptions to *Garmon* preemption here." Defs.' PI Opp'n 11. It points to two circumstances in particular: the current lack of a quorum at the NLRB and the perceived threat to the board members' for-cause removal protection.

The obvious problem is that the Supreme Court's clear pronouncements include no "unique circumstances" exception. And lower courts "cannot and will not invent an exception to Supreme Court doctrine." *U.S. ex rel. Best v. Barbarotta*, No. 12-CV-

8

6218, 2013 WL 308972, at *2 (E.D.N.Y. Jan. 25, 2013).[6]  Moreover, even if we could, the "circumstances" the state points to here have not (yet) come to fruition.

     ***First,*** the reasoning of *Garmon* itself precludes reliance on the NLRB's loss of a quorum.  That case highlighted the need for exclusive federal *procedures* as well as the exclusive application of federal substantive law.  The Court invoked Congress's creation of "a centralized administrative agency" — the NLRB — "armed with its own procedures," 359 U.S. at 242; *see also id.* at 242-43 ("Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures . . . .").

     The quorum requirement is precisely one such procedure.  And when Congress mandated a quorum, it obviously envisioned the possibility that the NLRB might lack one from time to time, thus inhibiting action.[7]  In this instance,

---

[6] Two Justices have expressed some interest in curtailing *Garmon*'s reach.  *See Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 785 (2023) (Thomas & Gorsuch, JJ., concurring in the judgment). Still, district courts are bound to follow *Garmon* "[u]ntil and unless the Supreme Court itself overrules or limits" it.  *Perez v. Greiner*, 296 F.3d 123, 125 n.4 (2d Cir. 2002).

[7] At a more general level, *Garmon* makes clear that even the NLRB's explicit refusal to act — with or without a quorum — is not a basis for the state to exercise power.  In *Garmon* itself, the NLRB "had declined to exercise its jurisdiction," and yet the state courts of California were still precluded from acting.  359 U.S. at 238.  This observation may be complicated

9

moreover, the state has provided no basis to conclude that the lack of a quorum will endure indefinitely. *See, e.g.*, Daniel Wiessner, *US Senate Panel Approves Two Trump NLRB Nominees, Tables a Third*," Reuters (Oct. 9, 2025).[8]

**Second,** while the Supreme Court's recent decision in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), may indicate that for-cause removal protections' days are numbered, the Supreme Court has repeatedly cautioned that lower courts should respect its "prerogative of overruling its own decisions." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023).[9]

The state and the ALU make two further arguments that merit only passing discussion. **First**, the state contends that Amazon should be judicially estopped from relying on *Garmon* because Amazon previously won an administrative stay of certain NLRB proceedings in the Fifth Circuit on a finding that the agency's exercise of jurisdiction was likely unconstitutional.

---

— slightly — by a later amendment to the NLRA: in 1959, Congress amended the statute to permit states to assume jurisdiction over labor disputes when the NLRB "by rule of decision or by published rules" declines jurisdiction because "the effect of such labor dispute on commerce is not sufficiently substantial." 29 U.S.C. § 164(c)(1) (1959). There has been no such declination here, notwithstanding the State's argument to the contrary. Defs.' Suppl. Letter-Br. 2-3. In point of fact, the NLRB has affirmatively sought to *protect* its jurisdiction from the PERB. *See generally NLRB v. State of New York*, No. 25-CV-1283 (N.D.N.Y. Sep. 26, 2025) (challenging the SERA Amendment).

[8] Available at https://www.reuters.com/legal/government/us-senate-panel-approves-two-trump-nlrb-nominees-tables-third-2025-10-09 (last accessed Nov. 25, 2025).

[9] The Fifth Circuit's issuance of a preliminary injunction finding that removal protections for NLRB members and ALJs are likely unconstitutional, *see* Defs.' PI Opp'n 15, is even less predictive, and certainly has not "ended the uniform administration of the NLRA." *Id.*

Ex. HH, p. 010

*See* Defs.' PI Opp'n 17-19.  But judicial estoppel only applies when, among other things, there exists "a true inconsistency between the statements in the two proceedings."  *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72-73 (2d Cir. 1997).  In the prior action, Amazon argued that NLRB members are unconstitutionally insulated from removal.  *See* Ex. E – W.D. Tex. / 5th Cir. Filings and Orders 30, ECF No. 30-6.  Here, Amazon argues that the SERA Amendment is preempted by the NLRA.  The two positions are not in direct contradiction.

**Second**, the ALU asserts that "permitting *Garmon* preemption when the [NLRB] cannot meaningfully regulate runs afoul of modern-day 10th Amendment doctrine under *Murphy v. Nat'l Collegiate Athletic Ass'n*."  Proposed Br. of Proposed Intervenor ALU in Opp'n to Prelim. Inj. 2 ("ALU PI Opp'n"),  ECF No. 31-1.  *Murphy* is inapposite.  The law at issue in that case could not be understood "as anything other than a direct command to the States," meaning it was not a valid form of preemption. 584 U.S. at 479-80.  No such command exists here.

Because the Court finds that Amazon is likely to succeed on its claim that the SERA Amendment is preempted under *Garmon*, we need not reach Amazon's *Machinists* and void-for-vagueness arguments.  *See Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 467 U.S. 138, 157 (1984) ("It is a fundamental rule of judicial restraint . . . that this

Court will not reach constitutional questions in advance of the necessity of deciding them.").[10]

## B. Amazon Is Likely to Suffer Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Irreparable harm is "a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam). "The standard for preliminary injunctive relief requires a *threat* of irreparable harm, not that irreparable harm already have occurred," *see Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) — although such threat must be "actual and imminent," not "remote" or "speculative." *Wabtec*, 559 F.3d at 118.

Amazon has established that it is likely to suffer irreparable harm absent injunctive relief enjoining Defendants' enforcement of the SERA Amendment. "In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Gallagher v. N.Y. State Bd. of*

---

[10] The Court also need not "separately address [Amazon's] as-applied claim[]" because the parties seem to agree, at least implicitly, that it is "better read as [a] facial objection[.]" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 155 n.3 (2014); *see* Defs.' PI Opp'n (declining to specifically address Amazon's as-applied challenge).

12

*Elections*, 477 F. Supp. 3d 19, 41 (S.D.N.Y. 2020) (collecting cases). And it is undisputed that Amazon is subject to the allegedly unconstitutional law at issue here, even if *enforcement* is currently stayed. Moreover, were proceedings related to the JFK8 claims to advance in parallel before the PERB and the NLRB, Amazon could be exposed to "the specter of inconsistent rulings." Pl.'s PI Br. 8, ECF No. 14-1. "Courts in the Second Circuit have routinely found," albeit in slightly different contexts, that "the risk of inconsistent judgments . . . constitutes irreparable harm." *Gov't Emps. Ins. Co. v. Q Pharmacy RX, Inc.*, No. 23-CV-9085, 2024 WL 3823491, at *2 (E.D.N.Y. Aug. 15, 2024) (collecting cases).

The state responds that "in the earlier-filed *NLRB v. State of New York et al.*, No. 25 Civ. 01283 (N.D.N.Y.), [the] PERB . . . agreed to hold in abeyance any matters . . . that may implicate the NLRB's jurisdiction until a decision is rendered . . . on the NLRB's preliminary injunction motion." Defs.' PI Opp'n 24. Because this administrative stay "effectively grants Amazon's requested relief until at least December 2025," *id.*, the state argues that Amazon is not facing imminent harm. In other words, the state effectively claims that Amazon's motion is moot.

But a temporary stay pending decision on a motion for a preliminary injunction is not interchangeable with the relief

13

Ex. HH, p. 013

sought here, i.e., a preliminary injunction. *Cf. People v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987) (affirming dismissal of request for injunction where a state court had already granted plaintiffs "*all* of the injunctive relief requested in the present case" (emphasis added)). Moreover, the state's attempt to avoid a preliminary injunction based on a stay it voluntarily stipulated to also calls to mind the principle that "voluntary cessation of allegedly illegal conduct does not make a case moot." *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006). As Amazon notes, "courts routinely reject such attempts to toggle enforcement on and off." Pl.'s Reply Br. 10, ECF No. 37 (citing *Metro. Transp. Auth. v. Duffy*, 784 F. Supp. 3d 624, 695 (S.D.N.Y. 2025)). Accordingly, Amazon has sufficiently established a likelihood of irreparable harm.

## C. The Balance of the Equities Weighs in Amazon's Favor

When the government is a party, the balance-of-equities and public-interest factors merge. *New York*, 969 F.3d at 58-59. Defendants assert two interests that weigh against granting a preliminary injunction: (1) it "would deprive New Yorkers of any forum to assert their collective bargaining rights during the pendency of this entire lawsuit"; and (2) Defendants have sought discovery about the "extent of [the

14

NLRB's] functioning."  Defs.' PI Opp'n 24-25.[11]  But these asserted interests merely rehash the state's merits arguments, which the Court rejected above.  *See* Section II.A, *supra*.

Furthermore, while "the [s]tate has an interest in administering its laws without interference by federal equitable power, that interest is diminished when the laws at issue likely impinge a federal constitutional right. . . . [And] the public interest is well served by the correction of this constitutional harm."  *A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021).  The balance of the equities therefore favors relief.

## D.  No Bond Is Required

Under Federal Rule of Civil Procedure 65, a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c). While Rule 65(c)'s bond requirement appears mandatory on its face, the Second Circuit has held that district courts have "wide discretion to set the amount of a bond, and even to dispense with the bond requirement," such as "where there has

---

[11] Defendants also argue that "Amazon's inequitable litigation conduct establishing judicial estoppel . . . tips the balance of the equities against Amazon."  Defs.' PI Opp'n 25.  But the Court rejected Defendants' judicial estoppel argument in Section II.A, *supra*.

15

been no proof of likelihood of harm." *Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997).

Here, the state does not allege that Defendants — the only parties who would be enjoined or restrained — would suffer financial harm from a wrongful injunction.[12]  Indeed, the state has not requested that Amazon post bond.  Accordingly, no bond will be imposed at this time.  *See Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 143 (2d Cir. 2023) ("[W]here the party opposing an injunction does not request security, the district court does not err in failing to order it.").

### III. Conclusion

For the foregoing reasons, Amazon's request for preliminary injunctive relief is granted.  Defendants are hereby enjoined from enforcing the SERA Amendment.

SO ORDERED.

_/s/ Eric Komitee_
ERIC KOMITEE
United States District Judge

Dated:     November 26, 2025
           Brooklyn, New York

---

[12] While Defendant-Intervenor ALU argues that it would be collaterally harmed by an injunction, ALU's PI Opp'n 25, it does not contend that it would be *subject* to the injunction.  *See* Fed. R. Civ. P. 65(c) (referring to harm to "any party *found to have been wrongfully enjoined or restrained*" (emphasis added)).

16

# EXHIBIT II

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, | No. 2:25-cv-02979-TLN-CKD |
| Plaintiff, | |
| v. | **ORDER** |
| STATE OF CALIFORNIA and the PUBLIC EMPLOYMENT RELATIONS BOARD, | |
| Defendants, | |
| and | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | |
| Intervenor. | |

This matter is before the Court on Plaintiff National Labor Relations Board's ("Plaintiff" or "NLRB") Motion for Preliminary Injunction. (ECF No. 10.) Plaintiff requests the Court enjoin Defendants State of California ("State") and Public Employment Relations Board ("PERB") (collectively, "Defendants") from enforcing § 2 of California Assembly Bill 288 (A.B. 288, 2025–26 Cal. Leg., Reg. Sess. (2025) ("A.B. 288")). Defendants and Intervenor International Brotherhood of Teamsters ("Intervenor" or "Teamsters") filed oppositions. (ECF

1

Nos. 16, 17.)  Plaintiff filed a reply.  (ECF No. 23.)  For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

A.B. 288, signed into law by California Governor Gavin Newsom on September 30, 2025, amends the California Labor Code to allow California private sector workers covered by the National Labor Relations Act ("NLRA") to bring labor disputes to PERB under certain enumerated circumstances.  Cal. Lab. Code § 923.1(b)(1).[1]  To understand A.B. 288, the Court first begins with a brief overview of the NLRA, NLRB, and PERB, before examining the law's text.

