UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

|  |  |
|---|---|
| LEADINGAGE MINNESOTA and CARE PROVIDERS OF MINNESOTA, and YONA NORTHSTAR LLC,<br><br>               Plaintiffs,<br><br>v.<br><br>NICOLE BLISSENBACH, *in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry and as a member of the Minnesota Nursing Home Workforce Standards Board*, and JAMIE GULLEY, *in his official capacity as a member and chairperson of the Minnesota Nursing Home Workforce Standards Board*,<br><br>               Defendants. | Court File No. _____<br><br><br><br>**DECLARATION OF EMILY BENHAM** |

STATE OF <u>MINNESOTA</u>    )

COUNTY OF <u>POPE</u>       )

I, Emily Benham, state and declare as follows:

1.    I currently serve as the Executive Director of Glenwood Village Care Center, Inc. d/b/a Glenwood Retirement Village, which was formed under Minnesota Statutes Chapter 317 (Nonprofit Corporations) in 1964 as a non-profit and maintains its principal place of business at 719 2nd Street SE,

Glenwood, MN. Glenwood Retirement Village is currently an association member of LeadingAge Minnesota. I offer this Declaration based on my personal knowledge, and in support of the Complaint and Plaintiffs' Motion for a Preliminary Injunction.

2.      Glenwood Retirement Village provides nursing home services to older adults in Minnesota. To serve that population, Glenwood Retirement Village employs a total of 163 employees in Minnesota, and these employees include certified nursing assistants, trained medication aides, licensed practical nurses, and other personnel.

3.      Glenwood Retirement Village must comply with the Minnesota Nursing Home Workforce Standards Act (the "Act") and any published administrative standards issued by the Minnesota Nursing Home Workforce Standards Board (the "Board"), including the "Proposed Expedited Permanent Rules Establishing Minimum Nursing Home Wage Standards; Notice of Intent to Adopt Expedited Permanent Rules Without A Public Hearing," for which the Board published a notice of adoption on October 28, 2024 (collectively, the "Wage Standards").

4.      For the 2026 minimum wage, the Wage Standards require that within thirty days of the Centers for Medicare & Medicaid (CMS) approving the reimbursement rate increase paid to nursing homes to implement the minimum wage, Glenwood Retirement Village must pay all of its covered

2

nursing home workers a minimum wage of $19.00 per hour. Beginning on January 1, 2027, Glenwood Retirement Village must pay all of its covered nursing home workers a minimum wage of $20.50 per hour.

5.    The Wage Standards also require that Glenwood Retirement Village pay certain occupations—*i.e.*, certified nursing assistants, trained medication aides, and licensed practical nurses—a higher minimum wage in 2026, and January 1, 2027:

| Role | 2026 - These standards will go into effect 30 days after CMS's approval | January 1, 2027 |
|---|---|---|
| Certified Nursing Assistants | $22.50 per hour | $24.00 per hour |
| Trained Medication Aides | $23.50 per hour | $25.00 per hour |
| Licensed Practical Nurses | $27.00 per hour | $28.50 per hour |

6.    The rates required by the Wage Standards are higher than the minimum rates maintained by Glenwood Retirement Village before the Wage Standards were adopted. To comply with the Wage Standards, Glenwood Retirement Village will have to pay higher rates to some nursing home workers. As a result, Glenwood Retirement Village will incur additional and ongoing costs. The Board's creation and its corresponding authority to regulate Glenwood Retirement Village forces Glenwood Retirement Village to modify how it sets the minimum wages of its covered nursing home workers. For years

3

before the Board's creation, for non-union employees, Glenwood Retirement Village would provide the minimum wage (*i.e.*, starting wage) set by default federal, state, or local law and market factors. Employees would earn increases to their hourly wage through a cost-of-living adjustment, which has typically been a 3% annual increase. Glenwood Retirement Village's process (from before the Wage Standards' effective date) for setting the hourly wages (described above) applied to its covered general nursing home workers, certified nursing assistants, trained medication aides, and licensed practical nurses. The Wage Standards now set the applicable minimum wages higher than what default federal, state, and local law require, and the Wage Standards provide for automatic increases to the minimum wage.