### A.    The NLRA and NLRB

The NLRA establishes a regulatory scheme governing labor relations between workers, unions, and employers.  29 U.S.C. §§ 151–169.  This scheme not only sets forth "conduct that Congress has deemed protected (§ 7) and prohibited (§ 8)," *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 792 (2023) (Jackson, J., dissenting) (referencing 29 U.S.C. §§ 157, 158), but also "confide[s] primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribe[s] a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order," *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776 (A. F. L.)*, 346 U.S. 485, 490 (1953).  This tribunal is the NLRB.  29 U.S.C. §§ 153–156.

The substantive provisions of the NLRA relevant to the instant case are § 7 and § 8.  Section 7 establishes workers' "right to self-organize, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining . . . [and] to refrain from any or all of such activities[.]"  *Id.* § 157.  Section 8 provides a list of "unfair labor practices" ("ULPs") that employers and unions are prohibited from engaging in, such as interfering with employees'

---

[1]    Because A.B. 288 does not go into effect until January 1, 2026, § 923.1 has not yet been codified in the California Labor Code.  Citations to California Labor Code § 923.1 and its subsections thus refer to the text of A.B. 288.

exercise of their collective bargaining rights. *Id.* § 158.

The NLRB is the agency responsible for administering the NLRA. The NLRB consists of a five-member Board[2] whose members are appointed by the President with the advice and consent of the Senate. *Id.* § 153(a). Members' duties include adjudicating and issuing decisions on ULP charges, petitioning courts to enforce orders, and conducting and certifying the outcome of representation elections. *Id.* §§ 159, 160(c), 160(e). The Board must have a quorum of at least three sitting members to execute its statutory functions. *Id.* § 153(b). Members can be removed for "neglect of duty or malfeasance in office, but for no other cause." *Id.* § 153(a).

In the absence of a quorum, the NLRB continues to function "to the greatest extent permitted by law." 29 C.F.R. §§ 102.178, 102.182. The NLRB's ability to do so is due in part to the Board's ability to delegate some, though not all, of its duties to the NLRB's General Counsel, Regional Directors, and Administrative Law Judges ("ALJs"). *See* 29 U.S.C. §§ 153(b), 154(a); Order Contingently Delegating Authority to the General Counsel, 76 Fed. Reg. 69768 (Nov. 9, 2011). Under delegated authority, regional directors are authorized to carry out the Board's representation duties (29 U.S.C. § 153(b)), and regional offices receive and investigate ULP charges and representation petitions, conduct investigations and hearings, manage elections, certify election results, and make findings and issue rulings on objections and challenged ballots (29 C.F.R. §§ 102.60–102.70; ECF No. 10-2 ¶¶ 4–9). However, in the absence of a quorum, duties exclusive to the Board must necessarily halt. *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688 (2010) ("Congress' decision to . . . provide for a Board quorum of three[] must be given practical effect rather than swept aside in the face of admittedly difficult circumstances.") Without a quorum, the Board cannot issue decisions and final orders adjudicating ULP cases or rule on requests for review of Regional Directors' decisions in representation proceedings. *Id.* at 677; 29 C.F.R. § 102.182. Another result of a loss of quorum is if after an ALJ renders a decision on a ULP charge and a party files an exception, the ALJ's decision can have no legal effect until the Board adopts that decision. 29 C.F.R. § 102.48(b).

---

[2] The Court uses "NLRB" to refer to the agency as a whole, and "Board" to refer to the five-member board.

3

#### B.    The NLRB's Current Challenges

In adopting A.B. 288, the California State Legislature made the following findings and declarations about the current state of the NLRB:

> Over the past several decades, the NLRB has become less effective at protecting and enforcing workers' rights, due to a variety of factors such as completely inadequate funding, understaffing, a narrowing of the types of workers who can invoke the protections of the NLRA, a narrowing of the scope of protected concerted activity, and its enforcement mechanisms are further threatened with the loss of decision [] making due to a lack of a quorum [and] with its administrative proceedings being enjoined through challenges to its constitutionality and its independence.

A.B. 288 § 1(d).  These findings identify the primary issues raised in this case: (1) the Board's loss of quorum; (2) the Board's loss of independence; (3) constitutional challenges enjoining the NLRB; and (4) delayed administration of NLRA processes.  The Court briefly summarizes these concerns.

The NLRB has been without a quorum for nearly eleven months.  (ECF No. 17 at 11.)  On January 27, 2025, President Donald J. Trump terminated Member Gwynne A. Wilcox from her position on the Board.  *Wilcox v. Trump*, 775 F. Supp. 3d 215, 222 (D.D.C. 2025), *rev'd sub nom. Harris v. Bessent*, No. 25-5037, 2025 WL 3496737 (D.C. Cir. Dec. 5, 2025).  Wilcox's removal reduced the number of sitting Board Members to two, rendering the Board without a quorum.  *Id.*  On August 27, 2025, then-Chairman Marvin Kaplan's term expired, leaving the Board with one member.  (ECF No. 10-1 at 11.)

Though Wilcox's termination is subject to ongoing litigation, on December 4, 2025, the D.C. Circuit Court of Appeals held her removal was permissible and the NLRA's statutory limitations on removing Board members violates executive authority.  *Harris*, 2025 WL 3496737, at *13.  This decision and the circumstances surrounding Wilcox's removal have raised concerns not only about the NLRB's ability to meet its statutory functions, but also about the NLRB's independence.  (*See* ECF No. 16 at 10–11.)

On the issue of legal challenges leading to enjoinment, numerous cases have been filed in recent years seeking to enjoin the NLRB's proceedings on constitutional grounds.  *YAPP USA Auto. Sys., Inc. v. NLRB*, 748 F. Supp. 3d 497, 502 n.1 (E.D. Mich. 2024), *appeal dismissed*, No.

4

24-1754, 2025 WL 2606098 (6th Cir. Aug. 4, 2025) (collecting cases).  Though results are mixed as to the merit of the constitutional challenges and the courts' ability to enjoin the NLRB, some courts have issued injunctions halting NLRB proceedings.  *Compare Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 780 (5th Cir. 2025) (affirming injunctions halting NLRB proceedings because "forcing the Employers to appear before an unconstitutionally structured agency inflicts irreparable harm"), *with Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, 160 F.4th 380, 386–89 (3d Cir. 2025) (disagreeing with *Space Expl. Techs. Corp.* and finding the district court did not have authority to issue an injunction against the NLRB).

On the final issue of processing delays, the Teamsters submit multiple declarations documenting the NLRB's delay in resolving ULP charges and representation proceedings.  (ECF Nos. 16-1–16-7.)  Several declarations describe ULP charges pending several years after filing. (ECF Nos. 16-1–16-6.)  The declarations describe how the NLRB's delay has caused significant harm to workers seeking to vindicate their rights and access the protections of the NLRA.  (ECF Nos. 16-1–16-7.)  As one worker recounts:

> After I was forced to leave my job . . . due to the retaliation against me, I was unable to find work for about six months after my termination.  The sudden loss of my job created a lot of stress and financial strain for myself and my family. [¶] Due to the lack of resolution and long delay in my termination ULP case, I have lost confidence in the NLRB's ability to protect my rights.

(ECF No. 16-5 ¶¶ 9–10.)  A union organizer explains how employers take advantage of delay:

> Without an effective NLRB, employers [ ] can interfere in nascent organizing campaigns with the belief that it will take years before the NLRB takes action, making it easier for ULPs to come to fruition and destroy organizing drives before employees obtain the improvements they deserve.

(ECF No. 16-2 ¶ 33.)  Another worker explains:

> Filing ULPs has shown me that the NLRB and the ULP process are both unreliable as a support to ensure that there is a check and balance to hold [employers] accountable for their continued violations.  If I were to get another private sector union job, I would never utilize the ULP process or depend on the NLRB for relief because I have seen firsthand how the NLRB let down our unit when our rights were violated.

(ECF No. 16-6 ¶ 19.)

5

C.    PERB

PERB is "an expert, quasi-judicial administrative agency modeled after the [NLRB]" tasked with adjudicating unfair labor practice charges under California state laws governing relations between public employers and employees. *Coachella Valley Mosquito & Vector Control Dist. v. California Pub. Emp. Rels. Bd.*, 35 Cal. 4th 1072, 1084–86 (2005). Like the NLRB, PERB is authorized to administer union representation proceedings, process unfair labor practice charges pursuant to the statutes it administers, and bring enforcement actions in courts of competent jurisdiction. *See* Cal. Gov't Code § 3541.3(a)–(c), (i)–(j). PERB also has a General Counsel and a five-member board whose members are appointed by the Governor with the advice and consent of the State Senate. *Id.* § 3541(a); 8 Cal. Code Regs. § 32980(a). PERB members can be removed "for neglect of duty or malfeasance in office, but for no other cause." Cal. Gov't Code § 3541(a).

Although initially created in 1975 to govern labor relations of public school employees, PERB's jurisdiction has expanded to cover additional categories of public employees, including those employed by the state university system, state trial courts, and the Los Angeles County Metropolitan Transit Authority. *Coachella Valley*, 35 Cal. 4th at 1084–86. PERB will also have jurisdiction over transportation network company drivers beginning January 1, 2026. *See* A.B. 1340, 2025–26 Cal. Leg., Reg. Sess. (2025).

D.    A.B. 288

Section 2 of A.B. 288 allows workers and their chosen representatives to petition PERB to "vindicate their fundamental rights to full freedom of association, self-organization, and designation of representatives of their own choosing, free from retaliation or intimidation by their employer," under two circumstances:

> (A) The worker is employed in a position that is, or would have been, subject to the [NLRA] as of January 1, 2025, but they lose coverage under the [NLRA] because the [NLRA] is repealed, narrowed, or its enforcement [is] **enjoined** in a case involving that worker . . . [or]
>
> (B) The worker is employed in a position which is or would be subject to the [NLRA] as of January 1, 2025, but the [NLRB] has **expressly or impliedly ceded jurisdiction**.

Cal. Lab. Code §§ 923.1(a)(1), (b)(1)–(b)(1)(B), (c) (emphasis added).  Under the second circumstance, subparagraph (B), the NLRB "will be deemed to have ceded jurisdiction to the states" if any of the following scenarios occur as of January 1, 2026:

> (i) For cases where a certification of the results of an election, including a certification of representative, or [ALJ] decision has been issued, or where challenges or objections to a representation election are pending before the [NLRB], when there is a **lack of a quorum** of the [NLRB], or when the [NLRB] has **lost its independence** as a result of the Supreme Court finding that [NLRB] members are unconstitutionally protected from removal or when the continued processing of a case is **enjoined** by a court due to constitutional challenges to the board's structure or authority,

> (ii) For cases where no certification or complaint or decision has been issued, when there are **processing delays** resulting in the worker's case remaining pending before a regional director for more than six months without the issuance of a complaint or certification of an election, or remaining pending more than six months after a complaint has been issued without the issuance of a decision by an [ALJ] or without the issuance of a decision about the certification by the [NLRB].

> (iii) For cases where a certification of the results of an election, including a certification of representative, or other reviewable order has been issued by the regional director or [ALJ], when there are **processing delays** resulting in failure by the [NLRB] to accept or decline review or grant special permission to appeal for more than six months following the filing of a request for review or for special permission to appeal.

> (iv) For cases on review or exceptions before the [NLRB], when there are **processing delays** resulting in the case remaining pending for more than 12 months without the issuance of a final decision.

*Id.* §§ 923.1(b)(1)(B)(i)–(iv) (emphasis added).  Viewed together, these scenarios arise upon four conditions, or as the State refers to them, "triggers": (1) loss of quorum; (2) loss of independence; (3) enjoinment; and (4) processing delays.  (ECF No. 17 at 19–23.)