7.      Glenwood Retirement Village is an entity of limited means. The primary sources of funding from Glenwood Retirement Village come from: Medicare, Medicare-like payers, Medicaid, and private pay. The Wage Standards force Glenwood Retirement Village into an impossible choice: (1) comply with the Wage Standards and make difficult financial decisions— such as decreasing staff to resident ratios, caring for less complex residents, and limiting admissions; or (2) refuse to comply with the Wage Standards and face the corresponding penalties imposed by law, including a private civil action by a nursing home worker or administrative enforcement.

4

8.     As a result of the Wage Standards and within the six months before the filing of this lawsuit, Glenwood Retirement Village has done the following:

a.     Delayed capital projects related to facilities housing residents;

b.     Delayed investments in quality-of-life improvements, such as new furniture, equipment, or services; and

c.     Hired an administrative professional to assist with the process of complying with the Wage Standards.

9.     Glenwood Retirement Village also expects that the Wage Standards will compress wage rates within Glenwood Retirement Village workforce. Glenwood Retirement Village wage rates are dictated in part by Medicaid reimbursement rates, which are paid on a per-resident basis. Its revenue is therefore largely fixed. So to offset higher minimum wages, Glenwood Retirement Village will be forced to pay more senior employees less than it otherwise might. This wage compression will eliminate incentives for long-term employees by reducing wage differentiation between more and less experienced employees. In Glenwood Retirement Village experience, more senior employees will be dissatisfied with the lack of wage progression and will be more likely to leave for other jobs. The result will be higher turnover, a less experienced workforce, and worse service for Glenwood Retirement Village residents.

10. Glenwood Retirement Village has already spent time and resources calculating the direct and indirect cost of compliance with the Wage Standards, costs that Glenwood Retirement Village only incurs *because of* the Wage Standards:

| Nursing Facility Cost: Wage Standards | 2026 | 2027 | Total Cost of Wage Standard |
|---|---|---|---|
| Direct Cost of 2026 Wage Standard | $176,041 | $176,041 | $352,082 |
| Direct Cost of January 1, 2027 Wage Standard | $0 | $147,962 | $147,962 |
| Indirect or Ripple Cost of 2026 Wage Standard | $20,740 | $20,740 | $41,479 |
| Indirect or Ripple Cost of January 1, 2027 Wage Standard | $0 | $8,649 | $8,649 |
| **Estimated Annual Cost** | **$196,781** | **$353,392** | **$550,173** |

11. The "indirect or ripple cost" represents additional payroll taxes tied to the increased wages paid to the covered nursing home employees.

12. Like most licensed nursing facilities in Minnesota, Glenwood Retirement Village receives public financial support for residents enrolled in Medical Assistance, the state's Medicaid program. But that support is inadequate to offset all cost increases resulting from the Board's standards:

6

a.  First, the Board's standards require all covered nursing home workers to be paid higher rates. But those workers serve all residents, not just those enrolled in Medical Assistance. Medical Assistance reimbursement rates are calculated on a resident-per-day basis. In addition, as a condition of participation in the Medicaid program, Minnesota's policy of "rate equalization" (256R.06) requires "Medical assistance rates not to exceed private pay residents' rates." So even if the reimbursement rates covered 100% of costs of service to Medical Assistance enrollees, Minnesota nursing facility reimbursement policy both shifts the higher costs of providing service to non-enrollees by using total resident days from the cost report used to set annual rates, and prohibits the nursing facility from raising private pay rates above the Medicaid rates established by the state of Minnesota.

b.  Second, Medical Assistance reimbursement rarely covers the full cost of service even to enrolled residents. According to public estimates, revenue from public support covers approximately 97% of all facility costs. So even if every resident were enrolled in Medical Assistance, state reimbursements would still fall short of covering the full cost of the Wage Standards. In fact, since reimbursement rates are set based upon the reporting period

7

ending fifteen months prior to the rate year, the increased costs associated with the minimum wage rates, overtime, and holiday pay will not be immediately factored into the state's Medical Assistance's reimbursement rates until later years, if at all.

c.   Glenwood Retirement Village has experienced this shortfall. In the most recent reimbursement cycle, Glenwood Retirement Village's reimbursement rate at Glenwood Village Care Center averaged approximately $360 per resident day, while total costs per resident day were approximately $379. That gap will be exacerbated by the Wage Standards, which will further increase Glenwood Retirement Village's labor costs.