If PERB "determines that the conditions described in subparagraph (A) or (B) of paragraph (1) no longer apply, [PERB] shall retain jurisdiction over pending matters and shall maintain jurisdiction from that point forward unless ordered by a court of competent jurisdiction to cede its jurisdiction."  Cal. Lab. Code § 923.1(b)(2).  PERB "may follow applicable precedents of the [NLRA], as amended, which shall constitute persuasive authority," but is not obligated to.  A.B. 288 § 5.  A.B. 288 contains a severability clause if any provision is held invalid.  *Id.* § 6.

7

E.    Procedural History

Plaintiff, the NLRB, filed the instant action on October 15, 2025, seeking declaratory and injunctive relief to prevent enforcement of § 2 of A.B. 288.[3] (ECF No. 1.) NLRB's single claim for relief alleges A.B. 288 is preempted by the NLRA under the Supremacy Clause and unlawfully usurps the NLRB's authority by attempting to regulate areas explicitly reserved for federal oversight, creating a parallel regulatory framework that conflicts with the NLRA. (*Id.* at 9–10.) On November 12, 2025, the Court granted the Teamsters' request to intervene. (ECF No. 6.) Presently before the Court is Plaintiff's Motion for a Preliminary Injunction seeking to enjoin enforcement of A.B. 288, which would otherwise take effect on January 1, 2026. (ECF No. 10.)

II.    STANDARD OF LAW

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy'") (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F. 2d 804, 809 (9th Cir. 1963)).

For a preliminary injunction to issue, Plaintiff must establish "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Plaintiff must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). However, the Court may weigh Plaintiff's showing on each of the *Winter* factors using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where there are serious questions on the merits "so long as the

---

[3]    Unless otherwise noted, the Court's use of "A.B. 288" herein refers to § 2.

plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Plaintiff's favor in order to obtain preliminary relief. *Id.* at 1134–35.

### III. ANALYSIS

The NLRB argues it is likely to prevail in showing the NLRA preempts A.B. 288, the NLRB will suffer irreparable harm absent a preliminary injunction, a preliminary injunction is in the public interest, and the harm to the State and PERB will be slight compared to the significant harm to the NLRA and NLRB if A.B. 288 is allowed to go into effect. (ECF No. 10-1 at 15–25.) The Court considers each of these arguments in turn.

### A. Likelihood of Success on the Merits

The NLRB argues it is likely to prevail on the merits of its preemption claim under *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959), because A.B. 288 gives PERB authority to regulate activity the NLRA already "protects, prohibits, or arguably protects or prohibits." (ECF No. 10-1 at 15–17.) The NLRB also disputes what the law considers to be a cessation of jurisdiction. (*Id.* at 19–21.)

In opposition, the State and the Teamsters argue A.B. 288 is not preempted under *Garmon* because Congress's intent for the NLRA to preempt state law was premised on the NLRB being fully functioning and independent. (ECF No. 16 at 12–20; ECF No. 17 at 15–18.) The State and the Teamsters argue A.B. 288 does not infringe on the NLRB's jurisdiction because A.B. 288 only permits workers to bring claims to PERB where the NLRA does not apply or the NLRB is not fulfilling its role in the statutory scheme (*i.e.*, where the aforementioned triggers apply — loss of quorum, loss of independence, enjoinment, and processing delays). (ECF No. 16 at 20; ECF No. 17 at 19–23.)[4]

---

[4] The parties raise several additional arguments. The NLRB also claims A.B. 288 is preempted because it stands as an obstacle to the enforcement of federal labor law and the Board has neither ceded nor declined jurisdiction over private sector labor relations. (ECF No. 10-1 at 17–21.) The State argues A.B. 288 is not preempted because it advances the NLRA's goal of protecting workers and *Amazon.com Services LLC v. New York State Public Employment Relations Board*, No. 1:25-CV-5311 (E.D.N.Y. Nov. 26, 2025), which enjoined a similar New

9

"Although the NLRA itself contains no express pre-emption provision, [the Supreme Court has] held that Congress implicitly mandated two types of pre-emption as necessary to implement federal labor policy." *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008).  Of these two types, only one — *Garmon* preemption — is relevant here.  *See id.* (comparing the other type of preemption under *Machinists v. Wisconsin Emp. Rels. Comm'n*, 427 U.S. 132, 140 (1976), which prohibits the NLRB and states from regulating conduct that Congress intended be left unregulated and "controlled by the free play of economic forces.").

The "general rule set forth in [*Garmon* is] that States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286 (1986).  "Because 'conflict is imminent' whenever 'two separate remedies are brought to bear on the same activity,' . . . the *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the act." *Id.* (quoting *Garner*, 346 U.S. at 498–99.) This principle "is intended to preclude state interference with the [NLRB's] interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA." *Brown*, 554 U.S. at 65 (quoting *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613 (1986)).

Because "[a] claim of *Garmon* pre-emption is a claim that the state [ ] has no power to adjudicate the subject matter of the case," the typical *Garmon* preemption inquiry asks "whether the conduct at issue [is] arguably protected or prohibited by the NLRA." *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 393–94 (1986).  However, the Supreme Court has cautioned that an "inflexible application of the [*Garmon*] doctrine is to be avoided," and has itself "refused to apply the *Garmon* guidelines in a literal, mechanical fashion." *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 188 (1978) ("*Sears*") (quoting

---

York state law, is distinguishable.  (ECF No. 17 at 23–25.)  The Teamsters argue the same and add that *Garmon* was wrongly decided, A.B. 288 is compatible with the NLRA, the NLRA does not exclude state regulation, and preemption contravenes the 10th Amendment.  (ECF No. 16 at 21–27.)  Because the Court finds the present dispute can be resolved on *Garmon* preemption grounds, the Court will not reach the merits of the parties' alternative arguments.

*Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc. 25*, 430 U.S. 290, 302 (1977)). Instead, the Supreme Court has explained that a finding of preemption "'must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies' of permitting the state [ ] to proceed." *Id.* at 189 (quoting *Vaca v. Sipes*, 386 U.S. 171, 180 (1967)).

The NLRB urges this Court to conduct a straightforward application of *Garmon* to invalidate A.B. 288. However, this argument is predicated on an assumption that A.B. 288 creates a conflict of jurisdiction between PERB and the NLRB. The State and the Teamsters' approach on the other hand, is to avoid the preemption analysis altogether by framing A.B. 288 as granting PERB authority to operate only where the NLRB does not, thereby avoiding any conflict between the two agencies. The Court begins its analysis with this more fundamental question of conflict, followed by *Garmon* preemption.

i.    *Conflict with the NLRB*

"It is a bedrock rule, of course, that federal law preempts state law when the two conflict." *Glacier*, 598 U.S. at 776 (citing U.S. Const., Art. VI, cl. 2). The Court evaluates conflict here by analyzing each of the conditions, or "triggers," in A.B. 288 that the State and the Teamsters claim prevent PERB from infringing on the NLRB's authority.

a)    *Loss of Coverage, Enjoinment, and Express Cessation*

As an initial matter, the Court finds A.B. 288's provisions on loss of coverage in subparagraph (A), enjoinment in subparagraph (B)(i), and "expressly" ceding jurisdiction in subparagraph (B), prevent PERB from conflicting with the NLRB's enforcement authority and therefore are not preempted. Cal. Lab. Code §§ 923.1(b)(1)(A)–(B)(i).

The Court agrees with the State that subparagraph (A) avoids conflict because if a worker is no longer subject to the NLRA, the worker's conduct is neither protected nor prohibited by the NLRA. (ECF No. 17 at 19); *see Garner*, 346 U.S. at 488 ("[A]n instance of injurious conduct which the [NLRB] is without express power to prevent . . . therefore either is 'governable by the state or it is entirely ungoverned.'") In reply, the NLRB argues that states are preempted from regulating where the NLRA excludes a group of workers because Congress has chosen to

11

withhold certain rights from them, citing *Beasley v. Food Fair of N.C., Inc.*, 416 U.S. 653, 657–62 (1974) and *NLRB v. Comm. of Interns & Residents*, 566 F.2d 810, 813 (2d Cir. 1977)). (ECF No. 23 at 12–13.) But that is not what subparagraph (A) contemplates. Unlike in *Beasley* and *Comm. of Interns & Residents*, which concerned classes of workers covered by the NLRA but excluded from certain protections and collective bargaining rights, subparagraph (A) covers workers no longer subject to the NLRA at all. *Cf. Beasley*, 416 U.S. at 654–57; *Comm. of Interns & Residents*, 566 F.2d at 813. The Court thus finds subparagraph (A), which allows workers who lose coverage under the NLRA to petition PERB, presents no conflict.

For the same reason, the Court finds the enjoinment provision of subparagraph (B)(i) avoids conflict as well. If the NLRB is enjoined from processing a case, it has lost authority over that subject matter. With the NLRB no longer occupying that space, there is no entity with which PERB's exercise of jurisdiction will conflict. The Court thus finds the provision in subparagraph (B)(i) allowing workers to petition PERB "when the continued processing of a case is enjoined by a court due to constitutional challenges to the board's structure or authority," presents no conflict.

The NLRB does not challenge the "expressly . . . ceded jurisdiction" language of subparagraph (B). Cal. Lab. Code § 923.1(b)(1)(B). For purposes of completeness, the Court confirms this provision of subparagraph (B) avoids a conflict between PERB and the NLRB. *See* 29 U.S.C. §§ 160(a), 164(c).

In sum, the Court finds the following sections of A.B. 288 avoid conflict between PERB and the NLRB, and thus the NLRB has failed to demonstrate it is likely to succeed on the merits of its preemption claim with respect to these provisions: (1) loss of coverage under subparagraph (A); (2) enjoinment under subparagraph (B)(i); and (3) express cessation of jurisdiction under subparagraph (B).

### b) Implied Cessation of Jurisdiction

As previously described, subparagraph (B) deems the NLRB to have "impliedly ceded jurisdiction" upon the following conditions: (1) loss of quorum; (2) loss of independence; (3) enjoinment; and (4) processing delays. Cal. Lab. Code § 923.1(b)(1)(B)–(B)(iv). Having found the condition of enjoinment avoids a conflict between PERB and the NLRB, the Court now

12

considers whether the remaining conditions do as well.  The Court evaluates each one in turn.

Beginning with loss of quorum, the Court cannot conclude this condition avoids a conflict between PERB and the NLRB.  The NLRA itself anticipates periods where the Board lacks a quorum, and, as the State acknowledges, it has happened before.  29 U.S.C. 153(b) (discussing Board vacancies and quorum requirements); (ECF No. 17 at 11.)  Per regulation, the NLRB is required to continue functioning in such instance.  29 C.F.R. § 102.178.  And through delegation to the General Counsel, Regional Directors, Regional Offices, and ALJs, many of the Board's functions continue.  The Court however, acknowledges that there are some functions that cannot be executed in the absence of a quorum.  (*See* ECF No. 17 at 20.)  The Supreme Court acknowledged this as well in *New Process Steel*, where it prohibited the Board from taking certain actions absent a quorum but noted the Court "[is] not insensitive to the Board's understandable desire to keep its doors open despite vacancies."  50 U.S. at 688.  Nevertheless, the Supreme Court concluded the quorum requirement "must be given practical effect rather than swept aside in the face of admittedly difficult circumstances." *Id.*  The quorum requirement, and its consequences, is by design.  In some respect, the Board's inability to fully function due to the lack of quorum shows the NLRA is operating as intended.  The Court thus cannot conclude the loss of quorum equates to the NLRB ceding its jurisdiction over any particular matter.  Allowing PERB to operate under this condition would create a conflict.