13.   Glenwood Retirement Village is also subject to the Board's training requirements. By law, the Board is empowered to design and mandate annual training for covered nursing home workers. This training must meet the Board's minimum criteria and must be delivered by a "certified worker organization" certified by the Board. The training covers subjects dictated by the Board, including employees' rights under the Board's standards and information about the Board itself.  It is Glenwood Retirement Village's understanding based upon information published by the Minnesota

8

Department of Labor and Industry that the current "certified worker organizations" consist of three labor unions.[1]

14.    Glenwood Retirement Village does not currently have any unionized employees.

15.    To comply with the Board's training requirements, Glenwood Retirement Village must identify covered nursing home employees and arrange for those employees to receive training. This training may occur either on Glenwood Retirement Village property or at another location. But if the training occurs at another location, Glenwood Retirement Village must pay employees' travel expenses.

16.    By law, Glenwood Retirement Village is required to pay an employee his or her normal hourly rate for the time it takes to complete the training. Glenwood Retirement Village is also required to keep records of the training and provide those records to the Board. It is also required to provide contact information for employees to the worker organization that conducted the training on request unless a worker opts out in writing. If the worker opts out, Glenwood Retirement Village must keep a record of the written opt-out.

---

[1] A copy of the publication can be found at:
https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_current_list_of_certified_worker_organizations_1025.pdf

17.    To comply with the above-cited training requirements, Glenwood Retirement Village will incur financial costs and operational burdens relating to covered nursing home workers:

   a.    Paying employees the time they spend in training;

   b.    Paying employees for travel time to the training site;

   c.    Arranging for coverage in its nursing home facilities while employees are receiving training; and

   d.    Paying administrative personnel to maintain records of training, track which employees have received the training, and provide required records to the Board and the worker organization providing the training.

18.    Glenwood Retirement Village estimates that these new expenses could result in a significant financial burden. Glenwood Retirement Village employs 163 covered nursing home workers. Budgeting one hour of training time and one hour of travel time for each worker, Glenwood Retirement Village estimates it will spend at least $7,498.00 for training time alone. That figure does not account for additional administrative expenses.

19.    In 2027, Glenwood Retirement Village must certify that its covered nursing home workers have completed the mandated training.

20.    Glenwood Retirement Village expects that when the Board adopts standards and regulations in the future, it will be required to comply with

those standards and regulations. It expects that these standards and regulations will impose expenses and regulatory burdens similar to those already imposed by the Board's existing standards.

21.    Glenwood Retirement Village would rather negotiate wages and working conditions through private negotiation with its employees—as it always did before the Act's passage. But that is not a current option. Instead, the Act forces Glenwood Retirement Village to accept that "[m]embers representing nursing home employers or employer organizations" will represent Glenwood Retirement Village's interests on the Board. Glenwood Retirement Village did not vote for or select any Board representative. Yet Glenwood Retirement Village has no choice but to associate with those employer-representatives on the Board. Glenwood Retirement Village is then subject to the Board's collective standard-setting process, which as described above, has already or will inflict harm onto Glenwood Retirement Village, its workers, residents, and the larger community. Glenwood Retirement Village does not want to associate with the employer-representatives or the Board's structure and process, and would disassociate if Glenwood Retirement Village could choose. The Act, however, forces Glenwood Retirement Village to accept the employer-representatives' representation on the Board and to associate with public policies (*e.g.*, the Wage Standards and the Board's training requirements) that Glenwood Retirement Village opposes.

11

12

I declare under penalty of perjury that the foregoing is true and correct.

28 U.S.C. § 1746.

Dated: March 9th, 2026

_Emily Benham_

Printed Name: Emily Benham

4911-9723-5339.3 / 131787.1001

12