Processing delays are similar.  Unlike other federal regulatory schemes, *see*, *e.g.*, *Californians for Renewable Energy v. United States Env't Prot. Agency*, No. C 15-3292 SBA, 2020 WL 13490288, at *1 (N.D. Cal. Sept. 30, 2020) (describing timelines for Environmental Protection Agency civil rights complaint investigations), the NLRA does not prescribe deadlines.  (*See* ECF No. 23 at 9.)  Investigating complaints, issuing decisions, and certifying elections take time and could suffer delay for myriad reasons outside the NLRB's control.  And though the Court agrees with the Teamsters declarants that delay causes tangible harm and undercuts the NLRB's ability to protect workers, time in and of itself does not prove the NLRB has given up its authority over a matter.  Like the issue of lack of quorum, delayed resolution by the NLRB is not new. *See Garmon*, 359 U.S. at 253 (Harlan, J. concurrence) ("Henceforth the States must

13

withhold access to their courts until the [NLRB] has determined that such unprotected conduct is not an [ULP], a course which, because of unavoidable Board delays, may render state redress ineffective."); *Garner*, 346 U.S. 487 (noting a state court judge "thought the federal remedy inadequate, as a practical matter, because the slow administrative process of the [NLRB] could not prevent imminent and irreparable damage to petitioners."). The Court cannot conclude that delay in and of itself constitutes a cessation of jurisdiction. Therefore, because the NLRB maintains its authority under this condition, allowing PERB to assume jurisdiction from processing delays would create a conflict.

Finally, as to loss of independence, the Court agrees generally with the proposition that Congress intended the NLRB to be independent. (*See* ECF No. 26-1 (Brief Amici Curiae of Labor Law Professors).) However, in light of the D.C. Court of Appeals' recent decision finding the President's removal of Board Member Wilcox permissible (*Harris*, 2025 WL 3496737, at *13), this Court is unable to say whether a "finding that [NLRB] members are unconstitutionally protected from removal" equates to a loss of independence (Cal. Lab. Code § 923.1(b)(1)(B)(i)).

But separate from the issue of what qualifies as independence lost, what the Court is ultimately unable to cosign is the notion that Congress's interest in the NLRB's independence when it enacted the NLRA was so strong that in its absence, Congress intended the NLRB be stripped of authority. While the Court finds the Fourth Circuit's discussion of an independent Merit System Protection Board in *Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 305–07 (4th Cir. 2025), to be compelling, there the court did not have to contend with the volume of binding case law interpreting Congress's intent in passing the NLRA — as this Court must:

> The enactment of the NLRA in 1935 marked a fundamental change in the Nation's labor policies. Congress expressly recognized that collective organization of segments of the labor force into bargaining units capable of exercising economic power comparable to that possessed by employers may produce benefits for the entire economy in the form of higher wages, job security, and improved working conditions. Congress decided that in the long run those benefits would outweigh the occasional costs of industrial strife associated with the organization of unions and the negotiation and enforcement of collective-bargaining agreements. . . . The Court promptly decided that the federal agency's power to implement the policies of the new legislation was exclusive and the States were without power to enforce overlapping rules.

14

*Sears*, 436 U.S. 190–91; *Garner*, 346 U.S. at 490 ("Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies."); *see also Guss v. Utah Lab. Rels. Bd.*, 353 U.S. 1, 10–11 (1957) ("Congress has expressed its judgment in favor of uniformity."); *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Loc. No. 427, AFL v. Fairlawn Meats, Inc.*, 353 U.S. 20, 24 (1957) ("Congress was specific in its requirement of uniformity.").

With this backdrop, the Court is unable to conclude that Congress's foremost interest in establishing the NLRB was anything other than that of uniformity and avoidance of inconsistency. Thus, while the Court agrees with the State and the Teamsters' argument that Congress intended the NLRB to be independent (ECF No. 16 at 15–16; ECF No. 17 at 22–23), the Court cannot follow their logic to the point of concluding this intent was so dominant as to nullify the Board if independence is lost. Therefore, even assuming A.B. 288 is correct that the NLRB's independence is lost if the Supreme Court finds Board Members are unconstitutionally protected from removal, were the situation to materialize the NLRB would nonetheless maintain its authority. Allowing PERB to assume jurisdiction under this condition would create a conflict.

For these reasons, the Court rejects the State and the Teamsters argument that the NLRB can be deemed to have impliedly ceded jurisdiction under the three aforementioned conditions of subparagraph (B). These conditions do not avoid conflict and do not protect A.B. 288 from preemption.

### ii. *Garmon Preemption*

Having found A.B. 288 does not avoid a conflict of authority between PERB and the NLRB by the implied cessation provisions in subparagraph (B), the Court now considers whether the law allowing workers to petition PERB under these circumstances is preempted. Applying *Garmon*, the answer is yes.

As explained above, the *Garmon* doctrine asks "whether the conduct at issue [is] arguably protected or prohibited by the NLRA." *Int'l Longshoremen's Ass'n*, 476 U.S. at 394. Here, there

15

is no dispute that workers authorized to petition PERB under the subparagraph (B) conditions,[5] and the bases for which they may petition, are subject to the NLRA.  Therefore, because the law would allow PERB to assume jurisdiction over conduct subject to the NLRA, these provisions of A.B. 288 are preempted.

The more flexible application of *Garmon* described in *Sears* reaches the same outcome. *Sears*, 436 U.S. at 189 (preemption depends on "the nature of the particular interests being asserted and the effect upon the administration of national labor policies").  To examine A.B. 288's effect upon the administration of national labor policies, the Court need not look beyond its text.  A.B. 288 provides that if any of the conditions in subparagraph (B) no longer apply, PERB shall retain jurisdiction over the matter until ordered by a court to cede its jurisdiction.  Cal. Lab. Code § 923.1(b)(2).  But if a condition is no longer met, be that by confirmation of new Board Members or action in a delayed case, there is no legitimate dispute that the matter belongs to the NLRB.  Not only that, but A.B. 288 specifies that PERB is not obligated to follow NLRA precedent.  A.B. 288 § 5.  Together, these clauses position PERB to stand in the way of the NLRB's ability to process a matter over which it has jurisdiction and disregard NLRB's interpretation of the NLRA while doing so.  Therefore, regardless of any asserted interest, A.B. 288's effect interrupts the NLRB's administration of the NLRA and so must be preempted.

For these reasons, the Court finds the implied cessation conditions of subparagraph (B) discussed above — loss of quorum, loss of independence, and processing delays — create a conflict between PERB and the NLRB, give PERB authority over conduct subject to the NLRA, and allow PERB to stand in the way of the NLRB's administration of the NLRA.  The NLRB therefore has demonstrated it is likely to succeed on the merits of its preemption claim with respect to these provisions.

### B.    Irreparable Harm

On the second *Winter* factor of irreparable harm, the NLRB argues it will suffer irreparable harm because A.B. 288 directly threatens its exclusive jurisdiction.  (ECF No. 10-1 at

---

[5]    Unless otherwise noted, the subparagraph (B) conditions discussed in the remainder of this opinion refer only to the loss of quorum, loss of independence, and processing delays.

16

21.)  The NLRB further claims that A.B. 288's implementation will lead to inconsistent rulings and damage the NLRB's ability to set and maintain national labor policy.  (*Id.* at 21–24.)  In opposition, the State and the Teamsters argue A.B. 288's implementation will not cause irreparable harm because the law does not violate the Supremacy Clause, the NLRB has failed to present evidence showing its operations will be harmed or inconsistent decisions will issue, and the NLRB's alleged harms are speculative.  (ECF No. 16 at 27–28; ECF No. 17 at 25–26.)

The Court finds the NLRB has met its burden.  As the Ninth Circuit has recognized, "preventing a violation of the Supremacy Clause serves the public interest."  *United States v. California*, 921 F.3d 865, 893 (9th Cir. 2019).  Here, having found the NLRB is likely to succeed on the merits of the majority of its preemption claim, the Court presumes the NLRB will suffer irreparable harm from constitutional violations if the A.B. 288 is implemented in its entirety.

Additionally, the Teamsters have represented they intend to file charges with PERB when A.B. 288 goes into effect on January 1, 2026, and it is well within the realm of possibility that others will follow.  (ECF No. 4-1 at 10; *see generally* ECF No. 28-1 (Amicus Brief of California Labor Federation).)  Once charges are filed with PERB pursuant to A.B. 288, the threat of conflicting authority and discordant resolution of the same conduct will become live.  To avoid the harms following from "incompatible or conflicting adjudications," it is appropriate to maintain the status quo until final adjudication on the merits.  *Garner*, 346 U.S. at 490–91.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors — the balance of equities and public interest — "[w]hen the government is a party, these last two factors merge."  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  As discussed above, the NLRB is likely to succeed in its claim that A.B. 288 is preempted, and an injunction to prevent a violation of the Supremacy Clause is in the public interest.  *California*, 921 F.3d at 893.  The State and the Teamsters argue that enjoining A.B. 288 will cause California workers significant hardship by being prevented from vindicating their labor rights.  (ECF No. 16 at 28; ECF No. 17 at 26.)  The Court acknowledges the harm to workers from being unable to assert their labor rights and access the NLRA's protections is significant.  However, on balance, alleviating that deprivation through a process administered by

17

PERB, which too may take a considerable amount of time, cannot justify the risk of conflicting jurisdiction and resolutions that would emerge from A.B. 288's implementation.  Therefore, the balance of equities and public interest factors weigh in the NLRB's favor.

Having found the NLRB has satisfied each of the *Winter* factors, this Court finds appropriate relief in maintaining the status quo by enjoining A.B. 288 as described herein, until final resolution on the merits.

**IV.    CONCLUSION**

Accordingly, Plaintiff's Motion for a Preliminary Injunction (ECF No. 10) is GRANTED in part and DENIED in part as follows:

1.    Defendants are PRELIMINARILY ENJOINED from implementing:

   a.    Cal. Lab. Code § 923.1(b)(1)(B)(i), as to "lack of quorum of the [NLRB]," and "the [NLRB] has lost its independence[;]"

   b.    Cal. Lab. Code § 923.1(b)(1)(B)(ii);

   c.    Cal. Lab. Code § 923.1(b)(1)(B)(iii); and

   d.    Cal. Lab. Code § 923.1(b)(1)(B)(iv).

2.    Defendants may implement[6]:

   a.    Cal. Lab. Code § 923.1(b)(1)(A);

   b.    Cal. Lab. Code § 923.1(b)(1)(B), as to "expressly [] ceded jurisdiction[;]" and

   c.    Cal. Lab. Code § 923.1(b)(1)(B)(i), as to "a case is enjoined by a court[.]"

IT IS SO ORDERED.

Date: December 26, 2025

---

[6]    Because A.B. 288 contains a severability clause, which under California law establishes a presumption of severance, the Court finds Defendants may implement the loss of coverage, enjoinment, and express cessation provisions.  *See* A.B. 288 § 6; *California Redevelopment Assn. v. Matosantos*, 53 Cal. 4th 231, 270 (2011).

18

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

LEADINGAGE MINNESOTA and
CARE PROVIDERS OF
MINNESOTA, and YONA
NORTHSTAR LLC,

                  Plaintiffs,

v.

NICOLE BLISSENBACH, *in her
official capacity as the
Commissioner of the Minnesota
Department of Labor and Industry
and as a member of the Minnesota
Nursing Home Workforce Standards
Board*, and JAMIE GULLEY, *in his
official capacity as a member and
chairperson of the Minnesota
Nursing Home Workforce Standards
Board*,

                  Defendants.

Court File No. _____

**DECLARATION OF EMILY
BENHAM**

---

STATE OF <u>MINNESOTA</u>    )

COUNTY OF <u>POPE</u>       )

I, Emily Benham, state and declare as follows:

1.    I currently serve as the Executive Director of Glenwood Village Care Center, Inc. d/b/a Glenwood Retirement Village, which was formed under Minnesota Statutes Chapter 317 (Nonprofit Corporations) in 1964 as a non-profit and maintains its principal place of business at 719 2nd Street SE,

Glenwood, MN. Glenwood Retirement Village is currently an association member of LeadingAge Minnesota. I offer this Declaration based on my personal knowledge, and in support of the Complaint and Plaintiffs' Motion for a Preliminary Injunction.

2.     Glenwood Retirement Village provides nursing home services to older adults in Minnesota. To serve that population, Glenwood Retirement Village employs a total of 163 employees in Minnesota, and these employees include certified nursing assistants, trained medication aides, licensed practical nurses, and other personnel.

3.     Glenwood Retirement Village must comply with the Minnesota Nursing Home Workforce Standards Act (the "Act") and any published administrative standards issued by the Minnesota Nursing Home Workforce Standards Board (the "Board"), including the "Proposed Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards; Notice of Intent to Adopt Expedited Permanent Rules Without A Public Hearing," for which the Board published a notice of adoption on October 28, 2024 (collectively, the "Wage Standards").

4.     For the 2026 minimum wage, the Wage Standards require that within thirty days of the Centers for Medicare & Medicaid (CMS) approving the reimbursement rate increase paid to nursing homes to implement the minimum wage, Glenwood Retirement Village must pay all of its covered

2

nursing home workers a minimum wage of $19.00 per hour. Beginning on January 1, 2027, Glenwood Retirement Village must pay all of its covered nursing home workers a minimum wage of $20.50 per hour.

5.    The Wage Standards also require that Glenwood Retirement Village pay certain occupations—*i.e.*, certified nursing assistants, trained medication aides, and licensed practical nurses—a higher minimum wage in 2026, and January 1, 2027:

| Role | 2026 - These standards will go into effect 30 days after CMS's approval | January 1, 2027 |
|---|---|---|
| Certified Nursing Assistants | $22.50 per hour | $24.00 per hour |
| Trained Medication Aides | $23.50 per hour | $25.00 per hour |
| Licensed Practical Nurses | $27.00 per hour | $28.50 per hour |

6.    The rates required by the Wage Standards are higher than the minimum rates maintained by Glenwood Retirement Village before the Wage Standards were adopted. To comply with the Wage Standards, Glenwood Retirement Village will have to pay higher rates to some nursing home workers. As a result, Glenwood Retirement Village will incur additional and ongoing costs. The Board's creation and its corresponding authority to regulate Glenwood Retirement Village forces Glenwood Retirement Village to modify how it sets the minimum wages of its covered nursing home workers. For years

3

before the Board's creation, for non-union employees, Glenwood Retirement Village would provide the minimum wage (*i.e.*, starting wage) set by default federal, state, or local law and market factors. Employees would earn increases to their hourly wage through a cost-of-living adjustment, which has typically been a 3% annual increase. Glenwood Retirement Village's process (from before the Wage Standards' effective date) for setting the hourly wages (described above) applied to its covered general nursing home workers, certified nursing assistants, trained medication aides, and licensed practical nurses. The Wage Standards now set the applicable minimum wages higher than what default federal, state, and local law require, and the Wage Standards provide for automatic increases to the minimum wage.

7.     Glenwood Retirement Village is an entity of limited means. The primary sources of funding from Glenwood Retirement Village come from: Medicare, Medicare-like payers, Medicaid, and private pay. The Wage Standards force Glenwood Retirement Village into an impossible choice: (1) comply with the Wage Standards and make difficult financial decisions— such as decreasing staff to resident ratios, caring for less complex residents, and limiting admissions; or (2) refuse to comply with the Wage Standards and face the corresponding penalties imposed by law, including a private civil action by a nursing home worker or administrative enforcement.

4

8. As a result of the Wage Standards and within the six months before the filing of this lawsuit, Glenwood Retirement Village has done the following:

a. Delayed capital projects related to facilities housing residents;

b. Delayed investments in quality-of-life improvements, such as new furniture, equipment, or services; and

c. Hired an administrative professional to assist with the process of complying with the Wage Standards.

9. Glenwood Retirement Village also expects that the Wage Standards will compress wage rates within Glenwood Retirement Village workforce. Glenwood Retirement Village wage rates are dictated in part by Medicaid reimbursement rates, which are paid on a per-resident basis. Its revenue is therefore largely fixed. So to offset higher minimum wages, Glenwood Retirement Village will be forced to pay more senior employees less than it otherwise might. This wage compression will eliminate incentives for long-term employees by reducing wage differentiation between more and less experienced employees. In Glenwood Retirement Village experience, more senior employees will be dissatisfied with the lack of wage progression and will be more likely to leave for other jobs. The result will be higher turnover, a less experienced workforce, and worse service for Glenwood Retirement Village residents.

5

10. Glenwood Retirement Village has already spent time and resources calculating the direct and indirect cost of compliance with the Wage Standards, costs that Glenwood Retirement Village only incurs *because of* the Wage Standards:

| Nursing Facility Cost: Wage Standards | 2026 | 2027 | Total Cost of Wage Standard |
|---|---|---|---|
| Direct Cost of 2026 Wage Standard | $176,041 | $176,041 | $352,082 |
| Direct Cost of January 1, 2027 Wage Standard | $0 | $147,962 | $147,962 |
| Indirect or Ripple Cost of 2026 Wage Standard | $20,740 | $20,740 | $41,479 |
| Indirect or Ripple Cost of January 1, 2027 Wage Standard | $0 | $8,649 | $8,649 |
| **Estimated Annual Cost** | **$196,781** | **$353,392** | **$550,173** |

11. The "indirect or ripple cost" represents additional payroll taxes tied to the increased wages paid to the covered nursing home employees.

12. Like most licensed nursing facilities in Minnesota, Glenwood Retirement Village receives public financial support for residents enrolled in Medical Assistance, the state's Medicaid program. But that support is inadequate to offset all cost increases resulting from the Board's standards:

6

a.   First, the Board's standards require all covered nursing home workers to be paid higher rates. But those workers serve all residents, not just those enrolled in Medical Assistance. Medical Assistance reimbursement rates are calculated on a resident-per-day basis. In addition, as a condition of participation in the Medicaid program, Minnesota's policy of "rate equalization" (256R.06) requires "Medical assistance rates not to exceed private pay residents' rates." So even if the reimbursement rates covered 100% of costs of service to Medical Assistance enrollees, Minnesota nursing facility reimbursement policy both shifts the higher costs of providing service to non-enrollees by using total resident days from the cost report used to set annual rates, and prohibits the nursing facility from raising private pay rates above the Medicaid rates established by the state of Minnesota.

b.   Second, Medical Assistance reimbursement rarely covers the full cost of service even to enrolled residents. According to public estimates, revenue from public support covers approximately 97% of all facility costs. So even if every resident were enrolled in Medical Assistance, state reimbursements would still fall short of covering the full cost of the Wage Standards. In fact, since reimbursement rates are set based upon the reporting period

7

ending fifteen months prior to the rate year, the increased costs associated with the minimum wage rates, overtime, and holiday pay will not be immediately factored into the state's Medical Assistance's reimbursement rates until later years, if at all.

c. Glenwood Retirement Village has experienced this shortfall. In the most recent reimbursement cycle, Glenwood Retirement Village's reimbursement rate at Glenwood Village Care Center averaged approximately $360 per resident day, while total costs per resident day were approximately $379. That gap will be exacerbated by the Wage Standards, which will further increase Glenwood Retirement Village's labor costs.

13. Glenwood Retirement Village is also subject to the Board's training requirements. By law, the Board is empowered to design and mandate annual training for covered nursing home workers. This training must meet the Board's minimum criteria and must be delivered by a "certified worker organization" certified by the Board. The training covers subjects dictated by the Board, including employees' rights under the Board's standards and information about the Board itself. It is Glenwood Retirement Village's understanding based upon information published by the Minnesota

8

Department of Labor and Industry that the current "certified worker organizations" consist of three labor unions.[1]

14.   Glenwood Retirement Village does not currently have any unionized employees.

15.   To comply with the Board's training requirements, Glenwood Retirement Village must identify covered nursing home employees and arrange for those employees to receive training. This training may occur either on Glenwood Retirement Village property or at another location. But if the training occurs at another location, Glenwood Retirement Village must pay employees' travel expenses.

16.   By law, Glenwood Retirement Village is required to pay an employee his or her normal hourly rate for the time it takes to complete the training. Glenwood Retirement Village is also required to keep records of the training and provide those records to the Board. It is also required to provide contact information for employees to the worker organization that conducted the training on request unless a worker opts out in writing. If the worker opts out, Glenwood Retirement Village must keep a record of the written opt-out.

---

[1] A copy of the publication can be found at:
https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_current_list_of_certified_worker_organizations_1025.pdf

9

17.     To comply with the above-cited training requirements, Glenwood Retirement Village will incur financial costs and operational burdens relating to covered nursing home workers:

   a.    Paying employees the time they spend in training;

   b.    Paying employees for travel time to the training site;

   c.    Arranging for coverage in its nursing home facilities while employees are receiving training; and

   d.    Paying administrative personnel to maintain records of training, track which employees have received the training, and provide required records to the Board and the worker organization providing the training.

18.     Glenwood Retirement Village estimates that these new expenses could result in a significant financial burden. Glenwood Retirement Village employs 163 covered nursing home workers. Budgeting one hour of training time and one hour of travel time for each worker, Glenwood Retirement Village estimates it will spend at least $7,498.00 for training time alone. That figure does not account for additional administrative expenses.

19.     In 2027, Glenwood Retirement Village must certify that its covered nursing home workers have completed the mandated training.

20.     Glenwood Retirement Village expects that when the Board adopts standards and regulations in the future, it will be required to comply with

10

those standards and regulations. It expects that these standards and regulations will impose expenses and regulatory burdens similar to those already imposed by the Board's existing standards.

21. Glenwood Retirement Village would rather negotiate wages and working conditions through private negotiation with its employees—as it always did before the Act's passage. But that is not a current option. Instead, the Act forces Glenwood Retirement Village to accept that "[m]embers representing nursing home employers or employer organizations" will represent Glenwood Retirement Village's interests on the Board. Glenwood Retirement Village did not vote for or select any Board representative. Yet Glenwood Retirement Village has no choice but to associate with those employer-representatives on the Board. Glenwood Retirement Village is then subject to the Board's collective standard-setting process, which as described above, has already or will inflict harm onto Glenwood Retirement Village, its workers, residents, and the larger community. Glenwood Retirement Village does not want to associate with the employer-representatives or the Board's structure and process, and would disassociate if Glenwood Retirement Village could choose. The Act, however, forces Glenwood Retirement Village to accept the employer-representatives' representation on the Board and to associate with public policies (*e.g.*, the Wage Standards and the Board's training requirements) that Glenwood Retirement Village opposes.

11

12

I declare under penalty of perjury that the foregoing is true and correct.

28 U.S.C. § 1746.

Dated: March 9th, 2026

Emily Benham

Printed Name: Emily Benham

4911-9723-5339.3 / 131787.1001

12

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LEADINGAGE MINNESOTA, CARE PROVIDERS OF MINNESOTA, and YONA NORTHSTAR LLC, | Court File No. _____ |
| Plaintiffs, | |
| v. | **DECLARATION OF DANIEL HILL** |
| NICOLE BLISSENBACH, *in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry and as a member of the Minnesota Nursing Home Workforce Standards Board*, and JAMIE GULLEY, *in his official capacity as a member and chairperson of the Minnesota Nursing Home Workforce Standards Board*, | |
| Defendants. | |

STATE OF <u>ILLINOIS</u>          )

COUNTY OF <u>LAKE</u>          )

I, Daniel Hill, state and declare as follows:

1. I currently serve as the Chief Operating Officer of Yona NorthStar, LLC ("Yona"). I offer this Declaration based on my personal knowledge, and in support of the Complaint and Plaintiffs' Motion for a Preliminary Injunction.

2. Founded in 2021, Yona has been a registered limited liability company in Minnesota since October 11, 2021. Yona's registered office is located at 1010 Dale Street North, Saint Paul, Minnesota.

3. Yona is not, and has never been, an association member of LeadingAge Minnesota or Care Providers of Minnesota.

4. Yona contracts with healthcare, senior living, and assisted living communities to provide dining, housekeeping, and laundry services, including providers who provide nursing home services. Yona is a critical partner for facilities that care for Minnesota's elderly population.

5. To help serve the state's elderly population, Yona employs a total of 433 employees at 51 client sites across Minnesota. These employees include housekeepers, laundry aides, floor care technicians, cooks and dietary aides who work at nursing home facilities.

6. Because Yona's employees work in nursing home facilities, it is considered a "nursing home employer" under the Minnesota Nursing Home Workforce Standards Act (the "Act"). The Act's definition of "nursing home worker" encompasses "any worker who provides services in a nursing home in Minnesota, including . . . non-direct care staff," which includes Yona's employees. Yona must therefore comply with the Act and any published administrative standards issued by the Minnesota Nursing Home Workforce Standards Board (the "Board"), including the "Proposed Expedited Permanent

2

Rules Establishing Minimum Nursing Home Wage Standards; Notice of Intent to Adopt Expedited Permanent Rules Without A Public Hearing," for which the Board published a notice of adoption on October 28, 2024 (collectively, the "Wage Standards").

7.     For the 2026 minimum wage, the Wage Standards require that within thirty days of the Centers for Medicare & Medicaid (CMS) approving the reimbursement rate increase paid to nursing homes to implement the minimum wage, Yona must pay all of its covered nursing home workers a minimum wage of $19.00 per hour. Beginning on January 1, 2027, Yona must pay all of its covered nursing home workers a minimum wage of $20.50 per hour.

8.     The rates required by the Wage Standards are higher than the minimum rates maintained by Yona before the Wage Standards were adopted. To comply with the Wage Standards, Yona will have to pay higher rates to some nursing home workers. As a result, Yona will incur additional and ongoing costs. The Board's creation and its corresponding authority to regulate Yona forces it to modify how it sets the minimum wages of its employees. For years before the Board's creation, for non-union employees, Yona would provide the minimum wage (*i.e.*, starting wage) set by default federal, state, or local law and market factors. Non-union employees would earn increases to their hourly wage through performance reviews. Yona's process (from before

3

the Wage Standards' effective date) for setting the hourly wages (described above) applied to its covered nursing home workers. The Wage Standards now set the applicable minimum wages higher than what default federal, state, and local law require, and the Wage Standards provide for automatic increases to the minimum wage.

9.      Yona is subject to various collective bargaining agreements ("CBAs") including SEIU Healthcare Minnesota and Iowa (IA) ("SEIU") and other union organizations. Yona's CBAs with these unions cover the individuals subject to the Wage Standards. Yona and the workers' certified bargaining representatives negotiated and agreed on the CBAs. Under most CBAs, the starting minimum wage ranges from \$16–\$17.50 per hour. The Wage Standards set the starting minimum wage for each of these occupations significantly higher than what the CBA requires.

10.     Yona is an entity of limited means. Yona's revenue derives from its contracts with healthcare facilities, including nursing homes. These entities primarily rely on Medicare and Medicaid for funding. Yona's contracts with those entities have fixed contract prices and durations, and Yona did not budget for the wage increases from the Act when it negotiated those contracts. The Wage Standards force Yona into an impossible choice: (1) comply with the Wage Standards and make difficult financial decisions, which may include limiting or shutting down operations; or (2) refuse to comply with the Wage

4

Standards and face the corresponding penalties imposed by law, including a private civil action by a nursing home worker or administrative enforcement.

11.    If Yona had to shut down or limit its operations, doing so could have devastating rippling effects throughout Minnesota. Nursing homes across the state rely on Yona for critical services. These facilities would struggle to continue to serve the needs of the state's elderly population without Yona.

12.    Yona also expects that the Wage Standards will compress wage rates within its workforce. Yona's wage rates are dictated in part by the contracts it negotiates with the healthcare facilities. As mentioned, these contracts are for fixed contract prices and durations, and when Yona negotiated the prices for these existing contracts, it did not budget in the increased wages from the Act. To offset higher minimum wages, Yona will be forced to pay more senior employees less than it otherwise might. This wage compression will eliminate incentives for long-term employees by reducing wage differentiation between more and less experienced employees. In Yona's experience, more senior employees will be dissatisfied with the lack of wage progression and will be more likely to leave for other jobs. The result will be higher turnover, a less experienced workforce, and worse service for the healthcare facilities where Yona's employees work.

13.    Because Yona does not receive its revenues from the state, but instead through its contracts with nursing home facilities, it cannot offset

5

increased labor costs by applying for any supplemental funds made available by the state. It must either absorb the cost increases or raise the rates it charges to its nursing home clients. The latter option is not necessarily available in every case, or indeed in any case. Yona cannot raise its rates unilaterally; it must instead negotiate new rates with its clients. And those same clients have seen their costs rise as a result of the Board's standards.

14.    Yona is also subject to the Act's training requirements. The Act empowers the Board to design and mandate annual training for covered nursing home workers. This training must meet the Board's minimum criteria and must be delivered by a "certified worker organization" certified by the Board. The training covers subjects dictated by the Board, including employees' rights under the Board's standards and information about the Board itself. It is Yona's understanding based upon information published by the Minnesota Department of Labor and Industry that the current "certified worker organizations" consist of three labor unions.[1]

15.    To comply with the Act's training requirements, Yona must identify covered nursing home workers and arrange for those employees to receive training. This training may occur either on Yona's property or at

---

[1] A copy of the publication can be found at:
https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_current_list_of_certified_worker_organizations_1025.pdf

6

another location. But if the training occurs at another location, Yona must pay workers' travel expenses.

16. By law, Yona is required to pay a worker his or her normal hourly rate for the time it takes to complete the training. Yona is also required to keep records of the training and provide those records to the Board. It is also required to provide contact information for employees to the worker organization that conducted the training on request unless a worker opts out in writing. If the worker opts out, Yona must keep a record of the written opt-out.

17. To comply with the above-cited training requirements, Yona will incur financial costs and operational burdens relating to covered nursing home workers:

a. Paying employees the time they spend in training;

b. Providing a training site on its own premises;

c. Arranging for coverage at its client sites while employees are receiving training; and

d. Paying administrative personnel to maintain records of training, track which employees have received the training, and provide required records to the Board and the worker organization providing the training.

7

18.   Yona estimates that these new expenses could result in a significant financial burden. Yona employs 433 covered nursing home workers. Yona estimates it would have to pay, *at least*, $7,971.53 in training costs because of the Wage Standards. That figure does not account for additional administrative expenses.

19.   In 2027, Yona must certify that its covered nursing home workers have completed the mandated training.

20.   Yona expects that when the Board adopts standards and regulations in the future, it will be required to comply with those standards and regulations. It expects that these standards and regulations will impose expenses and regulatory burdens similar to those already imposed by the Board's existing standards.

21.   Yona would rather negotiate wages and working conditions through private negotiation with its non-union workers, or through the collective bargaining process with its unionized workers—as it always did before the Act's passage. But that is not a current option. Instead, the Act forces Yona to accept that "[m]embers representing nursing home employers or employer organizations" will represent Yona's interests on the Board. Yona did not vote for or select any Board member. Yet Yona has no choice but to associate with those employer-representatives on the Board. Yona is then subject to the Board's collective standard-setting process, which as described

8

above, has already or will inflict harm onto Yona, its workers, residents, and the larger community. Yona does not want to associate with the employer-representatives or the Board's structure and process, and would disassociate if Yona could choose. The Act, however, forces Yona to accept the employer-representatives' representation on the Board and to associate with public policies (*e.g.*, the Wage Standards and the Board's training requirements) that Yona opposes.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated: __March 9ᵗʰ_____, 2026

Printed Name: <u>Daniel Hill</u>_____

9

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEADINGAGE MINNESOTA,
CARE PROVIDERS OF
MINNESOTA, and YONA
NORTHSTAR LLC,

Court File No. _____

                    Plaintiffs,

v.

**DECLARATION OF FRED STRUZYK**

NICOLE BLISSENBACH, *in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry and as a member of the Minnesota Nursing Home Workforce Standards Board*, and JAMIE GULLEY, *in his official capacity as a member and chairperson of the Minnesota Nursing Home Workforce Standards Board*,

                    Defendants.

STATE OF <u>MINNESOTA</u>            )

COUNTY OF <u>STEARNS</u>            )

I, Fred Struzyk, state and declare as follows:

1.    I currently serve as the Chief Financial Officer of Premier Healthcare Management Services. Premier Healthcare Management Services was formed under Minnesota law on February 10, 2012, as a for-profit corporation. Premier Healthcare Management Services maintains its principal

place of business at 701 Stearns Ave., Paynesville, MN 56362. Premier Healthcare Management Services is currently a member of Care Providers of Minnesota. I offer this Declaration based on my personal knowledge, and in support of the Complaint and Plaintiffs' Motion for a Preliminary Injunction.

2.    Premier Healthcare Management Services provides nursing home services to older adults in Minnesota. To serve that population, Premier Healthcare Management Services employs a total of 1,347 employees in Minnesota, and these employees include certified nursing assistants, trained medication aides, licensed practical nurses, and other personnel.

3.    Premier Healthcare Management Services must comply with the Minnesota Nursing Home Workforce Standards (the "Act") and any published administrative rules issued by the Minnesota Nursing Home Workforce Standards Board (the "Board"), including the "Proposed Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards; Notice of Intent to Adopt Expedited Permanent Rules Without A Public Hearing," for which the Board published a notice of adoption on October 28, 2024 (collectively, the "Wage Standards").

4.    For the 2026 minimum wage, the Wage Standards require that within thirty days of the Centers for Medicare & Medicaid (CMS) approving the reimbursement rate increase paid to nursing homes to implement the minimum wage, Premier Healthcare Management Services must pay all of its

2

covered nursing home workers a minimum wage of $19.00 per hour. Beginning on January 1, 2027, Premier Healthcare Management Services must pay all of its covered nursing home workers a minimum wage of $20.50 per hour.

5.    The Wage Standards also require that Premier Healthcare Management Services pay certain occupations—*i.e.*, certified nursing assistants, trained medication aides, and licensed practical nurses—a higher minimum wage in 2026, and January 1, 2027:

| Role | 2026 - These standards will go into effect 30 days after CMS's approval | January 1, 2027 |
|---|---|---|
| Certified Nursing Assistants | $22.50 per hour | $24.00 per hour |
| Trained Medication Aides | $23.50 per hour | $25.00 per hour |
| Licensed Practical Nurses | $27.00 per hour | $28.50 per hour |

6.    The rates required by the Wage Standards are higher than the minimum rates maintained by Premier Healthcare Management Services before the Wage Standards were adopted. To comply with the Wage Standards, Premier Healthcare Management Services will have to pay higher rates to some nursing home workers. As a result, Premier Healthcare Management Services will incur additional and ongoing costs. The Board's creation and its corresponding authority to regulate Premier Healthcare Management Services forces Premier Healthcare Management Services to modify how it sets the

3

minimum wages of its covered nursing home workers. For years before the Board's creation, for non-union employees, Premier Healthcare Management Services would provide the minimum wage (*i.e.*, starting wage) set by default federal, state, or local law and market factors. Non-union employees would earn increases to their hourly wage through a discretionary increase due to performance or a cost-of-living adjustment. Premier Healthcare Management Services's process (from before the Wage Standards' effective date) for setting the hourly wages (described above) applied to its covered general nursing home workers, certified nursing assistants, trained medication aides, and licensed practical nurses. The Wage Standards now set the applicable minimum wages higher than what default federal, state, and local law require, and the Wage Standards provide for automatic increases to the minimum wage.

7.    Premier Healthcare Management Services is a signatory to the following collective bargaining agreements, which are currently in effect: AFSCME 65 and United Steel Workers District 11. Those CBAs cover employees who are also subject to the Wage Standards. The Wage Standards will require Premier Healthcare Management Services to pay rates above the minimum rates established in the CBAs, which were collectively bargained with the workers' certified bargaining representatives.

8.    Premier Healthcare Management Services is an entity of limited means. The primary sources of funding for Premier Healthcare Management

4

Services come from: Medicare, Medicaid, insurance companies, and private pay. The Wage Standards force Premier Healthcare Management Services into an impossible choice: (1) comply with the Wage Standards and make difficult financial decisions including wage scale compression, reduction of hours for employees, and reduction of staffing levels in departments; or (2) refuse to comply with the Wage Standards and face the corresponding penalties imposed by law, including a private civil action by a nursing home worker or administrative enforcement.

9.     As a result of the Wage Standards and within the last six months before the filing of this lawsuit, Premier Healthcare Management Services has done the following:

   a.   Delayed renovations to its facility that would increase comfort for the resident population; specifically, Premier postponed the submission of replacement and renovation project applications for exceptions to Minnesota's moratorium on nursing homes for its sites in Monticello and Melrose, Minnesota.

   b.   Started development of Centralized Services with the goal of reducing staff in non-nursing departments.

   c.   Notified its privately-paying resident population that prices are going to significantly increase because of the increased costs and

5

rates associated with the Wage Standards and compliance with Minnesota's rate equalization policy.

10.   These actions not only affect Premier Healthcare Management Services and its employees, including nursing home workers, but also residents. In particular, because of the Wage Standards and other costs of compliance related to the Board's activities, Premier Healthcare Management Services has (within the six months before the filing of this lawsuit):

a.   Reduced new admissions;

b.   Developed plans to reduce staff-to-resident ratios, reducing on average 35 hours a day for resident care for a 50-bed facility;

c.   Delayed capital improvements related to facilities housing residents; and

d.   Canceled investments in quality-of-life improvements, such as new flooring and furniture.

11.   Premier Healthcare Management Services also expects that the Wage Standards will compress wage rates within Premier's workforce. Premier's wage rates are dictated in part by federal reimbursement rates, which are paid on a per-resident basis. Its revenue is therefore largely fixed. So to offset higher minimum wages, Premier Healthcare Management Services will be forced to pay more senior employees less than it otherwise might. This wage compression will eliminate incentives for long-term employees by

6

reducing wage differentiation between more and less experienced employees. In Premier's experience, more senior employees will be dissatisfied with the lack of wage progression and will be more likely to leave for other jobs. For example, in 2026 employees above the new minimum wage standards will receive less than we had previously planned for. The result will be higher turnover, a less experienced workforce, and worse service for Premier's residents.

12. Like most licensed nursing facilities in Minnesota, Premier Healthcare Management Services receives public financial support for residents enrolled in Medical Assistance, the state's Medicaid program. But that support is inadequate to offset all costs increases resulting from the Board's rules:

a. First, the Board's rules require all covered nursing home workers to be paid higher rates. But those covered workers serve all residents, not just those enrolled in Medical Assistance. Medical Assistance reimbursement rates are calculated on a resident-per-day basis. In addition, as a condition of participation in the Medicaid program, Minnesota's policy of "rate equalization" (256R.06) requires "Medical assistance rates not to exceed private pay residents' rates." So even if the reimbursement rates covered 100% of costs of service to Medical Assistance enrollees, Minnesota

7

nursing facility reimbursement policy both shifts the higher costs of providing service to non-enrollees by using total resident days from the cost report used to set annual rates, and prohibits the nursing facility from raising private pay rates above the Medicaid rates established by the state of Minnesota.

b.   Second, Medical Assistance reimbursement rarely covers the full cost of service even to enrolled residents. According to public estimates, revenue from public support covers approximately 97% of all facility costs. So even if every resident were enrolled in Medical Assistance, state reimbursements would still fall short of covering the full cost of the Wage Standards.  In fact, since reimbursement rates are set based upon the reporting period ending fifteen months prior to the rate year, the increased costs associated with the minimum wage rates, overtime, and holiday pay will not be immediately factored into the state's Medical Assistance's reimbursement rates until later years, if at all.

13.   In 2025, the Minnesota Legislature authorized a temporary supplement to per-day reimbursement rates to offset higher costs associated with the Wage Standards. The 2026 and January 1, 2027 minimum wage standards both have temporary rate supplements. But to receive either supplement, a nursing home employer must apply to the Minnesota

8

Department of Human Services. Both temporary supplements expire two years after implementation. For example, Premier Healthcare Management Services applied for the funds and received approval for the 2026 rate year and an estimate of the rate supplement. However, the estimated rate supplement will expire on December 31, 2028. The Wage Standards, by contrast, are permanent. The 2025 legislature also passed operating rate caps that will limit the absorption of the minimum wage standard costs that are funded by the temporary rate supplements. Regardless, Premier Healthcare Management estimates that complying with the Wage Standards will cost it about $160,000.00 ***more than*** the amount it will receive as part of the rate supplement.

14.     Premier Healthcare Management Services is also subject to the Act's training requirements. The Act empowers the Board to design and mandate annual training for covered nursing home workers. This training must meet the Board's minimum criteria and must be delivered by a "certified worker organization" certified by the Board. The training covers subjects dictated by the Board, including workers' rights under the Board's standards and information about the Board itself. It is Premier Healthcare Management Services's understanding based upon information published by the Minnesota

9

Department of Labor and Industry that the current "certified worker organizations" consist of three labor unions.[1]

15.     Several of Premier Healthcare Management Services facilities do not currently have any collective bargaining agreement with any union. Premier Healthcare Management Services does not have any unionized labor in those facilities. If the Act did not exist, Premier Healthcare Management Services would not engage any labor union to train its nursing home workers at those facilities.

16.     To comply with the Act's training requirements, Premier Healthcare Management Services must identify covered nursing home workers and arrange for those workers to receive training. This training may occur either on Premier's property or at another location. But if the training occurs at another location, Premier Healthcare Management Services must pay workers' travel expenses.

17.     By law, Premier Healthcare Management Services is required to pay a covered worker his or her normal hourly rate for the time it takes to complete the training. Premier Healthcare Management Services is also required to keep records of the training and provide those records to the Board.

---

[1] A copy of the publication can be found at:
https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_current_list_of_certified_worker_organizations_1025.pdf

10

It is also required to provide contact information for employees to the worker organization that conducted the training on request unless a worker opts out in writing. If the worker opts out, Premier Healthcare Management Services must keep a record of the written opt-out.

18.    To comply with the above-cited training requirements, Premier Healthcare Management Services will incur financial costs and operational burdens relating to covered nursing home workers:

a.    Paying employees the time they spend in training;

b.    Providing a training site on its own premises;

c.    Arranging for coverage in its nursing home facilities while employees are receiving training; and

d.    Paying administrative personnel to maintain records of training, track which employees have received the training, and provide required records to the Board and the worker organization providing the training.

19.    Premier Healthcare Management Services estimates that these new expenses could result in a significant financial burden. Premier Healthcare Management Services employs over 1,100 covered nursing home workers. Budgeting one hour of training time for each worker, Premier Healthcare Management Services estimates it will spend at least $25,000.00. That figure does not account for additional administrative expenses.

11

20.    In 2027, Premier Healthcare Management Services must certify that its covered nursing home workers have completed the mandated training.

21.    Premier Healthcare Management Services expects that when the Board adopts rules and regulations in the future, it will be required to comply with those rules and regulations. It expects that these rules and regulations will impose expenses and regulatory burdens similar to those already imposed by the Board's existing rules.

22.    Premier Healthcare Management Services would rather negotiate wages and working conditions through private negotiation with its non-union workers, or through the collective bargaining process with its unionized workers—as it always did before the Act's passage. But that is not a current option. Instead, the Act forces Premier Healthcare Management Services to accept that "[m]embers representing nursing home employers or employer organizations" will represent Premier Healthcare Management Services' interests on the Board. Premier Healthcare Management Services did not vote for or select any Board representative. Yet Premier Healthcare Management Services has no choice but to associate with those employer-representatives on the Board. Premier Healthcare Management Services is then subject to the Board's collective standard-setting process, which as described above, has already or will inflict harm onto Premier Healthcare Management Services, its workers, residents, and the larger community. Premier Healthcare

12

Management Services does not want to associate with the employer-representatives or the Board's structure and process, and would disassociate if Premier Healthcare Management Services could choose. The Act, however, forces Premier Healthcare Management Services to accept the employer-representatives' representation on the Board and to associate with public policies (*e.g.*, the Wage Standards and the Board's training requirements) that Premier Healthcare Management Services opposes.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated: *March 5*, 2026

Printed Name: Fred Sturzyk

4932-7859-2141 / 131787.1001

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEADINGAGE MINNESOTA, CARE PROVIDERS OF MINNESOTA, and YONA NORTHSTAR LLC,

Court File No. _____

Plaintiffs,

v.

**DECLARATION OF KIMBER L. WRAALSTAD**

NICOLE BLISSENBACH, *in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry and as a member of the Minnesota Nursing Home Workforce Standards Board,* and JAMIE GULLEY, *in his official capacity as a member and chairperson of the Minnesota Nursing Home Workforce Standards Board,*

Defendants.

STATE OF <u>MINNESOTA</u>          )

COUNTY OF <u>COOK</u>              )

I, Kimber L. Wraalstad, state and declare as follows:

1.      I currently serve as the Chief Executive Officer and Administrator of Cook County Hospital District a/k/a North Shore Health ("North Shore"). I offer this Declaration based on my personal knowledge, and in support of the Complaint and Plaintiffs' Motion for a Preliminary Injunction.

2. "North Shore Health" became the assumed name of Cook County Hospital District on or about April 1, 2016. Cook County Hospital District has operated in Minnesota, in some form, dating back to the 1950s. North Shore currently maintains its principal place of business at 515 W. 5th Ave., Grand Marais, MN 55604.

3. North Shore is currently an association member of LeadingAge Minnesota.

4. North Shore is a small, rural, remote health care organization comprised of a sixteen-bed Critical Access Hospital, a thirty-seven-bed skilled nursing facility, a home health agency and an ambulance service, all located in Grand Marais, Minnesota. North Shore is critical to serving the needs of the local residents and all the visitors across the county—indeed, there are areas of Cook County, such as Grand Portage Reservation and the Gunflint Trail, that are over an hour away from Grand Marais.

5. North Shore is also the only nursing home in Cook County. The next closest is the veterans' nursing home in Silver Bay, Minnesota (roughly sixty miles away) and the next closest hospital is over eighty miles away in Two Harbors, Minnesota. There are no other assisted living facilities anywhere in Cook County. Cook County has the second oldest population of all eighty-seven Minnesota counties. The elderly population in Cook County routinely depends on North Shore for healthcare needs.

2

6.    To serve the elderly population, North Shore employs a total of 131 in Minnesota, and these employees include certified nursing assistants, trained medication aides, licensed practical nurses, and other personnel.

7.    North Shore must comply with the Minnesota Nursing Home Workforce Standards Act (the "Act") and any published administrative standards issued by the Minnesota Nursing Home Workforce Standards Board (the "Board"), including the "Proposed Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards; Notice of Intent to Adopt Expedited Permanent Rules Without A Public Hearing," for which the Board published a notice of adoption on October 28, 2024 (collectively, the "Wage Standards").

8.    For the 2026 minimum wage, the Wage Standards require that within thirty days of the Centers for Medicare & Medicaid (CMS) approving the reimbursement rate increase paid to nursing homes to implement the minimum wage, North Shore must pay all of its covered nursing home workers a minimum wage of $19.00 per hour. Beginning on January 1, 2027, North Shore must pay all of its covered nursing home workers a minimum wage of $20.50 per hour.

9.    The Wage Standards also require that North Shore pay certain occupations—*i.e.*, certified nursing assistants, trained medication aides, and

licensed practical nurses—a starting minimum wage in 2026, and January 1, 2027 as follows:

| Role | 2026 - These standards will go into effect 30 days after CMS's approval | January 1, 2027 |
| --- | --- | --- |
| Certified Nursing Assistants | $22.50 per hour | $24.00 per hour |
| Trained Medication Aides | $23.50 per hour | $25.00 per hour |
| Licensed Practical Nurses | $27.00 per hour | $28.50 per hour |

10.     The rates required by the Wage Standards are higher than the minimum rates maintained by North Shore before the Wage Standards were adopted. To comply with the Wage Standards, North Shore will have to pay higher rates to some nursing-home workers. As a result, North Shore will incur additional and ongoing costs. The Board's creation and its corresponding authority to regulate North Shore forces it to modify how it sets the minimum wages of its employees. For years before the Board's creation, for non-union employees, North Shore would provide the minimum wage (*i.e.*, starting wage) set by default federal, state, or local law and market factors. Non-union employees would earn increases to their hourly wage through longevity increases. North Shore's process (from before the Wage Standards' effective date) for setting the hourly wages (described above) applied to its covered general nursing home workers, certified nursing assistants, trained

4

medication aides, and licensed practical nurses. The Wage Standards now set the applicable minimum wages higher than what default federal, state, and local law require, and the Wage Standards provide for automatic increases to the minimum wage.

11. North Shore is a signatory to a collective bargaining agreement ("CBA") with SEIU Healthcare Minnesota and Iowa (IA) ("SEIU"), with a term of January 1, 2024 through December 31, 2026. North Shore's CBA with SEIU covers the individuals subject to the Wage Standards. North Shore and the workers' certified bargaining representatives negotiated and agreed on the CBA. Under the CBA, as of January 1, 2026, certified nursing assistants' starting minimum wage is $20.57 per hour; trained medication aides' starting minimum wage is $21.07 per hour; and licensed practical nurses' minimum wage is $26.25 per hour. The Wage Standards set the starting minimum wage for each of these occupations significantly higher than what the CBA requires.

12. North Shore is an entity of limited means. The primary sources of funding come from Medicare, Medicaid, commercial insurance, private pay and tax levy. The Wage Standards force North Shore into an impossible choice: (1) comply with the Wage Standards and make difficult financial decisions, which may include shutting down operations; or (2) refuse to comply with the Wage Standards and face the corresponding penalties imposed by law,

5

including a private civil action by a nursing home worker or administrative enforcement.

13.    North Shore shutting down operations would create devastating ripple effects across Cook County and the surrounding area. As stated above, North Shore is the only nursing home in Cook County. Without North Shore, the elderly and vulnerable population who live in Cook County would have to travel at least sixty miles to find the next closest nursing home, which is in Silver Bay. That being said, the nursing home in Silver Bay is open only to senior citizens eligible for veterans' benefits. If North Shore does not operate, then senior citizens who otherwise would stay at North Shore may have to compete against one another for rooms at closer facilities. That increased competition would likely make it harder for senior citizens to find a place to stay near family and friends.

14.    North Shore qualifies as a special taxing district under Minnesota law because it operates as a hospital district. Accordingly, North Shore may levy taxes in an amount sufficient to pay its operating expenses. As a result of the Wage Standards' requirements, and in combination of other factors, North Shore has increased its levy for taxes payable in 2026 to $2,182,000.00. The 2026 tax levy amount is $284,500.00 higher than the 2025 tax levy. Attached as **Exhibit 1** is a true and correct copy of the letter dated September 5, 2025 that North Shore sent to Cook County's Auditor, Braidy Powers.

6

15.   North Shore also expects that the Wage Standards will compress wage rates within its workforce. North Shore's wage rates are dictated in part by federal reimbursement rates, which are paid on a per-resident basis. Its revenue is therefore largely fixed. To offset higher minimum wages, North Shore will be forced to pay more senior employees less than it otherwise might. This wage compression will eliminate incentives for long-term employees by reducing wage differentiation between more and less experienced employees. In North Shore's experience, more senior employees will be dissatisfied with the lack of wage progression and will be more likely to leave for other jobs. For example, in 2026 employees already above the new minimum wage standards will receive a lower raise than North Shore had previously planned for. The result will be higher turnover, a less experienced workforce, and worse service for North Shore's residents.

16.   Like most licensed nursing facilities in Minnesota, North Shore receives public financial support for residents enrolled in Medical Assistance, the state's Medicaid program. But that support is inadequate to offset all cost increases resulting from the Board's standards:

a.   First, the Board's standards require all covered nursing home workers to be paid higher rates. But those workers serve all residents, not just those enrolled in Medical Assistance. Medical Assistance reimbursement rates are calculated on a resident-per-

7

day basis. In addition, as a condition of participation in the Medicaid program, Minnesota's policy of "rate equalization" (256R.06) requires "Medical assistance rates not to exceed private pay residents' rates." So even if the reimbursement rates covered 100% of costs of service to Medical Assistance enrollees, Minnesota nursing facility reimbursement policy both shifts the higher costs of providing service to non-enrollees by using total resident days from the cost report used to set annual rates, and prohibits the nursing facility from raising private pay rates above the Medicaid rates established by the state of Minnesota.

b.  Second, Medical Assistance reimbursement rarely covers the full cost of service even to enrolled residents. According to public estimates, revenue from public support covers approximately 97% of all facility costs. So even if every resident were enrolled in Medical Assistance, state reimbursements would still fall short of covering the full cost of the Wage Standards. In fact, since reimbursement rates are set based upon the reporting period ending fifteen months prior to the rate year, the increased costs associated with the minimum wage rates, overtime, and holiday pay will not be immediately factored into the state's Medical Assistance's reimbursement rates until later years, if at all.

8

c.   Even before the Wage Standards became effective, during the prior reimbursement cycle, North Shore's operating costs already exceeded the reimbursement rate in three categories:

| Category | North Shore's Operating Cost | Reimbursed Amount |
|---|---|---|
| Direct Care | $306.06 | $238.73 |
| Other Care-related | $36.16 | $28.21 |
| Other Operating | $181.81 | $107.88 |

d.   The shortfall between North Shore's operating costs and the reimbursed amount will only increase because of the Wage Standards' requirements.

e.   Indeed, the nursing home within North Shore has operated at a loss over the past twenty years, at an average amount of $1,500,000.00 per year. In 2025, for instance, the nursing home operated at a loss of over $2,000,000.00.

17.   In 2025, the Minnesota Legislature authorized a temporary supplement to per-day reimbursement rates to offset higher costs associated with the Wage Standards. The 2026 and January 1, 2027 minimum wage standards both have temporary rate supplements. But to receive either supplement, a nursing home employer must apply to the Minnesota Department of Human Services. North Shore applied for the funds on October 1, 2025, and expects to receive a $1.67 rate supplement. North Shore does not currently expect that the 2026 temporary rate supplement will cover the

9

increased cost of compliance with the Wage Standards, and the temporary supplements expire two years after implementation. The Wage Standards, by contrast, are permanent. The 2025 legislature also passed operating rate caps that will limit the absorption of the minimum wage standard costs that are funded by the temporary rate supplements.

18.    North Shore is also subject to the Act's training requirements. The Act empowers the Board to design and mandate annual training for covered nursing home workers. This training must meet the Board's minimum criteria and must be delivered by a "certified worker organization" certified by the Board. The training covers subjects dictated by the Board, including employees' rights under the Board's standards and information about the Board itself.  It is North Shore's understanding based upon information published by the Minnesota Department of Labor and Industry that the current "certified worker organizations" consist of three labor unions.[1]

19.    To comply with the Act's training requirements, North Shore must identify covered nursing home workers and arrange for those employees to receive training. This training may occur either on North Shore's property or

---

[1] A copy of the publication can be found at:
https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_current_list_of_certified_worker_organizations_1025.pdf

10

at another location. But if the training occurs at another location, North Shore must pay workers' travel expenses.

20. By law, North Shore is required to pay a worker his or her normal hourly rate for the time it takes to complete the training. North Shore is also required to keep records of the training and provide those records to the Board. It is also required to provide contact information for employees to the worker organization that conducted the training on request unless a worker opts out in writing. If the worker opts out, North Shore must keep a record of the written opt-out.

21. To comply with the above-cited training requirements, North Shore will incur financial costs and operational burdens relating to covered nursing home workers:

a. Paying employees the time they spend in training;

b. Providing a training site on its own premises;

c. Arranging for coverage in its nursing home while employees are receiving training; and

d. Paying administrative personnel to maintain records of training, track which employees have received the training, and provide required records to the Board and the worker organization providing the training.

11

22.    North Shore estimates that these new expenses could result in a significant financial burden. North Shore employs 51 covered nursing home workers: (1) 11 certified nursing assistants; (2) 1 licensed practical nurse; (3) 1 trained medication aide; and (4) 38 other covered nursing home employees. Applying an average of $23 per hour for employees covered by the Wage Standards who work for North Shore and one hour's worth of training time, North Shore would have to pay, *at least*, $1,173.00 in training costs because of the Wage Standards. That figure does not account for additional administrative expenses.

23.    In 2027, North Shore must certify that its covered nursing home workers have completed the mandated training.

24.    In addition and to attempt to remain viable to continue to provide services to the community, North Shore earlier asked the legislature to allow a portion of the skilled nursing home to become part of the hospital as swing beds. Because a Critical Access Hospital is part of North Shore, the applicable regulations allow North Shore to obtain a 101% reimbursement rate for the hospital's reasonable costs rather than allocate costs to the nursing home that are over the reimbursement limits and therefore are not reimbursed; resulting in yearly losses of over $1,500,000.00. North Shore's nursing home is attached to a Critical Access Hospital. Accordingly, to allow for this opportunity, legislation was introduced (House File No. 1912/Senate File No. 1861) and was

12

incorporated into the House Health Omnibus Bill (House File No. 2435) and Senate Health and Human Services Omnibus Bill (Senate File No. 2669). *See* Minn. Stat. 144.5621 (2025). In short, North Shore sought a carveout that would allow it to reclassify one-half of its nursing home as a Critical Access Hospital. One-half of the nursing home, upon reclassification, would have "swing beds," which are available to patients who need acute care or a post-hospital skilled nursing facility care. Generally, before a patient can use a swing bed, the applicable regulations require that the patient stay in the hospital for three consecutive days. As part of the reclassification, North Shore also asked the legislature to waive any requirement relating to a prior hospital stay, waive the swing bed length of stay limitations and allow for the ability to have Medicaid provide reimbursement for swing bed care in the hospital level for nursing home type residents. Upon reclassification, North Shore projects that it could obtain an additional $800,000.00 in Medicare reimbursement, at no cost to Minnesota. This reclassification does not increase the burden on the Minnesota taxpayer; this reclassification simply allows North Shore to receive increased federal reimbursement. This reclassification also does not impose any burden on the nursing home residents. Residents would stay in their current room receiving care from their current caregivers. There will be no physical change to the building or beds. The residents will stay in their same room in their same bed. The only thing that will change is the name of the

13

location—*i.e.*, the residents would be staying in a hospital versus a nursing home.

25.   North Shore expects that when the Board adopts standards and regulations in the future, it will be required to comply with those standards and regulations. It expects that these standards and regulations will impose expenses and regulatory burdens similar to those already imposed by the Board's existing standards.

26.   North Shore would rather negotiate wages and working conditions through private negotiation with its non-union workers, or through the collective bargaining process with its unionized workers—as it always did before the Act's passage. But that is not a current option. Instead, the Act forces North Shore to accept that "[m]embers representing nursing home employers or employer organizations" will represent North Shore's interests on the Board. North Shore did not vote for or select any Board member. Yet North Shore has no choice but to associate with those employer-representatives on the Board. North Shore is then subject to the Board's collective standard-setting process, which as described above, has already or will inflict harm onto North Shore, its workers, residents, and the larger community. North Shore does not want to associate with the employer-representatives or the Board's structure and process, and would disassociate if North Shore could choose. The Act, however, forces North Shore to accept the

14

employer-representatives' representation on the Board and to associate with public policies (*e.g.*, the Wage Standards and the Board's training requirements) that North Shore opposes.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated: March 9        , 2026

Printed Name: Kimber L. Wraalstad

4918-0765-1462.4 / 131787.1001

15

# EXHIBIT 1



515 W 5TH AVE
GRAND MARAIS, MN 55604-3017
(218) 387-3040

September 5, 2025

Braidy Powers
Cook County Auditor
Cook County Minnesota
Grand Marais, MN  55604

Re:  Levy Request

Dear Braidy:

The Cook County Hospital District Board set the levy for taxes payable in 2026 at $2,182,000.  The levy amount for 2026 is increasing by $284,500 from the 2025 levy.

The meeting at which the final budget will be determined is scheduled for:

December 18, 2025

The meeting will begin at 9:30 a.m. and will be held in the Board Room at the Hospital.  If the room location is changed for any reason, information will be posted to guide attendees to the meeting location.

Should taxpayers have any questions, they may contact me at 218-387-3260 or via email at Kimber.wraalstad@northshorehealthgm.org.

Sincerely,

Kimber L. Wraalstad, FACHE
CEO/Administrator

Ex. 1, p. 001

www.northshorehospital.com